19-CV-51-TMB

Edmond Hudmond Smith IV. Lawful Money 12 USC §411
BOP #07241-059
Louis Holger. Lawful Money 12 USC §411
dba LOUIS HOLGER EKLUND Inc. BOP #20309-006
United States Medical Center
For Federal Prisoners.
P.O. Box 4000
Springfield, Missouri.
                65801-4000

FILED FEB 6 '19 PM 1 08 USDCALS

                In The United States District Court
                  For The District Of Alabama
                    Article III 3:15-cv-00046

Edmond Hudmond Smith IV,
Louis Holger.
Claimants.

vs.·

SAINT PAUL TRAVELERS COMPANY Inc.,
INTEGRATED CLAIMS SOLUTIONS LLC,,
NATIONAL CLAIMS ADJUSTERS Inc.,
Mark Lozer,
Robert Barnett,
Philip Coggin,
Rick Clarke,
Linda Swope,
Leanne Carpenter,
B.J. Lyons,
Noel Mozer,
Charles Graddick,
SamCochran,
Ed Everson, (A)    (B)
Clint Uler, ulmer,
Mitch McRaye,
James Bo Lackey,
Loren Watts,
Alan Yaeger,
Bob Steller,
MOBILE COUNTY CIRCUIT COURT Inc.,
Noel Mozer,
Sarah Stewart,
Lee Haney,
Eddie Curran,
John Tyson,
Jason Botop,
Steve Green,
Ray Brazell,
Mike Parker,
Mike Berrey
J.E.Krueger
Co.Simmes
Co.Gill
Co.Durban

                        page 1 of  145

Chris Pupaza
Paul J. Albert,
John Forest Coon,
James Mullins,
Rita Dial,
Nurse Blackmon,
Virginia Tapia,
Loren Watts,
Neal Foster,
Tim Burger,
Evan Wolfe,
James Hardesty,
Wendal Sanders,
Aaron Wells,
Steven Case,
Wife Case,
Steve Orso,
Tom Haas,
William H. Steele,
Greg Bordenkirker,
Terry Steele,
William Cassidy,
Kristi DuBose,
Jack T. Camp,
Steven E. Butler,
Adam Goldberg,
Michele O'brien,
Clark Stankowski,
Ed Eversman,
Nicole Dugan,
Laura Fields,
Charles E. Smith,
Anna Eaton,
Terry J. Hundley,
Doctor Stuckey,
Nurse Calhoon,
Nurse Rogers,
Counselor Santos,
Correction Officer Walker,
Correction Officer Waldon,
Correction Officer Kramer,
Lieutenant D. Noble
Kim Thomas,
Unit Manager Reardon,
Lieutenant Earwin,
Dallas Sawyer,
Lieutenant Wies,
PUBLIC SECTOR WORKERS UNION
COLEMAN FLORIDA Inc.,
PUBLIC SECTOR WORKERS UNION
MCREARY TENNESSEE Inc.,
Warden Lockett,
Warden Caraway,
Counselor Harvey,
Counselor Kessel,
Counselor Halfpap,
PUBLIC SECTOR WORKERS UNION
Terre Haute INDIANA Inc.,702.
Co.G.KREBS,
Mr. Hut ESQ.,

page 2 of 145

Counselor B.Jenkins
Case Manager M.Williams
Correction Officer Durham
Correctional Officer Lotz,
Lieutenant Brakefield,
Lieutenant Revis,
Captain Henger,
Correction Officer Lafave,
Correction Officer Simmes,
Correction Officer C.Ridl
CITY OF MOBILE Inc.,
MOBILE COUNTY Inc.,
STATE OF ALABAMA Inc.,
MOBILE COUNTY SHERIFF'S DEPARTMENT Inc.,
MOBILE COUNTY METRO JAIL Inc.,
MOBILE COMMUNITY MEDICAL SERVICES Inc.,
UNITED STATES DEPARTMENT OF JUSTICE Inc.,
LOUISIANA CORRECTIONAL SERVICES Inc.,
UNITED STATES MARSHALS Inc.,
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY Inc.,
MOBILE PRESS REGISTER Inc.,
SALT WATER KING FISH ASSOCIATION Inc.,
NATIONAL CLAIMS ADMINISTRATORS Inc.,
LYONS MCFADDEN AND ROUSE Inc.,
LYONS EXIT REALTY Inc.,
MOSER AND ASSOCIATES Inc.,
PARKER WAREHOUSES Inc.,
FOSTER PAINTING Inc.,
GEORGIA ENTRY ASSOCIATION Inc.,
UNITED STATES FEDERAL BUREAU OF PRISONS Inc.,
UNITED STATES DEPARTMENT OF JUSTICE Inc.,
BRITISH PATROLEUM Inc.,
BANDIT BONDING COMPANY Inc.,
COASTAL AUCTION COMPANY Inc.,
LEXINGTON INSURANCE COMPANY Inc.,
J.P. MORGAN CHASE BANK Inc.,
Et Al.
Defendants

Case no. 3:19-CV-00002-RRB

## Reservation of Rights / Notice

I reserve my right to not be compelled to perform under any contract or commercial agreement that I did not enter knowingly, voluntarily, and intentionaly. Furthermore; I do not accept the liability of the compelled benefit of any unrevealed contract or commercial agreement.

ALL rulings shall be made in the Best Interest of Justice. Any potential ruling made that is not made in the Best Interest of Justice is repugnant to the Best Interest of Justice, the United States Constitution, the Alaska State

Constitution, the laws of the State of Alaska, the laws of the Republic of Alaska, the laws of the United States, the original 13 Colonies and the respective Districts, international law, the United Nation's Declaration of Human Rights and Human Rights as well.

## Bouvier's Maxims of Law. 1856 Law Dictionary.

1) He who does not speak the truth is a traitor to the truth.
2) It is a fraud to conseal a fraud.
3) External actions reveal internal secrets.
4) Reason is a ray of **The Divine Light**
5) The judge is condemned when the guilty are aquited.
6) **The Heir of my Heir is my Heir.**
7) **The Heir is ONE with the Ancestor.**
8) Clerical errors ought not to hurt.

## Glossary

**Affidavit of Apology and Individual Self Forgiveness.–**
A notarised affidavit in admittance of ONE's wrongs, acompanied with the apropriate apology, filed on to any public record. **Note** – An offender in posession of a certified copy of their own **Affidavit of Apology and Individual Self Forgiven Forgiveness** automatically aquires the special ability of "Charm Inupiaq Prince, Louis Holger, **Article III United States Supreme Court Justice**" and is granted the option of having this **Article III United States Supreme Court of Record** advocate for the offenders forgiveness, and the lightest sentance possible at the time of prosecution.

## Notice of Claims / Affidavit

I, Inupiaq Prince, Louis Holger son of Inupiaq Princess Lottie Wanda, daughter of Inupiaq Princess Rose of the Koonook family nomen, daughter of Inupiaq Chief Ahtungowra of Tikigaq, operating in my official capacity as an **Article III United States Supreme Court Justice**, in this **Article III United States Supreme Court of Record,** state the following:

Edmond Hudmond Smith IV has provided me with irrefutable evidence of a plethora of crimes that have been perpetrated upon himself, his family, and his friends by a plethora of corrupted corporate financial agents, AMERICAN BRITTISH ACCREDITED REGISTRY ASSOCIATION Inc., attornies falsely impersonating public servants, in the form of "United States District Court Judges" and ALABAMA BRITTISH ACCREDITED REGISTRY ASSOCIATION Inc., attornies falsely imparsonating public servants, in the form of "Superior Court Judges" and the corrupted law enforcement officers who do their dirty work.

I will be adding aproximantly 20 attachments to this initial filing at docket #1. These attachments will consist of evidence, as well as an explanation of the crimes that have been committed upon Edmond Hudmond Smith IV and his family, and friends.  These initial attachments are simply **initial attachments.** They serve the

purpose of **proving beyond any reasonable doubt** that the crimes committed constitute **Racketeer Influenced and Corrupt Organizations**, who are all in a routine and systematic way proving beyond any reasonable doubt that they are corrupted corporate financial agents, employeed by a corrupted "enterprise", and boldly engaged in over 100 seperate instances of "racketeering activity" that is constitute as "pattern of racketeering activity" as defined at **TITLE 18 UNITED STATES CODE. CHAPTER 96 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS. §§1961 §1961(1)(4)(5).**

Edmond Hudmond Smith IV has kept a record of everything, including past civil lawsuits that were unlawfully and fraudulently closed, and swept under the rug by corrupted AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attornies falsely impersonating public servants in the form of "United States District Court Judges".

Our goal with this initial filing, is to get the support of the People in the correction of this travesty of justice that has been committed upon this 100% innocent man, his family members, and close firends, all because corrupted corporate financial agents desired to unlawfully and fraudulently back out of employment contracts totaling **$billions$** of dollars, and to steal and extort **$hundreds of millions$** of dollars in cash, and personal assets, homes, properties, businesses, land, trucks, RVs, boats and much, much more, and to falsely imprison a 100% innocent man in the process, in attempts to ruin his life and steal his assets in the process.

Edmond Hudmond Smith IV is the son of Edmond Hudmond Smith III. Edmond Hudmond Smith III built most of the town of Mobile Alabama, and a large part of the Gulf Coast. They own TOP CATASTROPHE TEAM SERVICES Inc., CLAIM SERVICE PROVIDER Inc., GREAT SOUTHERN OUTDOORS FOUNDATION AND INSTITUTE Inc., and other businesses and corporations as well.

Edmond Hudmond Smith IV, after hurricane Katrina, and Hurricane Rita landed an employment contract with SAINT PAUL TRAVELERS COMPANY Inc., worth **$billions$** of dollars doing disaster relief, and rebuild. This lawsuit serves the purpose of proving beyond any reasonable doubt that atrocious crimes were committed upon Edmond Hudmond Smith IV, his family, and friends, all for the purpose of stealing, and extorting **$hundreds of millions$** in cash, and assets, and backing out of **$billions$** of dollars in employment contracts, and to frame a 100% compleetly innocent man, locking him away in a federal prison in order to silence him and further attemps at the theft of his assets.

Edmond Hudmond Smith IV has kept a record of everything, and this initial filing, serves the purpose of opening an **Article III United States Supreme Court Evidence Repository** for Edmond Hudmond Smith IV, citing all laws in **Louis Holger's Article III United States Supreme Court Evidence Repostiory** located at United States District Court for the District of Alaska, Article III 3:15-cv-00046 case name Holger v. LEW, until such a time that Edmond Hudmond Smith IV has told his story, and filed his evidence, and states that he has concluded, and is ready for the jury trial that we are peacefully demanding at the conclusion of our filings.

Edmond Hudmond Smith IV has asked me to help him with this lawsuit, and with bringing to the Light of the Public the travesties of justice that have been committed upon himself and his family, and friends. I, Louis Holger, will only be writing this initial filing, afterwhich Edmond Hudmond Smith IV will be authoring the future filings, and adding the rest of his evidence, in the form of additional attachments, up until the time that he has concluded, and indicates so, and states that we are ready to procede to jury trial.

In pertinance to this lawsuit, we are citing the **United States Constitution** as the supreme law and authority. We cite the **United States Constitution** as both living men on the land, and **People of the United States. We are not corporat trusts, "LOUIS HOLGER EKLUND Inc.," and"EDMOND HUDMOND SMITH IV Inc."!!!** We are citing specific titles, chapters, and subsections of the UNITED STATES CODE, as well as specific Rules from the Federal Rules of Civil Procedure as our secondary source of authority for the purpose of describing, and naming the various crimes that the named defendants, et al, have committed.

This lawsuit will commence in the following manner: We will cite the Article, section, clause, and or amendment of the **United States Constitution** that we are using as the authority, and a brief description below it of exactly what the authority is, and exactly how it is to be used. The **UNITED STATES CODE**, and **Federal Rules of Civil Procedure** will be used in a similar, if not identical manner.

### Constitution of the United States
**Article III. Judicial Power**
**Section 1. Supreme Court and inferior courts--judges and compensation.**
The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the congress may from time to time ordain and establish. The judges, both of the Supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, recieve for their services, a compensation which shall not be diminished during their continuance in office.

**Section 2.**
**Clause 1. Subjects of jurisdiction.**
The judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;......

**Clause 2. Jurisdiction of Supreme Court.**
In all cases affecting ambassadors, and other public ministers and consuls, and those in which a state shall be a party, the Supreme Court shall have original jurisdiction.

**Clause 3. Trial by jury.**
The trial of all crimes, except in cases of impeachment, shall be by jury;.......

**Article III. Section 1.** is the authority that we will be using as our evidence proving beyond any reasonable doubt that the judicial power of the United States shall be vested in one Supreme Court. We are citing the **Article III United States Supreme Court** as the judicial power of this lawsuit. It also explains that the judges of both the Supreme, and inferior courts shall hold their offices during good behavior. We are citing this as the authority that we are using to show that all **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attornies** and all **ALABAMA BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attornies** involved in these racketeering influenced and corrupt organizations are not judges, and were (**not limited to**) immediately striped of any "judgeship", as well as any and all judicial authority that had been, falsely or otherwise, vested in them, from the moment it is proven that they used the office to commit, and perpetrate crimes, as well as to war upon the **United States Constitution.**
**Article III. Section 2. Clause 1.** explains that the judicial power shall extend to all cases, in law and in equity, arising under the **United States Constitution,** and the laws of the United States. Again, we are citing this as the authority used to bring this lawsuit under the authority of the **United States Supreme Court.**

**Article III. Clause 2.** explains that the **United States Supreme Court** shall have original jurisdiction in all cases affecting public ministers. **I AM** operating in my official capacity as a bona fide, elected not appointed, Article III United States Supreme Court Justice, and the Article III United States Supreme Court has original jurisdiction over this case.

**Article III. Clause 3.** is the authority that we are using to peacefully demand a jury trial in pertinance to this lawsuit, for the crimes committed, listed herein.

United States Constitution

**Article VI. Miscellaneous Provisions**
**Clause 2. Supreme law.**
This constitution, and the laws of the United States which shall be made in pursuance thereof; all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary not with standing.

**Amendment 8. Bail Punishment.**
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

We are citing **Article VI. Clause 2.** as the authority proving that the **United States Constitution** is the supreme law of the land.

**Amendment 8.** explains that cruel and unusual punishments shall not be inflicted. We are citing **Amendment 8** as a source of authority proving that cruel and unusual punishment is not allowed.

**Federal Rules of Civil Procedure.**
**Title II. Commencing an Action; Service of process, Pleadings, Motions, and Orders.**
**Rule 4. Summons.**
Rule 4. Summons
**(c) Service.**
    **(3)** By a Marshal or someone specially appointed. At the plaintiff's request, the court may order that service be made by a United States Marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 USC § 1915 or as a seaman under 28 USC §1916.

**FRCP Rule 4(c)(3)** states that the court **must** order the defendants to be served by a United States Marshal, deputy marshal, or by a person specially appointed by the court. We now envoke this right, and peacefully make this request.

**Federal Rules of Civil Procedure.**
**Title III. Pleadings and Motions.**
**Rule 8. General Rules of Pleading.**
Rule 8. General Rules of Pleading
**(b) Defenses; Admissions and Denials.**
    **(1)** In general. In responding to a pleading, a party must:
        **(A)** state in short and plain terms its defenses to each claim asserted against it; and
        **(B)** admit or deny the allegations asserted against it by an opposing party.
    **(2)** Denials.- Responding to the substance. A denial must fairly respond to the substance of the allegation.
    **(6)** Effect of failing to deny. An allegation - other than one relating to the ammount

of damages - is admited if a responsive pleading is required and the allegation is not denied......

**TITLE 25 UNITED STATES CODE. INDIANS. CHAPTER 5. PROTECTION OF INDIANS. §175 United State States Attorneys to represent Indians.**
In all States and Territories where there are reservations or allotted Indians the United States District Attorney (United States Attorney) shall represent them in all suits at law and in equity.

I, Louis Holger (dba LOUIS HOLGER EKLUND Inc. Lawful Money **12 USC §411)** being a member of the federally recognized tribe, Native Village of Kotzebue, and a shareholder in the NANA REGIONAL CORPORATION Inc., now envoke the right to have a United States District Attorney represent me, pertaining to this case (and all others that **I AM** a party to. **I, Louis Holger, now call upon a United States District Attorney to represent me pursuant with 25 USC §175.**

### Black's Law Dictionary. Tenth Edition.

**accredited –**
Of a governmental or diplomatic official approved to act as an official representative for one's home country while serving in a foreign country.

**association –**
A gathering of people for a common purpose; the persons so joined.

**registry –**
A place where information used by an organization is kept, esp the official records and lists;...

Based upon the above legal deffinitions, from Black's Law Distionary, Tenth Edition, all **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorneys and ALABAMA BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorneys** are British diplomatic officials, repoesenting Great Britain, serving here in our nation, gathering for their common purpose, and depositing their written records into their registry.
For the purpose of public awareness I have provided **proof beyond any reasonable doubt as to the exact meaning of "BRITISH ACCREDITED REGISTRY ASSOCIATION"**

### List of Racketeering Acts 1 through 101

The list of racketeering acts 1 through 101, contained in the following 121 pages, was written for **Edmond Hudmond Smith IV** by a former University of Arkansas Law Professor, who's name remains anonamous, at this time, at the request of the author.

### NOTICE
EDMOND HUDMOND SMITH IV, PEOPLE OF THESE UNITED STATES, AND CLAIMMENT IN THIS ACTION, INVOLVED IN "THE BUISNESS OF INSURANCE" UNDER THAT LEGAL MANDATES, STATES THE FOLLOWING: Mc Carran-Ferguson Act, Sherman Act[15 USCS §§ 1 et seq.[, Clayton Act, Federal Trade Commission Act[15 USCS§§41 et seq.] AND Federal Deposit Insurance ACT(12 U.S.C. 1813)AT ALL TIMES RELEVANT. (RACKETEERING ACTS ONE HUNDRED AND THREE THROUGH ONE HUNDRED AND TWELVE )
( AUTHORED BY EDMOND HUDMOND SMITH IV.)

<u>COMPLAINT</u>

(Paragraphs 1 to 100 reserved)

<u>CLAIM 1</u>

100. At all times material to this Complaint:

A. The defendants, St. Paul Travelers Co., Inc.; Integrated Claims Solutions, LLC; National Claims Adjusters; Mark Lozer, Robert Barnett, Philip Coggin, Rick Clarke, Linda Swope, Leanne Carpenter, B.J. Lyons, Noel Mozer, Charles Graddick, Sam Cochran, Ed Everson, Clint Uler, Mitch McRaye, James Bo Lackey, Loren Watts, Alan Yeager, Bob Steller,

and others constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is: an individual, partnership, corporation, association, or other legal entity, and union or group of individuals associated in fact although not a legal entity for the purpose of obtaining monetary benefits for its members.

B. The enterprise functioned to plan, organize, and coordinate the acquisition of funds for its members, the expenditure of those

funds, and to perpetrate a fraud against the administration of justice of society and the targeted victim, Edmond H. Smith IV, and oppress the exercise of his legal rights, in the proceedings of the Mobile County Circuit Court, Mobile, Alabama, the United States District Court for the Southern District of Alabama, the United States District Court for the Eastern District of Louisiana related to the false arrest and imprisonment of Edmond H. Smith IV, and to obstruct the administration of justice in the proceedings thereof and in the civil action filed separately by Edmond H. Smith IV, Claims Service Provider, Inc., and Top Catastrophe Team Services against St. Paul Travelers Co., Inc. and Integrated Claims Solutions, LLC, and National Claims Adjusters, in the United States District Court for the Eastern District of Louisiana.

C. The Defendant St. Paul Travelers Co., Inc., and its agents and agencies, Mark Lozer and Bob Barnett, acting individually and on behalf of Integrated Claims Solutions, LLC, and National Claims Adjusters, were the leaders of the enterprise and functioned as the primary planners and decision makers of the enterprise.

D. The Defendant B.J. Lyons, acting individually and on behalf of Mark Lozer, Bob Barnett, St. Paul Travelers Co., Inc.; Integrated Claims Solutions, LLC; and National Claims Adjusters, was also a leader of the enterprise and functioned as a planner and decision maker of the enterprise regarding the subject matter and activities of the participants of the enterprise which occurred in Mobile County, Alabama, in furtherance of the activities of the leaders of the enterprise which originated in New Orleans, Louisiana against Edmond H. Smith IV, Claims Service Provider,

10

Inc., and Top Catastrophe Team Services, and others.

E. The defendant, Philip Coggin, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Mark Lozer, Bob Barnett, St. Paul Travelers Co., Inc., Integrated Claims Solutions, Inc., LLC, National Claims Adjusters and other members of the enterprise.

F. The defendant, Rick Clarke, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Philip Coggin, Linda Swope, Leanna Carpenter, Mark Lozer, Bob Barnett, St. Paul Travelers Co., Inc., Integrated Claims Solutions, Inc., LLC, B.J. Lyons, and other members of the enterprise.

G. The defendant, Linda Swope, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Philip Coggin, Rick Clarke, Leanna Carpenter, Mark Lozer, Bob Barnett, St. Paul Travelers Co., Inc., Integrated Claims Solutions, Inc., LLC, B.J. Lyons, and other members of the enterprise.

H. The defendant, Leanna Carpenter, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Philip Coggin, Linda Swope, Rick Clarke, Mark Lozer, Bob Barnett, St. Paul Travelers Co., Inc., Integrated Claims Solutions, Inc., LLC, B.J. Lyons, and other members of the enterprise.

I. The defendant B.J. Lyons, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Rick Clarke, Linda Swope, Leanna Carpenter, Mark

Lozer, Bob Barnett, St. Paul Travelers Co., Inc., Integrated Claims Solutions, Inc., LLC, and advised and directed the activties of Noel Mozer, Charles Graddick, Sam Cochran, Clint Uler, Mitch McRaye, James Bo Lackey, Loren Watts, Alan Yeager, Ed Everson, and others to carry out the objectives and goals of the enterprise in Mobile County, Alabama, New Orleans, Louisiana, the State of Florida, and elswhere.

J. The defendant, Noel Mozer, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to B.J. Lyons and others.

K. The defendant, Charles Graddick, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to B.J. Lyons and others.

L. The defendant, Sam Cochran, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to B.J. Lyons, Charles Graddick, and others.

M. The defendant, Ed Everson, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to B.J. Lyons, Sam Cochran, and others.

N. The defendant, Clint Uler, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Sam Cochran, B.J. Lyons, and others.

O. The defendant, Mitch McRaye, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Sam Cochran, B.J. Lyons, and others.

P. The defendant, James Bo Lackey, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Sam Cochran, B.J. Lyons, and others.

Q. The defendant, Loren Watts, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Sam Cochran, B.J. Lyons, and others.

R. The defendant, Alan Yeager, was a member of the inner core of the enterprise and functioned as an advisor and a principal assistant to Sam Cochran, B.J. Lyons, and others.

101. From in or about September, 2005 to in the Southern District of Louisiana and in the Southern District of Alabama and elsewhere, agents of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, Mark Lozer, Bob Barnett, Philip Coggins, Rick Clarke, Linda Swope, Leanna Carpenter, B.J. Lyons, Noel Mozer, Charles Graddick, Sam Cochran, Ed Eversman, Clint Uler, Mitch McRaye, James Bo Lackey, Loren Watts, Alan Yeager

and others, being persons employed by and associated with the enterprise described in paragrapd 100, above, which was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and willfully did conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity as specified in paragraph 102, below.

102. The pattern of racketeering activity committed by the defendants and others consisted of the following acts:

13

Racketeering Act One

Between September and November, 2005, Mark Lozer, Robert Barnett and others, individually and jointly, acting as an agent or agency of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, unlawfully, knowingly, and willfully did make one or more false representations by wire communication, specifically electronic mail and computer transmission, and thereby did falsely deny receipt of claims information from Top Catastrophe Team Services, Claims Service Provider, and the agents thereof for the purpose of fraudulently withholding payment due for services, in violation of Title 18, United States Code, Section 1343.

[racketeering acts two through nine are reserved pending collection of details and dates of additional acts]

Reserved Pending
## Racketeering Act Two

Between Septmber and November 2005, Mark Lozer,Robert Barnett
and others individualy and jointly acting as agents or agency of
St.Paul Travelers Co.,Inc.,Intergrated Claims Solutions,LLC,and
National Claims Administrators,unlawfully,knowingly,and willfully
transmit false and misleading insurance information to multiple
individuals,engaged in the process of insurance ajustment in A
pre-calculated scheme and plan to deliberately breach the pre-
agreed work assignment directives,contracts,and employment cotracts
in repeated violations of 18 USC §1343(fraud by wire), § 1033(c)(1)
(knowingly  makinging false statement/report by insurance agent),
§ 1033(a)(1)(deceptive statement/report by insurance agent),§ 2(b)
(causeing another to commit an offense),STATE & common law torts.
With the intent to influence,delay,sabotage,or prevent their proc-
eeding in the compleetion of their claims assignment obligations
involveing the business of insurance whose activities affect inte-
rstate commerce before A insurance reglatory official or agency or
agent or examiner appointed by such officials or agency to examine
the affairs of any person engaged in the business of insurance whose
activities affect interstate commerce,in violation of Title 18,United
States Code §, Section 1512 (b)(1).

## Backeteering Act Three

On or about October 1,2005 Noel Mozer acting on his own authority
attempted to solict Edmond H.Smith IV,C.E.O. and managing director
of Top Catastrophe /C.S.P.,Through extortion and black-mail for A
EMPLOIED POSITION IN THE INSURANCE CATASTROPHE CORPORATION,when his
advances were refused he became visably enraged and made threats with
the intent to injure,and oppress,in a further attempt to extort or
coerce monetary gain.for himself.Done in A effort to influence the
activities of A business engaged in insurance whose activities affect
interstate commerce.in violation of Title 18,United States Code § ,
Section 1512 (b) (1).

## Racketeering Act Four

Between October and November 2005, St.Paul,Travelers./N.C.A./IC.S./
Failed to make (1st) First pay period after recieving data,for filing
"RESERVES" to collect re-insurance policy amounts for the claims.
F`raudently claiming they did not recieve data.In violation of Title
18 United States Code(FRAUD BY WIRE),§ 1033(a) (1)(DECEPTIVE STATEMENT
/REPORT BY INSURANCE AGENT),§ 1033(c) (1)(KNOWINGLY MAKEING FALSE STATE-
MENT/REPORT BY INSURANCE AGENT).

## Racketeering Act Five

On or about October and November 2005,St.Paul Travelers /N.C.A./
I.C.S./enacts scheme to impede and or sabotage the claims process,in
order to delay indefinently the settlement and payment of the claims.
This  pre-calculated action was done to keep the now collected "RE-IN-
SURANCE POLICY"funds in corporate coffers by frauduently witholding
payment for purposes of corporate and persoel gains,in violation of
Title 18,United States Code §, Section 1512 (b) (1).

## Racketeering Act Six

Between October and November 2005,St.Paul Travelers/N.C.A./I.C.S./
Failed to pay or make (2nd)second, (3rd)third,pay periods,

Reserved Pending
Act Six Continued

Claiming there data transference system had crashed and blown up?
Ovuskateing there contractural obligations,and to purposely culture
A enviroment of flustration and discontent too take advantage of in
the scheme to hi-jack the claims ajusting process and breach/sabotage
Top Catastrophe/C.S.P..In violation of Title 18 § 241 U.S.C. and others.

### Racketeering Act Seven
   During October and November 2005 ,St.Paul Travelers/N.C.A./I.C.S/
After multiple verifications that all current ajustment,and billing
data had been recieved;after being sent certified delivery by U.P.S.
and Airbourn Express,(St.Paul TRAV.,NCA/ICS) failed to pay back,or
current,billings;and fullfill pre-established contractural obligations
of (4th) & (5th) pay periods, In violation of Title 18 § 241 United
States Code and others.

### Racketeering Act Eight
   During October and November 2005,St.Paul,Travelers/N.C.A./I.C.S./
Devise scheme to acess Top Catastrophe Team Svs./C.S.P. confidential
corporate employment data,and confidential employment E-Mail/contact
information for the expressed criminal purposes of A  Crimanal Racke-
teering Conspiracy.In violation of Title 18 §,United States Code,
Section 1512 (b) (1), and others.

### Racketeering Act Nine
   On and during October and November 2005,St.Paul,Travelers/N.C.A./
I.C.S./ act on scheme ;makeing prohibited unethical contacts to TCTS/
CSP,AJUSTERS,and coerceing them to participate in there (R.I.C.O) co-
nspiracy in attending pre-scheduled clandestine meetings in order to
implement there criminal scheme in breach of state and federal common
law torts and pre- established contractural,non-copetes,and employment
confidentiality aggreements.In violation of Title 18,United States
Code,Section 1512 (b)(1),and others.

Racketeering Act Ten

On or about October 13, 2005, upon signing a proposed contract submitted to National Claims Adkusters, LLC, and Integrated Claims Services, Philip Coggin, an person convicted of a felony, and thus prohibited by law from being involved in the business of insurance,

fraudulently represented himself to be the Vice-President of Top Catastrophe Team Services and Claims Service Provider, Inc., and thereby engaged in misleading conduct towards officers and agents, Jeff Schmitt, Bob Steller, Mark Lozer, Robert Barnett, and others, of St. Paul Travelers Co., Inc., Integrated Claims Services, National Claims Adjusters, with intent to influence, delay, or prevent their    testimony which was likely to be used in an official proceeding before a judge or court of the United States, namely the United States District Court for the Eastern District of Louisiana, a proceeding before a Federal Government agency which is authorized by law, or a proceeding involving the business or insurance whose activities affect interstate commerce before a insurance regulatory official or agency or agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(1).

17

Racketeering Act Eleven

On or about October 25, 2005, Mark Lozer, Robert Barnett, Bob Steller, and others, acting individually and jointly, as an agent or agency of St. Paul Travelers, Co., Inc., Integrated Claims Solutions, LLC, National Claims Adjusters, unlawfully, knowingly, and willfully did transmit or cause to be transmitted by wire communication, that is, electronic mail and computer transmission, affecting interstate commerce, confidential information of Top Catastrophe Team Services and Claims Services Provider, Inc., as part of a scheme to obtain money by false and fraudulent pretenses and representations and for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1343.

Racketeering Act Twelve

On or about October 26, 2005, Bob Steller, an agent of St. Paul Travelers Co., Integrated Claims Solutions, LLC, and National Claims Adjusters, unlawfully, knowingly, and willfully did transmit by wire communication, that is electronic mail and computer transmission, in or affecting interstate commerce, information to Robert Barnett regarding promises made by Linda Swope as part of a scheme for obtaining money by means of false or fraudulent pretenses, representations, and for the purpose of executing such scheme, in violation of Title 18 United States Code, Section 1343.

Racketeering Act Thirteen

On or about October 26, 2005, Bob Steller, an agent of St. Paul Travelers Co., Integrated Claims Solutions, LLC, and National Claims Adjusters, unlawfully, knowingly, and willfully, did corruptly persuade Robert Barnett and others to engage in misleading conduct toward Linda Swope and others, by and through promises of money and other financial benefits, with intent to influence or prevent the testimony of Linda Swope and others likely to be used in a proceeding before a judge or court of the United States, a proceeding before a Federal Government agency which is authorized by law; or a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(1).

19

Racketeering Act Fourteen

On or about October 26, 2005, Bob Steller, an agent of St. Paul Travelers Co., Integrated Claims Solutions, LLC, and National Claims Adjusters, unlawfully, knowingly, and willfully did engage in misleading conduct toward Linda Swope, by and through promises of money and other financial benefits, and induce Linda Swope to alter, destroy, mutilate, or conceal the files and records of certain insurance transactions which were the property of Claims Service Provider, Inc., and Top Catastrophe Team Services, with intent to impair the availability of the said files and records likely to be used in a proceeding before a judge or court of the United States, a proceeding before a Federal Government agency which is authorized by law, or a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activites affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(2)(B).

Racketeering Act Fifteen

On or about October 26, 2005, Bob Steller, acting individually and as an agent of St. Paul Travelers Co., Integrated Claims Solutions, LLC, and National Claims Adjusters, unlawfully, knowingly, and willfully did engage in misleading conduct toward Linda Swope, by and through promises of money and other financial benefits, and cause or induce Linda Swope and others to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission of a Federal offense, to-wit:

Beginning on or about September 10, 2005, and continuing up to February 10, 2006, Bob Steller, Mark Lozer, Robert Barnett, and others, acting as, or being an officer, director, agent, or employee of St. Paul Travelers Co., Inc. Integrated Claims Solutions, LLC, and National Claims Adjusters, and engaged in the business of insurance whose activities affect interstate commerce, unlawfully, knowingly, and willfully misappropriated and purloined moneys and funds owed to Top Catastrophe Team Services, Claims Service Provider, Inc., Edmond H. Smith IV, and others for payment of services rendered and required by the terms of the contract between the plaintiff and the defendants dated August 1, 2005, and signed by Mark Lozer on September 21, 2005, and by the terms of the contract signed by Jeff Schmitt, in an amount in excess of two hundred million dollars ($200,000,000.00), in violation of Title 18, United States Code, Section 1033(b)(1), all in violation of Title 18, United States Code, Section 1512(b)(3).

### Racketeering Act Sixteen

On or about November 2, 2005, Bob Steller, Mark Lozer, Robert Barnett, and others, acting as, or being, an officer, director, agent, or employee of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, individually and jointly, corruptly persuaded Jeff Schmitt and Philip Coggin, with intent to cause or induce Jeff Schmitt and Philip Coggin, to alter the terms of the contract signed on or about August 1, 2005, by Edmond H. Smith IV, as the President, and on behalf of Top Catastrophe Team Servcies and Claims Service Provider, and signed on September 21, 2005, by Mark Lozer on behalf of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims

Adjusters, when:

On or about November 2, 2005, without the authority, consent, and knowledge of Edmond H. Smith IV, the President of Top Catastrophe Team Service and Claims Service Provider, Jeff Schmitt signed a second contract, which had been fraudulently signed, without authority, by Philip Coggin on or about October 13, 2005, and Jeff Schmitt added a clause requiring that any controversy over any matter of the fees and payment due to Top Catastrophe Team Service and Claims Service Provider would be determined in the venue of Indiana, and not in the venue of Louisiana, with the intent to obstruct the administration of justice in Louisiana and in the proceedings of the Federal courts within the Eastern District of Louisiana, in violation of Title 18, United States Code, 1512(b)(3).

Racketeering Act Seventeen

On or about            2005, Philip Coggin attempted to corruptly persuade, or did corruptly persuade, Linda Swope, Leanna Carpenter, Rick Clarke, Terry Bradley, Ben Felts, Shaw Gouins, Richard Blake, Max Johnson, and others, in a meeting at the Royal Orleans Raddison hotel, New Orleans, Louisiana, to breach their respective employment contracts, each, with Top Catastrophe Team Services and Claims Service Provider, and to withhold and destroy records regarding claims which they, each, had processed under the said contract, knowing that a reasonable likelihood existed that the said records would be the subject matter of controversy before an official Federal proceeding, including but not limited to the United States District Court for the Eastern District of Louisiana, and judge thereof, a Federal Government agency which is authorized by law, or involving the business of insurance whose activities

22

affect interstate commerce before an insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce, and with intent to impair the integrity of such information for use in the said official proceedings, in violation of Title 18, United States Code, Section 1512(b)(2)(A) & (B).

Racketeering Act Eighteen

On or about November 7, 2005, Linda Swope intending to devise a scheme for obtaining money from St. Paul-Travelers Co., Inc., Integrated Claims, LLC, National Claims Adjusters, Bod Steller, Mark Lozer, Robert Barnett, and others, by means of fraudulent pretenses and representations, did transmit or cause to be transmitted by wire communication, that is electronic computer transmission, in interstate commerce, writings and signals containing confidential information, the property of which belonged to Top Catastrophe Team Services and Claims Services Provider, and Edmond H. Smith IV, President thereof, which was then received from Linda Swope by Mark Lozer and other employees and officers of St. Paul Travelers Co., Inc., Integrated Claims Services, and National Claims Service to schedule a meeting with approximately seventy five employees and adjusters of Top Catastrophe Team Services and Claims Service Provider, with the further intent to embezzel, convert, and purlion moneys and funds thereof, in violation of Title 18, United States Code, Section 1343.

Racketeering Act Nineteen

On or about November 7, 2005, Mark Lozer and others, individually and jointly, acting as an agent of St. Paul Travelers Co., Inc., Integrated Claims solutions, LLC, and National Claims Adjusters, did corruptly persuade approximately seventy five employees and adjusters of Top Catastrophe Team Services and Claims Service Provider to attend a clandestine meeting at a secret location and private residence located in New Orleans, Louisiana, and did corruptly persuade the said employees and adjusters, each, to breach their respective contract with Top Catastrophe Team Services and Claims Service Provider and to withhold, destroy, and conceal information regarding the adjustment of insurance claims which had been processed by them, under the terms of the said contract, for adjustment and payment by St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, with intent to impair the integrity of the said information and its availability for use in an official proceeding of the United States, knowing there existed a reasonable likelihood of the use of the said information in an official proceeding of the United States before a law enforcement officer of the United States, a judge or court of the United States, generally, or specifically before a judge and the United States District Court for the Eastern District of Louisiana, and a proceeding involving the business of insurance whose activities affect interstate commerce before an insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(2)(B).

Racketeering Act Twenty

On or about November 9, 2005, Rick Clarke, Linda Swope, Leanna Carpenter, Mark Lozer, Bob Barnett, and others, individually and jointly on behalf of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, held a clandestine meeting at a private residence, located in New Orleans, Louisiana, and then and there attempted to corruptly persuade, by making promises of employment and payment of moneys and funds to, approximately seventy five employees and adjusters of Top Catastrophe Team Services and Claims Service Provider, and did so persuade part of them, with intent to cause or induce each of them, to withhold, destroy, and conceal information, documents, and other information which had been produced by them for the adjustment and settlement of claims to be presented to St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, regarding damage caused by hurricanes Katrina and Rita, knowing that a reasonable likelihood existed that the said claims information to be withheld, destroyed, and concealed would be the subject matter of proceedings before a judge of the United States District Court for the Eastern District of Louisiana, a Federal Government agency which is authorized by law, or a proceeding involving the business of insurance whose activities affect interstate commerce before an insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(2)(A) & (B).

Racketeering Act Twenty One

On or about November 16, 2005, Mark Lozer and others, indivi-
dually and jointly on behalf of St. Paul Travelers Co., Inc.,
Integrated Solutions, LLC, and National Claims Adjusters, devised
a scheme for obtaining moneys by means of false pretenses, repre-
sentations, and promises of employment, and did so transmit such
scheme by means of wire communications,

to Edmond H. Smith IV, Top Catastrophe Team Services and Claims
Servicer Provider, and fraudulently requested Edmond H. Smith IV
and others employees and adjusters thereof travel to Miami, Florida,
as a pretext to lure Edmond H. Smith IV and such employees and
adjusters to Florida and away from New Orleans, Louisiana, to
enable Mark Lozer, Bob Barnett, Linda Swope, Leanna Cartenter,
Rick Clarke, and others, individually and jointly, to burglarize
the offices of Top Catastrophe Team Services and Claims Services
Provider, located in New Orleans, Louisiana, and purloin, conceal,
and destroy the records and files containing information regarding
adjustment of claims processed and complied by employees and adjusters
thereof which had been presented to St. Paul Travelers Co., Inc.,
Integrated Claims Solutions, LLC, and National Claims Adjusters for payment
thereof, in violation of Title 18, United States Code, Section 1343.

27

Racketeering Act Twenty Two

On or about November 16, 2005, Mark Lozer, Bob Barnett, Linda Swope, Leanna Carpenter, Rick Clarke, and others, individually and jointly, on behalf of St. Paul Travelers Co., Inc., Integrate Claims Services, and National Claims Adjusters, engaged in misleading conduct towards Edmond H. Smith IV, falsely and fraudulently requested him and other adjusters travel from New Orleans, Louisiana, to Miami, Florida, to perform the adjustment of insurance claims, for the deceitful purpose of luring Edmond H. Smith IV and others out of Louisiana to Florida, and thereby hindered, delayed, or prevented his communication to a law enforcement officer or judge of the United States of information regarding the same relating to the commission or possible commission of a Federal offense, particularly the Federal offense of wire or mail fraud, or both, a violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Twenty Three

On or about November 17, 2005, Mark Lozer and others, individually and jointly, on behalf of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, drafted a letter containing false, incomplete, and fraudulent pretenses and representations regarding the cause of termination of the contract entered into by said persons and Edmond H. Smith IV, Top Catastrophe Team Services and Claims Service Provider on or about August 1 and September 21, 2005, while withholding and con-cealing information from the said letter regarding a continuing scheme amongst Mark Lozer, Robert Barnett, Bob Steller, Rick Clarke, Linda Swope, Leanna Carpenter, and others to burglarize the office and business of Top Catartrophe Team Services and Claims Service Provider, located at 708 Carrollton Avenue, Matairie, Louisiana, and purlion, destroy, and conceal the files, records and information stored at the said office regarding the adjustment of insurance claims processed and compiled by the employees and adjusters thereof, and Mark Lozer and others deposited, or caused the said letter to be deposited, in the Postal Service, knowing the said letter would not be delivered to Edmond H. Smith IV and the said offices, until after the said burglary and theft of the said files, records, and information had occurred, with intent to lure Edmond H. Smith IV out of the New Orleans area to Florida, in violation of Title 18, United States Code, Section 1341.

Racketeering Act Twenty Four

On or about November 18, 2005, Mark Lozer, Robert Barnett, Linda Swope, Leanna Carpenter, Rick Clarke, Philip Coggin, and others corruptly endeavored to influence, impede, and obstruct the due course of the administration of justice of the Government of the United States, and did so by burglarizing the office of Top Catastrophe Team Services and Claims Services Provider, located at 708 Carrollton Avenue,          Metairie, Louisiana, and then and there did purlion, destroy, and conceal files, records, and information relating to the adjustment of insurance claims and fees due upon demand by Edmond H. Smith IV on behalf of Top Catastrophe Team Services and Claims Service Provider, knowing a reasonable likelihood existed that such files, records and information was in fact material evidence to the adjudication and determination of a Federal offense, arising from the said burglary and theft of such files, records, and information, relevant to proceedings of the United States District Court for the Eastern District of Louisiana, to proceedings before a Federal Government agency which is authorized by law, and to proceedings involving the business of insurance, particularly those to determine the business and any wrongdoing by agents and officers, Mark Lozer, Robert Barnett, Bob Steller, and others of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, whose activites affect interstate commerce before an insurance regulatory official or agency to examine the affairs of such person or persons engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Twnety Five

After being caught, by officers of the New Orleans police department and others, burglarizing the office of Top Catastrophe Team Services and Claims Services Provider and stealing files, records, and information on November 18, 2005, in furtherance of the same obstruction of the due administration of justice, Rick Clarke, Linda Swope, Leanna Carpenter, and Philip Coggin did travel to Mobile, Alabama, and during January of 2006, individually and jointly, attempt to, and did, corruptly persuade Mobile County Prosecutor John Tyson and his assistants and staff to conduct criminal proceedings, without cause or authority, against Edmond H. Smith IV, with intent to influence, delay, prevent, or oppress his ability to provide testimony and information, and knowing a reasonable likelihood existed that such testimony and information was in fact material evidence of a Federal offense, relevant to proceedings of the United States District Court for the Eastern District of Louisiana, to proceedings before a Federal Government agency which is authorized by law, and to proceedings involving the business of insurance, particularly those to determine the business and any wrongdoing by agents and officers, Mark Lozer, Robert Barnett, Bob Steller, and others of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, whose activities affect interstate commerce before an insurance regulatory official or agency to examine the affairs of such person or persons engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(1).

Racketeering Act Twenty Six

After being caught, by officers of the New Orleans police department and others, burglarizing the office of Top Catastrophe Team Servcies and Claims Services Provider and stealing files, records, and information on November 18, 2005, in furtherance of the same obstruction of the due administration of justice, Rick Clarke, Linda Swope, Leanna Carpenter, and Philip Coggin did travel to Mobile, Alabama, and during January of 2006, individually and jointly, attempt to, and did, corruptly persuade attorney at law, B.J. Lyons, whose office is located at

Mobile, Alabama, to influence, delay, prevent, or oppress the ability of Edmond H. Smith IV to provide testimony and information, knowing a reasonable likelihood existed that such testimony and information was in fact material evidence of a Federal offense, relevant to proceedings of the United States District Court for the Eastern District of Louisiana, to proceedings before a Federal Government agency which is authorized by law, and to proceedings involving the business of insurance, particularly those to determine the business and any wrongdoing by agents and officers, Mark Lozer, Robert Barnett, Bob Steller, and others of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, and National Claims Adjusters, whose activities affect interstate commerce before an insurance regulatory official or agency to examine the affairs of such person or persons engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(1).

32

Racketeering Act Twenty Seven

During January of 2006, B.J. Lyons did cause or induce and direct Noel Mozer to, and Noel Mozer did, travel from Mobile, Alabama, to the Oschner Hospital, located at New Orleans, Louisiana, and demand and attempt to extort eight hundred thousand dollars ($800,000.00) from Edmond H. Smith IV, Top Catastrophe Team Services and Claims Service Provider, by and through making threats of physical force, violence, and false imprisonment against Edmond H. Smith IV, in or affecting interstate commerce; while Noel Mozer did also state that he had been sent by B.J. Lyons to collect the eight hundred thousand dollars as payment to Mobile County Prosecutor John Tyson, Mobile County Sheriff Sam Cochran, his deputies, and others in exchange for protection from them, all in violation of Title 18, United States Code, Section 1951.

33

Reserved Additional
Racketeering Act

During January, Febuary,and March 2006, B.J.Lyon's,Sam Cochran
the new(Mobile County Sheriff), CONTACTED Coastal Auction Co. in
regaurds to four (4) pieces of property they had advertised for
sale,belonging to the E.H.Smith family.They then in A pre-calculated
effort to prevent the sale of these properties;thereby enduced,and
coerced by threat,the rightful sale of said properties.Causeing
injury to the E.H.Smith family finances,thereby impedeing,influenceing,
and obstructing the Due Administration of Justice in multiple ongoing
preceedings includeing but not limited to obstructing justice in the
efforts to advance there ongoing criminal (R.I.C.O.) conspiracy and
the pending matters of Claims Services Providers,et al, V. the St. Paul,
Travelers Co,INC,Intergrated Claims Solutions,LLC,National Claims Adm-
inistators,case No,06-2475 (F.D. La) and Lexington Insurance Co. V.
Edmond H.Smith III,case No. 07-o323-WS-C,and did so knowing or should
of known that it would likely end up in front of A United States Distict
Court and further endeavored to conciel these actions from Edmond H.
Smith IV in efforting to prevent communication of such unlawful conduct
to A Federal law enforcement officer or judge of the United States of
information relating to the commision of A federal offense arising from
racketeering acts,all in violation of Title 18.§ United States Code,
Section 1512 (b)(3).

‹u⁄⁄k
34 ½-

Addition Reserved

Racketeering Act

On or about January or Febuary 2006, acting on the expressed direction of St.Paul,Travelers,/N.C.A./I.C.S./and McFadden Lyon's and Rouse Law Firm/Lyon's Exit REALTY;B.J.lyons,and Noel Mozer,; criminaly coerced,and enduced,Evan J.Wolfe to sabotage the (N.F.I.P.) National Flood Insurance Policy Elevation Certificate,potion of the 3900 Windsor Rd. properties flood insuance.This was done in A direct pre-calculated effort to prevent the rightfull colection of post Katrina/Rita Huricane funds,for the stacked (N.F.I.P.) Policies,purchased by Edmond H.Smith IV for the Great Southern Outdoors Foundation to repair hurricane flood damages,for the

unlawfull purpose of advanceing there ongoing criminal (R.I.C.O.) conspiracy,thereby impedeing,influenceing,or obstructing the Due Administration of Justice in the pending matters of Claims Services Providers,et al, V. the St.Paul,Travelers Co,INC,Inter-grated Claims Solutions,LLC,National Claims Administrators,case No,06-2475 (F.D. La) and Lexington Insurance Co. V. Evan J.Wolfe, et.AL case No, 07-0322-WS-C (S.D.Ala) AND Lexington Insurance Co. V. Edmond H.Smith IV,and did so knowing or should of known that it would likely end up in front of A United States District Court and further endeavored to conciel these actions from Edmond H.Smith IV in efforting to prevent the communication of such unlawful conduct to A Federal law enforcement officer or judge of the United States of information relating to the commision of A federal offense arising from racketeering acts,all in violation of Title 18,United States Code,Section 1512 (b)(3).

Racketeering Act Twenty Eight

During January of 2006, John Tyson, B.J. Lyons, and others corruptly endeavored to, and did, cause or induce,
to make a false police report to officers of Mobile City police falsely stating that Edmond H. Smith IV had assaulted her at a Radio Shack store, located at                         , Mobile, Alabama, as a pretext to cause Edmond H. Smith IV to be falsely arrested and detained in the Mobile Metro jail, for the unlawful purpose of hindering, delaying, or preventing him from intervening in the combined theft of one Gulf Stream, Class A Motor Home, 2005 Model, Series No. 58-5-A-8386CRE-7138, Vehicle No. 4UZAAHDC04CN33938, and interstate transportation of the said stolen vehicle by Philip Coggin from Alabama to Colorado, a violation of Title 18, United States Code, Section 2312, and for the further unlawful purpose of hindering, delaying, or preventing Edmond H. Smith IV from report- ing or communicating information regarding the said theft and interstate transportation of the said motor home to a Federal law enforcement officer or judge of the United States, in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Twenty Nine

In furtherance of racketeering acts one through twenty eight as described and referred to herein, on or about January 30, 2006, Philip Coggin engaged in misleading conduct towards Lauren E. Davis and Domicka Dickens, by falsely stating that Edmond H. Smith IV had given Philip Coggin permission to take the motor home, that is one Gulf Stream, Class A Motor Home, 2005 model, Series No. 58-5-A-8386CRE-7138, Vehicle No. 4UZAAHDC04CN33938, from the residence of 3900 Windsor Rd., Fowl River, Alabama, and Philip Coggin did, with intent to, purlion and transport the said vehicle across state lines from Alabama to Colorado, in violation of Title 18, United States Code, Section 2312, and unlawfully, knowingly, and willfully sold the said stolen motor home, with the intent to, and did, hinder, delay, and prevent Edmond H. Smith IV from reporting or communication the said Federal offense to Federal law enforcement officers and to a judge of the United States, in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Thirty

In furtherance of racketeering acts one through twenty nine, on or about February 14, 2006, Philip Coggin sent an electronic transmission, by and through computer, from his email address, Catastropheclaim@aol.com, at 6:46 p.m., to attorney at law, John Denenea, Jr., at his email address, JDenenea@Midcitylaw.com, in which Philip Coggin admitted to taking the motor home, one Gulf Stream, Class A Motor Home, 2005 model, Series No. 58-5-A-8386CRE-7138, Vehicle No. 4UZAAHDC04CN33938, from 3900 Windsor Rd., Fowl River, Alabama, while Edmond H. Smith IV was being falsely detained in the Mobile Metro jail, and in which email Philip Coggin further falsely stated, to-wit:

"... I took the Diesel Pusher and sold it to Cuban Friend's of mine, that were in the Castro Regime, thay have had it moved to South America, that check will be credited to Eddie Smiths personal debt to me on a person/corporate pro ratio,"

and thereby unlawfully, knowingly, willfully, and fraudulently made such representations for the objective and purpose of concealing the fact that the said stolen motor home had been sold in Colorado, and was still in the United States, in violation of Title 18, United States Code, Section 1343.

Racketeering Act Thirty One

On or about June 22, 2006, B.J. Lyons,             Armbrecht, Mobile County Sheriff, Sam Cochran, and others, individually and jointly, without authority, did, by false and fraudulent assertion of state law, engage in misleading conduct toward, and corruptly persuade, Alden Thornton, Neal Foster, Tim Burger, and others, by the use of armed force and violence, to burglarize the residence of 3900 Windsor Rd., Fowl River, Alabama, and purloin one Fountain, 38 Sport Fish, boat, 2005 model,  Serial No. FG08C111J405, thirty eight foot in length, with four Mercury outboard motors, and other equipment, a Federally licensed commercial fishing vessel, in or affecting interstate or foreign commerce, all with intent to hinder, delay, or prevent the communication of such unlawful conduct to a Federal law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense, arising from racketeering acts one through thirty as set forth herein, all in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Thirty Three

On or about June 25, 2006, Alden Thornton, Neal Foster, Tim Burger, and others, acting on behalf and under the direction and control of B.J. Lyons, Wiliam Armbrech., New Mobile County Sheriff Sam Cochran, did burglarize the residence of 3900 Windsor Rd., Fowl River, Alabama, without authority, armed with firearms and acting with the threat of force and violence, and attempt the act of armed robbery and theft of one Fountain, 38 Sport Fish, boat, thirty eight foot in length, Serial No. FG08C111J405, and equipment, in or affecting interstate or foreign commerce, in violation of Title 18, United States Code, Section 1951.

Racketeering Act Thirty Four

On or about June 26, 2006, Alden Thornton, Neal Foster, Tim Burger, and others, did, unlawfully, knowingly, and willfully; by the threat and use of firearms and a motor vehicle, commit the act of armed robbery and inflict great bodily harm against Edmond H. Smith IV, and purlion one Fountain, 38 Sport Fish, boat, thirty eight foot in length, and other equipment therein and trailer, a Federally licensed commercial fishing vessel, while such vessel was then engaged, in or affecting interstate or foreign commerce, at a commercial facility, that is the Fowl River Marina, located at Dauphin Island Pkwy S,    Mobile, Alabama, the armed robbery of which violated Title 18, United States Code, Section 1951.

Additional Reserved
Racketeering Act

On June 27,2006 the first articles cronicleing the prior events of racketeering acts thirty one thrue thirty four as described and reffered to herein, were printed,and distributed,in the Mobile Press Register authored by admitted "PARTNER"and co-conspiritor Eddie Curran, begginning the pre-planned public slander with malice,liableous,smear campaign endeavoring to create a cover story and cover up,of the actual truthful events,and unlawful activities,and motivations behind them. This was done to purposely with intent,influence public oppinion thrue false,misleading,and slanderous reporting of the events designed to create public outrage,and give cover to those involved in the crimes perpertrated against Edmond H.Smith IV his properties and family as well as lay the foundation thrue fraudulent "SPIN",for future forth-coming unlawful prosecutions,all for the purpose of advanceing there "ongoing' (R.I.C.O.) conspiacy. By these acts corruptly misleading, withholding, influenceing,impeding and oppressing accurate information regaurding the same,which conduct did cause injury and severe bodily harm,in makeing false and misleading statements of fact and law,they wrongfully and fraudulently caused A enviroment supporting others to commit further offenses.All done with the pre-calculated intent to influence,delay,or prevent the testimony to A federal law enforcement officer which was likely to be used in an official proceeding befoe A judge or court of the United States,namely the United States District Court for the Eastern District of Louisiana,or A proceedind before A Goverment agency which is authorized by law,over activities that affect interstate commerce,in violation of Title 18,§ United States Code, Section 1512 (b)(1),and others.

Additional Reserved
Racketeering Act

On or about August 1,2006,in furtherance of racketeering acts one thrue thirty one  Mobile County Judge Sarah Stewart,perpertrated fraud  Against the Due Administration of Justice,in knowingly, and willfully convening A fraudulent  unjuristic hearing,under the offical color of law,in Mobile County Circuit Court.After being wittnessed that same day in A pre-arranged phone conversation discussing the desied outcome of those same proceedings,at the offices of Lyon's Mcfadden and Rouse,with B.J.Lyons (BEING THE COURT ORDERING THE CONSFICATION AND SHERRIFFS SALE OF "THE HOOTERS BOAT" SERIAL No. FG08C11J405,AND EQUIPMENT IN A ACT OF "TYRRANY"),at the bequest of B.J. Lyon's and Sam Cochran.for there own personel gains and in furtherence of there same ongoing racketeering(R.I.C.O.) cons-piracy and agenda.All done without any legal authority,and did engage in illegal and misleading conduct toward Edmond H.Smith IV, the Smith family,and buisness entities with the intent to influence delay,and prevent the testimony of the foregoing events and scheme of the conspiracy in the proceedings of the United States District Court for the Eastern District of Louisiana and in the matter of Claims Service Provider,Inc., V. the St.Paul Travelers Co.,et al, Case No. 06-2475,all in violation of Title 18,§ United States Code Section 1512'(b)(1) and others.


P.S.: During (alledged)Hearing judge Stewart confiscated vessel Title that clearly evidenced the ownership of "the Hooters Boat",SERIAL No. FG08C111J405 to be in the name of "The Great Sothern Outdoors F&I", A Federaly and State licensed buisness entity with no judgements agaist it of any kind,then she made this threat,"I AM GOING TO TAKE THIS TO JUDGE GRADICK,AND WE WILL SEE WHAT WE CAN DO ABOUT THIS"with the intent to cause fear through threats of corrupt goverment power "TYRRANY"!!!!!

Racketeering Act Thirty Five

In furtherance of racketeering acts one through thirty four as described and referred to herein, on or about August 21, 2006, Mobile County Circuit judge Charles Graddick did; knowing no formal adjudication of guilt existed against Edmond H. Smith IV in the matter of City of Mobile v. Smith IV, MC-04-5762 (Mobile Municipal Ct. 2004), unlawfully, knowingly, and willfully order Edmond H. Smith IV to serve an illegal sentence of eighty eight days home confinement and imposed other sanctions against him in the matter of State v. Edmond H. Smith IV, CC-04-4167, without authority, and did thereby engage in misleading conduct toward Edmond H. Smith IV, with intent to influence, delay, and prevent the testimony of Edmond H. Smith IV and others in the proceedings of the United States District Court for the Eastern District of Louisiana and and in the matter of Claims Service Provider, Inc., et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475, all in violation of Title 18, United States Code, Section 1512(b)(1).

Racketeering Act Thirty Six

On or about September 28, 2006, 4:41 p.m., Philip Coggin, having devised a scheme, with intent to defraud and extort sixty thousand dollars ($60,000.00) from Edmond H. Smith IV, Top Catastrophe Team Services and Claims Service Provider, did, by means of false or fraudulent pretenses, representations, and demands, transmit, by means of wire communication, that is an electronic computer transmission, from Catastropheclaim@aol.com to Mike Parker at parkerwarehouse@cox.net, demand that Edmond H. Smith IV pay Philip Coggin the said sixty thousand dollars ($60,000.00) in exchange for Philip Coggin to return the motor home, one Gulf Stream, Class A Motor Home, 2005 model, Series No. 58-5-A-8386CRE-7138, which was stolen by Philip Coggin and unlawfully transported from Mobile, Alabama, to Colorado in January of 2006, as described and referred to in racketeering act twenty nine herein, and sold, without authority, in violation of Title 18, United States Code, Sections 1512(b)(3) and 2312, and no longer in the possession of Philip Coggin, contrary to his false and fraudulent promise to return the same in exchange for the said sixty thousand dollars ($60,000.00), all in violation of Title 18, United States Code, Section 1343.

45

Racketeering Act Thirty Seven

Between September of 2006 and October of 2006, Bob Steller, Robert Barnett, Mark Lozer, Jeff Schmitt, Philip Coggin, Linda Swope, Leanna Carpenter, Rick Clarke, John Tyson, B.J. Lyons, Noel Mozer, Sam Cochran, Charles Graddick, and others, did corruptly endeavor to, and did unlawfully, knowingly, and willfully, influence and impede an officer of the United States District Court for the Eastern District of Louisiana, Matthew A. Woolf, in the discharge of his duties, on behalf of St. Paul Travelers Co., Inc., in the proceedings of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D. La. 2006), by and through various acts of obstruction of the due administration of justice, including but not limited to the said misleading, oppressive, and corrupt conduct described and referred to in racketeering acts one through thirty six herein, by further corruptly withholding, influencing, impeding, and oppressing information regarding the same, which conduct did cause the said officer of the District Court, Matthew A. Woolf, to withhold such from the said District Court, and to make false and misleading statements of fact and law in a motion to dismiss and supporting memorandum, filed on or about October 16, 2006, in the proceedings thereof, and did wrongfully and fraudulently cause the said case to be dismissed, on or about October 18, 2006, in violation of Title 18, United States Code, Section 1503.

46

Racketeering Act Thirty Eight

In furtherance of racketeering act thirty seven herein, between April 1 and May 8, 2007, Charles Graddick, B.J. Lyons, D. Brian Murphy, James W. Lampkin II, Evan J. Wolfe, and one or more unknown named John Doe agent of Lexington Insurance Company, and others did corruptly endeavor to influence, impede, and obstruct the due administration of justice of the United States District Court for the Southern District of Alabama in the matter of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C , and did so, directly and indirectly, by participation in a scheme to file a false complaint, filed in the said case and proceedings thereof, falsely and fraudulently alleging that Edmond H. Smith IV, alone or with Evan Wolfe, misrepresented in an application for insurance that Wolfe owned the property, located at 3900 Windsor Place, Fowl River, Alabama, that Smith IV knew or should have known the representation was false, that Smith IV intended Lexington Insurance Company and its said John Doe agent to reply on the said misrepresentation in issuing an insurance policy to protect the said property from wind and flood damage, that Smith IV had misrepresented in the said insurance policy that Wolfe owned the said property in order to shield the property from a large judgment against Smith IV (a bogus default judgment obtained by B.J. Lyons against Smith IV, while he was out of Alabama, without notice of the civil action), and that Lexington Insurance Company was damaged by the said misrepresentation, and would not have issued the said policy, but for the said misrepresentations, as set forth in the said complaint, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Thirty Nine

In furtherance of racketeering acts thirty seven and thirty eight herein, between April 1 and May 8, 2007, Charles Graddick, B.J. Lyons, D. Brian Murphy, James W. Lampkin II, Evan J. Wolfe, and one or more unknown named John Doe agent of Lexington Insurance Company, and others did corruptly endeavor to influence, impede, and obstruct the due administration of justice of the United States District Court for the Southern District of Alabama in the matter of Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, and did so, directly and indirectly, by participation in a scheme to file a false complaint, filed in the said case and proceedings thereof, falsely and fraudulently alleging that Edmond H. Smith III had made misrepresentations and engaged in fraudulent conduct when making an insurance claim pursuant to insurance policy LE 061411601, when in fact no such misrepresentations and fraudulent conduct had ever occurred, and the said false complaint was filed, with intent to influence, impede, and obstruct the due administration of justice by Charles Graddick ordering Edmond H. Smith IV detained in the Mobile Metro Jail on false charges to oppress in part his ability to retain counsel to combat the said false and fraudulent complaint, knowing that his father Edmond H. Smith III was unable to due so due to illness and his elderly condition, all with the corrupt intent to erect a false and fraudulent default judgment against him and his property, located at 3721 Caulderwood Dr., Mobile, Alabama, in violation of Title 18, United States Code, Section 1503.

48

Racketeering Act Forty

On or about April 4, 2007, Noel Mozer and Evan J. Wolfe, acting as agents of B.J. Lyons, B.J. Lyons Realty Co., a business engaged in or affecting interstate commerce, did hold themselves out as acting under the color of official right, by and through the authority of Mobile County Sheriff Sam Cochran and Mobile County Circuit Judge Charles Graddick, and demand and attempt to extort one million, four hundred and sixty seven thousand, and one hundred, dollars ($1,467,100.00) from Edmond H. Smith IV in exchange for protection from arbitrary and oppressive governmental action against him and the property occupied by Great Southern Outdoors Foundation and Institute and located at 3900 Windsor Rd., Fowl River, Alabama, a foundation engaged in or affecting interstate commerce, in violation of Title 18, United States Code, Section 1951.

Racketeering Act Forty One

On or about April 25, 2007, Mobile County Circuit Judge
Charles Graddick did, knowing no formal adjudication of guilt
existed against Edmond H. Smith IV in the matter of the City of
Mobile v. Smith IV, Case No. MC-04-5762 (Mobile Municipal Ct. 2004),
unlawfully, knowingly, and willfully order, without authority, that
Edmond H. Smith IV be detained in the custody of Mobile County Sher-
iff Sam Cochran and his deputies in the Mobile County jail, without
bail, in the matter of State v. Edmond H. Smith IV, Case Nos.
CC-04-4167 and CC-07-3126 (Mobile Co. Cir. Ct.), without authority,
and did thereby corruptly engage in misleading and oppressive
conduct toward Edmond H. Smith IV, with intent to hinder, delay,
and prevent him from communicating to a law enforcement officer of
the United States or a judge of the United States, generally, and
specifically to a judge of the United States District Court for
the Southern District of Indiana and to the Honorable Lance M.
Africk, United States District Judge for the Eastern District of
Louisiana, the facts, information, and racketeering acts one
through thirty seven as set forth herein, in violation of Title
18, United States Code, Section 1512(b)(3).

Racketeering Act Forty Two

On or about April 26, 2007, Noel Mozer and Evan J. Wolfe, acting as agents of B.J. Lyons, B.J. Lyons Realty Co., a business engaged in or affecting interstate commerce, did hold themselves out as acting under the color of official right, by and through the authority of Mobile County Sheriff Sam Cochran and Mobile County Circuit Judge Charles Graddick, and threaten to file a malicious and frivolous lawsuit against Mike Parker in order to prevent him from paying off the mortgage held by Washington Mutual Mortgage on property located at 3900 Windsor Rd., Fowl River, Alabama, and occupied by Great Southern Outdoors Foundation and Institute, a foundation engaged in or affecting interstate commerce, with intent to influence, impede and obstruct the due administration of justice in the matter of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D.Ala.), in violation of Title 18, United States Code, Section 1951.

Racketeering Act Forty Three

On or about April 26, 2007, Noel Mozer and Evan J. Wolfe, acting as agents of B.J. Lyons Realty Co., and under the direction and counsel of B.J. Lyons, did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of Lexington Insurance Company v. **Evan J. Wolfe**, et al., Case No. 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, within the Southern District of Alabama. and Claims Service Provider. et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475, within the Eastern District of Louisiana, by and through threatening to file a malicious and frivolous lawsuit against Mike Parker in order to prevent him from paying off the mortgage held by Washington Mutual Mortgage on property located at 3900 Windsor Rd., Fowl River, Alabama, and occuppied by the Great Southern Outdoors Foundation and Institute, with intent to influence, impede and obstruct the due administration of justice in connection with the said matters and proceedings thereof, in violation of Title 18, United States Code, Section 1503.

Additional Reserved
Racketeering Act

On April 25,2007 in response to A Subpoena,to attend A Circuit Court Hearing in front of Judge Graddick,over (ALLEDGED) home confinement violation;cronicled in the Mobile Press Register articles written by Eddie Curran,admitted partner of (R.I.C.O.)conspiracy with B.J.Lyon,Noel Mozer, and (New) Sheriff Sam Cochran in affidavit's, over the since dropped,and fraudulent violations:case No. CC-07-3126, Mobile Circuit Court Judge Charles Graddick,and Court officers of Mobile County corrections (Ray Brazell,Steve Green),perpetrated Fraud Against the Due Administration of Justice and thus "TYRRANY"by convening A fraudulent,no subject matter jurisdiction,proceeding against Edmond H.Smith IV with the intent to Injure,Threaten and Intimidate to the extent of illegal imprisonment.Which occured that day,depriveing A United States citizen of the free exercise of his rights and prvaledges and documented Medical Treatments and needs;secured to him by the Constitution and law of the United States,in advancement of there ongoing racketeering(R.I.C.O.) conspiracy,thrue the "Power"and Force of goverment.During this illegal inprisonment in the Mobile Metro Jail, sheriff Sam cochran's officers were free to torment and torture Edmond H.Smith IV,and did deprive him of critical time dependant medical treatments ,for A resistant "ECOLI"infection in his left foot,that was originaly called A fraud,and later reckognized as becoming so severe that it was untreatable due to it's progression to the point of being"Termial". Edmond H.Smith was then ordered to be released for emergency medical treatment to oschner hospital,New Orleans Louisiana,but not before being threatened by Steven Green,Ray Brazell and Sam Cochran with haveing his leg to "ROT OFF UNTILL HE DIED IN THERE JAIL"if I returned alive.This deliberate deprivation of proper treatment,caused the infection in the

Additional Reserved

Racketeering Act

Continued

bone in the foot to come out of remission,and intensify to the point that it desolved,and ran out of the bursted open foot,onto the jail infirmary floor,resulting in A "CHARCOT" permanent foot disability. This also almost resulted in the loss of his life.All being done at all time knowingly ,intentionaly,and delliberately,to use the herein said goverment corrupt actions;to hinder,delay,prevent and cover-up the former crimes and goverment corruption perpetrated in act's one thrue forty four as described and referred to herein,and oppress the ability of Edmond H.Smith IV to discover and communicate information relating to the concerted attempted theft's of files,records,documents, computers,equipment,property and other evidence of the adjustment of insurance claims by Edmond H.Smith IV,Top Catastrophe Team Services, and Claims Services Provider,and relating to the racketeering act's herein,to A law enforcement officer of the United States or A judge of the United States District Court for the Eastern District of Loui-siana,or generally and specically to A judge of the United States District Court for the southern District of Indiana,with the intent to obstruct the Due Administration of Justice therein,and before the honorable Lance M.AFRICK,in the matters of Claims Services Provider,et al. V. the St. Paul Travlers Co., Inc., case No. 06-2475. In violation of his Civil Righte,Legal Rights and Title 18,§ United States Code, Section's 1512 (b)(3),1503,and numerous others,State and Common Law Statutes and Torts.

Racketeering Act Forty Four

During May of 2007, Noel Mozer and Evan J. Wolfe did corruptly endeavor to impede and obstruct the due course of the administration of justice in the matter of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, and proceedings of the United States District Court for the Southern District of Alabama, and in the Matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D.La.), by and through destruction of the mailbox and depository for the U.S. Postal Service, located at 3900 Windsor Rd., Fowl River, Alabama, with intent to impede and obstruct the flow of information, in connection with the aforesaid matters and proceedings, and delivery of mail regarding the same to Edmond H. Smith IV, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Forty Five

Between    May 20 and 22, 2007, Mobile County Circuit Judge
Charles Graddick did order that Edmond H. Smith IV be released
from custody, and that he seek medical treament outside Alabama,
upon the diagnosis of Mobile County doctors that Edmond H. Smith IV
suffered from a terminal untreatable infection in Alabama, and, upon
discovering that he was being successfully treated by doctors
outside the United States, Charles Graddick did engage in misleading
conduct toward Edmond H. Smith IV, by and through issuing a bogus
warrant for his arrest and falsely charging him with escape, with
intent to cause another person to falsely arrest and detain him,
and further hinder, delay, and prevent him from communicating to
a law enforcement officer of the United States or a judge of the
United States, generally, and specifically to a judge of the
United States District Court for the Southern District of Indiana
and to the Honorable Lance M. Africk, United States District Judge
for the Eastern District of Louisiana, the facts and information,
relating to racketeering acts one through forty, for
further proceedings in the matter of Claims Service Provider, et
al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475
(E.D. La.), and thereby did cause authorities in Costa Rica
to seize and dispose of property of Edmond H. Smith IV consisting
of one 7.3 lite Ford Excursion, Ltd. Ed., one laptop computer, personal
and insurance business records, one Otics binoculars, one Laser
range-finder and related tools, one Rolex watch, one camera, one
video-tape recorder and related equipment, one airloom firearm Collection
(Rifles & Shotguns +), and G.P.S. equipment,
in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Forty Six

During May or June of 2007, B.J. Lyons, Noel Mozer, Philip Coggins, and others did corruptly persuade and engage in misleading conduct toward Mike Parker, by and through causing or inducing him to burglarize the residence of 3900 Windsor Rd., Fowl River, Alabama, and the office located there of Top Catastrophe Team Services and Claims Service Provider, and remove numerous mounted animals, fish, and assorted collectibles, and by advising Mike Parker to do so under the pretext that the said property was to be sold at an auction, and that the removal of said property was necessary for Mike Parker to recover investment moneys, all with intent of B.J. Lyons, Noel Mozer, Philip Coggin, and others to use the said burglary by Mike Parker as a coverup to hinder, delay, prevent, or oppress the ability of Edmond H. Smith IV to discover and communicate information relating to the concerted attempted theft and theft of files, records, documents, computers, and other evidence of the adjustment of insurance claims by Edmond H. Smith IV, Top Catastrophe Team Services and Claims Service Provider and relating to the racketeering acts one through thirty nine, as described and referred to herein, to a law enforcement officer of the United States or a judge of the United States, generally, and specifically to a judge of the United States District Court for the Southern District of Indiana, and with intent to obstruct the due administration of justice therein, and before the Honorable Lance M. Africk, in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475, in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Forty Seven

During May of 2007, Mike Parker did engage in misleading conduct toward Edmond H. Smith III by stating to him that he (Mike Parker) was concerned that someone might steal one thiry eight (38) foot Fountain 2005 38 Sport Fish boat, Serial No. FG08C111J405, with four Mercury outboard motors and other equipment, from Sammy Goulsby Marine, Mobile, Alabama, where the said boat was then stored, and that he (Mike Parker) wanted to pay the repair bill and store the said boat and equipment until Edmond H. Smith IV recovered from his illness and returned home, and, upon the said representation, Mike Parker and B.J. Lyons went to Sammy Goulsby, and Mike Parker paid the repair bill, and did take possession of and transport the said boat, having a value in excess of two hundred and fifty thousand dollars ($250,000.00), from Mobile, Alabama, across state lines, to Jacksonville, Florida, knowing the said boat had been obtained by false and fraudulent pretenses, and did sell the said boat, motors, and equipment, without the knowledge and consent of the owner, in violation of Title 18, United States Code, Section 2314, with intent to hinder and delay the communication of information regarding the said Federal offense to a law enforcement officer of the United States or a judge of the United States District Court for the Southern District of Alabama or for the Middle District of Florida, or both, in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Forty Eight

During late May or early June of 2007, Mike Parker and others did burglarize 3900 Windsor Rd., Fowl River, Mobile, Alabama, and, upon being caught in the act of said burglary, did engage in misleading conduct toward Edmond H. Smith III, by stating to him that he (Mike Parker) intended to remove and store the mounted animals, birds, fish, and other items, and to purchase the house and property located at 3900 Windsor Rd., at an auction, and to later return all of the property to Edmond H. Smith IV, upon his return from Costa Rico and successful medical treatment and recovery, and Mike Parker did intentionally removed and transport the said mounted animals, bird, fish, and other items across state lines to Florida, and sell the same, without authority and consent of Edmond H. Smith IV to do so, in violation of the Lacey Act, that is Title 16, United States Code, Section 3372(a)(1) and (2), and Mike Parker intended to do so, regardless of whether Edmond H. Smith IV died due to his illness or not and returned to Mobile, Alabama, all with intent to hinder, delay, or prevent communication of information regarding the theft, unlawful transportation and sale of the said property, and violation or possible violation of Federal law to a law enforcement officer of the United States or a judge of the United States for the Southern District of Alabama and elsewhere, in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Forty Nine

During May or June of 2007, B.J. Lyons, Noel Mozer, Philip Coggin, and others did corruptly persuade Mike Parker and others to purlion and transport approximately nine hundred and thirty or more animals, birds, and fish, and other items, having an approximate and appraised value of eighteen million dollars, from 3900 Windsor Rd., Fowl River, Alabama, and to cause substantial damage to the said residence in doing so, and to further transport part of the said mounted animals, birds, fish, and other items across state lines to Louisiana, and to sell the same to a sporting goods business, known as Cabelas, in Gonzalez , Louisiana, in violation of Title 16, United States Code, Section 3372(a)(1) and (2), and did so, with intent to hinder, delay, and prevent Edmond H. Smith IV from discovering the location thereof, and from communicating the same and violation of Federal law to a law enforcement officer of the United States or to a judge of the United States for the Southern District of Alabama and for the Eastern District of Louisiana, in violation of Title 18, United States Code, Section 1512(b)(3).

59

Racketeering Act Fifty

Between June 1 and August 5, 2007, Sam Cochran, Clint Ulmer, Mitch McRaye, James Bo Lackey, Loren Watts, John Tyson, Charles Graddick, B.J. Lyons, Noel Mozer, Bob Steller, Robert Barnett, Rick Clarke, Philip Coggin, Linda Swope, Leanna Carpenter, D. Brian Murphy, James W. Lampkin II, Evan J. Wolfe, and others, individually and jointly, acting as an agent or agents of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, National Claims Adjusters, and Lexington Insurance Company, did corruptly endeavor to influence, impede, and obstruct the due administration of justice in the matters of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D.Ala.) and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.), and did so, by directly or indirectly participating in the burglary of 3900 Windsor Place, Fowl River, Alabama, and theft and destruction of evidence consisting of files, records, and documents relating to the subject matter of the aforesaid pending judicial proceedings of the United States within the Southern District of Alabama and Eastern District of Louisiana, with intent to purloin and destroy the said evidence and thereby influence, impede, and obstruct the due administration of justice thereof, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Fifty One

On or about August 24, 2007, Charles Graddick, Jason Rotop, and John Tyson, acting each as an agent or agents of B.J. Lyons, Noel Mozer, Bob Steller, Robert Barnett, Rick Clarke, Philip Coggin, Linda Swope, Leanna Carpenter, Sam Cochran, D. Brian Murphy, James W. Lampkin II, Evan J. Wolfe, Mark Lozer, St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, National Claims Adjusters, Lexington Insurance Co., and others, did corruptly endeavor to, and did, obtain an indictment falsely charging Edmond H. Smith IV of being a person prohibited to possess, and unlawful possession of, a firearm, a felony and violation of Alabama Criminal Code §13A-11-72(a), in the matter of State v. Edmond H. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), knowing that he had not violated §13A-11-72(a) as charged in the said indictment, in that no formal adjudication of guilt existed as required by the Alabama Rules of Criminal procedure, Rules 1.1, 26.1(a)(1), and 26.9(a) & (c)(1 to 4) in order to sustain the alleged violation of §13A-11-72(a), and, in relying on the said false indictment, did further corruptly endeavor to, and did, influence, impede, and obstruct the due administration of justice in the matters of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475, within the Eastern District of Louisiana, and Lexington Insurance Company v. Evan J. Wolfe, et al., Case No., 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323, within the Southern District of Alabama, by and through acts of oppression against Edmond H. Smith IV, in violation of Title 18, United States Code, Section 1503.

Additional Reserved
Racketeering ACT

On or about July or August 2007,officers of the Mobile County
Sheriffs Dept. and others acting on the expressed directions and
authority of (NEW) Sheriff Sam Cochran,B.J. Lyon's and Judge Charles
Graddick;conducted A joint task force raid of the home of Sue Goff,
at 122 Hope Dr. Spanish Ft.,Baldwin County Alabama,and did intention-
aly threaten intimidate,injure and assault Mss.Sue Goff (A elderly
widow) and Mrs.Linda DiAnn Goff Smith III,(Grandmother and Mother of
Edmond H.Smith IV),while he was still recieving medical treatment
outside the country in Costa Rica.During these assaults Mss.Goff,in
attempting to protect her property and constitutional rights was
pushed by deputies,and fell,resulting in severe injuries.Once traspo-
rted to A local hospital,she was diagnosed with A broken Pelvis and
Hip,which she never recovered from.These injuries resulted in her
un-timely DEATH, but only after A long and agonizeing convalesc'ing
struggle trying to obtain health and save her life. During the raid
both ladies were threatened and interogated over the wereabouts and
condition of Edmond H.Smith IV,with the home being ramsacked,and pers-
onal property being seized and destroyed.This was inclusive but not
limited to computers,documents,files,records and Linda DiAnn Goff Smith
III 's Pass-Port. All this being done at all time's knowing that no
legitament charge existed against Edmind H.Smith IV and the said gover-
ment actions were illegal,resulting in the so-called premis of those
actions to all later be dropped,"TYRRANY".At all times these corrupt
actions were being done to advance the on-going racketeering conspiracy
being committed against Edmond H.Smith IV,his family,property,freedoms
and buisness entities,with delliberate intent to hinder,delay,prevent
and cover-up the former criminal acts,and goverment corruption,in all

Additional Reserved

Racketeering Act

Continued


the former act's herein,and oppress the ability of Edmond H.Smith IV

to communicate information to the concerted crimes and attempted theft's

of files,records,documents,computers and other evidence of the ajustme-

nt of insurance claims by Edmond H.Smith IV,Top Catastrophe Team Servi-

ces,and Claims Services Provider,and relating to the racketeering act's

herein,to A law enforcement officer of the United States or A Judge

of the United States District Court for the southern District of Louis-

iana,or generally and specifically to A Judge of the United States Dis-

trict Court for the Southern District of Indiana,with the intent to ob-

struct the Due Administration of Justice therein,and before the honora-

ble Lance M.Africk,in the matters of Claims Services Provider,et al. V.

St. Paul Travelers Co.,Inc.,case No. 06-2475, In violation of there

Civil Rights,Legal Rights and Title 18,§ United States Code, Section's

1512 (b)(3),1503,and numerous others,State and Common Law Statutes.

Racketeering Act Fifty Two

On or about September 5, 2007, John Tyson, Jason Botop, Charles Graddick and others did corruptly persuade another person to arrest Edmond H. Smith IV upon his return from Costa Rica to the United States, specifically Florida and Alabama, without authority, under the pretext of baseless charges, arising from the void judgments obtained in the matter of City of Mobile v. Edmond H. Smith IV, Case No. MC-04-5762 (Mobile Municipal Ct.) and State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.), and from the bogus probation violation and escape charges in the matter of State v. Smith IV, Case No. CC-07-3126 (Mobile Co. Cir. Ct.), with intent to hinder, delay, prevent, and obstruct the ability of Edmond H. Smith IV to communicate, and thus the communication of, information relating to the commission or possible commission of one or more Federal offense, as described and referred to in racketeering acts one through fifty one herein, to a law enforcement officer of the United States or a judge of the United States, generally, or specifically to a judge of the United States District Court for the Southern District of Indiana, and to the Honorable Lance M. Africk, United States District Judge for the Eastern District of Louisiana in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D. La.), and to the District Court in the matter of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-3023, within the Southern District of Alabama, in violation of Title 18, United States Code, Section 1512(b)(3).

64

Racketeering Act Fifty Three

During September of 2007, John Tyson, Jason Botop, Charles Graddick, Sam Cochran, and others did corruptly persuade another person, one or more Mobile County Deputy Sheriff, to falsely arrest Edmond H. Smith IV, upon his return to Mobile, Alabama, pursuant to a bogus arrest warrant issued and executed, without authority, under the pretext of a baseless charge, arising from the void judgments obtained in the matter of City of Mobile v. Edmond H. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.) and State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.), that Edmond H. Smith IV had violated Alabama Code §13A-11-72(a) as charged in the matter of State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), with intent to hinder, delay, prevent and oppress the ability of Edmond H. Smith IV to communicate to a law enforcement officer of the United States or a judge of the United States, generally, and specifically to a judge of the United States District Court for the Southern District of Indiana and to the Honorable Lance M. Africk, United States District Judge for the Eastern District of Louisiana, information relating to racketeering acts one through fifty two herein, for further proceedings in the matter of Claims Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D. La.), and to the District Court in the matter of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, within the Southern District of Alabama, in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Fifty Four

During October and November of 2007, B.J. Lyons, John Tyson, Jason Botop, Charles Graddick, Sam Cochran, Clint Ulmer, Mitch McRaye, James Bo Lackey, Loren Watts, Philip Coggin, Rick Clarke, Linda Swope, Leanna Carpenter, D. Brian Murphy, James W. Lampkin II, Evan J. Wolfe, Mark Lozer, Noel Mozer, Bob Steller, Robert Barnett, individually and jointly as agents of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, National Claims Adjusters, Lexington Insurance Company, and others, did corruptly endeavor to, and did, influence, impede, and obstruct the due administration of justice within the Southern District of Alabama and in the matter of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, and within the Eastern District of Louisiana and in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475, by and through, directly or indirectly, participating in the burglary of, or caus- ing another person to burglarize, the house and property located at 3900 Windsor Place, Fowl River, Alabama, with intent to purlion, conceal, and destroy material evidence to the aforesaid pending judicial proceedings, which consisted in part of correspondence from Edmond H. Smith IV as President of Great Southern Outdoors Foundation and Institute, Inc., to an agent of Lexington Insurance Company,                  , showing Edmond H. Smith IV as the President of the said Foundation and Institute and residing at 3900 Windsor Place, and reply correspondense from the said Lexington agent,                  , addressed to Edmond H. Smith IV, in ratification

of the same, the theft, concealment and destruction of which

material is in violation of Title 18, United States Code, Section

1503.

Racketeering Act Fifty Five

During October and November of 2007, B.J. Lyons, John Tyson, Jason Botop, Charles Graddick, Sam Cochran, Clint Ulmer, Mitch McRaye, James Bo Lackey, Loren Watts, Philip Coggin, Rick Clarke, Linda Swope, Leanna Carpenter, D. Brian Murphy, James W. Lampkin II, Evan J. Wolfe, Mark Lozer, Noel Mozer, Bob Steller, Robert Barnett, individually and jointly as agents of St. Paul Travelers Co., Inc., Integrated Claims Solutions, LLC, National Claims Adjusters, Lexington Insurance Company, and others, did corruptly endeavor to, and did, influence, impede, and obstruct the due administration of justice within the Southern District of Alabama and in the matter of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, and within the Eastern District of Louisiana and in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2457, by and through, directly or indirectly, participating in the burglary of, or causing another person to burglarize, the office of E.H. Smith Electric Co., located at 52 Martin St., Mobile, Alabama, with intent to purlion, conceal, and destroy material evidence to the aforesaid pending judicial proceedings, which consisted in part of correspondence from Edmond H. Smith IV as President of Great Southern Outdoors Foundation and Institute, Inc., to an agent of Lexington Insurance Company assigned Ajusters , showing Edmond H. Smith IV as the President of the said Foundation and Institute and residing at 3900 Windsor Place, and reply correspondence from the said Lexington agent, Lex. Corp. AJUSTERS addressed to Edmond H. Smith IV, in ratification of the same, the theft, concealment,

and destruction of which material is in violation of Title 18, United States Code, Section 1503.

69

Racketeering Act Fifty Six

Between November of 2007 and December 6, 2007, B.J. Lyons, Noel Moser, Evan J. Wolfe, and others did corruptly endeavor to, and did, directly or indirectly, influence, impede, and obstruct the due administration of justice in the matters of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C, within the Southern District of Alabama, and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475, within the Eastern District of Louisiana and elsewhere, by and through participation in a scheme to provide false, misleading, and incomplete information to Special Agents of the Federal Bureau of Investigation regarding the insurance transactions of Evan J. Wolfe and Edmond H. Smith IV, with intent to provide false, misleading, and incomplete information to the said Special Agents against Edmond H. Smith IV, and with intent to cause him to be falsely charged with a Federal offense, in violation of Title 18, United States Code, Section 1503.

***( THE UNITED STATES JUDICIAL SYSTEM DOSE--NOT ALLOW FOR ANY CONVICTION,OF ANY )***
( INDIVIDUAL WITHOUT THE PRESENMENT OF EVIDENCE OF A CRIME,AND DUE PROCESS OF )
( LAW ACCORDING TO THE RULE OF LAW. )
"THERE IS NO CONVICTIONS",FOR EDMOND HUDMOND SMITH IV PRIOR TO  2/13/2008 AS
IS REQUIRED BY LAW FOR A FURTHER CHARGE OF "CERTAIN PERSONS FORBIDDEN TO
POSESS A PISTOL"OF THE CC-07-3375;STATUTE IN ALABAMA OF 13A-11-72(B)OR(A)
IN EITHER FORM ;THUS DEING A "DUE PROCESS VIOLATION" AND ILLEGAL AND VOID!
*********"CONCERNING THE PROCEEDINGS PRIOR TO AND ON FEBUARY 13,2008"*********

Racketeering Act Fifty Seven

On or about December 6, 2007, Evan J. Wolfe did corruptly endeavor to influence, impede, and obstruct the due administration of justice in the matters of Lexington Insurance Company v. Evan J. Wolfe, et al. Case No. 07-0322-WS C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, within the Southern District of Alabama, and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc. et al.. Case No. 06-2475, within the Eastern District of Louisiana, by and through making false, misleading, and incomplete statements to Special Agents Christopher A. Scott and Aaron W. Keighley of the Federal Bureau of Investigation, at the Mobile Division, Mobile, Alabama, stating that he (Evan J. Wolfe) had recovered copies of altered checks from a dumpster located at 3900 Windsor Road, the lawful residence of Edmond H. Smith IV, and that the said checks from Lexington Insurance Company had been forged by Edmond H. Smith IV, when in fact Evan J. Wolfe, Noel Mozer, and others had burglarized 3900 Windsor Road, Fowl River, Alabama, and stole copies of the said checks bearing the signature of Evan J. Wolfe, all with intent to deceive SA Scott and Keighley and obstruct the due administration of justice, all in violation of Title 18, United States Code, Section 1503.

Racketeering Act Fifty Eight

On or about January 29, 2008, Evan J. Wolfe and Noel Mozer did corruptly endeavor to influence, impede, and obstruct the due administration of justice in the matters of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, within the Southern District of Alabama, and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475, within the Eastern District of Louisiana, by and through making false, misleading, and incomplete statements to Special Agents of the Federal Bureau of Investigation, at the Mobile Division, Mobile, Alabama, including but not limited to:

(1) Phillip Coggin would be handling the purchase of the property located at 3900 Windsor Rd., Fowl, River, Alabama;

(2) Edmond H. Smith IV had stated that he would live in a quest house on the property;

(3) Evan J. Wolfe never planned to live on the property located at 3900 Windsor Rd., Fowl River, Alabama;

(4) Evan J. Wolfe never filled out loan application to lender for money to purchase the property located at 3900 Windsor Rd., Fowl River, Alabama;

(5) Evan J. Wolfe could not place (remember) the name World Wide Big Game, and had no affiliation with the organization;

(6) Evan J  Wolfe never saw documentation that Great Southern Outdoors Foundation was actually registered in the States of Alabama;

(7) Evan J. Wolfe was surprised to find Edmond H. Smith IV moving into the residence at 3900 Windsor Dr., Fowl River, Alabama, after

the purchase of the property in 2005;

(8) Evan J. Wolfe told Edmond H. Smith IV that he (Wolfe) wanted out of the organization and the loan payed off;

(9)  Edmond H. Smith IV ignored Evan J. Wolke's concerns;

(10)  Evan J. Wolfe believed that Edmond H. Smith IV forged Wolfe's name on the first insurance check and sent it to Washington Mutual Bank;

(11)  Edmond H. Smith IV had failed to pay most of the mortgage payments and was way behind on the note to Washington Mutual Bank;

(12) After Edmond H. Smith IV's incarceration in the Mobile Metro Jail, Washington Mutual Bank began foreclose, and Evan J. Wolfe decided to move back into the residence at 3900 Windsor Rd., Fowl River, Alabama, and fight the foreclosure;

(13) When Evan J. Wolfe arrived at the property, 3900 Windsor Rd., Fowl River, Alabama, he noticed a large dumpster containing trash, and figured that Edmond H. Smith IV must have been disposing of unwanted property from inside the house;

(14) Evan J. Wolfe found several copies of the insurance checks from Lexington Mutual Insurance Company  in a dumpster at the residence of 3900 Windsor Rd., Fowl River, Alabama, and it appeared that Edmond H. Smith IV had taped an original check onto a sheet of paper and ran it through a copy machine containing an endorsement from Washington Mutual Bank, and thus copied the original endorsement onto an unendorsed check;  all of the checks contained signatures of Evan Wolfe, but he had never seen or deposited any insurance checks;

(15) Evan J. Wolfe felt that Edmond H. Smith IV had taken advantage of Wolfe's offer to aid the Great Southern Outdoors Foundation,

because Wolfe was only educated to the level of the 7th grade and could not read and understand the newspaper;

(16) Evan J. Wolfe stated that he may have received money from Edmond H. Smith IV, but Wolfe was not sure of the amount or when he had been paid;

(17) Evan J. Wolfe maintains copies of the documents he retrieved from the dumpster at 3900 Windsor Rd., Fowl River, Alabama; with intent to corruptly influence, impede, and obstruct the due administration of justice in connection with the said proceedings, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Fifty Nine

On or about February 13, 2008, Jason Botop and Charles Graddick did corruptly endeavor to influence, impede, and obstruct the due administration of justice in the matters of Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, within the Southern District of Alabama, and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475, within the Eastern District of Louisiana, by and through corruptly influencing Edmond H. Smith IV to enter into a plea agreement to a violation of Alabama Code §13A-11-72(b), a misdemeanor, while knowingly and falsely charging him with a felony, a violation of §13A-11-72(a), in the matter of State v. Edmond H. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), and further knowing that no formal adjudication of guilt existed on the face of the record and Case Action Summary Sheet, in violation of the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a) & (c)(1 to 4), and in the jurisdictional predicates and matters of City of Mobile v. Edmond H. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.) and State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.), with intent to use the false and unlawful conviction to continue oppression of the exercise of legal rights of Edmond H. Smith IV and others and influence, impede, and obstruct the due administration of justice in further proceedings of the aforesaid cases in the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana, in violation of Title 18, United States Code, Section 1503.

***(DONE IN VIOLATION OF ALABAMA RULE OF CRIM.PROC. (13.5 A)CHANGE OF)***
(INDICTMENT OFFENSE WITHOUT A FORMALY CHANGED INDICTMENT,OR NEW )
(INDICTMENT BROUGHT,AND NO ELEMENT FOR EITHER CHARGE,NULL-&-VOID!!)
***(CC-2007-3126 ALLEDGED CHARGE/INDICTMENT-[PRIOR]-DISMISSED 2/13/08)***

Racketeering Act Sixty

On or about February 14, 2008, upon Edmond H. Smith IV reporting the burglary and theft of property from 3900 Windsor Rd., Fowl River, Alabama, which had occurred during October and November of 2007, to Mobile County Deputy Sheriff Mitch McRaye, he did knowingly use intimidation and threaten Edmond H. Smith IV, by stating:

"Don't press your luck.  You need to leave town and not come back,"

with intent to hinder, delay, oppress and prevent Edmond H. Smith IV from communicating to a law enforcement officer of the United States or a judge or court of the United States information regarding racketeering acts one through fifty two as described and referred to herein, in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Sixty One

During February of 2008, Edmond H. Smith IV reported the burglary and theft of property from 3900 Windsor Place, Fowl River, Alabama, to Terry Howell, an officer of the State of Alabama Bureau of Investigation, who did investigate the said crime, and sought a warrant and prosecution by the Office of the Mobile District Attorney, John Tyson, which was refused, at which time, B.J Lyons did attempt to corruptly persuade Terry Howell to cease and desist any further investigation and attempt to pursue a prosecution of those involved in the said burglary and theft of property, and B.J. Lyons did so, with intent to hinder, delay, and prevent the communication of information regarding the commission of a Federal offense, as described and referred to in racketeering acts one through sixty herein,        to a law enforcement officer of the United States and to a judge or court of the United States, generally, and specifically to the Honorable Lance M. Africk, United States District Judge for the Eastern District of Louisiana, in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D. La.), and to an officer of the United States and proceeding involving the business of insurance whose activites affect interstate commerce before an insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(3).

Additional Reserved

Racketeering Act

On or about Febuary – March 2008, after the discovery of the multiple crimes, thefts and vandelism of the E.H.Smith family estate and home at 3900 Windsor Rd. S. The Great Southern Outdoor F&I, Edmond H.Smith IV Traveled to the property with A.B.I. Detective Terry Howell, after A preliminary investigation and walk through it was obvious of the crime, and Detective Howell summoned Mobile County Sheriff's to make A report. Upon Deputy Sean Dickens arrival A report was initiated but after his departure, never compleeted, or changed to A "FRAUD".Deputy Sean Dickens, had been to our estate and property many times before, he was the husband of our domestic engineer(House Keeper) Domika Dickens, and even had eaten supper at our home. However due to reasons beyond explanation, or his superiors, he chose to abdicate his official duties, and disobey the directions of Detective Howell A Alabama State Dureau of Investigations Detective.This act was done to delliberately, knowingly, and intentionaly oppress, hinder, delay and prevent the discovery of the perpetrators of these acts apprehension and in a continued concerted attempt to cover-up the goverment corruption and actions of the same said criminals in the advancement of the on-going racketeering (R.I.C.O.) conspiracy against Edmond H.Smith IV, his family, property, freedoms, and buisness entities, and other evidence of the ajustment of insuance claims, and theft's, of that evidence, by Edmond H, Smith IV, Top Catastrophe Team Services, and Claims Services Provider, and relating to the racketeering act's herein one thrue sixty-one, to A law enforcement officer of the United States or A judge of the United States District Court for the Eastern District of Louisiana, or generally and specically to A judge for the United States District Court for the Southern District of Indiana, withthe intent of obstruction of the Due

78 $\frac{1}{4}$-

Additional Reserved

Racketeering Act
Continued


Administration of Justice therein,and before the honorable Lance M.

Africk,in the matters of Claims Services Provider,et al. V.the St.

Paul Travelers Co., case No. 06-2475,and the matters of Lexington

Insurance Company V. Evan J.Wolfe,et al.,case No. 07-0322-WS-C (S.D.Ala.)

and LEXINGTON Insurance Company V. Edmond H.Smith III,case No. 07-323-

WS__C(S.D.Ala.) and Lexington Insurance Company V. Edmond H.Smith IV

and did so by violateing there constitutional rights in violation of

Title 18,§ United States Code,Section's 1512 (b)(3),1503,and others.

Racketeering Act Sixty Two

On or about November 20, 2008, Edmond H. Smith IV and attorney Edward Massey of Mobile, Alabama, made a formal complaint to the Office of the Attorney General of Alabama, and Attorney General Troy King, located in Montgomery, Alabama, regarding the burglary, destruction and theft of property, which had occurred during October and November of 2007 at 3900 Windsor Rd., Fowl River, Alabama, and in doing so, Edmond H. Smith IV and Edward Massey identified Mobile County Sheriff Sam Cochran, his deputies, James Bo Lackey, Loren Watts, Mitch McRaye, and others as being involved in the said crimes, and, that same day a member of the said Attorney General's office notified Sam Cochran and his deputies of the said complaint, and, on or about November 21, 2008, in retaliation, Sam Cochran, James Bo Lackey, Loren Watts, Mitch McRaye, and others did raid 3900 Windsor Rd., Fowl River, Alabama, and knowingly use intimidation and physical force against Edmond H. Smith IV, and threaten him with further acts of oppression, with intent to hinder, delay, oppress and prevent him from communicating information to a law enforcement officer of the United States or to a judge or court of the United States regarding the commission of one or more Federal crime, as described and referred in racketeering acts one through sixty one herein, generally, and specifically from communicating the same to the Honorable Lance M. Africk, United States District Judge for the Eastern District of Louisiana, in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D. La.), and to an officer of the United States and proceeding involving the business of insurance whose

activities affect interstate commerce before an insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce, in violation of Title 18, United States Code, Section 1512(b)(3).

Racketeering Act Sixty Three

On or about November 21, 2008, Sheriff Sam Cochran and his deputies, James Bo Lackey, Loren Watts, Mitch McRaye, and others did knowingly, unlawfully, and willfully seize ammunition from 3900 Windsor Rd., Fowl River, Alabama, in furtherance of racketeering acts one through sixty two herein,  and thereby intentionally violated the Fourth Amendment bar against "unreasonable searches and seizures" and the Fourteenth Amendment guaranty to "due process of law," and did thereby intentionally harass Edmond H. Smith IV and hinder, delay, oppress and prevent him from seeking the arrest of Sheriff Sam Cochran, James Bo Lackey, Loren Watts, Mitch McRaye, Clint Ulmer, John Tyon, B.J. Lyons, Charles Graddick, Noel Mozer, Mike Parker, Philip Coggin, Rick Clarke, Linda Swope, Leanna Carpenter, Bob Steller, Robert Barnett, Mark Lozer, and others in connection with the said racketeering acts and related violations of Federal law, in violation of Title 18, United States Code, 1512-(c)(3).

Racketeering Act Sixty Four

Between November 21 and December 30, 2008, Sam Cochran, James Bo Lackey, Loren Watts, Mitch McRaye, Clint Ulmer, Gregory A. Bordenkircher, Richard H. Loftin, Steven E. Butler, Adam W. Overstreet, Michele C. O'Brien, and others did corruptly endeavor to, and did so, influence, impede, and obstruct the due course of the administration of justice in connection with the grand jury proceedings, deliberations and return of the indictment, and the prosecution in the matter of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.), by and through knowingly, unlawfully, willfully, and falsely and fraudulently submitting information regarding the ammunition unlawfully seized from 3900 Windsor Rd., Fowl River, Alabama, and misrepresenting that Edmond H. Smith IV had been convicted of violating Alabama Criminal Code, §13A-11-72(a), a felony offense, when in fact the face of the record of the Mobile County Circuit Court established that Charles Graddick had unlawfully induced Edmond H. Smith IV to enter a plea to a violation of Alabama Criminal Code §13A-11-72(b), a misdemeanor offense, because the face of the record of the underlying predicate offense lacked the requisite adjudication of rights and guilt under Alabama law, particularly the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a) and (c)(1 to 4), in the matter of City of Mobile v. Edmond H. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.) and State v. Smith IV, Case No., CC-04-4167 (Mobile Co. Cir. Ct.), which precluded the jurisdiction of the District Court, under Title 18, United States Code, Section 921(a)(20), all in violation of Title 18, United States Code, Section 1503.

Racketeering Act Sixty Five

On or about December 30, 2008, Sam Cochran, James Bo Lackey, Loren Watts, Mitch McRaye, Clint Ulmer, Gregory A. Bordenkircher, Richard H. Loftin, Steven E. Butler, Adam W. Overstreet, Michele C. O'Brien, and others did corruptly endeavor to, and did so, influence, impede, and obstruct the due course of the administration of justice in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D. La.), by and through knowingly, unlawfully, willfully, and fraudulently causing the termination of the cause of action — as further described and referred to in racketeering acts one through fifty seven herein — thereof, under the favorable termination rule as reaffirmed in Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005), in violation of Title 18, United States Code, Section 1503.

Racketeering Act Sixty Six

On or about January 7, 2009, Ed Eversman, a U.S. Marshall, and others, in furtherance of racketeering acts one through sixty five herein, generally, and specifically in aiding and abetting Sam Cochran, James Bo Lackey, Loren Watts, Mitch McRaye, Clint Ulmer, Gregory A. Bordenkircher, Richard H. Loftin, Steven Butler, Adam W. Overstreet, Michele C. O'Brien, did corruptly endeavor to, and did so, influence, impede, and obstruct the due administration of justice in the matter of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C; Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322; and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, in the Southern District of Alabama,, and in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475, in the Eastern District of Louisiana, by and through false arrest and imprisonment of Edmond H. Smith IV, without jurisdiction, under Title 18, United States Code, Sections 921(a)(20) and 922(a)(1), based upon a bogus indictment which had been fraudulently obtained from a Federal garnd jury, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Sixty Seven

On or about January 7, 2009, U.S. Marshall Ed Eversman, acting individually and jointly with Sam Cochran, James Bo Lackey, Loren Watts, Mitch McRaye, Clint Ulmer, Gregory A. Bordenkircher, Richard H. Loftin, Steven Butler, Adam W. Overstreet, Michele C. O'Brien, did intentionally harass Edmond H. Smith IV at the arraignment proceedings in the matter of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.), by and through repeatedly stating to him, "You's a convicted felon," knowing that the face of the records from the Mobile County Circuit Court had been unlawfully, willfully, and fraudulently used to cause the grand jury to falsely indict Edmond H. Smith IV, as described and referred to in racketeering act sixty six herein, with intent to harass Edmond H. Smith IV, and did thereby hinder, prevent, and intimidate Edmond H. Smith IV from seeking the arrest of those named in racketeering acts one through fifty nine herein, in violation of Title 18, United States Code, Section 1512(c)(3).

86

Racketeering Act Sixty Eight

On or about January 7, 2009, William E. Cassady, a U.S. Magistrate, and individually and in aiding and abetting Sam Cochran, Ed Eversman, James Bo Lackey, Loren Watts, Mitch McRaye, Clint Ulmer, Gregory A. Bordenkircher, Richard H. Loftin, Steven Butler, Adam W. Overstreet, Michele C. O'Brien, B.J. Lyons, Charles Graddick, Jason Botop, and others, without authority, did corruptly endeavor to, and did, influence, impede, and obstruct the due administration of justice in the matter of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C; Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C; and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C, within the Southern District of Alabama, and in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475, in the Eastern District of Louisiana, by and through ordering that Edmond H. Smith IV be detained, without bail in the Mobile Metro Jail, knowing that no adjudication of his rights and guilt had ever been unlawfully made on the face of the records in the matters of City of Mobile v. Edmond H. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.); State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.); and State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), a defect that rendered the same null and void under the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a) & (c)(1 to 4), and divested William E. Cassady of all jurisdiction under Title 18, United States Code, Sections 921(a)(20) and 922(g)(1), all in violation of Title 18, United States Code, Section 1503.

Racketeering Act Sixty Nine

Between January 16 and 18, 2009, Sam Cochran, James Bo Lackey, Loren Watts, Mitch McRaye, Clint Ulmer, Ed Eversman, and others did attempt to kill Edmond H. Smith IV, with intent to prevent his attendance and testimony in the proceedings of the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C; Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C; Lexington Insurance Company v. Edmond H. Smith III, Case No., 07-0323-WS-C, within the Southern District of Alabama, and in the matter of Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.); by and through knowingly, unlawfully, and willfully infecting Edmond H. Smith IV with five separate species of deadly bacteria consisting of Klebstalla, Pheoudomoneous, Morgaella, Citrobacter, and M.R.S.A., with further intent to prevent Edmond H. Smith IV from production of records of insurance business, in connection with th aforesaid cases, and with further intent to prevent him from communicating to a law enforcement officer of the United States and to a judge of the United States information relating to racketeering acts one through sixty eight herein, all in violation of Title 18, United States Code, Section 1512(a)(1)(A)-(C).

Racketeering Act Seventy

Between January 22 and 30, 2009, Charles Graddick, William E. Cassady, William H. Steele, Kristi DuBose, and Randy Butler did corruptly endeavor to influence, impede, and obstruct the due administration of justice in the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); and Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D.Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through a meeting and scheme devised at the Athelston Club, Mobile, Alabama, on account of their official duties, each, relating to the aforesaid judicial proceedings, and did then and there devise a corrupt scheme among themselves to evade and circumvent the judicial duty to make the required jurisdictional inquiry under Title 18, United States Code, Sections 921(a)(20) and 922(g)(1), and determine whether or not the lack of adjudication in the predicate offenses and matters of City of Mobile v. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.); State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.); and State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), on the face of the record, that is the Case Action Summary Sheets, each, and related violations of Alabama Rules of Criminal Procedures, Rules 1.1, 26.1(a)(1), and 26.9(a) and (c)(1 to 4), barred reliance thereon to sustain jurisdiction under said Section 921(a)(20)'s prohibition, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Seventy One

On or about January 30, 2009, Charles Graddick, William E. Cassady, William H. Steele, Kristi Dubose, Randy Butler, and others did corruptly endeavor to, and did so, intimidate an officer of the United States District Court for the Southern District of Alabama, Thomas M. Haas, Sr., and corruptly influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.), and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), and did, by and through acts of intimidation, cause Thomas H. Haas, Sr., to abandon his duties, as "Counsel" within the meaning of the Sixth Amendment to the Constitution of the United States, to investigate the facts and plead his defense by law, in accordance with Title 18, United States Code, Section 921(a)(20), and the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a) and (c)(1 to 4), as described and referred to in racketeering acts one through seventy herein, and did thereby cause Thomas H. Haas, Sr. to omit the same from the defense pleadings and docket entry no. 15, in the matter of United States v. Smith IV, case No. 1:08-00389-001 (S.D. Ala.), in violation of Title 18, United States Code, Section 1503.

Racketeering Act Seventy Two

Between Febraury 9 and March 29, 2009, B.J. Lyons, Noel Mozer, Sam Cochran, James Bo.Lackey, Loren Watts, Mitch McRaye, Clint Ulmer, Ed Eversman, and others did corruptly endeavor to influence, impede and obstruct the due administration of justice, in further- ance of racketeering acts one through seventy one as described and referred to herein, by and through stealing property from 3900 Windsor Rd., Fowl River, Alabama, consisting of:

(1) one 2004 Ford Excursion, Limited Edition, 7.3 litre diesel, 4 X 4, and other equipment, Vin. No. 1FMUSU43F803EA2411; black;

(2) one white and tan Ford Excursion, Limited Edition, 7.3 litre diesel, 4 X 4, and other equipment, 2003, Vin. No.

(3) one 2006 Ford, green and tan, King Ranch, 4 X 4, dualey King Cab, 7.3 litre diesel, Vin. No. 206CFK19R8T1152866;

(4) one 2001 white and tan Ford Excursion, Limited Edition, 4 X 4, 7.3 litre diesel, and other equipment,

(5) one 1999 Ford,              , King Cab (Camo), 7.3 litre diesel (Power Stroke), 4 X 4, long wheel base/bed, and other equipment;

(6) one 1996 Z71 King Cab Silverado Chevrolet truck, 4 X 4, Camo Seats and other equipment, Vin No. 206CEK19R8T1152866,

with intent to transport, or cause another to transport, the said vehicles across state lines, in interstate or foreign commerce, in violation of Title 18, United States Code, Section 2316, and in doing so, while falsely imprisoning Edmond H. Smith IV at the Mobile County Metro Jail, with intent to influence, impede and prevent him from communicating the said theft of vehicles to a law enforcement officer or judge of the United States, in viola-

tion of Title 18, United States Code, Section 1503.

Racketeering Act Seventy Three

On or about February 11, 2009, William E. Cassady did corruptly endeavor to, and did so, influence, intimidate, and impede Thomas M. Haas, Sr., an officer of the District Court, from performing his duties as "Counsel" within the meaning of the Sixth Amendment to the Constitution of the United States, and did thereby obstruct the due administration of justice in the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana, in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co.Inc., et al., Case No. 06-2475 (E.D. La.), by and through denying a motion for a detention hearing, filed by Thomas M. Haas, Sr., with intent to further influence, impede, and obstruct the due administration of justice by abdication of the regular judicial duties to make the jurisdictional inquiry required by Title 18, United States Code, Sections 921(a)-(20) and 922(g)(1), and the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a) and (c)(1 to 4), and to duly consider the relevant facts, described and referred to in racketeering acts one through seventy one herein, in violation of Title 18, United States Code, Section 1503.

93

Racketeering Act Seventy Four

On or about February 19, 2009, Kristi Dubose did corruptly endeavor to, and did so, influence, impede, and obstruct the due administration of justice in the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co. Inc., et al., 06-2475 (E.D. La.), by and through denying an appeal, filed by Thomas M. Haas, Sr., from the denial of a motion for a detention hearing, as described and referred to in racketeering act seventy two herein, knowing that the jurisdictional prerequisites under Title 18, United States Code, Sections 921(a)(20) and 922(g)(1) and the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a) and (c)(1 to 4), did not exist, in violation of Title 18, United States Code, Section 1503.

94

Racketeering Act Seventy Five

On or about March 10, 2009, Adam A. Overstreet did corruptly endeavor to, and did so, influence, impede, and obstruct the due administration of justice in the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana in the matter of United States v. Edmond H. Smith IV, Case No., 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D.Ala.); Lexington Insurance Co. v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D.Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D.La.), by and through submission of a motion in limine, with intent to obstruct the adjudication of the issue of whether or not the jurisdictional prerequisites of Title 18, United States Code, Sections 921(a)(20) and 922(g)(1), and the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a) and (c)(1 to 4), existed on the face of the record, that is the Case Action Summary Sheets, for the City of Mobile v. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.); State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.); and State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), and did so, in violation of Title 18, United States Code, Section 1503.

95

Racketeering Act Seventy Six

On or about March 11, 2009, William H. Steele did corruptly endeavor to, and did so, influence, impede, and obstruct the due administration of justice in the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana in the matter of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D.Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D.La.), by and through ordering Thomas M. Haas, Sr., to file a response to the motion in limine filed by Adam A. Overstreet on March 10, 2009, docket entry 25, knowing that the jurisdictional prerequisites did not exist under Title 18, United States Code, Sections 921(a)(20) and 922(g)(1), on the face of the records, that is the Case Action Summary Sheets, under the Alabama Rules of Criminal Procedures, Rules 1.1, 26.1(a)(1), and 26.9(a)(1) and (c)(1 to 4), in the matter of City of Mobile v. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.); State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.); and State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), in violation of Title 18, United States Code, Section 1503.

Racketeering Act Seventy Seven

On or about March 13, 2009, William H. Steele did corruptly endeavor to, and did so, influence, impede, and obstruct the due administration of justice in the United States District Courts for the Southern District of Alabama and for the Eatsern District of Louisiana in the matter of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D.La), by and through granting the motion in limine filed by Adam A. Overstreet, docket entry 25, with intent to obstruct the due adjudication of the issue of whether or not the jurisdictional prerequisites existed as required by Title 18, United States Code, Sections 921(a)(20) and 922(g)(1) and the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a)(1) and (c)(1 to 4), in the matter of City of Mobile v. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.); State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.); and State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), knowing that the said jurisdictional prerequisites did not exist on the face of the records, that is the Case Action Summary Sheets, thereof, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Seventy Eight

On or about March 16, 2009, William H. Steele, Adam A.
Overstreet, Gregory A. Bordenkircher, Richard H. Loftin, Steven
E. Butler, Michele C. O'Brien, and others did corruptly endeavor
to, and did so, influence, impede, and obstruct the due adminis-
tration of justice in the United States District Courts for the
Southern District of Alabama and for the Eastern District of
Louisiana in the matter of United States v. Edmond H. Smith IV,
Case No. 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company
v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.);
Lexington Insurance Company v. Edmond H. Smith III, Case No.
07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v.
The St. Paul Travelers Co., Inc., et al., Case No. 06-2475 (E.D.La.),
by and through perpetrating a fraud against the administration of
justice and the petit jury in the matter of United States v.
Smith IV, Case No. 1:08-00389-001 (S.D.Ala.), by falsely and
fraudulently representing to the said District Court and petit
jury thereof that Edmond H. Smith IV had been convicted of a felony,
that is a violation of Alabama Criminal Code §13A-11-72(a), in the
matter of State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir.
Ct.), knowing that Charles Graddick had induced Edmond H. Smith IV
to plead guilty to a misdemeanor offense, a violation of Alabama
Criminal Code §13A-11-72(b), during the proceedings thereof,
in part because Edmond H. Smith IV refused to plead guilty and
because Charles Graddick knew that no adjudication of guilt existed
as required by the Alabama Rules of Criminal Procedure, Rules 1.1,
26.1(a)(1), 26.1(a)(1), and 26.9(a)(1) and (c)(1 to 4), in the
matter of City of Mobile v. Smith IV, Case No. MC-04-5762 (Mobile

Mun. Ct.); and State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir.Ct.), in violation of Title 18, United States Code, Section 1503.

Racketeering Act Seventy Nine

On or about March 17, 2009, William H. Steele did corruptly endeavor to, and did so, influence, impede, and obstruct the due administration of justice in the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana in the matter of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D.Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D.La.), by and through entering an order in the matter of United States v. Smith IV, Case No. 1:08-00389-001 (S.D.La.), falsely and fraudulently stating that a jury trial had been held in which the jury had duly determined that Edmond H. Smith IV had violated Title 18, United States Code, Section 922(g)(1), therein, while William H. Steele knew that no adjudication of guilt had been made in accordance with Title 18, United States Code, Sections 921(a)(20) and 922(g)(1), and Alabama law, that is, the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a)(1) and (c)(1 to 4), to determine whether or not Edmond H. Smith IV had been duly convicted of a felony in the matter of City of Mobile v. Smith IV, Case No. MC-04-5762 (S.D.Ala.); State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.); and State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), in violation of Title 18, United States Code, Section 1503.

Racketeering Act Eighty

On or about April 10, 2009, William H. Steele did corruptly endeavor to, and did so, influence, impede, and obstruct the due administration of justice, generally, and specifically the organic "judicial Power" of the People mandated by U.S. Const., Art III, §§ 1 and 2, and the Bill of Rights, by and through acting extra-constitutionally as a commissioner to Congress, pursuant to Title 28, United States Code, Section 132(c)'s "rule or order of court" clause, and thusly civil-law "judicial power" extended from Art IV, § 3 of the Constitution of the United States, without authority, and did so order an officer of the United States to prepare a Presentence Investigation Report ("PSIR" herein) as shown by docket entry number 36, pursuant to Federal law regulating the said civil-law "judicial power," and did thereby perpetrate a fraud against the due administration of justice by omission of the fact that no adjudication of guilt and the legal rights of Edmond H. Smith IV ever occurred nor existed on the face of the record in the matters of City of Mobile v. Edmond H. Smith IV, MC-04-5762 (Mobile Mun. Ct.); State v. Edmond H. Smith IV, CC-04-4167 (Mobile Co. Cir. Ct.) and State v. Edmond H. Smith IV, CC-07-3375 (Mobile Co. Cir. Ct.), in violation of Title 18, United States Code, Section 921(a)(20) and Section 1503.

101

Racketeering Act Eighty One

In furtherance of racketeering act eighty herein, during April of 2009, and faced with vicarious liability, civil and criminal, arising from racketeering acts one through seventy nine herein, Federal agents, Sam Cochran and others did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice by and through placing Paul Albert in a jail-cell with Edmond H. Smith IV, located at the Mobile Metro Jail, Mobile, Alabama, and instructing Paul Albert to pretend to be blind to curry friendship by deception from Edmond H. Smith IV, and further instructing Paul Albert to illicit and provoke Edmond H. Smith IV into making threats against William H. Steele to be used commence a second unlawful prosecution against Edmond H. Smith IV in the United States District Court for the Southern District of Alabama, knowing that he was then falsely and unlawfully being held in state and Federal custody, without authority, with intent to exploit the said unlawful imprisonment, by and through fabrication of a second Federal crime against him, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Eighty Two

On or about May 11 to May 13, 2009, Paul Albert, a reputed citizen of Isreal, confidence man, and infamous person interested in the outcome of the corrupt proceedings of the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Case No. 06-2475 (E.D. La.), did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice, in connection with the said proceedings, by writing and mailing a letter to Gregory A. Bordenkircher and requesting a meeting at the Mobile County Metro Jail for the purpose of reaching an agreement targeting Edmond H. Smith IV, with intent to provoke Smith into making treatening statements against Gregory A. Bordenkircher, William H. Steele, and others, knowing that they had participated in the unlawful imprisonment and torture of Edmond H. Smith IV, and were continuing to do so, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Eighty Three

On or about May 29, 2009, Paul Albert, Gregory A. Bordenkircher, and another unknown named state or Federal agent did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 09-00158 (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322 (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Case No. 06-2475 (E.D. La.), by participation in a scheme to exploit the unlawful imprisonment and torture of Edmond H. Smith IV in the Mobile County Metro Jail, with intent to provoke him into making threats against those involved in his unlawful imprisonment and torture for the further unlawful objective and purpose of continuing the unlawful imprisonment, torture, and oppression against him, in connection with the said matters and proceedings, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Eighty Four

On or about May 30, 2009, Paul Albert, Joseph T. White, J. Deanne Lindsey, Paul Burch, Kevin Patterson,  Gregory A. Bordenkircher, and others did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 09-00158 (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322 (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Case No. 06-2475 (E.D. La.), by participation in a scheme in which a body recorder was placed on Paul Albert at the Mobile County Metro Jail, Mobile, Alabama, and Paul Albert was directed to go to a jail-cell where Edmond H. Smith IV was being unlawfully imprisoned, and, knowing his imprisonment was unlawful, Joseph T. White, J. Deanne Lindsey, Paul Burch, Kevin Patterson, and Gregory A. Bordenkricher further directed Paul Albert to exploit the unlawful imprisonment and torture of Edmind H. Smith IV and thereby solicit threatening statements from him, with intent to continue the oppression against him, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Eighty Five

On or about June 1, 2009, Paul Albert, Joseph T. White, J. Deanne Lindsey, Paul Burch, Kelvin Patterson, and others did corruptly endeavor to, and did so, influence, impede and obstruct the due adminitsration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.) and Case No. 09-00158 (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., 07-0322 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Case No. 06-2475 (E.D. La.), by participation in a scheme in which a body recorder was to be placed on Paul Albert at the Mobile County Metro Jail, Mobile, Alabama, and Paul Albert then placed in a jail-cell with Edmond H. Smith IV, with intent to further exploit the unlawful imprisonment, torture, and oppression against him, and, knowing he was unlawfully imprisoned, Joseph T. White, J. Deanne Lindsey, Paul Burch, and Kevin Patterson further directed Paul Albert to exploit the unlawful imprisonment and torture of Edmond H. Smith IV and thereby solicit threatening statements and evidence from him, with intent to continue the oppression against him, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Eighty Six

On or about June 2, 2009, Paul Albert, Joseph T. White, J. Deanne Lindsey, and Kelvin Patterson did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 09-00158 (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322 (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Case No. 06-2475 (E.D. La.), by participation in a scheme in which Paul Albert was to solicit information from Edmond H. Smith IV, while Joseph T. White, J. Deanne Lindsey, and Kevin Patterson knew that Edmond H. Smith IV had been, and was continuing to be, unlawfully imprisoned, tortured, and oppressed, without just cause and authority, with intent to continue to exploit the same against Edmond H. Smith IV, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Eighty Seven

On or about June 8, 2009, Paul Albert, J. Deanne Lindsey, Paul Burch, and Kelvin Patterson did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 09-00158 (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322 (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Case No. 06-2475 (E.D. La.), by participation in a scheme in which Paul Albert was directed by J. Deanne Lindsey, Paul Burch, and Kelvin Patterson to solicit information from Edmond H. Smith IV, knowing that he was then unlawfully imprisoned, tortured, and oppressed, with intent to gather and use the said information to continue the unlawful imprisonment, torture, and oppression against him, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Eighty Eight

On or about June 9, 2009, Jesse Villa and J. Deanne Lindsey did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 09-00158 (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322 (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Case No. 06-2475 (E.D. La), by participation in a scheme in which J. Deanne Lindsey did place a body recorder on Jesse Villa and instruct him to pretend to be an attorney and demand payment for the assassinations of several individuals, Noel Moser, Gregory Bordenkircker, William Steele, Trey Oliver, Eddie Curran, Bo Lackey, Sam Cocharn, Lauren Watts, Mitch McRae, Clint Ulmer, Jack Garret, Terry Steele, Miguel Alaha, and Mike Parker, all of whom had been involved in racketeering acts one to eighty one as described and referred to herein, were then directly or indirectly involved in the continuing unlawful imprisonment, torture, and oppression against Edmond H. Smith IV, with intent to exploit and continue the same against him, in violation of Title 18, United States Code, Section 1503.

109

Racketeering Act Fighty Nine

On or about June 9, 2009, Paul Albert did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 09-00158 (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322 (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Case No. 06-2475 (E.D. La.), by participation in a scheme in which Paul Albert had solicited and provoked information from Edmond H. Smith IV to be used against him and his business and property, knowing that he was then the victim of unlawful imprisonment, torture, and oppression, by Mobile County sheriffs and Federal officers and agents, in connection with the aforesaid matters and proceedings, and Paul Albert continued to provide information to James Copeland, a U.S. Deputy Marshal, regarding the same and Edmond H. Smith IV, with intent to continue the said unlawful imprisonment, torture, and oppression against him, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Ninety One

Between April 10 and June 9, 2009, Jessica James did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through investigating the fact that no adjudication of the rights and guilt of Edmond H. Smith IV existed as required by the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a)(1) and (c)(1 to 4) to sustain a conviction by law in the matters of City of Mobile v. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.); State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.); and State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.) and as further required by Title 18, United States Code, Section 921(a)-(20), to sustain a conviction in the matter of United States v. Smith IV, Case No. 1:08-00389-001 and Case No. 1:09-00158-JTC-GGB, and, upon discovering that the required adjudication did not exist in the underlying jurisdictional predicates, Jessica James knowingly and intentionally omitted that fact from the Presentence Investigation Report, and did thereby falsify the same, with intent to influence, impede and obstruct the due administration of justice in violation of Title 18, United States Code, Section 1503.

111

Racketeering Act Ninety One

On or about June 9, 2009, Jessica James did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.) by knowingly, intentionally, and willfully submitting a Presentence Investigation Report to the United States District Court for the Southern District of Alabama in which Jessica James had omitted the fact that no adjudication of guilt had been performed as required by Alabama law, that is the Alabama Rules of Criminal Procedure, Rules 1.1, 26.1(a)(1), and 26.9(a)(1) and (c)(1 to 4), and by Title 18, United States Code, Section 921(a)(20), in the matters of City of Mobile v. Smith IV, Case No. MC-04-5762 (Mobile Mun. Ct.); State v. Smith IV, Case No. CC-04-4167 (Mobile Co. Cir. Ct.); and State v. Smith IV, Case No. CC-07-3375 (Mobile Co. Cir. Ct.), with intent to perpetrate a fraud against the due administration of justice, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Ninety Two

On or about June 12, 2009, John Sprinkle, J. Deanne Lindsey, and Noel Mozer did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matter of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.) and Case No. 09-00158 (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through John Sprinkle and J. Deanne Lindsey soliciting false information from Noel Mozer, and Noel Mozer did so provide false information, to-wit:

(1) That Noel Mozer had helped Edmond H. Smith IV with foreclosures on property;

(2) That Noel Mozer dealt with banks for Edmond H. Smith IV;

(3) That Edmond H. Smith IV had portrayed himself as Evan J. Wolfe to a bank;

(4) That Noel Mozer had discovered that Edmond H. Smith IV's foundation, that is the Great Southern Outdoors Foundation and Institute, did not exist;

(5) That Noel Mozer had helped Evan J. Wolfe get out of the deal on the purchase of the property commonly known as 3900 Windsor Rd., Fowl River, Alabama;

(6) That Edmond H. Smith IV had held a sword to Noel Mozer's neck;

(7) That Edmond H. Smith IV had grabbed Noel Mozer around his neck, and threatened him; and,

113

(8) That Edmond H. Smith IV carried a two shot derringer in his pocket, and had threatened to shoot Noel Mozer at Fishbone's restaurant; and

(9) That Edmond H. Smith IV had called Noel Mozer and offered him fifty thousand dollars ($50,000.00) to screw Evan J. Wolfe out of the property commonly known as 3900 Windsor Rd., Fowl River, Alabama; and,

(10) That Edmond H. Smith IV had forged Evan J. Wolfe's signature and the bank's name on an insurance check worth three million dollars ($3,000,000.00),

with intent to influence, impede and obstruct the due administration of justice, in connection with the aforesaid matters, in violation of Title 18, United States Code, Section 1503.

Racketeering Act Ninety Three

On or about June 16, 2009, John **Sprinkle**, J. Deanne Lindsey, Noel Mozer, and others did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Edmond H. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 -WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through John Sprinkle, J. Deanne Lindsey, Noel Mozer and others soliciting false information from Evan J. Wolfe, and Evan J. Wolfe did so provide false information, to-wit:

(1) That Edmond H. Smith IV was a convicted felon in April of 2008, and had gone to the house of Evan J. Wolfe, located at 3900 Windsor Rd., Theodore, Alabama, and busted in and assaulted Evan J. Wolfe with a gun, and that Evan J. Wolfe had pulled a gun to defend himself from Edmond H. Smith IV;

(2) That Edmond H. Smith IV always carried a 45 caliber gun, a 38 caliber gun, and a derringer with him;

(3) That Jim Steeger of Mobile, Alabama, had taken charge of the possessions of Edmond H. Smith IV while he was in jail, and had put Smith's property in storage so that authorities could not find Smith's property;

(4) That Jim Steeger was part of Smith's scheme to rip-off hunters by taking them hunting on Federal Game Reserve property, under the name of a company called Big Game Adventures; and,

(5) That Mike Parker bought the "Hooters" boat and gave it to Edmond H. Smith IV, and Parker repossessed the boat and mounted deer heads from Smith when he did not pay Parker, with intent to influence, impede and obstruct the due administration of justice, in connection with the aforesaid matters and proceedings in the United States District Courts, in violation of Title 18, United States Code, Section 1503.

116

Racketeering Act Ninety Four

On or about August 4, 2009, Joel F. Dubina and Jack T. Camp did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through Joel F. Dubina designating Jack T. Camp to act in the extra-constitutional capacity of a commissioner to Congress, pursuant to the "rule or order of court" clause of Title 28, United States Code, Section 132(c) and the Federal Rules of Criminal Procedure and other extra-constitutional acts of Congress, in connection with the said matters and proceedings of the United States District Courts for the Southern District of Alabama and for the Eastern District of Louisiana, and by and through Jack T. Camp ratifying such designation, with intent to act as an extra-constitutional commissioner to Congress and thereby exercise civil-law "judicial power" under the pretext of U.S. Constitution, Art IV, § 3, "Power" being extended to the said matters and proceedings, without authority, and by deception, in violation of Title 18, United States Code, Section 1503.

117

Racketeering Act Ninety Five

Between August 4 and November 16, 2009, Sam Cochran and one or more deputy sheriffs at the Mobile County Metro Jail did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters and proceedings of United States v. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-CGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D.Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through placing Edmond H. Smith IV in a segregation cell at the Mobile County Metro Jail, with intent to oppress his ability to investigate the facts and exercise his civil rights, in connection with the said matters and proceedings, and did so, in violation of Title 18, United States Code, Section 1503.

118

Racketeering Act Ninety Six

Between August 4 and November 16, 2009, David Goldberg, Paul Albert, Joseph T. White, Deanne Lindsey, Paul Burch, Kelvin Patterson, and others did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Smith IV, Case No. 1:08-00389-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through knowingly, intentionally, willfully, and fraudulently making representations to be provided to, and provided to, a grand jury against Edmond H. Smith IV, along with a civil-law indictment, charging him with violating Title 18, United States Code, Sections 115(a)(1), 373(a), and 1001, while withholding information from the said grand jury regarding the fact that the information regarding the said alleged Federal offenses was then spoils of racketeering acts one through ninety four herein, with intent to deceive the said grand jury regarding the same, in violation of Title 18, United States Code, Section 1503.

\*\*\*( THOSE INVOLVED, WITHHELD THE FACT's THAT THE [ALLEGED]AUDIO RECORDINGS WERE SPLICED, DOCTORED AND)\*\*\*
(OR ALTERED, THEN SUBSEQUENTLY ENTERED AS EVIDENCE TO (MY) COMPLICITY IN A CRIME OR WRONGDOING OF  )
(MAKING A THREAT IS A "FRAUD ON THE COURT"AND "FRAUD AGAINST THE DUE ADMINISTRATION OF JUSTICE".  )
(PROSECUTORS CREATING FRAUDULENT TESTIMONY, AND HIDEING EXCULPATORY EVIDENCE[BRADY VIOLATIONS !!] .)

Racketeering Act Ninety Seven

Between August 4 and November 16, 2009, Gerrilyn G. Brill did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0322-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., 06-2475 (E.D. La.), by and through knowingly, intentionally, willfully, and fraudulently appointing J. Clark Stankoski to act as defense counsel, knowing that he was not "Counsel" within the meaning of the Sixth Amendment to the Constitution of the United States, because he had abandoned the duties thereof, and had opted to act as counsel under Federal civil-law rule in exchange for payment from the Federal government, with intent to advance the unconstitutional exercise of civil-law "judicial power" from Congress via the "rule or order of court" clause of Title 28, United States Code, Section 132(c), and Federal Rules prescribed by act of Congress, with intent to deceive Edmond H. Smith IV and the society at large regarding the same, in violation of Title 18, United States Code, Section 1503.

120

### Racketeering Act Ninety Eight

Between August 4 and November 16, 2009, Gerrilyn G. Brill and David Goldberg    did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through knowingly, intentionally, and willfully presenting Edmond H. Smith IV with a civil-law indictment charging him with violating Title 18, United States Code, Sections 115(a)(1), 373(a), and 1001, with intent to deceptively circumvent the protection of the organic "judicial Power" of the American people mandated by U.S. Const., Art III, §§ 1 and 2, and guaranteed by the Bill of Rights, and with intent to deceptively substitute the same with an extra-constitutional civil-law "judicial power" via the "rule or order of court" clause of Title 28, United States Code, Section 132(c), and the Federal Rules of Criminal Procedure and of Evidence, in violation of Title 18, United States Code, Section 1503.

121

Racketeering Act Ninety Nine

Between August 4, 2009, and January 6, 2010, Gerrilyn G. Brill, Jack T. Camp, David Goldberg, J. Clark Stankoski, and others did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB; Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through knowingly, intentionally, willfully, and fraudulently conducting and participating in a criminal prosecution against Edmond H. Smith IV and related proceedings, while deceptively circumventing the protection of the organic "judicial Power" of the American people mandated by U.S. Const., Art III, §§ 1 and 2, and guaranteed by the Bill of Rights, and deceptively substituting the same with an extra-constitutional civil-law "judicial power" from Congress via the "rule or order of court" clause of Title 28, United States Code, Section 132(c) and the Federal Rules of Criminal Procedure and of Evidence, in violation of Title 18, United States Code, Section 1503.

Racketeering Act One Hundred

On or about January 8, 2010, Jack T. Camp, Michele O'Brien, and others did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB; Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through knowingly, intentionally, willfully, and fraudulently conducting a sentencing hearing and sentence  Edmond H. Smith IV to a prison term of forty months in a Federal prison, while deceptively circumventing the protection of the organic "judicial Power" mandated by U.S. Const., Art III, §§ 1 and 2, and guaranteed by the Bill of Rights, and deceptively substituting the same with an extra-constitutional civil-law "judicial power" from Congress via the "rule or order of court" clause of Title 28, United States Code, Section 132(c) and the Federal Rules of Criminal Procedure and of Evidence, in violation of Title 18, United States Code, Section 1503.

123

Racketeering Act One Hundred and One

On or about January 8, 2010, Jack T. Camp and others did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0323-WS-C (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through appointing J. Clark Stankoski to appeal the conviction of Edmond H. Smith IV in the matter of United States v. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.), knowing that a serious conflict of interest existed between them, arising from the fact that J. Clark Stankoski had abandoned his duties as "Counsel" within the meaning of the Sixth Amendment, as described and referred to in racketeering acts ninety seven and ninety nine herein, with intent to deceptively continue the deprival of competent "Counsel" within the meaning of the Sixth Amendment on the direct appeal to the United States Court of Appeals for the Eleventh Circuit, in violation of Title 18, United States Code, Section 1503.

124

Racketeering Act One Hundred and Two

On or about January 13, 2010, Jack T. Camp did corruptly endeavor to, and did so, influence, impede and obstruct the due administration of justice in the matters of United States v. Smith IV, Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB (S.D. Ala.) and Case No. 10-10280-H (11th Cir.); Lexington Insurance Company v. Evan J. Wolfe, et al., Case No. 07-0322-WS-C (S.D. Ala.); Lexington Insurance Company v. Edmond H. Smith III, Case No. 07-0322 (S.D. Ala.); and Claims Service Provider, et al. v. The St. Paul Travelers Co., Inc., Case No. 06-2475 (E.D. La.), by and through knowingly, intentionally, willfully, and fraudulently entering a judgment in the matter of United States v. Smith IV, Case No. 1:08-00389-WS-C (S.D. Ala.), without an adjudication by and through the exercise of the organic "judicial Power" mandated by U.S. Const., Art III, §§ 1 and 2, and guaranteed by the Bill of Rights, ever being conducted, and with intent to deceptively enter a civil-law judgment by and through the unconstitutional exercise of a civil-law type of "judicial power" extended to the District Court from the "rule or order of court" clause of Title 28, United States Code, Section 132(c) and the Federal Rules of Criminal Procedure and of Evidence; a civil-law practice unlawfully adopted from Congress' "Power" over territory and property of the United States under U.S. Const., Art IV, § 3, in violation of Title 18, United States Code, Section 1503.

125

Additionqal Reserved

Racketeering Act

On or about January – Febuary 2010,After being detained in custudy ever since January 7,2009,much of that time severly Ill in(solitary seg- rigation),in the Mobile Metro Jail infirmary unit,under the custody and control of (C.M.S.)and Sheriff Sam Cochran's Deputies.I was Court ordered by (NOW) former Federal Judge Jack T.Camp to (F.M.C.) Federal Medical Center, Butner North Carolina,for treatment and evaluation.Upon (P.C.C.) Perry County Corrections,officers (Warren and Black),arriveing,and pick- ing me up for transport,it became painfully obvious for them that somet- hing was extremely wrong with the helth of Edmond H.Smith IV,other than just A cut open infected bleeding foot.Upon being moved for transport to there (P.C.C./L.C.S.) van,from the Mobile Metro Jail Infirmary; I began to severly convulse,and began projectile vommitting uncontrolably. Spue- ing large amounts of A white substance,in the van along with the complete contents of the remainder of my stomach. After several instances of this, less than A mile away from the Metro Jail,they called for authorization to divert to a local hospital,for fear of Edmond H.Smith IV's emminent death,that authorization was denied.

After twenty-eight (28) times,I seemed to gather my ability to some- what function,and began to have the ability to communicate with them ab- out what they had been discussing only A few feet away from my precense about my condition,that had been POISONED! They said that they knew what was wrong with me,and that they knew that smell,that from years of working around farms,and useing and seeing it;"THAT WHITE STUFF,WAS RAT POISON" Upon our arrival at perry county corrections;all this was relayed,and I requested to be tested,I again was segrigated,and denied by there medcal

126

Additional Reserved
Racketeering Act
Continued

director Mrs. Nurse Blackmon to be tested for poisoning even though it was self-evident.Upon my arrival A week and A half later at Butner North Carolina (F.M.C.),I was medicaly evaluated,and among other things,it was observed that my remaining toe's and finger nails had A slight blue tint, and I was then tested.When the test results were returned, they were confirmed to be "POSITIVE";for "ARSENIC" and "STRYCH-NINE" poisoning. I had been in custody at the Mobile Metro Jail for in excess of A year,the only place where I could of been poisoned.This was also done to advance there on-going racketeering acts One thrue One-hundred and Two as set forth herein,maliciously and delliberately to endeavor to impede,prevent,and obstruct the due course of the administration of justice in the matters of the illegalities perpetrated against Edmond H. Smith IV, His Family, properties,and buisness entities,in A pre-calculated cover-up even to the point of attempted murder.Those responsible under the direction of B.J.Lyon's,Sheriff Sam Cochran,goverment officials,Agents and others, did corruptly endeavor to,and did so,impede,influence and obstruct the due administration of justice in these matters,as well as Claims Services Provider.et al. V. the St. Paul Travelers Co.,Inc., No. 06-2475,within the Eastern District of Louisiana,Lexington Insurance Company V. Edmond H. Smith III Case No. 07-0323-WS-C,Lexington Insurance Company V.Evan J. Wolfe,et al. Case No. 07-0322-WS-C,within the southern District of Alab-ama,by and through knowingly,willfully,and fraduently entering into "Tyrannical Actions" AGAINST Edmond H.Smith IV and his interests in the matters of United States V. Smith IV Case No. 1:08-00389-WS-C (S.D. Ala.), without an ajudication by and through the exercise of the organic "Judi cial Power" mandated by U.S.Const.,Art III,§§ 1and2,and guaranteed by the Bill of Rights,ever being conducted,all in violation of Title 18, United States Code,Section 1503.

127

RACKETEERING ACT ONE HUNDRED AND THREE

On or about  October 1,2010, L.C.S./Perry County Corrections Center did attempt to fasilitate serious bodily harm with the intent to cause the Death and Demise("MURDER") of Edmond Hudmond Smith IV,and did so to corruptly endeavor to influence, impede and obstruct the Due Administration of Justice in the matters of United States v. Smith IV, Case No.1:08-00389-WS-C  and Case No. 1:09-00158-JTC-GCB (S.D.Aia.);Lexington Insurance Company v. Evan J. Wolfe et al. Case No. 07-0323-WS-C (S.D.Ala.);Lexington Insurance Company v. Edmond H. Smith III,Case No. 07-0323-WS-C(S.D.Ala.);  and Claims Service Provider,et al.v. the ST. Paul Travelors Co.,INC., Case No. 06-2475(E.D.LA.) by and through the intentional placeing of A live (19'-to-22')inch venemous rattlesnake  in the bed of Edmond Hudmond Smith IV's infirmary isolation room/cell in his absense . The placement of the rattlesnake was intended to facilitate serious bodily injury resulting in Death due to snake-bite and the subsequent allergic reaction to the venom without any access to anti-venom due to my current state of confinement.This was done with the intent by James  Mullins and Rita Dial to deceptively continue to deprive the intended target of his life,liberty and property as has been described in racketeering acts ninety seven through one hundred and two in order to obstruct justice and join in the ovuscation and cover-up of the littany of criminal violations of state of Alabama and United States codes as well as Edmond Hudmond Smith IV's Civil Rights,Title 18 United States Code,Section 1503.

RACKETEERING ACT ONE HUNDRED AND FOUR

While being illegaly detained and imprisoned at U.S.P. Coleman I,On or about Febuary 15,2011 U.S.P. Coleman Staff (B.O.P.) employes whom I previously did not know nor had ever made the aquantance of,joined in A criminal conspiracy to instigate the "MURDER" of Edmond Hudmond Smith IV,in A confirmed administrative threat to his life. A (B.O.P.)Counselor Santos ,in the supervision of A Warden Middlebrooks and Capt.Henger ,Lt.Revis with and through the wilfull participations of A.Gradfield,Co.Andre,Co.Walker, Co.Schnieder,Co.Garvin,Co.R.Rohrs,Co.T.Miles and Co.Lafayve all(B.O.P.) employes,along with others,did corruptly endeavor to,and did so violate Edmond Hudmond Smith IV's Civil Rights,impede,influence and obstruct the Due Administration of Justice in the matters of United States v. Smith IV,Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-GGB(S.D. Ala.);Lexington Insurance Company v. Evan J.Wolfe,et al., Case No.07-322-WS-C(S.D.Ala.) ;Lexington Insurance Company v. Edmond H.Smith III,Case No. 07-323-WS-C(S.D.Ala.);and Claims Service Provider,et al.,v. the St.Paul Travelors Co.,INC.,Case No. 06-2475(E.D.LA.) by and through on three multiple occasions placeing Edmond Hudmond Smith IV,directly in A gang controlled occupied houseing cell/room,with the intent to cause the emminent stabbing and death "MURDER" of Edmond Hudmond Smith IV.When that was not successfull,and the actions of the staff were discovered Edmond Hudmond Smith IV was placed in protective custody in administrative seggregation(S.H.U.) and A (S.I.S) investagation later confirmed the plot and (B.O.P.) staff Administrative threat and violations of Edmond Hudmond Smith IV's rights as A (B.O.P.) staff retaliation against the life of Edmond Hudmond Smith IV,as well as the subsequent abuses and tortue. In A later development I had the opportunity to confront Counselor SANTOS,before I was shipped and with A wittness asked him why he had attempted to "MURDER"me through his actions when I had never even spoaken to him previously, he admitted he had done that and I was not supposed to still be alive or A pain in there asses,he said I was very "Luckey".All this is in violation of Title 18,United States Code,section 1111,section 242,section 241,chapter 113(C) section 2340,section 1503 and others.

129

### RACKETEERING ACT ONE HUNDRED AND FIVE

After being transferred from U.S.P. Coleman I,to U.S.P. Terre Haute in Indiana where I continued to be illegally detained and imprisoned. On or about October 10, 2011 thrue December 13, 2012,(B.O.P.) staff in cooperation with Mobile County Sheriff's Department officials contracted the convict.John Forest Coon to interfere/sabotage the legal efforts and pursuits of Edmond Hudmond Smith IV,and report by phone to his co-conspirator serperiors on at least (30) occasions,of my progress and legal pursuit activities.Staff identified by Mr.Coon that were also in cooperation or complicent with the action was;Lt.Earwin,Co. Reardon,Co.Walden,Co.Kramer Co.Counselor Wasson with the support of (B.O.F.) employes R.Harvey,E.Kesell and D.Lockett and the telephonic cummunications of at least (30) call's discovered to of been made by John Forest Coon to Mobile County Sheriff Sam Cochran,B.J. Lyon's,St.Paul Travelors I.C.S. & N.C.A. Agents,E.Curran and others involved in the racketeering act's behind the fraud's of Edmond Hudmond Smith IV's false imprisonment and cases,and not ,previously involved in any way with anything to do with Mr.Coon as he admitted in front of multiple witnesses  when questioned about it under duress. Once it was discovered that I and others now knew of these events and the plot,it was communicated to me by staff in A series of threats to my life,that these individuals and others intended to send my out of Terre Haute U.S.P. in A "Pine Box"by "MURDER" and repeated to me by A staff (S.I.S)Co.Merit,confirming the threats I had previously discounted as rumors. These previously announced individuals and others did corruptly endeavor and conspire to influence,impede and obstruct the Due Administration of Justice in the matters of United States v.Smith IV,Case No.1:08-00389-WS-C and Case No.1:09-00158-JTC-GGB(S.D.Ala.); Lexington Insurance Company v. Evan J.Wolfe,et al.,Case No.07-0322-WS-C(S.D,Ala.);Lexington Insurance Company v. Edmond H. Smith III Case No. 07-0323-WS-C(S.D.Ala.0;and Claims service Provider,et al.,v. St. Paul Travelors Co.,INC., Case No. 06-2475(E.D.IA.).and did so as described in and referred to in racketeering acts ninety seven to one hundred and four,with the intent to deceptively deprive Edmond Hudmond Smith IV of life ,liberty and property and obstruct the D UE Administation of Justice in violation of Title 18,section 241,section242 and section 1111 and section 1503.

On or about July 31,2012 while being illegally detained and imprisoned in Terre Haute Indiana U.S.P., Edmond Hudmond Smith IV was  unserimouniosly informed of the untimely wrongfull death of Edmond Hudmond Smith III my Father,in violation of the "Felony Murder" "Fowler  Act " statute,for A death occurring behind A crime of A "Felony".I was informed of this by A paper document by D.Holston(B.O.P.)emploie,and I would not be allowed to attend his funeral.All requests to do so,were denied.His Death was the result of his efforts efforts to work to fund my defense,over the "Hoax" Fraudulant persecution and racketeering conspiracy against myself and our interests.

RACKETEERING ACT ONE HUNDRED AND SIX

After being scheduled for transfer from U.S.P. Terre Haute to McCreary U.S.P. in Pine Not,Kentucky,.On or about August 28,2013 (B.O.P.)staff Co.Lotz,Lt.Earwin,Co.Harris, Co.D.Dittemore and Co.Staoski retaliated against Edmond Hudmond Smith IV for contacting the office of the Inspector General(O.I.G.)and interviewing with agent KIM THOMAS in reporting the MURDER of fellow inmate ISHMIAL GIBBSON,. I was then shipped to U.S.P. McCreary,but not before  being repeatedly gassed by (O.C.S.) gassings multiple times prior to being transfered.This was done to torture me and illegaly affixiate me to impede,influence and obstruct the Due Administration of Justice in the matters of the (O.I.G.)"Murder"Investigation into Terre Haute Indiana U.S.P. (S.H.U.),as well as the matters of United States v.Smith IV,Case No.1:08-00389-WS-C and Case No.1:09-00158-JTC-GGB(S.D.Ala.);;Lexington Insurance Company v. Evan J.Wolfe,et al.,Case No.07-0322-WS-C (S.D.Ala.);Lexington Insurance Company v. Edmond H.Smith III,Case No.07-0323-WS-C(S.D. Ala.);and Claims service Provider,et al.,v. the St.Paul Travelors Co.,INC.,Case No.06-2475(E.D.LA.),with the intent by and through,to punish,torture and affixiate Edmond H-udmond Smith IV to death.Due to there knowledge of my "Medical Duty Status "prohibition on(O.C.S) gas exposure.All this was done in retaliation for my cooperation in the (O.I.G.) murder investigation and my filed report to (O.I.G.).All in violations of Federal Code Title 18,United States Code,sections 1111,section 241,section 242,and section 1503.

My grandmother Sue Goff,finaly succumbed to her injuries(&broaken Pelvis) and died wrongfully due to being assaulted in her home at Hope Dr. in Baldwin County,by Mobile County Sheriffs Deputies,without any warrant.Her wrongfull death was the result of A (alledged)search for financial documents pertaining to me and our corporations she was A Board member of,in the midst of this illegal search trying to  protect the sanctaty of her home and rights she was pushed down towards A sofa,however she hit the hardwood floor insted breaking her Pelvis,at 80+ years old she never recovered and later died from these injuries of this illegal act.This was done to corruptly endeavor to impede, cause,influence  and obstruct the Due Administration of Justice with the intent to deceptively continue the deprival of justice,life liberty and property in violation of Title 18,United States Code,section 1111,section 241,section 242 and section 1503.

131

RACKETEERING ACT ONE HUNDRED AND SEVEN

Once transferred to U.S.P. McCreary,because of inhume houseing conditions and squaler,Edmond Hudmond Smith IV was infected with A serious respritory infection, due to delliberate wilfull indifferance and neglect,on twenty(23)three separate of requesting medical assistance and recieving none to mitigate the infection,it worsened and developed into"PNEUMOCCAL PNEUMONIA"and in turn filled both my lungs full of fluid causeing A massive "Heart Attack"from squeezing of my heart.On or about January 11,2014 thru January 14,2014,this resulted in "Cardio Renal Syndrome" and A reduction in my heart ejection refraction level of down to (12%),then resulting in the prediction of my emminent death. All of this interdependant on each other;the "HEART ATTACK"and "Congestive Cardio Renal Syndrome"along with the reduced unstastainable heart function would result in my death.This was the diagnoses according to Dr. Ikbau,Dr.Duvall,Dr.Mathews and Dr.Sherry.However in the subsequebt six(6)months of hospitaization I slowly improved and made A measured recovery,although I still suffer from the affects of this incident to this very day,greatly affecting the quality of my life and longevity of my life expectancy.Those involved and responsable for this crime and others did corruptly endeavor to,and did so,impede,cause,influence and obstruct the Due Administration of Justice and violate Edmond Hudmond Smith IV's Constitutional guaranteed Civil Rights,in these matters and the matters of United States v.Smith IV,Case No.1:08-00389-WS-C and Case No.1:09-00158-JTC-C(S.D.Ala.); Lexington Insurance Company v. Evan J.Wolfe,et al.,Case No 07-0322-WS-C(S.D.Ala.); Lexington Insurance Company v. Edmond H.Smith III,Case No. 07-0323-WS-C(S.D.Ala.);and Claims Service Provider,et al.,v. St. Paul Travelers Co.,INC., Case No. 06-2475(E.D. LA.) as referred to in racketeering acts ninety seven thrue one hundred and seven herein,with the intent to deceptively continue the deprival of justice,life,liberty and property in violation of Title 18,sections 1111, section 241,section 242 and section 1503.

RACKETEERING ACT ONE HUNDRED AND EIGHT

After somewhat of A measured recovery Edmond Hudmond Smith IV was transfered again,by air ambulance to Springfield Missouri Federal Medical Facility were upon the subsequent arrival of my legal documents and court case research documentation and case precident studies of the law,which arrived on or about MAY 8,2014 thrue June 18,2014,(B.O.P.) staff emploie A(G.KREBS) ramsacked my legal documentation,seizing important case precident legal study documents and cases printed off of Lexis Nexis,West Law and the institutional legal cumputors(that I had to purchase)along with my attorneys (550 Mega Bite C.D. disk)that had been pre-authorized by the B.O.P. region;with my proprietory buisness claims files,work product,court filings and actions along with incripted data pertanant to my case and vendication of my false inprisonment and previous civil cases.Co.(G.KREBS) and others did corruptly endeavor to,and did so,influence,impede and obstruct the Due Administration of Justice  in the matters of United States v. Smith IV,Case No. 1:08-00389-WS-C and Case No. 1:09-00158-JTC-CGB(S.D.Ala.);Lexington Insurance Company v. Edmond H.Smith III,Case No. 07-323-WS-C(S.D.Ala.);Lexington Insurance Company v. Evan J. Wolfe,et al., Case No. 07-322-WS-C(S.D.Ala.);and Claims service Provider et al., v. St.Paul Travelers Co., INC., Case No. 06-2475 (E.D.IA.)by and through the perloining of important proprietory legal properties and documentation,with the intent to impede and deceptively sabotage Edmond Hudmond Smith IV's access to regress and his rights under the sixth ammendment of the constitution to the courts,the United States Court of Appeals for the Eleventh Circuit,all in violation of (B.O.P)mandates,Codes of federal regulations and Title 18, United States Code,section 241,1503 and others.

RACKETEERING ACT ONE HUNDRED AND NINE

Edmond Hudmond Smith IV was transferred from Spring-field to Lexington Kentucky, Medical Facility by air ambulance and placed in inhumane squalered houseing conditions in common wealth dorm.On or about July 3,2015 in A subsequent wound care consult it was determined that I was ceptic.I was sent to the University of Kentucky Medical Hospital,were I was diagnosed with A severly infected broaken "CHARCO" left foot,that was originaly created by A amputation while illegaly detained and imprisoned in 2009-2010,that was unwarranted.During my false detainment and at all times since,it had never been corrected by the necessary sugical technique(Surgery),thus I had just been left with A broaken foot and to suffer.Between July 4,2015 and October 15,2015,due to the severe ceptism and infection (I) was forcebly dosed with A (I.V.) antibiotic "CEPHIPINE MAXIPINE",the problem  with this is that I was already on A water pill known as "FLOROSIMIDE".If anyone takes both these two drugs simutaneously it causes "Death',through kidney failure,liver failure,respiratory failure and (Heart) Cardio failure.This was known due to A(P.D.A.)"Prescription Drug Advisory",that all involved were legaly required to of known of.After weeks of sever suffering and A great dehab-ilitation in my health (I) Edmond Hudmond Smith IV,discovered the cause of my dehabil-itation,retrieved A faxed copy of the (P.D.A.) presented it to the Lexington medical department and forced A change in my treatment,ultimently saving my own life,and allowing for A recovery from my ceptism.However the incident permently diminished my kidney function and overall health?These wilfull errors by Lexington(B.O.P.)staff and others did corruptly endeavor to,and did so,influence,impede and obstruct the Due Adm-inistration of Justice as well as violate Edmond Hudmond Smith IV expectations of civil rights and the (F.I.M.R.A.),inthe matters of United States v.Smith IV,Case No.1:08-00389 -WS-C and Case No.1:09-00158-JTC-GGB(S.D.Ala.);Lexington Insurance Company v.Evan J. Wolfe,et al.,Case No. 07-0322-WS-C(S.D.Ala.);Lexington Insurance Company v. Edmond H. Smith III,Case No. 07-0323-WS-C(S.D.Ala.) and Claims service Provider,et al.,v. St. Paul Travelers Co.,INC., Case No. 06-2475(E.D.IA.)with the intent to deprive the petitioner deceptively of life,liberty and property in violation of United States Code Title 18,section 1503 and others.

### Racketering Act One Hundred And Ten

Due to the complications surrounding the acts cronicled in racketeering act one hundred and nine, Edmond Hudmond Smith IV was retaliated against again and transfered from Lexington Kentucky to federal U.S.P Terre Haute Indiana for a second time. On or about Febuary 18, 2018 a "habeas corpus" was granted to be heard by the Federal District Court for the Southern District of Indiana in 2:18-cv-00071-WTL Edmond Hudmond Smith IV vs J.E Krueger (warden), and he was ordered to "show cause" for my imprisonment in answering my petition. After not answering the petition or "show cause" orders of the court three times.  On the morning of May 23, 2018 the warden respondent J.E. Krueger intentionally instigated a confrontation in my cell to put me in his S.H.U, where Edmond Hudmond Smith IV was placed to be intentionally  infected with deadly ECOLI infection from being placed in a detention cell in raw sewage, with an open wound in my broken left foot, against medical insistance of dangers to my health. My left leg became severely infected with ECOLI. I was sent to Union Hospital where I was quarantined and treated for six (6) weeks with I.V. antibiotics causing a reduction of health and kidney function and need for dialisis due to near emminent death. J.E. Krueger in collusion with others in his B.O.P. staff did corruptly endevor to, and did so, attempt to influence, impede and obstruct the due administration of justice and retaliate against Edmond Hudmond Smith IV's civil rights in the matters of UNITED STATES vs. SMITH IV, case no.1:08-00389-WS-C and case no. 1:09-00158-JTC-GGB (S.D.Ala); LEXINGTON INSURANCE COMPANY v. EVAN J WOLFE, et al. Case no. 07-322-WS-C (S.D. Ala); LEXINGTON INSURANCE COMPANY v. EDMOND HUDMOND SMITH III, case no. 07-323-WS-C (S.D. Ala); and CLAIMS SERVICE PROVIDER, et al v. ST. PAUL TRAVELERS CO INC., case no. 06-2475 (E.D.LA) as has been described in all previous racketeering acts in violation of **18 USC §1503** and many others.

### Racketeering Act One Hundred And Eleven

On or about June 2015 I was informed of the untimely wrongful death of my mother, Linda Diann Smith III as a result of the unbearable hardships created and caused by the "felonies" and frauds unduely bestowed against our family and interests in corruptly endevoring to influence, impede, coerce, and obstruct the due administration of justice in the matters listed in racketeering acts one thru one hundred and eleven and in the cruel and unusual unconstatutional violations perpetrated against us all. On or about August to September 18, 2018, Edmond Hudmond Smith IV, due to the treatments given to counteract the "ECOLI" infections unduely caused by that same cruel and unusual tortuous treatments and retaliations by B.O.P. employees warden J.E. Krueger and his complicent staff, my kidney function was damaged once again to the point of having to be put on "dialisis" where I was administered a port and was treated at Terre Haute Union Hospital and then transfered back to Springfield Missouri Federal Medical Center for a second time where others did corruptly endevor to, and did so, influence, impede, and obstruct the due administration of justice in the matters od UNITED STATES v. SMITH IV, no. 1:08-00389-WS-C and case no. 1:09-00158-JTC-GGB (S.D.Ala); LEXINGTON INSURANCE COMPANY v. EVAN J. WOLFE, et al. Case no. 07-322-WS-C (S.D.Ala); LEXINGTON INSURANCE COMPANY v. EDMOND HUDMOND SMITH III,case no. 07-323-WS-C (S.D. Ala); and CLAIMS SERVICE PROVIDER, et al v. ST. PAUL TRAVELERS CO INC., case no. 06-2475 (E.D.LA.) as described in and referred to in racketeering acts one thru one hundred and eleven witholding this evidence from a court of the United States or any United States Court of Appeals or the Court of Appeals for the Eleventh Circuit, in violations of **Title 18 USC § 1503** and **§1111.**

## RACKETEERING ACT ONE HUNDRED AND TWELVE

On or about Febuary 18,2018, A "HABEAS CORPUS" SUIT (2:18-00309-WTL-MJB) was granted  in the United States District Court for the Southern District of Indiana, Terre Haute Division against J.E.Krueger(Warden) the respondant of the United States and they were court ordered to "Show Cause" why I was being imprisoned without cause, which they failed to do after multiple extensions,up and thrue October 22,2018 till December 3,2018,on DECEMBER 4,2018 I recieved correspondance from the court claiming the United States Attorneys (A.U.S.A.),had filed A response on  October 19,2018,even though I had not recieved it?As legal records have established per judicial notice the fact's require A exhoneration and the realization that serious conflicts of law and justice are self evident  ariseing from legal fact's,as have been descibed in  racketeering act's one through one hundred and twelve.This has corruptly endeavors to, and did so,influence,impede and obstruct the Due Administration of Justice in the matters of Edmond huxmond Smith IV V. United States of America,Case No.1:08-00389-WS -Cand Case No. 1:09-00158-JTC-ggb(S.D.Ala.);Lexington Insurance Company v. Evan J. Wolfe,et al.,Case No. 07-0322-WS-C(S.D.Ala);Lexington Insurance Company v. Edmond H. Smith III,Case No. 07-0323-WS-C(S.D.Ala.);and Claims Service Provider,et al., v. the St.Paul TRAVELERS Co.,INC.,Case No. 06-2475 (E.D.LA.)to any United States Court of proper jurisdiction or of A appeals court in the Eleventh Circuit,in violations of Title 18,United States Code,section 1503 and many others.

Post Script Reserved

Addendum

HENCEFOURTH,from January or Febuary 2010,the criminal,and con-
tinued Racketeering act's perpetrated against Edmond H.Smith IV,
his Family,Freedoms,Constitutional Rights,Priveledges,Properties
and Buisness Entities,are too valuminous,and extensive to cronicle
or list here at this time.However they have been preserved for
future maturation at A later date,with evidence and documentation
inclusive of participants,Act's,place,time's and date's.i.e.(BIVENS
V. UNITED STATES)  Unfortunently Edmond H.Smith IV,has also at no
fault of his own; been made A material wittness to multiple other
Goverment Criminal Act's,inclusive but not limited to at least one
act of "MURDER". I Edmond H.Smith IV stands prepaired to discuss
all,and prove the validity of these statements of fact,at whatever
time it is necessary,and appropriately chosen,to A United States
Law enforcement officer or United States Judge in the pursuit of
the Due Administration Of Justice.

Sincerely: _Edmond H.K.Smith IV_
Edmond H. Smith IV

The following is a list of

## Attachment List / Explanation of Evidence

The following list of initial attachments serves the purpose of proving, beyond any reasonable doubt that crimes are being perpetrated upon Edmond Hudmond Smith IV by **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorneys, ALABAMA BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorneys and the corrupted law enforcement officers who do their dirty work, They framed, and falsely imprisoned a 100% innocent man, unlawfully and fraudulently sentancing him to 780 months in federal prison.**

**Attachment 1** consists of three documents. The first document is titled **"JUDGEMENT IN A CRIMINAL CASE"** and reads **"UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF ALABAMA"** across the top of the page. The case number on the document is 1:08-cr-00389-001. This unlawful, fraudulent and comleetly 100% bogus document was signed by **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc attorney** falsely impersonating a Senior United States District Court Judge, **Jack T. Camp.**

The second document, in attachment 1 is a copy of the stenographer's record of a side bar conversation between **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc.,** atto **attorney Jack T. Camp,** and fellow conspirator, **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorney (AUSA / "Assistant United States Attorney) David Goldberg.**

The third document, in attachment 1, is a document titled **"Jack Camp, Senior Federal Judge, Pleads Guilty To 2 Drug Charges"** This document tones down what actually happened, the truth behind the drug charges. A research of the United States Public Record, and a google search will reveal that **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc.,** attorney **Jack T. Camp** got busted with **10 kilos of cocaine, 2 prostitutes, 4 pistols, and a young male child, under age 10 that Jack T. Camp was having pedophile sexual relations with.**

Jack T. Camp's unlawful, fraudulent, and 100% compleetly bogus document, at attachment 1, titled **"JUDGMENT IN A CRIMINAL CASE"** is unlawful, fraudulent, and 100% compleetly bogus for the following (not limited to) reasons;

**1)** The document does not contain the proper seals, and signatures, to be a valid judgment pursuant with **1 USC §114, and 28 USC §1691** which are both codified, and cited below.

**TITLE 28 UNITED STATES CODE. JUDICIARY AND JUDICIAL PROCEDURE. PART V. PROCEDURE. CHAPTER 113. PROCESS. §1691 Seal and teste of process.**
All writs and process issuing from a court of the United States shall be under the seal of the court and signed by the clerk thereof.

**TITLE 1 UNITED STATES CODE. GENERAL PROVISIONS. CHAPTER 2. ACTS AND RESOLUTIONS: FORMALITI FORMALITIES OF ENACIMENT; REPEALS; SEALING OF INSTRUMENTS. §114 Sealing of instruments.**
In all cases where a seal is necessary by law to any commission, process, or other instrument provided for by the laws of congress, it shall be lawful to affix the proper seal by making an impression therewith directly on the paper to which such seal is necessary; which shall be as valid as if made on wax or other adhesive substance.

**2)** The second document, at attachment 1, the steriographer's record of a side bar conversation between **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorneys Jack T. Camp** and **David Goldberg (AUSA / Assistant United States Attorney)** clearly shows that a conversation between **Jack T. Camp** and **David Goldberg** took place, in which **David Goldberg** says to **Jack T. Camp** verbatim "there is no conviction" refering to the fact that Edmond Hudmond Smith IV, has no criminal convictions, what-so-ever, and he was being falsely, and malisciously prosecuted for being a "felon" in posession of ammunition

Attachment 2 consists of an unlawful and fraudulent 100% compleetly bogus document titled **"GRAND JURY NO. 168 B"** initiated and placed into motion by defendant **John M. Tyson Jr,** in his racketeering acts of having Edmond Hudmond Smith IV falsely charged with crimes that he did not commit. A review of the public record, pertaining to the **"GRAND JURY NO. 169 B"** Indictment at attachment 2, will prove that the charges were dismissed.

Additionally, the document is unlawful, fraudulent and 100% compleetly bogus due to its not containing the proper seals and signatures, pursuant with 28 USC §1691, Seal and SC **teste of process,** and 1 USC §114 **Sealing of instruments.**

Attachment 3 consists of an unlawful, fraudulent and 100% compleetly bogus document titled **"SEARCH WARRANT"** signed by defendant, **James William Hardesty. James William Hardesty** is an **ALABAMA BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorney** falsely impersonating a District Court Judge.

The document titled **"SEARCH WARRANT",** at attachment 3, is unlawful, fraudulent, and 100% compleetly bogus for the following (not limited to) reasons:

**1)** It does not contain the proper seals and signatures, pursuant with 28 USC §1691 **Seal and teste of process,** and 1 USC §114 **Sealing of instruments** to be a valid document.

**2)** It was issued by **ALABAMA BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorney James William Hardesty,** falsely impersonating a District Court Judge, in violation of **Federal Rules of Criminal Procedure Rule 4.1(a)(1)(2)(A)** with no testimony under oath to support the issuance of the warrant, no affidavit in support of issuing the warrant, and no record of of testimony, nor exhibits, in support of issuing the warrant.

**3)** The ammo confiscated, is the ammo that **AMERICAN BRITISH ACCREDITED REGISTRY** ASSOCIATIO **ASSOCIATION Inc., attorney Jack T. Camp** used to falsely convict Edmond Hudmond Smith IV of "felon in posession of ammunition" (attachment 1) and falsely imprison him, even though Edmond Hudmond Smith IV **has no criminal record what-so-ever!!!**

Attachment 4 consists of two documents, each titled **"ORDER"** and written by **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc attorney (defendent)** falsely impersonating a "United States District Court Judge" **William H. Steele.** Both documents titled **"ORDER",** authored by **William H. Steele** are unlawful, fraudulent, and 100% compleetly bogus for the following (not limited to) reasons:

**1)** Neither document contains the proper seal and signatures to be a bona fide, properly processed, and issued writ, pursuant with **28 USC §1691 Seal and teste of process,** and 1U 1 USC §114 **Sealing of instruments.**

**2)** Both unlawful, fraudulent and 100% compleetly bogus documents contain a plethora of **bold face lies,** (for brevety we will not be pointing out all of the lies at this time. They will all be presented at trial) the most obvious **bold face lie** being the fact that **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorney William H. Steele** falsely claims Edmond Hudmond Smith IV to be a felon in posession of ammunition, and has chosen to partake in the unlawful, fraudulent, maliscious, and false prosecution.

Attachment 5 consists of ~~three~~ Five documents that are all a part of a single filing that I helped Edmond Hudmond Smith IV write, and file. **To this date we have recieved absolutely no response what-so-ever** (this is a typical, and standard, routene and systematic procedure with the vast majority of my court filings. **The courts complete and utter failure to respond!!!!**) pertaining to the filing / writing at **attachment 5.**

The first document at attachment 5 was written by me, **Louis Holger, Article III**

**United States Supreme Court Justice,** and is titled "PETITIONERS RESPONSE TO William T. Lawrence FILINGS AT DOCUMENT 42, AND 43, TITLED 'ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, DENYING PENDING MOTIONS, DENYING CERTIFICATE OF APPEALABILITY, AND DIRECTING ENTRY OF FINAL JUDGEMENT' AND FINAL JUDGEMENT'"

The second document at attachment 5  was written by **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc.,** attorney **William T. Lawrence,** falsely impersonating a "United States District Court Judge" and is titled "ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, DENYING PENDING MOTIONS, DENYING CERTIFICATE OF APPEALABILITY, AND DIRECTING ENTRY OF FINAL JUDGEMENT"

The third document, at attachment 5, was written by **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc.,** attorney **William T. Lawrence,** falsely impersonating a "United States District Court Judge" and is titled **"FINAL JUDGEMENT"**

The fourth document, at attachment 5, was written by **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc.,** attorney **William T. Lawrence,** falsely impersonating a "United States District Court Judge" and is titled **"Order Denying Motion for Ruling".**

The fifth document, at attachment 5, was written by **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc.,** attorney **William T. Lawrence,** falsely impersonating a "United States District Court Judge" and is titled "Order Denying Motion to Court Clerk and Court Court"

Documents 2, 3, 4, and 5 at attachment 5 are unlawful, fraudulent, and 100% compleetly bogus, due to the fact that (mot limited to) they all contain multiple **bold face lies,** they are written in criminal pursuit of a 100% compleetly unlawful, fraudulent, and malicious false prosecution, with **malice aforethought,** and they are not written and filed pursuant to **1 USC §114 Sealing of instruments,** and / or **28 USC §1691 Seal and teste of process.**

**Attachment 6** consistd of 9 seperate affidavits from people supporting Edmond Hudmond Smith IV, and explaing the truth about what they have seen happen, pertaining to the crimes that have been perpetrated upon Edmond Hudmond Smith IV, and the travesties of justice.

Document one, at attachment 6 is an affidavit from Dr. Jimmy Steger, N,D.,Ph.D., D.M.X. Document two, at attachment 6, is an affidavit from Rick F. Bradley. Document three, at attachment 6, is a second affidavit from Rick F. Bradley (Rick F. Bradley is the Sgt. of Arms at the Great Southern Outdoors Foundation and Institute). Document four, at attachment 6, is an affidavit from (electrical contractor, owner of DEUITT ELECTRICAL) Glenn B. Deuitt, and Edmond Hudmond Smith III (Edmond Hudmond Smith IV's father). Document five, at attachment 6, is an affidavit from Lauren E. Davis. Document six, at attachment 6, is an affidavit from Sandra Davis. Document seven, at attachment 6, is an affidavit from Paul A. McAleer (owner of KRISPY KREME Inc., donut franchise. His granddaddy founded the corporation). Document eight, at attachment 6, is a second affidavit from Paul A. McAleer. Document nine, at attachment 6, is an affidavit from Edmond Hudmond Smith III.

**Attachment 7** consists of three seperate documents. These documents serve the purpose of providing public awareness as to the size, and scope of the TOP CATASTROPHE CLAIM SERVICE PROVIDER Inc., as well as to attest to the corruption, and fraud that was being perpetrated upon Edmond Hudmond Smith IV (Owner of TOP CATASTROPHE CLAIM SERVICE PROVIDER Inc.) by **NATIONAL CLAIMS ADMINISTRATORS Inc., INTEGRATED CLAIMS SERVICES Inc.,** employees (defendents) **Rick Clark, Mark Losier, Bob Barnett, Linda Swope, LeeAnn Carpenter.**

Document one, at attachment 7, consists of an affidavit by Donald Oglesby (Sr. Field Adjuster for TOP CATASTROPHE CLAIM SERVICE PROVIDER Inc.). Document two, at attachment 7 consists of an affidavit by Chad Brown (Data Transfer Specialist for TOP CATASTROPHE CLAIM SERVICE PROVIDER Inc.). Document three, at attachment 7, consistd of an employee

roster for TOP CATROPHE CLAIM SERVICE PROVIDER Inc., showing that Edmond Hudmond Smith IV employeed 216, or more, people in this **1 of 5  seperate corporations owned by Edmond Hudmond Smith IV**

**Attachment 8** consists of an email from an attorney named Edward Massey, to "District Attorney" (defendent) <u>John M. Tyson, Jr.</u>, in which Mr. Massey explains certain crimes that had been perpetrated upon Edmond Hudmond Smith IV, his family, and his business, and Mr. Massey requests "District Attorney" (defendent) John M. Tyson Jr., to assist with getting a report made by law enforcement, and the Attorney General's Office. This email was ignored. **No report was ever made.** This is due to the fact that **The people in charge of making the reports are the ones perpetrating the crimes!!!**

**Attachment 9** consists of six seperate documents. These documents serve the purpose of providing the public with evidence pertaining to the physical assault of Edmond Hudmond Smith IV, the armed assault, at gunpoint, of a waitress, Nancy Barnett in the armed robbery / theft of Edmond Hudmond Smith IV's $1,000,000.00 (one million) "Hooters Boat".

The first document, at attachment 9, consists of an affidavit by Nancy Barnett. She explains that she was a witness to the theft of the "Hooters Boat", and had one of the robbers, put a gun in her face during the armed robbery of the $1,000,000.00 "Hooters Boat". The second document, at attachment 9, consists of two pages of x-rays of Edmond Hudmond Smith IV's left foot, having been broken (multiple bones), as a result of being ran over during the armed assault, and armed robbery of the $1,000,000.00 "Hooters Boat". The x-rays at the tops of the pages are x-rays of normal, unbroken, feet. The x-rays at the bottom of the pages are x-rays of Edmond Hudmond Smith IV's broken foot. The third document, at attachment 9, consists of the Certificate of Title for the $1,000,000.00 "Hooters Boat". The fourth document, at attachment 9, consists of the Certificate of Origin for the $1,000,000.00 "Hooters Boat". The fifth document, at attachment 9, consists of a reciept from Simco Marine showing $32,900.00 in damages to the "Hooters Boat" boat lift that was a result of a second, compleetly seperate, attempt to steal the $1,000,000.00 "Hooters Boat". There was three, total, seperate attempts to steal the $1,000,000.00 "Hooters Boat" and to this day **law enforcement agents, United States District Attorneys, and Attorney's General have compleetly failed to make any type of police report, or investigative report what-so-ever!!!!** The sixth document, at attachment 9, consists of photo images of the $1,000,000.00 "Hooters Boat"

**Attachment 10** consists of **six** documents. These documents serve the purpose of providing the public with evidence pertaining to the theft of a $122,287.00 (one hundred twenty two thousand and two hundred eighty seven dollars) Gulfstream RV Motorhome, as well as proof of ownership, showing Edmond Hudmond Smith IV as the owner of the RV. I would like to remind the public that **law enforcement agents, United States District Attorneys, and Attorney's General have compleetly failed to make any type of police report, or investigative report what-so-ever!!!!** They have instead chosen to offer sanctuary, and protection to violent armed robbers, and to **unlawfully, fraudulently, and maliciously, with malice aforethought, falsely prosecute a 100% innocent man,** and **sanctioning the theft /robbery of tens of millions of dollars in cash and assets, and attempting, repeatedly, to thieve / rob hundreds of millions of dollars in homes, proper property, other assets, and alow the unlawful renig on a multi billion dollar insurance contract (to provide services).**

Document one, at attachment 10 is an affidavit by Lauren Elizabeth Davis. In this affidavit, Lauren Elizabeth Davis explains her experience with **Philip Coggins** and his involvement in the theft of the $122,287.00 Gulfstream RV Motorhome (**Phillip Coggins** is a defendent).

Document two, at attachment 10, is an affidavit by Edmond Hudmond Smith III, explaining his overhearing a telephone conversation between (dedendent) **Phillip Coggin,** and (defendent) **Mike Parker** in which they were conspiring the theft of the $122,287.00 Gulfstream **RV** Motorhome.

Document three, at attachment 10, is a purchase agreement ......

Document three, at attachment 10, is a purchase agreement between SUN COAST RV and Edmond Hudmond Smith IV, purchasing the $122,287.00 Gulfstream RV Motorhome.

Document four, at attachment 10, is an APPLICATION FOR CERTIFICATE OF TITLE WITH/WITHOUT REGISTRATION applying for a title for the $122,287.00 Gulfstream RV Motorhome.

Document five, at attachment 10, is a CERTIFICATE OF ORIGIN FOR A VEHICLE pertaining to the $122,287.00 Gulfstream RV Motorhome.

Document six, at attachment 10, is an email between (defendent) **Phillip Coggin**, and (defendent) **Mike Parker,** in which **Phillip Coggin** sent an email to **Mike Parker** and admitted, in the email to the theft of the $122,287.00 Gulfstream RV Motorhome, and to having conspired with **Mike Parker** to acomplish their mutual goal of the theft of the $122,287.00 Gulfstream RV Motorhome, and to extort Edmond Hudmond Smith IV for over $100,000.00 in exchange for the return of the $122,287.00 Gulfstream RV Motorhome.

**Attachment 11** consists of two seperate documents, the first being a Freedom of Information Act / Privacy Act Request, from Edmond Hudmond Smith, to the Bureau of Alcohol, Tobacco, Firearms and Explosives, requesting a complete records check pertaining to their records on Edmond Hudmond Smith IV. The second is the response from the Bureau of Alcohol, Tobacco, Firearms and Explosives confirming that they had no records in their file of Edmond Hudmond Smith IV ever having been convicted of any felony, nor any other crime that would cause him to lose his right to posess a firearm, nor ammunition.

**Attachment 12** consists of a copy of the contract to provide services between CLAIMS SERVICE PROVIDER Inc., (Edmond Hudmond Smith IV's disaster relief corporation) and NATIONAL CLAIMS ADMINISTRATORS Inc., in which NATIONAL CLAIMS ADMINISTRATORS Inc agreed to pay CLAIMS SERVICE PROVIDER Inc., "5% override on the gross fee billing for the duration of the assignment or two years." 5% override on the gross fee billing = **5% of $187 billion dollars!!** as **$187 billion dollars was the total ammount in damages for commercial and industrial claims, flood, wind and buisness interruption damages caused by hurricane Katrina, and hurricane Rita,based upon estimates and adjustments made by CLAIM SERVICE PROVIDER.** The copy of the contract to provide services, at attachment 12, contains the signatures of Mark Losier, CEO of NATIONAL CLAIMS ADMINISTRATOR Inc., Edmond Hudmond Smith IV, CEO, and owner, of CLAIMS SERVICE PROVIDER Inc., and several others.

**Attachment 13** consists of three seperate documents. These documents serve the purpose of raising public awareness, and providing additional evidence, pertaining to an initial lawsuit that was filed, in an attempt to get justice served regarding these matters. A review of the public record, pertaining to this initial lawsuit will reveal that the "judge" assigned to the case was either **compleetly incompetent, or corrupted,** and failed to write legitament orders, inthe best interest of justice.

Document one, at attachment 13, is a "Draft dictation in Top Catastrophe", written by an attorney named Johnny Denenea, Jr. This draft dictation serves the purpose of providing the public with a brief synopsis, or outline of the lawsuit. Attorney, Johnny Denenea, Jr., quit providing services to Edmond Hudmond Smith IV, after black vehicles with tinted windows so dark that you could not see into them, began sitting outside of his office, stalking him, and he had strangers after exiting the vehicles tell him something to the extent of "Johnny, you have a beautiful wife, and a beautiful little daughter, and a nice buisness here in New Orleans. It sure would be a shame if you lost it all over Edmond Smith's catastropy claims deal"

Document two, at attachment 13, is a copy of the lawsuit that was written, and filed by attorney Johnny Denenea, Jr.

Document three, at attachment 13, is a news article in support of raising public awareness as to the fact that SAINT PAUL TRAVELERS COMPANY Inc., was being examined based upon market conduct, and complaints by consumers.

Attachment 14 consists of three seperate documents. These documents serve the purpose of raising public awareness, and proving Edmond Hudmond Smith IV's ownership of the home (GREAT SOUTHERN OUTDOORS FOUNDATION AND INSTITUTE is the listed owner, and Edmond Hudmond Smith IV is the owner of the GREAT SOUTHERN OUTDOORS FOUNDATION AND INSTITUTE), located at 3900 Winsor Road, Theodore, Alabama 36582. This is the same home listed in the racketeering acts, and was sevearly vandalised, burglarised, and even was attempted to unlafully and fraudulently be sold, with the culprits having conspired with **AMERICAN BRITISH ACCREDITED REGISTRY ASSOCIATION Inc.,attorneys** and **ALABAMA BRITISH ACCREDITED REGISTRY ASSOCIATION Inc., attorneys** falsely impersonating a wide variety of "Judges"(**B.J. Lyons**) and corrupted law enforcement officers who do their dirty work (it is all listed in the list of racketeering acts 1 - 112+) to even sell the property, by placing it up for sale, when they thought Edmond Hudmond Smith had been killed, but in reality, he was in Costa Rica getting life saving medical treatment. Edmond Hudmond Smith IV was able to gain full recovery of the home after he returned to the country.

Document one, at attachment 14, is Edmond Hudmond Smith IV's offer to purchase an asset of the Sunnebourne Estate, being the home located at 3900 Winsor Road, Theodore Alabama 36582.

Document two, at attachment 14, is a Warranty Deed transfering ownership from Real Property Book 5792, Page 985 to the GREAT SOUTHERN OUTDOORS FOUNDATION AND INSTITUTE

Document three, at attachment 14, consists of ALABAMA SECRETARY OF STATE, and IRS documents showing ownership of the GREAT SOUTHERN OUTDOORS FOUNDATION AND INSTITUTE Inc., to be owned by Edmond Hudmond Smith IV.

Attachment 15 consists of a list of corporate entities owned by Edmond Hudmond Smith IV, of which were Call a part of the attempted theft by named defendants, in their having committed racketeering acts, and travesties of justice upon the Smith Family.

Attachment 16 consists of crimes and the initial attempt at figuring out ammounts in damages (redeemed in lawful money pursuant with **12 USC §411**) owed. This list of crimes, at attachment 16, is not a full list of crimes committed upon Edmond Hudmond Smith IV. It is simply a compilation of known codifications, and the full list of crimes is yet to be determined. The list of ammounts owed, in damages, at attachment 16, is not a full list of damages owed to Edmond Hudmond Smith IV. It is simply a compilation of what is easilly, and undeniably determined, and **in no way what-so-ever is this to be considered the full ammount. The full ammount will be determined by a jury, at a later date IN THE VERY NEAR FUTURE!**

## "Outrageous Government Conduct" Case Law.

"The outrageous conduct defense is an extraordinary defense that will only be applied in the most egregious circumstances; to preval, the defendant must show that the challenged conduct violated notions of fundamental fairness and is shocking to the universal sense of justice" **189 F.3d 1239, U.S. v. Diaz (C.A.10(N.M.)1999)**

"THE GOVERNMENT'S INVOLVEMENT IN "MANUFACTURING" THE DEFENDANT'S CRIME"
**813 F.2d 1462, U.S. v. SIMPSON, (C.A.9 (Cal.) 1987)**
---------- **Exerpt from page 813 F.2d 1470**

The outrageous conduct defense is available only when "the Government is so involved in the criminal endeavor that it shocks our sense of justice." >**United States v. So, 755 F.2d 1350, 1353 (9th Cir.1985).**

**Demand For Redress Of Grievance**

I, Edmond Hudmond Smith IV, a People of the United States, a living, breathing human being with a heart beat, in this **Article III United States Supreme Court of Record**, with the assistance of **Article III United States Supreme Court Justice, Louis Holger**, demand that the unlawful and fraudulent conviction in case no. *1:C8-00389-WS-C* and case no. *1:09-00158-JTC-GGB* be immediately overturned, and I be released from this unlawful and fraudulent detainment in federal prison.

I additionally demand that the Racketeering Act conspirators (Racketeer Influenced And Corrupt Organizations corrupted corporate financial agents), named defendants, be held accountable for their criminal actions, to the fullest extent of the law.

I additionally demand to be fully compensated financially, pursuant with what is written law, that I AM owed, as well as punative damages. This monetary ammount totals well over **$38,000,000,000.00 (thirty eight billion dollars redeemed in lawful money pursuant with 12 USC §411).** The actual ammount is to be determined by an honest, impartial fair jury at the time of the jury trial, and **shall** be based upon financial listings at attachment 16. **All finances awarded at jury trial are redeemed in lawful money pursuant with 12 USC §411.**



Louis Holger Dec 10-2018 _____ Date
Louis Holger
Article III United States
Supreme Court Justice
-Galactic Federation of Light-

Edmond Hudmond Smith IV _____ 12/12/2018 Date
Edmond Hudmond Smith IV
A People of the United States
-Galactic Federation of Light-

Self Notary w/
two left thumb
prints.

SELF NOTARY
TWO LEFT & RIGHT THUMB PRINTS

All initial evidence has been presented and I am ready for jury trial. I have an abundance of additional evidence, including audio tapes of corrupt attorneys, judges and law enforcement agents conspiring to commit these crimes against myself, my interests and attempting to destroy and ruin our lives.

Additionally, Louis Holger is A party to this matter and the Clerk of Court is instructed to provide him with A copy of all filings, including this initial filing at docket #

SINCERELY: _____
EDMOND HUDMOND SMITH IV

page 145 of 145

AO 245B (Rev. 06/05) Judgment in a Criminal Case:  Sheet 1                    (PACTS #4481)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**V.** | **JUDGMENT IN A CRIMINAL CASE**<br>(For Offenses Committed On or After November 1, 1987) |
| **EDMOND HUDMOND SMITH, IV** | CASE NUMBER: **1:08-00389-001**<br>USM NUMBER: **07241-059** |

**THE DEFENDANT:**

       Thomas Milton Haas, Sr.
       **Defendant's Attorney**

( )    pleaded guilty to count(s) __.

( )    pleaded nolo contendere to count(s) __ which was accepted by the court.

(X)    was found guilty on count(s) _ONE of the indictment_ after a plea of not guilty.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count No.(s) |
|---|---|---|---|
| 18:922(g)(1) | felon in possession of ammunition | November 21, 2008 | 1 |

      The defendant is sentenced as provided in pages 2 through **_6_** of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

( )    The defendant has been found not guilty on count(s) __.

( )    Count(s) __ is/are dismissed on the motion of the United States.

      IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

    January 08, 2010
    Date of Imposition of Judgment

    *Jack Camp*
    SENIOR UNITED STATES DISTRICT JUDGE

    *January 12, 2010*
    Date

Attachment 1

Judgment 2

AO 245B (Rev. 06/05) Judgment in a Criminal Case: Sheet 2 - Imprisonment

Defendant: **EDMOND HUDMOND SMITH, IV**
Case Number: **1:08-00389-001**

# IMPRISONMENT

  The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total **term** of **40 MONTHS** .

  ( ) <u>Special Conditions:</u>

  (X) The court makes the following recommendations to the Bureau of Prisons: **That the defendant be provided mental health treatment and/or counseling, and medical treatment in an appropriate manner to address both his medical condition, as well as his mental health.**

(X) The defendant is remanded to the custody of the United States Marshal.

( ) The defendant shall surrender to the United States Marshal for this district:

  ( ) at _____ a.m./p.m. on _____.
  ( ) as notified by the United States Marshal.

( ) The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ( ) before 2 p.m. on _____.
  ( ) as notified by the United States Marshal.
  ( ) as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____ at _____
with a certified copy of this judgment.

           <u>UNITED STATES MARSHAL</u>

         By_____
          Deputy U.S. Marshal

Case 1:08-cr-00389-JC-C    Document 61    Filed 01/13/10    Page 1 of 6

AO 245B (Rev. 06/05) Judgment in a Criminal Case:  Sheet 1                    (PACTS #4481)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**V.** | **JUDGMENT IN A CRIMINAL CASE**<br>(For Offenses Committed On or After November 1, 1987) |
| **EDMOND HUDMOND SMITH, IV** | CASE NUMBER: 1:08-00389-001<br>USM NUMBER: 07241-059 |

**THE DEFENDANT:**

    Thomas Milton Haas, Sr.
    **Defendant's Attorney**

( )    pleaded guilty to count(s) __.

( )    pleaded nolo contendere to count(s) __ which was accepted by the court.

(X)    was found guilty on count(s) _ONE of the indictment_ after a plea of not guilty.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count No.(s) |
|---|---|---|---|
| 18:922(g)(1) | felon in possession of ammunition | November 21, 2008 | 1 |

    The defendant is sentenced as provided in pages 2 through **_6_** of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

( )    The defendant has been found not guilty on count(s) __.

( )    Count(s) __ is/are dismissed on the motion of the United States.

    IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

    January 08, 2010
    Date of Imposition of Judgment

    _Jack Camp_
    SENIOR UNITED STATES DISTRICT JUDGE

    _January 12, 2010_
    Date

Judgment 2

AO 245B (Rev. 06/05) Judgment in a Criminal Case: Sheet 2 - Imprisonment

Defendant: **EDMOND HUDMOND SMITH, IV**
Case Number: **1:08-00389-001**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total **term of  40 MONTHS    .**

()    <u>Special Conditions:</u>

(X)    The court makes the following recommendations to the Bureau of Prisons: **That the defendant be provided mental health treatment and/or counseling, and medical treatment in an appropriate manner to address both his medical condition, as well as his mental health.**

(X)    The defendant is remanded to the custody of the United States Marshal.

()    The defendant shall surrender to the United States Marshal for this district:

     ()    at ____ a.m./p.m. on ____.
     ()    as notified by the United States Marshal.

()    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ()    before 2 p.m. on ____.
     ()    as notified by the United States Marshal.
     ()    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____ at _____ with a certified copy of this judgment.

                                 <u>UNITED STATES MARSHAL</u>

                    By_____
                       Deputy U.S. Marshal

Judgment 3

AO 245B (Rev. 06/05) Judgment in a Criminal Case: Sheet 3 - Supervised Release

Defendant: **EDMOND HUDMOND SMITH, IV**
Case Number: **1:08-00389-001**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of  **3 YEARS** .

**(X)**  <u>Special Conditions</u>:  **The defendant shall participate in a program of mental health treatment and/or counseling as directed by the probation office.**

     *For offenses committed on or after September 13, 1994:*   The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

( )  The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable)

( )  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable)

( )  The defendant shall participate in an approved program for domestic violence. (Check, if applicable)

**(X)  The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.**

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.  The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

**The defendant shall not commit another federal, state or local crime.**
**The defendant shall not illegally possess a controlled substance.**
**The defendant shall comply with the standard conditions that have been adopted by this court (Probation Form 7a).**
**The defendant shall also comply with the additional conditions on the** <u>attached page</u> **(if applicable).**

---

## See Page 4 for the
## "STANDARD CONDITIONS OF SUPERVISION"

Judgment 4

AO 245B (Rev. 06/05) Judgment in a Criminal Case: Sheet 3 - Supervised Release
_____
Defendant: **EDMOND HUDMOND SMITH, IV**
Case Number: **1:08-00389-001**

# SUPERVISED RELEASE

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement;

14) the defendant shall cooperate, as directed by the probation officer, in the collection of DNA, if applicable, under the provisions of 18 U.S.C. §§ 3563(a)(9) and 3583(d) for those defendants convicted of qualifying offenses.

ATTACHMENT I page 6 of 12

Judgment 5

AO 245B (Rev. 06/05) Judgment in a Criminal Case: Sheet 5, Part A - Criminal Monetary Penalties

Defendant: **EDMOND HUDMOND SMITH, IV**
Case Number: **1:08-00389-001**

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| **Totals:** | $ 100.00 | $0.00 | $0.00 |

( )    The determination of restitution is deferred until _____.  An Amended Judgment in a Criminal Case (AO 245C) will be entered after such a determination.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below. **(or see attached)** However, pursuant to 18 U.S.C. § 3644(i), all non-federal victims must be paid in full prior to the United States receiving payment.

( )    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

| Name(s) and Address(es) of Payee(s) | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or % of Payment |
|---|---|---|---|
| **TOTALS:** | $ | $ | |

( )    If applicable, restitution amount ordered pursuant to plea agreement.  $

( )    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default, pursuant to 18 U.S.C. § 3612(g).

( )    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

( )    The interest requirement is waived for the ( ) fine and/or  ( ) restitution.

( )    The interest requirement for the  ( )  fine and/or  ( )  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code,  for offenses committed on or after September 13, 1994 but before April 23, 1996.

ATTACHMENT I page 7 of 12

**Judgment 6**

AO 245B (Rev. 06/05) Judgment in a Criminal Case:  Sheet 5,  Part B - Schedule of Payments

Defendant: **EDMOND HUDMOND SMITH, IV**
Case Number: **1:08-00389-001**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A      (X)  Lump sum payment of $ __100.00__ due immediately, balance due
          () not later than _____ , or () in accordance with () C, () D, () E or () F below; or

B      () Payment to begin immediately (may be combined with () C, () D, () E or () F below); or

C      () Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment;  or

D      () Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E      () Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to ay at that time; or

F      () Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are to be made to the clerk of court, unless otherwise directed by the court, the  probation officer, or the United States attorney.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

()    **Joint** and Several:

()    The defendant shall pay the cost of prosecution.

()    The defendant shall pay the following court cost(s):

()    The defendant shall **forfeit** the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment; (2) restitution principal; (3) restitution interest; (4) fine principal; (5) fine interest , (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

1    MR. STANKOSKI:  Judge, I'm going to object at this
2  point to that.  Mr. Goldberg knows that there was no
3  conviction for that, and it's improper to ask him.  He said
4  that's a lie.  And he cannot then go and try and impeach him
5  with evidence that there was an arrest or an arrest report
6  made.

7    THE COURT:  Okay.  Approach the bench, Counsel, and
8  let's sort out the procedure on this.

9    (Sidebar conference, on the record:)

10    THE COURT:  I think you are entitled to ask him
11  about his criminal record.

12    MR. GOLDBERG:  Uh-huh.

13    THE COURT:  But if he says no, then you've got to
14  either accept that, come up with a certified copy.

15    MR. GOLDBERG:  Yes, Your Honor.  And I am not
16  impeaching him with a prior conviction.  It's impeachment of
17  the testimony he gave.  I'm not -- there is no conviction.

18    THE COURT:  Okay.

19    MR. GOLDBERG:  But he lied on the witness stand --

20    THE COURT:  Well, then the way to do that is to ask
21  him a question, and when he answers the question, call his
22  attention to the time under oath and the deposition that he
23  answered that same question differently.

24    MR. GOLDBERG:  I thought that's what I did, but I
25  can rephrase.  I thought he said he would never take a life,

Jack Camp, Senior Federal Judge, Pleads Guilty To 2 Drug Charges

Submit Query

February 1, 2011



# Jack Camp, Senior Federal Judge, Pleads Guilty To 2 Drug Charges

GREG BLUESTEIN | 11/19/10 09:29 PM | AP

What's Your Reaction?

ATLANTA — A veteran federal judge who was arrested on charges that he bought and used drugs with a stripper pleaded guilty Friday to two drug-related charges, including a felony count of giving her cocaine even though he knew she was a convicted felon.

U.S. Senior Judge Jack T. Camp pleaded guilty to the felony charge of aiding and abetting a felon's possession of cocaine when he bought drugs for the stripper, who was secretly cooperating with authorities. He also pleaded guilty to two misdemeanors: possession of illegal drugs and illegally giving the stripper his government-issued laptop.

Camp, 67, could face up to four years in federal prison when he is sentenced March 4, but he is likely to get substantially less time. Federal sentencing guidelines recommend he serve four to 10 months in prison. Camp's legal team may ask for an even shorter sentence.

As part of the plea deal, Camp also resigned from the bench and agreed to cooperate with authorities looking into any of the cases he handled while he was being investigated.

When a judge asked Camp if the charges were accurate, he replied, "I regret ... I am embarrassed to say it is, your honor." Neither he nor his attorneys offered any explanation for his actions.

The charges against Camp, who is married with two grown children, were laid out in a shocking eight-page affidavit released days after his Oct. 1 arrest. The judge, who remains free on a $50,000 bond, was originally charged with four drug-related charges and one count of possessing firearms while illegally using drugs.

Authorities say a stripper, who previously had a felony drug trafficking conviction, had been working with the FBI since the spring to build a case against the judge. In exchange, prosecutors agreed not to charge her.

They also say Camp knew the stripper was a convicted felon because he asked a deputy marshal to look up her criminal record, telling the officer he was renting a house to her. Prosecutors had to prove that Camp knew she was a felon to land the more serious felony charge.

Camp's relationship with the dancer, who was identified only as CI-1 in the documents, appears to have begun in May when he received a dance from her -- along with her phone number -- at an Atlanta strip club, according to the affidavit.

————————————— ADVERTISEMENT —————————————

Authorities say when they met the next day at a hotel, he paid her to have sex with him and the two used cocaine together. Over the next few months, the two used cocaine and other drugs together at strip clubs and other places, and the judge would pay $40 to $50 to join her in getting high, according to the documents.

The relationship grew closer over the months. Prosecutors say the judge startled the stripper by following her to a suburban Atlanta house where she was buying drugs one day in June. She told authorities that he brought a semiautomatic handgun with him in case she needed protection, the affidavit said.

Jack Camp, Senior Federal Judge, Pleads Guilty To 2 Drug Charges                    Page 2 of 3

Prosecutors also said for the first time Friday that Camp gave the stripper his government-issued laptop in September, days after he complained that he needed a new one.

But their relationship unraveled in October.

First, Camp discussed with the stripper how he could help her with her criminal record, and advised her to tell potential employers it was a "minor offense" and that one of the judges on the court can explain it to him, according to the affidavit.

He then told her in a recorded phone call that he will "watch your back anytime" and boasted that he has two guns to "take care of any problems that come up."

A few hours later, the dancer asked Camp to follow her to a grocery store parking lot to meet a drug dealer, and Camp then gave the stripper $160 to buy the drugs from an undercover officer. About 10 minutes later, FBI agents swarmed the judge's car, where they also recovered two guns from his front seat.

Camp's arrest was a catastrophic downfall for the respected federal judge, a no-nonsense Vietnam War veteran who was appointed to the bench by Ronald Reagan in 1987.

He handled hundreds of cases during his tenure, including the 2004 sentencing of two men accused of killing DeKalb County Sheriff Derwin Brown. And he supervised several cases while being investigated, including an April trial involving a pilot who was acquitted by a jury on charges of shipping cocaine for drug traffickers.

The judge's arrest and prosecution created a mess in the busy Northern District of Georgia, which covers metro Atlanta. Senior U.S. District Judge Thomas Hogan from the District of Columbia, was assigned the case because the other judges recused themselves, and prosecutors from the Justice Department's central office flew in to handle the case.

Camp's friend Jud Starr said the judge will spend the next few months with his family, and that he hopes to "make amends to the community by finding ways to put his substantial experience and many talents to good use."

"Judge Camp holds himself accountable for his personal actions and will strive to better understand and overcome the causes of his poor judgment," said Starr, a Washington attorney who has known Camp for 40 years and was the best man at his wedding.

It's unclear whether any of the decisions Camp made while he was being investigated will be revisited, but several attorneys have filed appeals or signaled they would do so.

Starr, however, said Camp underwent an evaluation in October to explain his actions. Starr said the evaluation determined Camp had no issues with controlled substances and that his condition "did not affect his judicial decisions in any way."

| Jack Camp guilty |  |

**Videos**
**Web**
**Images**

Thomas sentenced to 5 years for terrorism offences. 31/03/2006 ...

Couric, Gibson falsely claim "no member" of Congress offered to ...

Michael Savage plays Dead Kennedys song "in some respect for" Sen ...

Jack Camp, Senior Federal Judge, Pleads Guilty To 2 Drug Charges

*Filed by Jeff Muskus*  |  Report Corrections

## More in Politics...

Comments
360
Pending Comments
0
View FAQ
View All
Favorites
Recency  |
Popularity
Page: **1** 2 3 4 5  Next ›  Last »  (12 total)
Page: **1** 2 3 4 5  Next ›  Last »  (12 total)




**GRAND JURY NO. 169 B**
CIRCUIT COURT OF MOBILE COUNTY

THE STATE OF ALABAMA,
MOBILE COUNTY,                                    August Session,        2007

The GRAND JURY of said County charge, that, before the finding of this indictment

Edmond Hudmond Smith IV

whose name is to the Grand Jury otherwise unknown than as stated,

did knowingly escape or attempt to escape from a penal facility, to-wit: **Mobile County Metro Jail**, in violation of §13A-10-32 of the Code of Alabama,

COUNT II
The GRAND JURY of said County charge, that, before the finding of this indictment
Edmond Hudmond Smith, IV,
whose name is to the Grand Jury otherwise unknown than as stated,

did knowingly escape or attempt to escape from the custody of **Ray Brazell**, a lawful officer of the **Community Corrections Electronic Monitoring Division**, in violation of §13A-10-33 of the Code of Alabama,

against the peace and dignity of the State of Alabama.

**JOHN M. TYSON, JR.**
District Attorney for the 13th Judicial Circuit of Alabama
(County of Mobile)

No Prosecutor

A True Bill

Foreperson of the Grand Jury

Bail fixed in open court at $ _N/B_ this the _24th_ day of August, 2007

Judge

Presented to the Court by the Foreperson of the Grand Jury in the presence of _16_ other Grand Jurors

Filed in open court this the _24th_ day of August, 2007

Clerk Circuit Court, Mobile, County, Alabama

W M 6-21-1966 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 Eyes:Blue Hair:Brown Ht:600 Wt:280 5205 Mickey Drive Mobile AL 36618 Count I Escape Second Degree/ Count II Escape Third Degree

Attachment II. Page 1 of 1

**M.C.S.O. FRAUD**

SEARCH WARRANT

## District Court of Alabama, Mobile County

To the Sheriff of Mobile County:

Affidavit having been made before me by Sergeant James Lackey, **MCSO** which establishes probable cause to make the search herein designated, to wit:

1. The ( ) PERSON (X) PLACE to be searched is in Mobile County and is described as:

   3900 Windsor Road South, Theodore, Alabama 36582. The residence is described as what appears to be a two story residence with the ground floor being brick and the top floor a light colored wood or siding and a brown shingled roof. The residence is located at the dead end of Windsor Road South and is built partially over Fowl River. Included are any vehicles and outbuildings on the property.

2. The PROPERTY to be searched for and seized, if found, is specifically described as:

   A 2003 Ford Excursion, black in color VIN:1FMSU43F83EA24411. Personal checks drawn on Wachovia bank account 1010109818959. These checks have the pre-printed name of Edmond H. Smith III. Any and all documents including, but not limited to, receipts, bills of sale, and contracts regarding the theft of the 2003 Ford Excursion.

   The GROUNDS for search are that said property

   (X) was stolen or embezzled
   (X) was a means of committing the felony of:      Theft of Property 1st (by deception)
                                                           A violation of Alabama Criminal Code
                                                           13A-8-3

   (X) will be used to commit the offense of:      Above mentioned Statute

You are hereby commanded to make said search in the daytime and seize said property, if found, leaving a copy of this warrant and a receipt for all property taken. You are further commanded to return this warrant with a written inventory of such property and bring the same before a Judge of the District Court of Alabama, Mobile County within ten days.

**ISSUED:** November 20, 2008 at 2:56 P.M. (1456 Hours).

_(signature)_
Judge, District Court of Alabama, Mobile County

RETURN: Search Made 11-21 2008 at 6:43 A.M.
The following property was seized:

FAX COVER SHEET FROM FAIRWAY AUTO SALES TO ED SMITH
COPY OF CONTRACT FOR 2003 FORD EXCURSION
COPY OF CERTIFICATE OF TITLE FROM INDIANA FOR 2003 FORD EXCURSION
WORK ORDER #7427 FROM RICKWOOD 1
WACHOVIA BANK STATEMENT FOR ACCT# 1010109818959
LEDGER STYLE CHECKBOOK FOR WACHOVIA ACC# 1010109818959

Attachment III. Page 1 of 1

— CONTINUED ON REVERSE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 08-00389-WS |
| | ) |
| EDMOND HUDMOND SMITH, IV, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on the United States' Motion in Limine (doc. 24). The Motion has been briefed on an expedited basis, and is now ripe for disposition.[1]

Defendant, Edmund Hudmond Smith, IV, is charged in this District Court in a single-count Indictment (doc. 1) with being a convicted felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). The Indictment identifies the underlying felony as a conviction for "Certain Persons Forbidden to Possess A Firearm on February 13, 2008, in the Circuit Court of Mobile County, Alabama, Case No. 2007-3375." Smith has maintained in these proceedings that the predicate offense of conviction was a misdemeanor, not a felony. The Government has now filed a Motion in Limine seeking to preclude Smith from advancing such an argument to the jury during trial. Defendant has responded by branding the Government's Motion as "an attempt to mislead the Court" and insisting that the underlying conviction was, in fact, a misdemeanor. (*See* doc. 28.)

The Eleventh Circuit and other appellate courts have found that the determination of whether an underlying conviction qualifies as a § 922(g)(1) predicate conviction is a question of law for the court, not a question of fact for the jury.[2] Defendant has not maintained otherwise;

---

[1] Defendant filed his Response to the Motion twice, both at documents 28 and 29. There being no reason for duplicate filings of the same Response, document 29 is **stricken** as redundant.

[2] *See, e.g., United States v. Ariton*, 546 F.3d 1355, 1358 (11th Cir. 2008) (finding that defendant's status as convicted felon for purposes of § 922(g)(1) prosecution "involved a question of law, rather than a question of fact for the jury"); *United States v. Grinkiewicz*, 873

indeed, Smith has also asked the Court to resolve this issue by arguing as follows: "It is respectfully submitted that the Motion in Limine should be denied and this indictment should be dismissed." (Doc. 28, at 2.) The parties thus appearing to concur that whether the underlying conviction qualifies as "a crime punishable by imprisonment for a term exceeding one year" under § 922(g)(1) is a question of law and having had a full and fair opportunity to be heard on same, the undersigned will proceed to resolve that issue.

The logical starting point for the analysis is the text of the statute which Smith is charged with violating in this case, which provides as follows: "It shall be unlawful for any person ... who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). As a definitional matter, a "crime punishable by imprisonment for a term exceeding one year" specifically excludes "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20). The statute goes on to provide that "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." *Id.* This approach of looking to state law to ascertain whether a predicate state-court conviction qualifies as a "crime punishable by imprisonment for a term exceeding one year" for § 922(g)(1) purposes has been adopted by the Eleventh Circuit. *See, e.g., United States v. Anton,* 546 F.3d 1355, 1357 (11th Cir. 2008); *United States v. Willis,* 106 F.3d 966, 967-68 (11th Cir. 1997). Therefore, the Court consults Alabama law to evaluate whether Smith was convicted in

_____

F.2d 253, 255 (11th Cir. 1989) (defendant's contention in § 922(g)(1) prosecution that prior proceeding did not amount to a conviction "involved a pure legal question, not a factual issue which the jury must decide"); *United States v. Stanko,* 491 F.3d 408 (7th Cir. 2007) ("The definitional nature of § 921(a)(20) exclusions places the responsibility on the court to determine as a matter of law whether the prior conviction qualifies as a crime punishable by imprisonment for a term exceeding one year under § 922(g)(1)."); *United States v. Chenowith,* 459 F.3d 635, 636 (5th Cir. 2006) ("The question whether a felony conviction may serve as a predicate offense for a prosecution for being a felon in possession of a firearm pursuant to § 922(g)(1) is purely a legal one, for which we have plenary review.") (citations and internal quotation marks omitted); *United States v. Engesser,* 788 F.2d 1401, 1404 (9th Cir. 1986) ("Whether one may collaterally attack a predicate felony conviction in order to assert a defense to a charge of violating the federal firearms laws is a question of law.").

Case No. 2007-3375 in the Circuit Court of Mobile County, Alabama, of "a crime punishable by imprisonment for a term exceeding one year" for § 922(g)(1) purposes.

The key state statute is Alabama Code § 13A-11-72, which prohibits certain persons from possessing a pistol. Two subsections are particularly relevant. The first, subsection (a), reads as follows: "No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his or her possession or under his or her control." § 13A-11-72(a). "Every violation of subsection (a) of Section 13A-11-72 ... shall be punishable by imprisonment for not more than five years." Ala. Code § 13A-11-84(a). Subsection (a) is a felony offense. See Ala. Code § 13A-1-2(8) (defining "felony" as "offense for which a sentence to a term of imprisonment in excess of one year is authorized"). By contrast, subsection (b) prohibits any "person who is a drug addict or an habitual drunkard" from owning, possessing or controlling a pistol. § 13A-11-72(b). Alabama law provides that "[e]very violation of subsection (b) of Section 13A-11-72 ... shall be punishable by imprisonment for any term less than one year or by a fine of not more than $500.00, or both." § 13A-11-84(a). Subsection (b) is a misdemeanor offense. See § 13A-1-2(9) (defining "misdemeanor" as "offense for which a sentence to a term of imprisonment not in excess of one year may be imposed").

In Case No. 2007-3375, Smith was charged in Mobile County Circuit Court with one count of owning, possessing or controlling a pistol after being convicted of a crime of violence, in violation of § 13A-11-72(a). (Doc. 24, at Exh. 3.) Defendant does not, and cannot reasonably, maintain that he was not indicted in Case No. 2007-3375 for a felony offense, given that the indictment specifically charges a violation of § 13A-11-72(a), for which punishment by imprisonment in excess of one year is plainly authorized by Alabama law.

On February 13, 2008, Smith entered a plea of guilty in Case No. 2007-3375. During the plea colloquy, Mobile County Circuit Judge Graddick reminded Smith that he was "charged with being a certain person forbidden to possess a firearm which carries a punishment of up to five years in the state penitentiary." (Doc. 24, Exh. 1, at 4.) Judge Graddick further advised Smith that "[b]y entering this plea of guilty, you are subject to a punishment somewhere in that range" (id.), by which he could only have meant a punishment of up to five years in the state penitentiary. This exchange clearly establishes that Smith was entering a plea of guilty to the

-3-

crime for which he was charged in the indictment, namely, violation of § 13A-11-72(a), a felony punishable by imprisonment of up to five years. This conclusion is reinforced by the State's summary of evidence in support of the plea, which recited that Smith "was found to be in possession of a firearm after a conviction of a crime of violence," in that a law enforcement officer viewed him holding a .45 caliber pistol following a prior conviction for theft of property in the third degree. (Doc. 24, Exh. 1, at 6.) Judge Graddick accepted Smith's guilty plea and adjudged him "to be guilty of this offense." (*Id.*) He then sentenced Smith to a term of imprisonment of six months. (*Id.*)



Other documents from the state court file reconfirm that the offense to which Smith pleaded guilty was in fact a violation of § 13A-11-72(a), the very offense he was originally charged with committing. For example, the "Case Action Summary" sheet included an order by Judge Graddick dated February 13, 2008 reflecting that Smith "is hereby adjudged guilty of CERTAIN PERSONS FORBIDDEN TO POSSESS A FIREARM, *for which he was indicted*." (Doc. 24, at Exh. 4 (emphasis added).) Similarly, the Notice of Intent to Plead Guilty signed by Smith and his lawyer on February 13, 2008 included handwritten verification that he was pleading guilty to the charge of "possession of pistol after conviction of crime." (Doc. 24, at Exh. 5.) From these materials, in conjunction with the guilty plea hearing transcript, it is quite obvious that the crime to which Smith pleaded guilty in Case No. 2007-3375 was violation of § 13A-11-72(a). Moreover, as a matter of law, § 13A-11-72(a) is an offense "punishable by imprisonment for not more than five years," Ala. Code § 13A-11-84(a), which clearly places it in the category of § 922(g)(1) predicate offenses because it is "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Thus, Case No. 2007-3375 constitutes a valid predicate conviction that the Government may properly use in this case to establish an element of the § 922(g)(1) charge against Smith.

Notwithstanding the foregoing, Smith is adamant that Case No. 2007-3375 "ended with a conviction for a misdemeanor." (Doc. 28, at 1.) In support of this argument, Smith offers two points. First, he cites a "record from the Alabama Judicial Data Center of Mobile County" which he says "reveals that this defendant was convicted of a violation of Title 13A-1172(b)." (*Id.* at 1-2.) Smith has not supplied a copy of that document to this Court. Even if he had, his argument makes no sense. All of the contemporaneous court documents from Case No. 2007-

3375 (including the guilty plea hearing transcript, the Notice of Intent to Plead Guilty, and the "Case Action Summary Sheet" bearing Judge Graddick's signature) unambiguously reflect that Smith was convicted of violating § 13A-11-72(a) (possession of a pistol by a person convicted of a crime of violence), not § 13A-11-72(b) (possession of a pistol by a drug addict or habitual drunkard). He was not charged with violating § 13A-11-72(b). Subsection (b) is not a lesser included offense of subsection (a). There is nothing in any of the court documents or the State's proffer of evidence that might support a finding that Smith was a "drug addict or an habitual drunkard" as required to be found guilty of § 13A-11-72(b). Surely, if Judge Graddick were accepting a guilty plea from Smith to a different, lesser offense than that for which he was indicted, that distinction would be highlighted in the guilty plea hearing transcript or other contemporaneous court records. It is not. The inescapable conclusion from these materials is that § 13A-11-72(b) has nothing to do with Case No. 2007-3375 and has no bearing whatsoever on Smith's offense of conviction in that case, namely, violation of § 13A-11-72(a).

Smith's second argument that the disposition of Case No. 2007-3375 cannot be a predicate conviction under § 922(g)(1) is that "[t]he punishment imposed in Circuit Court #2007-3375 was 6 months in jail and thus meets the definition of a misdemeanor and completely fails to meet the definition of a felony." (Doc. 28, at 2.) This contention is meritless. As mentioned *supra*, the touchstone of a § 922(g)(1) predicate conviction is that it must be for "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The statute says "punishable," not "punished." For § 922(g)(1) purposes, it is irrelevant whether the underlying offense yielded a prison term in excess of one year; rather, all that matters is whether that offense is "punishable" by a term of imprisonment exceeding one year. Smith's conviction in Case No. 20075-3375 obviously meets that threshold, inasmuch as violations of § 12A-11-72(a) (the crime of which he was convicted) are punishable by a term of imprisonment of up to five years. Smith's suggestion that the Court should ignore the penalty range, and instead focus on the actual sentence imposed, in determining whether the underlying conviction qualifies as a predicate conviction for § 922(g)(1) purposes lacks any support in the text of the statute and is unfounded, as a matter of law.

Based on the foregoing, the undersigned agrees with the Government that Smith should be barred from arguing to the jury at trial that his conviction in Case No. 20075-3375 was for a

misdemeanor, such that it is not a §.922(g)(1) predicate conviction. Accordingly, the Government's Motion in Limine (doc. 24) is **granted**. Defendant will be forbidden from making arguments to the jury at trial that there is no valid predicate conviction or that the underlying state-court conviction was for a misdemeanor, not a felony. That issue has been decided by this Court as a matter of law, and is therefore not properly presented to the factfinder at trial.[3]

      **DONE** and **ORDERED** this 13th day of March, 2009.

                            s/ WILLIAM H. STEELE
                            UNITED STATES DISTRICT JUDGE

---

[3]     A second component of the Motion in Limine is the Government's request that Smith be precluded from advancing a jury nullification argument at trial. Smith has not responded to this portion of the Motion. Nonetheless, the law is crystal clear that such arguments to the jury are improper and impermissible. *See, e.g., United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (recognizing that "the jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury"); *Cave v. Singletary*, 971 F.2d 1513, 1518 (11th Cir. 1992) ("defense counsel may not encourage the jurors to ignore the court's instruction and apply the law at their caprice") (citations and internal quotation marks omitted); *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) (holding "that defense counsel may not argue jury nullification during closing argument"). Any effort by Smith at trial to encourage or solicit jury nullification would be improper; therefore, the Government's Motion in Limine is **granted** in this respect, as well.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA      )
                                  )
v.                               )    CRIMINAL NO. 08-00389-WS
                                  )
EDMOND HUDMOND SMITH, IV,    )
                                  )
    Defendant.               )

## ORDER

This matter comes before the Court on the United States' Second Motion in Limine (doc. 25). In this Motion, the Government seeks to bar defendant from introducing evidence or eliciting testimony at trial from other witnesses regarding exculpatory statements he allegedly made to law enforcement officers at the time of his arrest and the search of his residence, all without making himself available for cross-examination. Well-settled Eleventh Circuit law deems such efforts by defendants to be prohibited by the hearsay rule. *See, e.g., United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999) (observing that "a defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination"); *United States v. Scrima*, 819 F.2d 996, 1001 (11th Cir. 1987) (explaining that a defense effort "to place the defendant's remarks before the jury without subjecting them to scrutiny of cross-examination ... is precisely what is forbidden by the hearsay rule").

In his brief Response (doc. 30), defendant states that he "has no intention" of eliciting defendant's exculpatory statements in the manner the Government describes. Given the bright-line binding authority forbidding him from doing so, and his concurrence that he does not intend to do so, the United States' Second Motion in Limine (doc. 25) is **granted**. Defendant will not be permitted to elicit testimony concerning allegedly exculpatory statements he made in connection with his arrest without subjecting himself to cross-examination.

**DONE** and **ORDERED** this 13th day of March, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

EDMUND HUDMOND SMITH IV
petitioner.

v.

J.E. KRUEGER Warden,
ATTORNEY GENERAL OF THE STATE OF
ALABAMA,
Respondents.

)
)  PETITIONERS RESPONSE TO Wiliam T. Lawrence
)  FILINGS AT DOCUMENT 42, AND DOCUMENT 43, TITLED
)  "ORDER DISMISSING PETITION FOR WRIT OF HABEAS
)  CORPUS, DENYING PENDING MOTIONS, DENYING
)  CERTIFICATE OF APPEALABILITY, AND DIRECTING
)  ENTRY OF FINAL JUDGEMENT" AND "FINAL JUDGMENT"
)
)
)
)
)        case no 2:18-cv-00071-WTL-DLP

**United States Constitution. Article VI. Miscellaneous Provisions**
**Clause 2. Supreme Law.**
This constitution, and the laws of the United States which shall be made in pursuance
thereof; and all treaties made, or which shall be made, under the authority of the
United States, shall be the supreme law of the land; and the judges in every state
shall be bound thereby, any thing in the constitution or laws of any state to the
contrary notwithstanding.

**United States Constitution. Amendment 5.**
**Criminal actions - provisions concerning - due process of law and just compensation**
**clauses.**
No person shall be held to answer for a capital, or otherwise infamous crime,
unless on a presentment or an indictment of a grand jury, except in cases arising
in the land or naval forces, or in the lilitia, when in actual service in time of war
or public danger; nor shall any personbe subject for the same offense to be twice put
in jeopardy of life or limb; nor shall be compelled in any criminal case to be a
witness against himself, nor be deprived of life, liberty, or property, without due
process of law; nor shall private property be taken for public use, without just
compensation

**TITLE 1 UNITED STATES CODE. GENERAL PROVISIONS. CHAPTER 2. ACTS AND RESOLUTIONS:**
**FORMALITIES OF ENACTMENT; REPEALS, SEALING OF INSTRUMENTS. §114 Sealing of** instrument
**Instruments.**
In all cases where a seal is necessary by law to any commission, process, or other
instrument provided for by the laws of the congress, it shall be lawful to affix the
proper seal by making an impression therewith directly on the paper to which such
seal is necessary; which shall be as valid as if made on wax or other adhesive
substance.

**TITLE 28 UNITED STATES CODE. JUDICIARY AND JUDICIAL PROCEDURE. PART V. PROCEDURE.**
**CHAPTER 113. PROCESS. §1691 Seal and teste of process**

**Attachment V. Page 1 of 12**

page 1of3

All writs and process issuing from a court of the United States shall be under the seal of the court and signed by the clerk thereof.

The Law Dictionary. Copywrite (c) 2002
Anderson Publishing Company.
Writ- A written court order or a judicial process.

### Affidavit/Claim/Objections

I, Edmund Hudmond Smith, a People of the Republic of Alabama, in this Article III United States District Court of Record state the following:

On or about 8/15/2018, William T. Lawrence signed his name to a document titled **"ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, DENYING PENDING MOTIONS, DENYING CERTIFICATE OF APPEALABILITY, AND DIRECTING ENTRY OF FINAL JUDGEMENT"** and signed his name to another document titled **"FINAL JUDGMENT"**. These are documents 42, and document 43 **(attachment 1, 2)** which are both bogus filings, in violation of the **United States Constitution, Amendment 5.** Criminal actions - provisions concerning - due process of law and just compensation clauses, and the **United States Constitution. Article VI. Miscellaneous Provisions. Clause 2. Supreme Law,** and **TITLE 1 UNITED STATE STATES CODE. GENERAL PROVISIONS. CHAPTER 2. ACTS AND RESOLUTIONS: FORMALITIES OF ENACTMENT; REPEALS, SEALING OF INSTRUMENTS. §114 Sealing of Instruments,** and **TITLE 28 UNITED STATES CODE. JUDICIARY AND JUDICIAL PROCEDURE. PART V. PROCEDURE. CHAPTER 113. PROCESS. §1691 Seal and teste of process.**

William T. Lawrence failed to have both of his bogus writs properly sealed, and signed by the clerk of court. This is in direct violation of **United States Constitution,** and **UNITED STATES CODE** cited both above, and on page 1.

William T. Lawrence cites **Article III, Section 2 United States Constitution** and in clear lack of knowledge, and comleety bogus attempt at writing law, as well as in a completely bogus attempt at appearing knowledgable in law, William T. Lawrence falsely claims "A case becomes moot when it no longer presents a case or controversy under Article III, Section 2 of the Constitution." **Article III. United States Constitution. Section 2.** is related to subjects of jurisdiction, and has absolutely nothing to do with "A case becomes moot when it no longer presents a case or controversy....."

On page 2 of Attachment 1. (William T. Lawrence's bogus writ filed at document 42) of William T. Lawrences **bogus order,** unlawfully, and fraudulently dismissing my petirion for a writ of habeas corpus, William T. Lawrence errors in his assumption tha I plead guilty to the offense that I was indicted for on August 24, 2007. On Febuary 13, 2008 I recieved a sentance of six months. That was in violation of state law HARVEY v. STATE OF ALABAMA and RIVERS v. STATE OF ALABAMA (the maximum and minimum sentancing policy) and 13A-5-6(A)(3) (the exact certain and definite sentancing mandate). On Aughust 24, 2007 I was indicted for 13A-11-72(A). 13A-11-72(A is a felony offense. One must recieve 1 year and 1 day to 5 years for (A) of that statute (13A-5-6(A)(3), 13A-5-6(A)(3), 13A-11-84, 13A-5-4). However 13A-11-72(B) is a middemeanor and 13A-11-84 states one can recieve a sentance of less than 1 year (13A-1-2). That six month sentance is conducive to 13A-11-72(B) only. However I have never been charged with, or indicted for 13A-11-72(B), even though that is what the state certified records show. The state certified records, pertaining to this is truely a falsified record.

**Attachment V. Page 2 of 12.**

Page 2 of 3

Due to William T. Lawrence violating **TITLE 1 UNITED STATES CODE. GENERAL PROVISIONS. CHAPTER 2. ACTS AND RESOLUTIONS: FORMALITIES OF ENACTMENT; REPEALS, SEALING OF INSTRUMENTS. §114 Sealing of Instruments** and **TITLE 28 UNITED STATES CODE. JUDICIARY AND JUDICIAL PROCEDURE. PART V. PROCEDURE. CHAPTER 113. PROCESS. §1691 Seal and teste of process**, both attachment 1, attachment 2 are bogus documents, and are moot. Therefore they are not valid, nor is any of the information that is contained in them. William T. Lawrence bogus filings at document 42, and document 43, are void pursuant with violations of UNITED STATES CODE cited above.

On September 26, 2018 I recieved another document written and signed by William T. Lawrence (attachment 3) titled **"Order Denying Motion for Ruling"** (document 46) and another document written and signed by William T. Lawrence (attachment 4) titled **"Order Denying Motion to Court Clerk and Court"** (document 47). Both of these bogus filings are also moot. They are null and void, for blatant, routene, and systematic violations of UNITED STATES CODE CITED ABOVE.

The Clerk of Court, Laura Briggs is now given a Lawful Instruction in the Best Interest of Justice to review the entirety of the habeas corpus filed at case no 2:18-cv-00071-WIL-DLP, and all filings entered into the docket report, pertaining to the case. If none of the filings entered into the docket by William T. Lawrence were/ are entered pursuant with 1 USC §114, and 28 USC §1691 ab ini'tio (and or any other individual purporting to be a United States District Court Judge), Clerk of Court, Laura Briggs is additionally Lawfully Instructed in the Best Interest of Justice to accept this filing, and enter it into the case jacket of the case number listed on page 1 of this writing. Laura Briggs is additionally instructed to inform William T. Lawrence (and any other individual purporting to be a United States District Court Judge) that every filing of his, pertaining to this case is bogus, thus moot, and is null and void. William T. Lawrence et al, is to respond to the habeas corpus ab ini'tio and affix the proper seals, and Clerk of Court, Laura Briggs is to sign every document as well, pursuant with 1 USC §114, and 28 USC §1691, prior to filing the documents in order for the documents to be valid. Should Clerk of Court Laura Briggs fail to follow the Lawful Instructions in the Best Interest of Justice contained in this writers current writing Laura Briggs is subjecting herself to criminal liability pursuant with:

**TITLE 18 UNITED STATES CODE. PART 1. CRIMES. CHAPTER 101. RECORDS AND REPORTS. §2076 Clerk of the United States District Court.**
Whoever, being a clerk of a district court of the United States, willfully refuses or neglects to make or forward any report, certificate, statement, or document as required by law, shall be fined under this title or imprisoned not more that one year, or both.

### Notice

This document was written, and prepared for by **Article III United States Supreme Court Justice, Louis Holger,** for Edmund Hudmond Smith (the fourth), a People of the Republic of Alabama. In addition, this filing, and all filings created by **Article III United States Supreme Court Justice, Louis Holger** are also being filed onto United States Public Record via **United States District Court for the District of Alaska. Article III United States Supreme Court Evidence Repository 3:15-cv-00046.**

| | | |
|---|---|---|
| Louis Holger    9/26/2018 | | Edmund Hudmond Smith (the 4th)    Date |
| Louis Holger            Date | | A People of the Republic |
| Article III United States | | of Alabama |
| Supreme Court Justice | | |

Page 3 of 3

**Attachment V. Page 3 of 12**

Case 2:18-cv-00071-WTL-DLP   Document 42   Filed 08/15/18   Page 1 of 5 PageID #: 696

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| EDMUND HUDMOND SMITH, IV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00071-WTL-DLP |
| | ) | |
| J. E. KRUEGER Warden, | ) | |
| ATTORNEY GENERAL OF THE STATE OF | ) | |
| ALABAMA, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING PENDING MOTIONS, DENYING CERTIFICATE OF APPEALABILITY,
AND DIRECTING ENTRY OF FINAL JUDGMENT**

**I.    § 2254 Petition**

Petitioner Edmund Hudmond Smith, IV filed a petition for a writ of habeas corpus

challenging his 2008 state court conviction and sentence for possessing and having under his

control a pistol in Mobile County, Alabama Circuit Court CC 2007-3375.   He is currently

incarcerated in the U.S. Penitentiary at Terre Haute, Indiana, serving a sentence imposed as a result

of a federal conviction.

The respondent Attorney General of the State of Alabama has filed a response alleging that

his petition should be dismissed because he is not "in custody" pursuant to his Alabama state

conviction, his petition is untimely, he failed to exhaust his claims in state courts, and in any event

his claims lack merit.   Dkt. No. 21.   The respondent J.E. Krueger, Warden of Terre Haute U.S.

Penitentiary, has filed a response stating that he "played no part in the challenged proceedings in

the state court and therefore has taken no position regarding whether Smith's claims challenging

**Attachment V. Page 4 of 12.**

Attachment 1
page 1 of 5

his state conviction have been properly raised in his petition, or the validity of his claims." Dkt. No. 40.

On August 24, 2007, Mr. Smith was indicted for the offense of possession of a handgun while being a certain person prohibited from such possession. Dkt. No. 21-1. He pleaded guilty to this offense on February 13, 2008. Dkt. No. 21-2. He was sentenced to six months' confinement and was given jail credit for six months and five days of pretrial detention. Mr. Smith was discharged from custody after he pleaded guilty and received the sentence.

"A case becomes moot when it no longer presents a case or controversy under Article III, Section 2 of the Constitution." *Eichwedel v. Curry*, 700 F.3d 275, 278 (7th Cir. 2012). "In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (citation and quotation marks omitted). A federal court may issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254 only if it finds the applicant "is *in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). Therefore, a habeas action becomes moot if the Court can no longer "affect the duration of [the petitioner's] custody." *White v. Ind. Parole Bd.*, 266 F.3d 759, 763 (7th Cir. 2001). The Supreme Court has repeatedly held that a habeas petition is not "in custody" under a conviction after the sentence imposed for it has fully expired even if that conviction may later be used to enhance the sentences of subsequent convictions. *Maleng v. Cook*, 490 U.S. 488, 492 (1989); *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 401 (2001) (citing *Maleng*). "When the second sentence is imposed, it is pursuant to the second conviction that the petitioner is incarcerated and is therefore 'in custody.'" *Maleng*, 490 U.S. at 493.

Here, Mr. Smith was released from the Alabama Department of Corrections' custody over ten years ago and the Court can no longer affect the duration of his custody. Mr. Smith does not

**Attachment V. Page 5 of 12.**

2



Attachment 1
page 2 of 5

dispute that his sentence for the handgun conviction is fully expired. *See* Dkt. No. 31.

Accordingly, the petitioner's habeas action challenging his 2008 Alabama conviction is moot. *See*

*White*, 266 F.3d at 763. An action which is moot must be dismissed for lack of jurisdiction. *See*

*Diaz v. Duckworth*, 143 F.3d 345, 347 (7th Cir. 1998).

Even if Mr. Smith remained "in custody" pursuant to his 2008 Alabama conviction, his

petition is untimely. In an attempt to "curb delays, to prevent 'retrials' on federal habeas, and to

give effect to state convictions to the extent possible under law," Congress, as part of the Anti-

terrorism and Effective Death Penalty Act of 1996 (AEDPA), revised several statutes governing

federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). Along with triggering dates

not applicable here, "[u]nder 28 U.S.C. § 2244(d)(1)(A), a state prisoner seeking federal habeas

relief has just one year after his conviction becomes final in state court to file his federal petition."

*Gladney v. Pollard*, 799 F.3d 889, 894 (7th Cir. 2015).

Mr. Smith was sentenced on February 13, 2008, and his sentence was entered into the case

action summary on February 15, 2008. He did not appeal his conviction or sentence. Mr. Smith's

conviction and sentence therefore became final when the time to file an appeal expired on March

28, 2008. 28 U.S.C. § 2244(d)(1)(A); Ala. R. App. P. 4(b)(1) ("the notice of appeal required by

Rule 3 shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the

entry of the judgment or order appealed from…"). Any petition for a writ of habeas corpus,

therefore, was due one year later, on March 28, 2009. Although a pending petition for post-

conviction relief may toll the statute of limitations, Mr. Smith failed to file a petition for post-

conviction relief until October 2010, more than a year after the AEDPA statute of limitations

expired. His petition for post-conviction relief therefore does not toll the statute of limitations

because that time period had already expired. *See Williams v. Sims*, 390 F.3d 958, 963 (7th Cir.

Attachment 1
Page 3 of 5

2004).

Mr. Smith might be able to overcome the passage of the statute of limitations if he can show that the deadline should be equitably tolled. A petitioner is entitled to equitable tolling if he can establish that he has "'(1) . . . been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2015) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Mr. Smith argues that the statute of limitations should not apply because his attorney improperly told him he did not need to attempt to appeal his conviction. Dkt. No. 31 at 9. He asserts that it was not until after 2009 that he was notified of any issue with his conviction, and not until late September or October 2010 that the federal court ruled on the issue in question. *Id.* Mr. Smith does not explain why he could not have pursued his rights in 2009 when he was first notified of any issue. Nor has Mr. Smith identified an "extraordinary" circumstance that stood in his way and prevented the timely filing of his petition for relief. Mr. Smith's habeas petition is untimely and he has shown no reason for its untimeliness.

In short, the petitioner's habeas action challenging his 2008 Alabama conviction is moot and dismissed for lack of jurisdiction.

## II.    Pending Motions

Mr. Smith's motion to present new evidence to the court, Dkt. No. 32, and motion response and affidavit, Dkt. No. 41, are **denied as unnecessary** in view of the Court's ruling. Mr. Smith's motion for summary judgment, Dkt. No. 35, is **denied** because Fed. R. Civ. P. 56 is inapplicable to this petition. Mr. Smith's motion for Court assistance, Dkt. No. 37, is **denied** because the relief he seeks is not available here in a habeas petition.

Attachment 1
Page 485

### III.    Conclusion

"[H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting) (internal citations omitted). The petitioner has encountered the hurdle produced by lack of custody. He has not shown the existence of circumstances permitting him to overcome this hurdle, and hence is not entitled to the relief he seeks. His petition for a writ of habeas corpus is therefore **dismissed for lack of jurisdiction**. Judgment consistent with this Order shall now issue.

### IV.    Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that the petitioner has failed to show that reasonable jurists would find it "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 8/15/18

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

EDMUND HUDMOND SMITH, IV
07241-059
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Electronically Registered Counsel

*Attachment 1
page 5 of 5*

**Attachment V. Page 8 of 12.**            5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

EDMUND HUDMOND SMITH, IV,       )
                                )
            Petitioner,         )
                                )
        v.                      )       No. 2:18-cv-00071-WTL-DLP
                                )
J. E. KRUEGER Warden,           )
ATTORNEY GENERAL OF THE STATE OF )
ALABAMA,                        )
                                )
            Respondents.        )

### FINAL JUDGMENT

The Court having this day made its Entry directing the entry of final judgment, the Court

now enters FINAL JUDGMENT.

The action is dismissed for lack of jurisdiction.

Date:  8/15/18

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Laura Briggs, Clerk

BY: _____

Deputy Clerk, U.S. District Court

Distribution:

EDMUND HUDMOND SMITH, IV
07241-059
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

*Attachment 2
page 1 of 1*

**Attachment V. Page 9 of 12.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

EDMUND HUDMOND SMITH, IV,                    )
                                             )
                        Petitioner,          )
                                             )
            v.                               )        No. 2:18-cv-00071-WTL-DLP
                                             )
J. E. KRUEGER Warden,                        )
ATTORNEY GENERAL OF THE STATE OF             )
ALABAMA,                                     )
                                             )
                        Respondents.         )

**Order Denying Motion for Ruling**

Petitioner Edmund Hudmond Smith, IV's motion for ruling, Dkt. No. 44, is **denied**.  Mr.

Smith requests that the Court grant his petition because respondent Warden J.E. Krueger failed to

respond to the Court's Order to show cause.  Respondent Warden filed a response on July 27,

2018.  Dkt. No. 40.  The Court has also dismissed Mr. Smith's petition for writ of habeas corpus

because he is not "in custody" pursuant to his Alabama state conviction.  Dkt. No. 42 at 3.  Even

if Mr. Smith was still "in custody," his petition is untimely.  *Id.*

**IT IS SO ORDERED.**

Date: 9/10/18 _____          *William T. Lawrence*

                                       Hon. William T. Lawrence, Judge
                                       United States District Court
                                       Southern District of Indiana

Distribution:

EDMUND HUDMOND SMITH, IV
07241-059
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

*Attachment 3*
*page 1 of 1*

**Attachment V. Page 10 of 12.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

EDMUND HUDMOND SMITH, IV,                )
                                         )
        Petitioner,                      )
                                         )
    v.                                   )        No. 2:18-cv-00071-WTL-DLP
                                         )
J. E. KRUEGER Warden,                    )
ATTORNEY GENERAL OF THE STATE OF         )
ALABAMA,                                 )
                                         )
        Respondents.                     )

**Order Denying Motion to Court Clerk and Court**

Petitioner Edmund Smith and his cellmate, Chad Michael Miller, have submitted a motion requesting that the Court order the Bureau of Prisons' employees to deliver all legal correspondence in a timely manner. *See* Dkt. No. 45 at 1. They also assert that they have been denied medical care, were placed in a cell with no urinal and with sewage running out, were not given bare necessities to survive, and have been retaliated against.

Mr. Smith's petition for writ of habeas corpus in this action was dismissed on August 15, 2018, and this action is now closed. Thus, Mr. Smith's motion to court clerk and court, Dkt. No. 45, is denied as moot.

However, if Mr. Smith's letter is true, the Court finds the conditions to be regrettable. Mr. Smith's custodian should ensure that Mr. Smith is provided his legal correspondence in a timely manner. In a habeas petition, however, the Court cannot grant relief as to the inhumane conditions Mr. Smith may find himself to be living in. Mr. Smith should pursue his available administrative remedies as to his prison conditions before bringing a civil rights action in this Court.

*Attachment 4*
*page 1 of 2*

**Attachment V. Page 11 of 12.**

**IT IS SO ORDERED.**

Date:   9/11/18

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

EDMUND HUDMOND SMITH, IV
07241-059
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

James Roy Houts
OFFICE OF THE ATTORNEY GENERAL
jhouts@ago.state.al.us

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov

Attachment 4
page 2 of 2

Dr. Jimmy Steger
4125 Government Blvd.
Mobile AL 36693
251-660-1240
251-660-9455

### Affidavit

To whom this may concern;

I Dr. Jimmy Steger have been to The Great Southern Outdoors Foundation and Institute along with my wife (Lisa) and son (Jimmy Jr.) on more than 3 different occasions from October 2006 to Feb. 2007. I have personally seen the shape of the beautiful home along with it's entire collection of animals, pictures and statues in place before these people came and stole these goods. I have pictures to validate this. I also have seen all of the vehicles and boats belonging to the organization and Mr. Smith. I personally have been on most of the Hunting Trips in Alabama that Mr. Smith legally killed these animals on and can identify these deer personally. While Mr. Smith was away seeking treatment for his foot, I came to the home and witnessed a dumpster outside filled with a lot of these items being thrown away. Mr. Smith was not aware of this and did not authorize anyone to go in into the home and take anything out at any given time.
If I can be of further assistance to you, please let me know.

Sincerely,

Dr.  Jimmy Steger, N.D., Ph.D., D.MA.

Attachment VI. Page 1 of 13.

## AFFIDAVIT

2/22/08

I was present at the property at 3900 Windsor Rd South of the Great Southern Outdoor and Institute during EHSIV stay at Oschner Hospital in New Orleans Louisiana. I have the knowledge of the exact time line of from the exact point which Evan Wolfe and his partner or agent, Noel Moser, removed and or stole property that was in the home of the foundation.

They stole and removed the mailbox, changed locks and attempted to remove mounted fixtures in the home as well as removed a large mahogany bar from the home. Other stolen property was inclusive of a pool table, Frederick Remington statue of four horseman weighing 750 pounds, linens, sheets, towels, books out of the library, bedroom refrigerators, silverware, household cleaning items, etc.

At approximately the same time, they placed a dumpster in front of home and they began to throw everything else in the home, including EHSIV's personal belongings into this dumpster.

I saw clothing in bathroom and closets inclusive of expensive robes, (Brooks Brothers), jewelry, one remaining Submariner Rolex watch and Rolex burlwood watch winding box were present in bathroom and closets one early morning.

That same day I saw all of this property missing after the only access to the house was from Moser and Wolfe for the supposed cleaning of the Sub-Zero refrigerator.

I then saw Moser wearing coat owned by EHSIV (black cashmere full length coat) that had been present in his bathroom immediately before. I knew at that time that

Attachment VI. Page 2 of 13.

they had removed these items, because they were there earlier that morning and now they were not there.

I did an inventory list and found his Rolex box, one remaining $12,000 Rolex watch gone, $30,000 750 pound four horseman Frederick Remington statue, silk robes from China, Brooks Brothers personal robe, cameras, watch winder box, jewelry, linens, sheets, towels, and silverware missing.

I have witnessed all of this and am willing to testify to all of it at any time for it is the truth, so help me God.

Rick F Bradley

*Rick F. Bradley*

21st Day of April, 2008

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Nov 13, 2011
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Attachment VI. Page 3 of 13.

## AFFIDAVIT

Regarding property stolen by Clint Ulmer, I dealt with Clint Ulmer and was in contact and contacted by, and talked and met and saw both Clint Ulmer his employee and right hand man Jack, and his attorney Buz Jordan as they made attempts to take, sell, and/or steal property belonging to the Great Southern Outdoors Foundation and Institute.

I was engaged in trying to protect the property in the home of the foundation at the request of the Smith family, and was at the property on a daily basis when I realized Mr. Ulmer and Jack had broken into the home and stolen a four beard turkey, fallow deer, antler Christmas tree, Indian chief Buffalo Bill Cody large lithograth painting, framed origional Confederate Flag, elephants foot, along with other items that they had admitted taking and not returned. (Frederick Remington statue) as well as taking a $30,000 bass boat and trailer that he obtained by deception of E.H. Smith III under threat of duress and false pretenses.

Ulmer admitted he was going to return all of this property to the possession of the foundation and he has never done so. He fails to answer all phone calls by myself or EH Smith IV.

I also have first hand knowledge of him attempting to steal two F350 Ford trucks and tried to falsify documentation to do so, as well as a small boat and trailer that I picked up from his office.

This is a truthful statement on my behalf and I am willing to testify or tell or be interviewed about these thefts or attempted thefts at any time because this is my true testimony of these events so help me God.

*Rick F. Bradley*

*Rick F. Bradley*

21st Day of April, 2008

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Nov 13, 2011
BONDED THRU NOTARY PUBLIC UNDERWRITERS

**Attachment VI, Page 6 of 13.**

This is a letter to serve as testimony to the condition of the house before and after the absence of E.H. Smith. The mansion located at 3600 Windsor Road South in Theodore was in excellent condition with the exception of all the complex systems: Electrical, Mechanical, Security, Telephone, Elevator, Pool, Sauna, Chiller, and Steam room. Everything on the ground floor with a motor, pump, compressor, or heating element was rusting or seized-up due to Hurricane Katrina flooding.

The wastewater treatment plant located in a separate building also had not been repaired after the Hurricane Katrina flooding. All looked good to the standard you would expect in a residence of this size and style. The grounds were well-kept, and the floors shined. The pool and the pond were clean and working, and looked very good. I know all of this to be true because I have worked with Mr. Smith and witnessed what had to be done after Hurricane Katrina.

As to the condition of the house now, the floors are scratched and gouged from the careless removal of furniture. Door casings and trim were dented and chipped also. The doors most all have damage- some totaled due to breaking process. Parts of banister were busted just to make moving the stolen items easier. The house was indeed vandalized, in the process of a "clean-out type" of robbery.  Signed:

Signed:

Attachment VI. Page 5 of 13.

# VERIFIED STATEMENT AND AFFIDAVIT OF LAUREN E. DAVIS CONCERNING THE THEFT AT 3900 WINDSOR DRIVE, SOUTH

In November of 2007, I was arrested for lack of automobile insurance on my vehicle. Alan Yeager, and employee of Mobile Bonding Company at the time, handled my bond. I had called Mr. Yeager to inquire about the method of payment for the bond, and while I was speaking to him, I asked him if he knew Edmond Smith IV. I know Mr. Smith and I thought that since he was in the bonding business, he may know him. Mr. Yeager confirmed the fact that he not only knew Mr. Smith, but he and some others were specifically sent to Mr. Smith's residence to steal his personal possessions while he was out of the country. He told me that he was sent to "clean out the house". He and some others who were

Attachment VI. Page 6 of 13.

with him accomplished just that.  Mr. Yeager mentioned Mr. Smith's extremely valuable gun collection, and he also admitted to personally taking papers out of Mr. Smith's desk in his private office. He also was able to describe to me a boat that was in the boat lift when they were in the house .I told Mr. Smith of this phone conversation of my own free will and I deem this affidavit to be a truthful recollection of said conversation.

**Lauren Elizabeth Davis**

~~Witness~~

8-27-08

Notary Public
State of Alabama
County of Mobile
Exp 12-17-08

Attachment VI. Page 7 of 13.

## AFFADAVIT

Verified Statement:

I Sandra Davis headed up the restoration of the Olympic indoor swimming pool at the Great Southern Outdoors Foundation and Institute at 3900 Windsor Road South. My primary area of expertise was artwork. We painted 70 individual pieces of artwork in this Olympic size swimming pool after all the restoration to the pool itself had been completed and 12 coat of indigo blue epoxy paint had been applied. Each one of these fish (artwork) were painted in multi-layers to be in a live action setting and anatomically correct in every way. They were designed to spark the imagination of children and not to look like it came out of an encyclopedia. These fish (works of art) , many of which were taken from actual photographs of live fish or from works of the famous marine biologist and artist, Guy Harvey.

The artwork that was placed in this pool took many hours to complete over a period of three months. We began In October of 2006 and completion was done in December of 2006. After the fish were completed, they were sealed with a clear coat of epoxy . The pool was filled with pure water after the epoxy was given a chance to dry over a period of thirty days. At that point, the pumps and general operation of the pool resumed for the first time after Hurricane Katrina.

_____

Attachment VI. Page 8 of 13.

I inspected the artwork and the pool on numerous occasions for the next six months as I was also involved in other restoration projects relating to the Great Southern Outdoors Foundation and Institute.  At no time did I ever observe any problems with the artwork .  It maintained it's luster and integrity each time it was viewed.  I was extremely proud of the work that was accomplished.  It was truly a wonder to behold.

At some point in February of 2008, I was asked to come to observe a reported act of vandalism to the artwork that had been painted in the pool.  Since that point and time, I have been informed of tests that were administered to the water in the pool.  These tests came back positive for chemicals conducive to battery acid being placed in the pool.  It is my opinion , the artwork in the pool was destroyed by a chemical substance.  The fish would never have been destroyed to the extent they were in pure water over a 6 month period.  There definitely was an act of intentional malice and vandalism.  It literally broke my heart to see this maliciousness.  What was even worse in my opinion, the children that this pool was designed for were never given the opportunity to enjoy it.

_Glenda K. Davis_

_Jammy Mazingo 8/18/08_

My Commission Expires
03-26-2012

**Attatchment VI. Page 9 of 13.**

AFFIDAVIT

I Paul A McAleer do so state to be true:

I have known Edmund H. Smith IV for about 15 years. Ed has always been a good friend and mentor to me. He is one of those friends you can always count on to be there for you, no matter how bad things get. I have seen him help many people including his family and friends. I would say that 99% of the time does Ed not benefit, but ends up paying for peoples mistakes -- a lot of time without any gratitude at all.

I think a lot of people don't really understand Ed. He reminds people of someone who may have been in the old west days, kind of a rough, tough, outdoors kind of outlaw character. That really is not the case. Ed has worked hard to obtain what he has. A lot of people think it just happens because he is lucky, but as Ed always said, "The harder I work, the luckier I get."

I have witnessed Ed make many business deals throughout the years. He is very meticulous when it comes to details. He makes sure all details are clear to all parties and nothing is left unattended. His mind is like a steel trap. When terms are agreed, both parties have time to think about terms and then decide whether to take the deal or not. Ed always says, "If you take the deal, it will be carried out to the exact letter of how the agreement was agreed upon -- with no variation on either side. The person then has the opportunity to take it or leave it -- no hard feelings.

Many times I have witnessed that other people would have trouble -- for whatever reason -- carrying through with their part of the deal. I noticed they could still come to Ed and renegotiate to help themselves, often at a loss to Ed.

As long as I have known Ed he has always had a big heart. I have personally witnessed that his greatest joy and most cherished accomplishment has come when he has helped needy and helpless people. He has always taken handicapped children hunting and fishing and has always paid for every bit of it out of his own pocket. Ed has always been a Christian and has witnessed to me many times when he thought I was getting off the right path.

When I heard he had set up a foundation to pursue such charity actions I thought to myself "Yeah, that sounds about right." It was something he talked about since I knew him.

I moved away and lost contact with Ed for a couple of years. I came home and was invited to dinner at El Giro to talk about Ed. It was presented to me by Noel Moser that he was writing a movie about Ed to be co-written by Winston Groom. He started asking me questions about his life. I only know good things, so I was telling those stories. I began to see that that wasn't what they wanted. They were there trying to dig

up dirt, and were becoming upset that they weren't getting any from me. They ended by calling Ed a "creep". That was the end of that dinner.

When they saw I wouldn't lie to hurt Ed, I felt they turned on me. Steve Orso had some guns stolen. They said they had proof that I had taken them and that I was going to get in trouble. I have no idea about the disappearance of these guns and have said many times that I would gladly take a lie detector test to prove it.

Me and Steve Orso – at the request of Ed- went to clean up the Fowl River house. We noticed a For Sale sign in the driveway. Noel Moser immediately drove up behind us. He got out of the car, and I noticed, without a doubt, that he was wearing Ed's long, black, cashmere coat. He threatened us saying that if we didn't leave the police would be called and we would be arrested

I met Evan Wolfe one time when me and Ed took a stuffed crocodile to his home to keep until he had his Fowl River house. He was introduced to me as "Buck". I understood he was a preacher and had a church somewhere.

I heard them talking about the foundation and it was clear that it was Ed's and Ed was to be in charge.

Due to my association with Ed and his family, I feel that his freedoms allowed every American were infringed upon. Now that I have seen the newspaper articles and all players have been identified, it becomes apparent to me that these people set out to destroy Ed, and steal whatever they could. As long as I have known Ed he has done nothing but help people, and these same people all the while were sharpening their knives to stab Ed in the back. I guess the old saying is true, "No good deed goes unpunished."

I come forward of my own free will, and can be contacted at any time @ (850) 485 – 1181.



Paul A. McAleer

State of Florida

County of Okaloosa

Subscribed and sworn to (or affirmed) before me this 10th day of September 2008, by Paul A. McAleer who presented FL DL _____ as identification.

JESSICA HEINZL
MY COMMISSION # DD 792570
EXPIRES: August 6, 2011

Notary Public _____

My commission expires Aug. 6, 2011

Affidavit

This 14th day of April 2008 I Paul Adrian McAleer having been duly sworn states the following:

I was invited to a dinner with Noel Moser at El Giro Restaurant in Mobile. I was told he wanted to discuss my friendship with Edmund Smith IV because he was writing a movie based on his life. He asked me questions like what is his favorite song, they could use it to start the movie. The mood soon changed and he asked me questions I felt were derogatory towards Ed- like he was digging up dirt. When I wouldn't go along with his suggestive questioning he started getting somewhat upset saying things like "Ed's a bad person" "You shouldn't defend him."

It began apparent that Noel wasn't acting in Eds best interests. There were no planned meetings after that.

Ed had contacted me from jail and asked me to go to the house on Windsor drive to look around and clean up inside the home. Me and Steve Orso drove down to the home, and out of nowhere, Noel comes driving up and told us not to be there. I don't remember the exact words but I felt as though by being there I could get in trouble with the law, so I left immediately.

I was told that Noel had control of the house because of a partnership with Evan Wolfe and Eddie Curran.

I went home to Ookaloosa Island and have not talked with Moser since then.

I will testify in court about this at any time.

_____
Paul A Mcaleer

State of Florida

County of Okaloosa

Subscribed and sworn to (or affirmed) before me this _14_ day of _April_ 20_08_, by _PAUL A. McALEER_ who presented _FLDL. 4246-681-71-099-0_ as identification.



Notary Public _Lidia B. Labrador_

My commission expires _2/21/12_

*HOOTERS BOAT*

# AFFIDAVIT

Mike Parker called Edmund H Smith III and asked me if I knew how to get in touch

with Edmund H Smith IV or if I knew were he was or how to get a hold of him. I told

him I did not know how to get a hold of him at this moment and that he was in the

hospital and I had not heard from him due to the fact that he was very sick. Mike said

that he was concerned that someone was going to try to steal the Hooters boat and that

he didn't want anything to happen to it. He wanted to pick up the boat and that

he was going to take it and lock it up in a secure warehouse for safe keeping until

Edmund H Smith IV recovered and was able to return and then at that time he would

return the boat to Edmund H Smith IV, Or the foundation, the rightful owners. He

asked me to go over to Sammy Gulsby Marine repair shop and make a list of the

contents on the boat as he was concerned that personal items might be stolen off the

boat that belong to Edmund H Smith IV. I went and made a list of the personal items on

the boat , paid the bill on the boat and faxed this list to Mike Parker. He said he wanted

to return my money for payment of this bill and that he was going to take this boat and

put it in the warehouse for safe keeping until Ed Smiths return. All of this was a lie and

he has never paid anything on the boat and or the repairs. I will be happy to take a lie

detector test to prove this is a true statement and I am willing to meet or testify at anytime

as to the validity and truth of these events.

Edmund H Smith III

Attachment VI. Page 13 of 13.

NOTARY PUBLIC STATE OF AL
MAY 15 2008
MY COMMISSION EXPIRES JULY 24, 2010

Verified Statement

AFFIDAVIT


I am Donald Oglesby and was employed with Top Catastrophe Team Services after Hurricane Katrina. I started my employment doing local claims in Mobile, Alabama and after software training in Power Claim and NFIP (National Flood Insurance Program) classes and certification, moved onto flood class adjusting and mobilized at first in St. Rosa, Louisiana with Homeland Security, the Red Cross, LVI (the Nation's largest catastrophe clean up company) and the Top Catastrophe Mobile Disaster office (RV and trailer).  My team and I first were located in a building and yard with water and power, but shortly thereafter power failed due to a power station explosion and we were forced to run off of generator power. Due to Hurricane Rita, we had to evacuate and relocate. After the hurricane we returned and re-mobilized but the conditions were not feasible so my team and I moved to Springfield, LA, the nearest location were basic utilities were available.


During this time I headed up an adjusting team for Top Catastrophe and began to adjusting claims in New Orleans, Louisiana, Mississippi and Texas. After everyone relocated and Marshall Law was lifted, the process of handling claims and processing data began. We got on track and all adjusting teams began to communicate with the

ATTACHMENT VII page 1 of 15

Corporate office of Top Catastrophe and processing claims and gathering data appeared to run like a well oiled machine.

Top Catastrophe Team Services moved to a centralized location with office and yard at 708 Carrollton Avenue and it provided several operations for the Katrina theater and all adjusters were turning in work in a timely and professional manner. At this time, we had received instructions from NCA (National Claims Administrators) /ICS (Integrated Claims Services) of how to use and upload claims and billing data to NCA/ICS thru their electronic web based data transference system. However, it appeared that there were problems with their system as it was not operating correctly. Knowing the data had been sent and received by their system, as well as Top Catastrophe corporate, they would continuously call the adjusters inquiring about field data that had already been sent in, which halted the progress of the adjusters, thereby causing us to repeat the process many times. The inconvenience of constant phone calls by NCA/ICS for data that had already been sent and in their possession, continued to compromise our ability to adjust claims. Therefore, I assigned a member of my team, Pam Singleton, the full time job of imputing and uploading data to the NCA/ICS transference system. In many attempts to correct the problems associated with their system uploading data, NCA/ICS changed procedures, however this failed to correct their system and they continued to have complications transferring data. Their data transference system continued to be

unreliable and had multiple failures.

Due to the problems receiving data, the bills were not getting paid by NCA/ICS and adjusters were running out of their own money and continuously having to get advances by Top Catastrophe due to NCA/ICS not paying for claims and data which they had already received.

I had a meeting scheduled with the President of Top Catastrophe Team Services, Edmond Smith, approximately the second week of November at the office on 708 Carrollton Avenue. I had been on a couple of claims earlier that morning and went to meet Edmond Smith. However, when my team and I arrived, we were informed he had been sent on an emergency (hot) claim that had to be tended to. At that point, it appeared everyone was in the parking lot in a rush to leave. I was then instructed by Linda Swope (office manager) and LeeAnn Carpenter to follow them to a meeting. At that time that was all I was told. Thinking it was a Top Catastrophe meeting and that Edmond would possibly be there, we followed them across town to a McDonald's restaurant parking lot and waited for the other adjusters and other people to arrive. It was then Rick Clark arrived with Mark Losier and Bob Barnett, President and top executive with NCA/ICS. We were told he had just picked them up from the airport. They went inside and got a bite to eat and then we were told to follow them to another location, which was a home in a neighborhood that one of the adjusters from Georgia had recently

purchased. When we first arrived they would not let us in the front door but after going around to the back door, we were able to get in. We realized it was a secret meeting that had nothing to do with Top Catastrophe Team Services. It was a meeting spear headed by Rick Clark, Mark Losier, Bob Barnett, Linda Swope and LeeAnn Carpenter. At this time they discussed they were no longer going to use the services of Top Catastrophe and were planning to fire them. They were interested in knowing if we would be willing to work for NCA/ICS, directly. We were told they knew they owed Top Catastrophe for all of our work and we would be compensated for said work. Hence, they knew they owed Top Catastrophe, but if we went to work for them directly, then they would pay us instead. However, at a later date they changed that saying we were to only be paid for work in or around the second week of November. During the meeting, the question of Top Catastrophe employment contracts and non competes, which all employees had signed, came up. That is when Linda Swope and LeeAnn Carpenter stated that paper work would not be available to present a problem. At such time Mark Losier and Bob Barnett got up and gave out paperwork to all the adjusters to sign which stated we would perform work directly for them. This paperwork was obviously prepared prior to this meeting or before they had disconnected from Top Catastrophe. After this meeting, I became aware of several other "secret" meetings in which I was not invited to. It appeared they were trying to approach only

receptive adjusters of Top Catastrophe to work directly for them. However, before it was over, they approached every Top Catastrophe adjuster attempting to get them to work for them. Since then I have been made aware of and seen a Police report of a break-in and theft of the corporate office of Top Catastrophe at 708 Carrollton Avenue, at which time data, employment contracts, non competes, hard files, computers and all office equipment were stolen.

Several days after the meeting with Mark Losier, Bob Barnett, Rick Clark, Linda Swope and LeeAnn Carpenter, I contacted Edmond Smith to find out his view of what was occurring and to inquire about being paid. At that point, I was told they had received an e-mail telling them that NCA/ICS no longer needed Top Catastrophe's services due to the incompetence of their adjusters and lack of ability of the adjusters to timely transfer data to NCA/ICS. Although they were actively trying to hire every Top Catastrophe adjuster. We were also told NCA/ICS had never paid Top Catastrophe for our claims work, which made it impossible for Top Catastrophe to pay us due fact they had never received a ledger for the claims that had been accepted and thus paid to the claimant and or insured. It turned out after being employed by NCA/ICS they issued checks that bounced on a closed account. They finally made the these checks good. However, they never paid back the fees associated with their own bad checks, although they had repeatedly stated they would.

ATTACHMENT VII page 5 of 15

NCA/ICS's data transference system continued to have multiple failures and complications and never functioned properly. Therefore, in the end we have never been compensated for the claims, data, or work turned in the NCA/ICS.

_____   8/2/08
Donald Oglesby                                              Date

_____   8/2/08
Notary Public                                               Date

My Commission Expires
09-26-2012

Verified Statement

## AFFIDAVIT

I am Chad Brown and was an adjuster with Top Catastrophe working in the NEW Orleans, La, Texas, and Mississippi Theater post Hurricane Katrina. My job duties as an adjuster for Top Catastrophe Team Services, was to collect data on claims I or my team were assigned by Top Catastrophe. These duties included gathering BI coverage (business interruption) from the claimant, collecting data, which included taking measurements, photographs and assessing wind and flood damages and all other onsite data collection. At the end of each day, data was compiled into a format called Power Claim, which was the software we were asked to use by NCA/ICS for the data transference system which we were to upload all data to the claim management arm of such insurance companies which was NCA(National Claims Administration) /ICS(Integrated Claims Services). I was also involved in putting together time and expense reports and emailing such reports to NCA. At that time, we were told emails were not satisfactory, which had previously been satisfactory. We were then asked to use their online data transference system and resend all of our billing time sheet and expense data along with all of our claims data. We were asked to use a web-based system provided by NCA/ICS until such a point that it became obvious

that their system was malfunctioning and not giving us credit for our billing or claims data, which the insurance companies so desperately needed. Their system continued to crash and malfunction and be unstable. At that point we submitted all data in a hard copy form either by fax, Fed Ex or Ups. The solution to these data transference problems by NCA/ICS seemed to be continually changing and after submitting the data in the new format in which they requested, they would then change their mind or add some type of new requirement. We would them submit it in their new form, and it still would not function properly and they would not receive the billing or claims data. After such a time, it became knowledge that one of their employees had erased or deleted all data from their data transference system.  During some data base operations and or queries, we came to find out the reason they did not have our data was due to their negligence. We were told it was our fault, however that was not the case, then they changed their story and said it was a systems crash by their employees, but later found out that was not the case either. However, their system continually failed, until finally at which point, the executives at Top Catastrophe instructed us to put all of our claims and billing data in a hard copy form and fax or Fed Ex such documents. I have knowledge these forms were faxed and Fed Ex-ed from the Top Catastrophe corporate office. Although their data transference system continued to fail, we continued to submit any and all data on a daily basis. However, NCA/ICS still failed to submit said data for billing,

therefore we did not receive payment for this data on the scheduled pay periods. They blamed this on not receiving said information in a timely manner and or the proper format, although they admitted receiving the claims and billing data. Again, after submitting all data in their format or in hard copy form in a timely manner to their satisfaction, their negligence in receiving and processing said data continued over and over, and Top Catastrophe Team Services nor us received proper payment. After sending the data in a hard copy form by Ups or Fed Ex around the second week of November 2005, we returned to the corporate office of Top Catastrophe Team Service at 708 Carrolton Avenue in Meterie, LA for a scheduled meeting with the president of the company, Edmond H. Smith. However, upon our arrival, we learned he had been sent on an emergency (Hot) file. Upon our arrival, there seemed to be rush of a number of adjusters trying to leave the office and parking lot to go to some meeting. Linda Swope ( the Office Manager) and LeeAnn Carpenter instructed us to get into our car and follow them. At this point neither myself, Don Oglesby or Pam Singleton had any knowledge of this meeting. We were under the assumption that Edmond may be at such location and this would be a Top Catastrophe function. We went approximately 10 or 15 miles to a parking lot of a McDonald's restaurant where it became apparent we were waiting for an individual known to us as Rick Clark to arrive from the airport with the president of the NCA/ICS group, Mark Losier and Bob Barnett of ICS. After they

arrived we then followed them to a home inside of an exclusive housing development. Upon arriving at this home, we realized we had followed them to a clandestine meeting, which was not a Top Catastrophe meeting. This meeting was being headed up by Mark Losier and Bob Barnett of ICS, as well as Rick Clarke, Linda Swope, and LeeAnn Carpenter. Upon the starting of the meeting, they had a roll call for us to provide our names and personal information. After roll call, Rick made a statement that all of this had been made possible by Linda Swope and LeeAnn Carpenter who provided the phone numbers and information to Rick Clark to make it able to contact the insurance company and adjusters to schedule and create this meeting. After that, Rick Clark turned the meeting over to the president of ICS, Mark Losier and his executives. They began probing interest from the crowd as to whether we were under contract with Top Catastrophe and if we would like to work for them directly and get out from under contract with Top Catastrophe. At that point it appeared Rick Clark was trying to start his own adjusting company with Top Catastrophe adjusters. NCA president, Mark Losier and Bob Barnett asked if we would like to go to work for Rick Clarke and his team, and we said "no", as well as the adjusters at the meeting that were under contract with Top Catastrophe. At that point, Mark Losier and Bob Barnett made us an offer to work directly for them and then inquired as to whether we were under contract and if ther were non competes that would stop them from being able to hire us

directly. At such time, Linda Swope and LeeAnn Carpenter spoke up and implied that it would not be a problem and they had access to said documents and data at the corporate office of Top Catastrophe. A couple of days later there was a break-in at 708 Carrolton Ave, the corporate office of Top Catastrophe where those documents along with all other files, data, computers, hard files and office equipments (printers, fax, etc) were stolen. After this, we were told we could come to work for them directly without any potential liabilities. I then inquired about payment, and was assured we would get paid for all work up until that point, which I had not received payment for. At that point in time, they presented us contracts to work directly for them, which they obviously had prepared for the meeting. Mark Losier reiterated that by signing these contracts, we were to be paid for all work done up until this point for everything and this was echoed by his cohorts and executives. We received a verbal contract by Mark Losier and Bob Barnett for our payment of services. Several weeks after this meeting, after not receiving any payment, I was forced to go back home due to lack of funds. I was then contacted by Linda Swope and was told NCA had sent a check to me. I went to pick up the check and realized it for only a small portion of what I was owed and a fraction of the data for what I had turned into NCA and that was when I found out they were only willing to pay me for the date I signed the contract to go to work directly for them and contrary to what they had stated in our previous conversation. Being

short of funds, I reluctantly signed contracts with NCA/ICS to get compensation for the work I had previously done, considering I had not received any payment. I then received a check from NCA/ICS, which was the first and only check I received from them. It was stated the check was for a partial amount. However I never received the remainder they claimed I was owed. I only signed their contracts to get paid for work I had done for 4 months during the aftermath of Katrina. The only work I had done, was for Top Catastrophe and Edmond Smith, who did give advancements my team and continually tried to meet the criteria to get all of us paid. I never did do any work directly for NCA/ICS even though they received all data from the work I did in the aftermath of Hurricane Katrina. I then returned home to Mobile, AL after losing all faith in NCA/ICS for nonpayment to us or Top Catastrophe Team Services for the data which was submitted.

_____          7-30-08
Chad Brown                                Date

_____          7/30/08
Notary Public                             Date

My Commission Expires
03-26-2012

ATTACHMENT VII page 12 of 15

Claims Service Provider, Inc. & Top Catastrophe Team Services
Adjusters & Management

| # | Name | # | Name | # | Name |
|---|------|---|------|---|------|
| 1 | Abner, James | 36 | Chestnas, John | 70 | Gouins, Linda (secretary - 5 offices) |
| 2 | Anderson, Garland | 37 | Clarke, Rick ** | 71 | Gouins, Pat |
| 3 | Anderson, Rick | 38 | Click, Donna | 72 | Gouins, Shawn |
| 4 | Arguijo, Adolf | 39 | Click, E.A. | 73 | Haney, Rick |
| 5 | Baker, Ron | 40 | Cottingham, Michael | 74 | Harrel, Brain |
| 6 | Barnes, Robert | 41 | Cox, Russell | 75 | Hauck, Gene |
| 7 | Bassford, Jerry | 42 | Craft, Gary | 76 | Hellige, Scott |
| 8 | Bennett, Darrell | 43 | Craft, Sharron | 77 | Hess, Bruce |
| 9 | Bennett, Norman | 44 | Crespo, Orlando | 78 | Hurta, Cindy |
| 10 | Berry, Kyle | 45 | Cunningham, Nolan | 79 | Issac, Joe |
| 11 | Blake, Gina (secretary-4 offices) | 46 | D'Avanzo, Bo | 80 | James, Melinda |
| 12 | Blake, Richard | 47 | Davis, Bobby | 81 | Jones, Damon D. |
| 13 | Borzowitz, Adama | 48 | Davis, Lauren (secretary - 1 office) | 82 | Johnson, Ben |
| 14 | Bradley, Jack | 49 | Davis, Sandra (secretary - 2 offices) (C.E.O.Personal Asis) | 83 | Johnson, Max |
| 15 | Bradley, Terry | | | 84 | Johnson, Shari A. |
| 16 | Brant, John | 50 | Dick, Jerry | 85 | Johnston, Mike |
| 17 | Brian, Scott | 51 | Dixie, Ted | 86 | Karahalious, Herb |
| 18 | Brice, James | 52 | Effinger, Bill | 87 | Kasse, Kevin |
| 19 | Brock, Steve | 53 | Elken, Chris | 88 | Keller, Brett |
| 20 | Brocowitz, Adam | 54 | Elliot, Chris | 89 | Kennedy, Lucin |
| 21 | Brodie, David | 55 | Ellis, Sarah | 90 | Kiefer, Paul |
| 22 | Brown, Chad | 56 | Fales, Jr., Dwayne | 91 | Kilcarr, Tracy |
| 23 | Buffington, Tom | 57 | Fales, Sr., Dwayne | 92 | Kins, Polly |
| 24 | Burd, Kevin | 58 | Fairman, Marzel | 93 | Klein, Bernard (a/k/a Bernie) |
| 25 | Burleson, Adam | 59 | Fairman, Michelle | | |
| 26 | Burleson, Preston | 60 | Feltz, Ben (data tech - office) | 94 | Knight, Charles |
| 27 | Cain, Rochelle (secretary-3 offices) | | | 95 | Kudla, Newl |
| 28 | Calvo, Tony | 61 | Ferrin, Dan | 96 | Langley, Barry |
| 29 | Cappelletti, Bob | 62 | Ferrin, Rick | 97 | Lebo, Susan (secretary 8 offices) |
| 30 | Carpenter, Leanne * | 63 | Ferrin, Ron | | |
| 31 | Celli, Ron | 64 | Fick, Thaddes | 98 | Leggett, Scott |
| 32 | Celli, Ronald | 65 | Gault, Sarah | 99 | Loewen, Mike |
| 33 | Cheek, Louise | 66 | Gaurino, Thomas | 100 | Loewen, Rusty |
| 34 | Chester, Dixie | 67 | Geska, Edward | 101 | Loewen, Steven |
| 35 | Chestnang, Jeff | 68 | Giddens, D.R. | 102 | Mahoney, Jay |
| | | 69 | Giddrik, J.D. | 103 | Mann, Tracy |

\* Carpenter co-conspirator with Rick Clarke & Linda Swope
\*\* Clarke collaborator with ICS/NCA agents, while never completing CSP/TCTS employment
contract, non-compete & indemnity agreement

**ATTACHMENT VII page 13 of 15**

**EMPLOYMENT ROSTER**
Claims Services Provider, Inc. & Top Catastrophe Team Services

| | | | | | |
|---|---|---|---|---|---|
| 104 | Mann, Tracey | 139 | Shaw, Griffin | 173 | Troescher, Gary |
| 105 | Martin, Debbie Jean | 140 | Shellum, Brad | 174 | Turner, Floyd J. |
| 106 | McEachern, Joey | 141 | Shellum, Kelly | 175 | Turner, Justin |
| 107 | McKee, Robert | 142 | Singleton, Pamela | 176 | Veney, Perry |
| 108 | McMullin, Cecil | 143 | Slegg, Bob | 177 | LOPEZ, Carlos (logistics) |
| 109 | Mendel, Phillip | 144 | Smith, Ana | | |
| 110 | Moore, Jarett | 145 | Smith, Christopher L. (jr. adjuster) | 178 | Villeareale-Rodriguez, Miguel(logistic) |
| 111 | Moskav, Eric | | | 179 | Wahlin, Casey |
| 112 | Mullen, Dave | 146 | Smith III, Edmond H. | 180 | Walter, Rob |
| 113 | Mulligan, Steven | 147 | Smith IV, Edmond H. | 181 | Ward, Robby |
| 114 | Muse, Keary | 148 | Smith, Lonnie | 182 | Warek, Ted |
| 115 | Mogosek, Paul | 149 | Smith, Steven | 183 | Weaver, Stan |
| 116 | Oglesby, Don | 150 | Snow, Mark | 184 | White, Darryl |
| 117 | Oranzi, Mike | 151 | Spence, Brantley | 185 | Wickerson, Shawn |
| 118 | Orso, Steve | 152 | Stahler, Robert | 186 | Williams, Charlie |
| 119 | Owen, John | 153 | Stark, Bob | 187 | Williamson, Charlie |
| 120 | Pace, Robert | 154 | Stark, Kirk | 188 | Willett, Joy |
| 121 | Paquette, Michael | 155 | Starnes, Lonnie | 189 | Wilson, Steven |
| 122 | Patterson, Dan | 156 | Starnes, O'Neal | 190 | Witt, Kimberly |
| 123 | Pavlick, Douglas | 157 | Steed, Nita | 191 | Wolf, Kyle |
| 124 | Perdew, Chad | 158 | Steen, Juanita | 192 | Wright, Wayne Cart |
| 125 | Perdew, Jack | 159 | Stevens, Robert | 193 | Yeager, Kevin |
| 126 | Pettaway, Herbert (logistics) | 160 | Strickland, Michael | 194 | Yoider, Roy |
| | | 161 | Strickland, Tom | 195 | Zirul, Ken |
| 127 | Pettit, Mike | 162 | Swope, Dale | 196 | Zurell, Warren |
| 128 | Ponzo, Michael | 163 | Swope, Linda *** (secretary-6 offices) | | |
| 129 | Purvis, Kyle | | | **Supplement:** | |
| 130 | Reed, Sonya | 164 | Szmajser, John | 197 | Coggins, **Phillip** |
| 131 | Reid, Ryan | 165 | Taylor, Diana | 198 | Cline, Bernard (a/k/a Bernie) |
| 132 | Richardson, Kent | 166 | Taylor, Gary | | |
| 133 | Richardson, Michael | 167 | Thorpe, Kevin | 199 | **Willims,Corie** (secretary-7offices) |
| 134 | Ryan, Allan | 168 | Thorpe, Paul | | |
| 135 | Sanders, Kirk | 169 | Tindell, Jim | 200 | Sharon Kay Henson-- Coggins(secretary-9off |
| 136 | Schryers, Alvin | 170 | Todd, David | | |
| 137 | Scott, Corey | 171 | Torra, Wayne | | |
| 138 | Shaw, Eric | 172 | Tracey, Robert | | |

*** Linda Swope co-conspirator with Leanne Carpenter & Rick Clark, & leaked confidential corporate material of CSP/TCTS to NCA.ISC agents

SUPPLEMENT TO
Claims Service Provider, Inc. & Top Catastrophe Services   4/16/2012   Page 1
2005-2006
EMPLOYMENT ROSTER

adjusters

Baker, Erice

Beraine, Bradley

Cona, Frank

Galvan, Nancy

Geska, Mellessa

Higgins, Jennifer

Kennedy, Robert

Locke, Robert

McWilliams, Aron

McWilliams, Keith

Teal, Derek

Turner, Lenny

White, Darryl

Williams, Dave

Yeager, Keith

Zerniak, Chris

OFFICE STAFF SEC/LOGS. 3
GENERAL ADJUSTER'S. 23
EXECUTIVE GENERAL ADJUSTER'S.184
------(OFFICERS)   EXECUTIVES   5
TOTAL = 215

R. Edward Massey Jr.
Alan M. Colvin

J. Calvin Clay
of Counsel

Clay, Massey & Associates, P.C.

August 4, 2008

Attorneys at Law
509 Church Street
Mobile, Alabama 36602
Tel: (251) 433-1000
Fax: (251) 438-4079

Hon. John M. Tyson, Jr.
District Attorney
Mobile County, Alabama
County Court House
Mobile, AL 36602

RE:    Edmond H. Smith, IV

Dear John:

Please find attached hereto a notebook which delineates and organizes the items that Mr. Smith states were taken from his property; also included are affidavits of potential witnesses concerning their knowledge of those items allegedly stolen from his house. There are also allegations concerning a boat and equipment which Mr. Smith alleges were taken plus vandalism of the home located at 3900 Windsor Drive.

All Mr. Smith is asking for is that there be a report of the items which were allegedly taken so that these incidences can be investigated by the Attorney General's office of the State of Louisiana. As I told you in an earlier conversation, I spoke with the Louisiana Attorney General's office, and they asked me to contact you since, apparently, the Sheriff's Department and the Alabama Bureau of Investigation had reached an impasse as to who going to conclude this investigation and render a report. The Louisiana Attorney General's office told me that they were highly involved with this matter, and they needed a report that these items had been the subject of a theft report or loss report here in Mobile County. I have talked to Mr. Howell at ABI and also the Sheriff's office. Apparently, there is some sort of jurisdictional debate over which agency should do this report.

It seems to me that **somebody** ought to be willing to prepare a report that Mr. Smith, in fact, has reported that these items were stolen, that his house was vandalized and that he has had a crime perpetrated against him, his family or related companies. I implore you to review this matter and help Mr. Smith at least get a report of these incidences so that he can take the report to the State of Louisiana and allow them to finish their investigation.

Your kind attention and cooperation in this matter will be greatly appreciated.

Very truly yours,

Edward Massey

EM/aj

Attachment

**Attachment VIII. Page 1 of 1.**

*START OF CRIMINAL ASSAULT*

3/23/08

VERIFIED STATEMENT AND AFFIDAVIT OF NANCY
BARNETT CONCERNING BOAT HYJACKING AND
THEFT OF FOUNTAIN HOOTER'S BOAT AT FOWL
RIVER MARINA SUMMER OF 2006

NE 26

In July of 2006, a little after 2:00 in the afternoon, I had gone to
the Fowl River Marina to meet a friend of mine who manages the
bar. As I was sitting at the bar, waiting on my friend to finish her
work, I was looking out of the window. I saw two trucks pull up
very fast. One of the trucks slammed on breaks and then someone
jumped out of the back of that truck and took the hitch off of the
truck that the Hooter's boat was attached too. The second truck tied
a chain to the back of the boat and snatched it back. Then the truck
pulled in front of the boat to the trailer, and began hooking the boat
to the truck. At that point, I told the manager that someone was
stealing the Hooter's boat. She did not believe me. I knew who this
boat belonged too, so I stepped outside and asked the man who
was taking the boat if he was stealing it, or did it belong to him. At
that point, the man preceded to pick up a gun that was lying on the
front seat of the truck. He pointed the gun out the window and then
told me that it was none of my business. I then turned around and
ran back into the restaurant. I saw Edmund Smith, the man who
owned the boat, inside the restaurant so I ran over to him,
extremely shaken and told him someone was stealing his boat. I
don't think he believed me because he said he didn't think so. I
yelled that men were stealing his boat. At that point, Edmund
Smith ran outside to see what was happening and a struggle ensued
between him and 5 men. The man who actually had the boat
attached his truck, made a large u-turn through the parking lot, but
before he sped out, another man jumped into the back of the boat.
The boat was not attached to the truck properly, the ball and

the jack was dragging the ground. Mr. Smith was trying to stop these men. He later told me that they had knocked him down and ran over his left leg with the boat and trailer. The man taking the boat then pulled out on Dauphin Island Parkway where he completely stopped traffic and forced a couple of cars off the road to keep from hitting him. I called my son and my husband to make sure they were not on Dauphin Island Parkway because there was a large boat attached to a truck going too fast with another truck following them. Mr. Smith then got into his truck after being run over with the boat and trailer, and pursued them.

It is my opinion that these men came to the restaurant with the premeditated intent to steal this boat. I shutter to think what would have happened to me if I had persisted in finding out why they were taking the boat. The man with the gun could have shot me down were I stood.

I came forward on my own accord to tell Mr. Smith what I had seen. I read what was written about this event in the newspaper, and I was appalled at the fact that what was written and what I saw were two different things. I wanted to set the record straight.

I deem this personal account of the previously written events to be absolutely true.

*Nancy Barnett*
Nancy Barnett

*Tammy Mazingo*
Witness

My Commission Expires
03-26-2012

**Attachment IX. Page 2 of 8.**



Attachment IX.
Page 3 of 8.

MY LEFT FOOT

"CHARCOT" DEFORMED FOOT COMPARISON.



NORMAL FOOT

PER: DR. A. MINION
7/11/2015
EDMOND H. SMITH IV.





NORMAL LEFT FOOT 1981



MY LEFT FOOT 2007

Attachment IX. Page 4 of 8.

Attachment

| Title Number | NC Vessel Number | Hull Identification Number | Title Issue Date |
|---|---|---|---|
| 174727 | NC-4300 WZ | FGQBC111J405 | 04/04/2005 |

Year: 2005
Model: 38 SPORT FISH
Manufacturer: FOUNTAIN
Length: 38 feet 0 inches
Hull Material: Fiberglass
Type: Open

BANK OF AMERICA
P O BOX 2759
JACKSONVILLE, FL 32203

## Owner Information

First Owner Name and Address:
THORNTON, GEORGE ALDEN IV
1957 CREEK ROAD
KITTY HAWK, NC 27949

Second Owner Name and Address:

Third Owner Name and Address:

## Lienholder Information

First Lienholder    Date of Lien:  03/16/2005

BANK OF AMERICA
P O BOX 2759
JACKSONVILLE, FL 32203

### Release of First Lien

WITHOUT RECOURSE AND WITHOUT WARRANTY

The undersigned holder of the first lien of the vessel described on this certificate of title, does hereby state the first lien and encumbrance is released and discharged.

Name of Lienholder: BANK OF AMERICA

Authorized Agent: _____ George F. Colman

Date of Release: 7/31/06

Notary Information (required): State of California County of Orange SS.

Sworn to and subscribed before me this 31st day of July year 2006

Notary Public Signature: _____

My Commission Expires On 3/28/2010

Affix Notary Seal or Stamp Here

Second Lienholder    Date of Lien:

[Notary seal:]
LISA LIEU
Commission # 1646771
Notary Public - California
Orange County
My Comm. Expires Mar 28, 2010

The Executive Director of the North Carolina Wildlife Resources Commission hereby certifies that an application for a Certificate of Title has been made for the vessel described herein; has been filed pursuant to the provisions of Chapter 75A of the North Carolina General Statutes; that the applicant(s) named on the face hereof has been duly recorded as the lawful owner(s), and that the applicant(s) has stated, under oath, that he is the owner of the vessel described herein; and that it is subject to the liens listed herein and none other.

As, WITNESS, his hand and seal of the Commission on the day and year appearing in this certificate as the title issue date.

Richard B. Hamilton

Executive Director
N.C. Wildlife Resources Commission

[Seal: NORTH CAROLINA WILDLIFE RESOURCES COMMISSION]

01/05

**ANY ALTERATIONS OR ERASURES VOID TITLE**

Attachment IX. Page 5 of 8.

$898,000.00 PLUS ELEC & EQUIP

+ FOUR (4) 300 X S OPTIMAX RACING ENGINES
$198,653.00 = $1,096,653.00 TOTAL W/O ELEC & EQUI.

JUN-30-2006 12:02 From:                                    To:4500111                P.5/6
   06/27/2006  10:39    9417480981           MYCO TRAILERS                    PAGE  02



**CERTIFICATE OF ORIGIN FOR A VEHICLE**

DUPLICATE

DATE
**11/1/2004**

INVOICE NO.
**JC006013**

VEHICLE IDENTIFICATION NO.
**4JFBA36325B006013**

YEAR **2005**    MAKE **MYCO**

BODY TYPE
Boat trailer

H.P. (S.A.E.)    G.V.W.R.
**18,000 LBS.**

SHIPPING WEIGHT
**2,700 LBS**

NO. CYLS.    SERIES OR MODEL
**MWA34-30XHTR**

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the invoice number indicated to the following distributor dealer.
NAME OF DISTRIBUTOR, DEALER, ETC.

Alden Thornton
1087 Creek Road
Kitty Hawk, NC 27949

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

MYCO TRAILERS, INC.

Z03747462

Z 03747462

BY
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)    (AGENT)

BRADENTON, FL  34208
CITY, STATE

$35,748.⁷⁵/₀₀

MYCO 518000 LB W/25T

Attachment IX. Page 6 of 8.

p.13



| | | | |
|---|---|---|---|
| SIMCO WOOD | | TAXABLE | |
| SIMCO MARINE | | COUNTY | Mobile |
| BOAT LIFT DOCTOR | | NON TAXABLE | X |

Date  8-1-06
Area

Lead
#
#

| Quote | ✓ | Date |
| Order | | Date |
| Invoice | | Date |

Salesperson  WBJ
Due Date

**Customer Name & Address:**

Ed Smith

Home Phone  973-0855
Cell  545-6462
Fax  383-7615 · Call
Office

**Job Location**

Bellow Smash Rd to Fowl River Rd

**Description:** Storm Damage

Re Set Piling he Set Back
Repair Existing Structure

PAID
CK. NO. 1019
DATE Aug 1-06  IN FULL

*Note customer is responsible for proper electrical to the IMM plug.

Grand Total  32,500

Terms: Price of lift kit down _____    Balance due on completion

To accept these terms please sign: X  Ed H Smith

Please Make Checks Payable To:
**Simco Marine**
11304 McKenzie Rd
Fairhope, AL 36532

TOLL FREE 1-877-502-5438
or (251) 967-5438
FAX  (251) · 990-4123

**Thank you**
**For your business!**

Attachment IX. Page 7 of 8.





## VERIFIED STATEMENT AND AFFIDAVIT OF
## LAUREN ELIZABETH DAVIS
## CONCERNING THE THEFT OF 50' CLASS A GULF
## STREAM MOTOR HOME CRENSHENDA RV

IN ~~MARCH~~ FEBUARY OF 2006, I WAS WORKING AT 3900 WINSOR RD. SOUTH, THE HOME OF THE FOUNDATION, FOR TOP CASTROPHE/ EDMOND SMITH IV.  IN THE LATE AFTERNOON A MR. PHILLIP COGGINS CALLED THE HOUSE AND TOLD ME HE WAS SENDING SOMEONE OUT TO TAKE THE MOTOR HOME FROM THE PREMISES WITH THE INTENTION OF TAKING HIS FAMILY ON A TRIP.  I TOLD HIM THAT I WAS NOT GOING TO GIVE HIM THE KEYS UNLESS I HAD PERMISSION FROM MR. SMITH.  HE TOLD ME THAT HE HAD PERMISSION AND THAT IT WOULD BE OK.  AS SOON AS THE PHONE CALL ENDED, I TOLD THE HOUSE KEEPER, DOMICKA DICKENS, THAT HE WAS SENDING SOMEONE TO GET THE KEYS AND THAT I DIDN'T FEEL COMFORTABLE GIVING THEM TO HIM WITHOUT MR. SMITH'S CONSENT.  DOMICKA, THEN  TOLD ME TO HIDE THE KEYS AND SHE SAID THAT IF SOMEONE CAME TO THE DOOR SHE WOULD SIMPLY SAY SHE COULDN'T FIND THEM.  SO I PUT THE KEYS UNDER THE MATTRESS IN ONE OF THE BEDROOMS.

LATER ON THAT EVENING, SOMEONE CAME TO THE HOUSE TO PICK UP THE KEYS TO THE MOTOR HOME AND TO TAKE IT OFF THE PREMISES.  I WAS LAYING DOWN AND DOMICKA ANSWERED THE DOOR.  DOMICKA CAME TO MY DOOR AND ASKED FOR THE KEYS AND SO I HANDED THEM TO HER.  SHE ASSURED ME THAT IT

*WAS OK BECAUSE HE HAD PERMISSION FROM MR. SMITH.*

*MR. SMITH RETURNED HOME LATER ON THAT NIGHT AND HE ASKED US WHERE HIS MOTOR HOME WAS. HE TOLD US THAT MR. COGGIN HAD NO PERMISSION TO TAKE THIS MOTOR HOME FROM HIS PREMISES. WHEN MR. SMITH TRIED TO CONTACT MR. COGGIN CONCERNING THIS, HE WOULD NOT ANSWER HIS PHONE.*

*I DEEM THE ABOVE AFFIDAVIT TO BE TRUE.*


**LAUREN ELIZABETH DAVIS**


**NOTARY**                                        9-10-08

State of Alabama
County of Mobile
                    Exp 12-17-08

Attachment X. Page 2 of 11.

*TOOK PLACE 12/19, 2006*

# AFFIDAVIT

*march 2006*

On the day of the removal of the Creshenda motor home owned by Top

Catastrophe Team Services from 3900 Windsor Rd South Edmund H Smith IV was not

present.  He was being held at Mobile County Jail until a fine was paid.  I Edmund H

Smith III was down at the jail seeing what I had to do to get the money to help him pay

this fine.  Art approximately 11 a.m. that day I received a phone call from Mike Parker.

He pretended to be concerned about the well-being of EHSIV's whereabouts and when I

was going to be able to get him released and when he would be back down at 3900

Windsor Rd. and the status of the hole in his foot that was infected.  I told Mike Parker

that I had been told that I would have to go get cash money for his fine to be paid and it

would take approximately six hours to get the paper work done and to get him released.

At that time Mike Parker said let me put you on hold.  That he had an incoming call from

Phillip Coggin and he needed to talk to him for a minute or so.  I said go ahead that I

would hold. Mr Parker got Mr. Coggin on the phone but somehow I was still on the line,

so I could still hear what they were saying.  Mike did not realize that he had left me on

the phone line also.  Mr Parker told Mr Coggin that he in fact had been talking to me and

that EHSIV would be out around 7:00 p.m.. That what they had discussed the stealing of

the motor home that was parked on the foundation property at 3900 Windsor Rd. and at

that point Mr Coggin said he was on his way to steal the motor home and he would have

it picked up and remove it from the property when EHSIV wasn't home.

After Ed was released and we returned to Windsor Rd , in fact we were told that

Phillip Coggin had come down to the home and removed the keys for the motor home,

Attachment X. Page 3 of 11.

after entering the house without permission, out of EHSIV bedroom.  He then proceeded

to steal batteries out of a hydraulic deer stand and then stole the motor home.  All of these

events were witnessed by the domestic engineer and housekeeper and contractors at the

home.  They were unable to stop him.  This is a true statement of the removal of the

motor home.  I will be happy to take a lie detector test to prove this, and/or testify to its

truthfulness at any time.

Edmund H. Smith III

NOTARY PUBLIC, STATE OF AL
APRIL 15, 2008          MY COMMISSION EXPIRES JULY 24, 2010

Attachment X.  Page 4 of 11.

**PURCHASE ORDER**

10360 Beach Blvd. • Jacksonville, FL 32246
1 (800) 726-8686 • 1 (904) 998-0296 • Fax: (904) 642-4848
www.suncoastrv.com

| | | DATE OF BIRTH | | SOC. SEC. # | | | DRIVER LIC. # | | |
|---|---|---|---|---|---|---|---|---|---|

Mr.
Services, Top Catastrophe

| | DATE OF BIRTH | | SOC. SEC. # | | | | DRIVER LIC. # | | |
|---|---|---|---|---|---|---|---|---|---|

STREET ADDRESS
231-B Old Shell Rd

| CITY | STATE | | ZIP | | DATE | | |
|---|---|---|---|---|---|---|---|
| Mobile | Al | | 36607 | | 09 | 03 | 2005 |

PHONE
(904) 278-4512

BUS. PHONE
(251) 387 7615  Ed cell

| | | | | | | NEW ☐ | USED ☐ | OTHER ☐ | DESCRIBE |
|---|---|---|---|---|---|---|---|---|---|

| YEAR | MAKE | MODEL | LENGTH | STOCK NO. | COLOR | MILEAGE AT SALE |
|---|---|---|---|---|---|---|
| 2005 | GULFSTREAM | CRESCENDO | 38 | 8386CRE | GREE | 1410 |

VIN
1GUZAAHDC04CN33938

SERIAL
CN33938

TO BE DELIVERED ON OR ABOUT

**DESCRIPTION OF TRADE IN #1**

| YEAR | MAKE | MODEL | LENGTH |
|---|---|---|---|
| | | | BODY TYPE |
| MILEAGE | V.I.N. | | |

**DESCRIPTION OF TRADE IN #2**

| YEAR | MAKE | MODEL | LENGTH |
|---|---|---|---|
| | | | BODY TYPE |
| MILEAGE | V.I.N. | | |

COMMENTS

PAID IN FULL
CRM 1503

*George Cherry*

| SETTLEMENT | | |
|---|---|---|
| SALE PRICE | $121,872.00 | |
| DEALER INSTALLED OPTIONS | $0.00 | |
| | | |
| VEHICLE TOTAL (Including all options) | $121,872.00 | |
| LESS TRADE-IN ALLOWANCE | $0.00 | |
| CASH DIFFERENCE | $121,872.00 | |
| ELECTRONIC FILING (Florida Residents Only) | 16 | 50 |
| PREP FEES | 395 | 00 |
| BATTERY FEE ($1.50 per battery) | $0.00 | |
| TIRE FEE ($1.00 per tire on new tires) | $0.00 | |
| AMOUNT TAXABLE | $121,872.00 | |
| SALES TAX | $0.00 | |
| TAG FEES | $0.00 | |
| TRADE BALANCE OWED | $0.00 | |
| LIENHOLDERS NAME | | |
| TOTAL | $122,267.50 | |
| DEPOSIT SUBMITTED WITH ORDER | $0.00 | |
| CASH ON DELIVERY | $122,267.50 | |
| TIRE GUARD | $0.00 | |
| GAP INSURANCE | $0.00 | |
| EXTENDED WARRANTY | $0.00 | |
| TAX | $0.00 | |
| TOTAL BALANCE DUE | $122,267.00 | |

THE SELLER SUNCOAST RV, HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND SUNCOAST RV NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH SALE OF SAID PRODUCTS.

ACKNOWLEDGED BY X_____ CUSTOMER

**TRAILER INTERFACE**
ALL TRAILERS SOLD WILL INCLUDE HOOK-UP OF TRAILER TOW VEHICLE WITH CUSTOMERS EXISTING HITCH PARTS AND SHOWING CORRECT HITCHING PROCEDURE. ADDITIONAL PARTS AND LABOR ARE AT CUSTOMER'S EXPENSE.

ALL USED VEHICLES ARE SOLD "AS IS" WITH NO EXPRESSED OR IMPLIED WARRANTIES. EXTENDED WARRANTY PROTECTION IS AVAILABLE

THIS ORDER IS NOT VALID UNLESS SIGNED AND ACCEPTED BY DEALER.
THIS VEHICLE BEING PURCHASED MAY HAVE BEEN BUILT ON A PREVIOUS YEAR'S CHASSIS.

| SIGNED: _____ SALESMAN | SIGNED: X _____ CUSTOMER | DATE |
|---|---|---|
| APPROVED: | SIGNED: X _____ CUSTOMER | DATE |

PLUS $10,000.00 ADD'T SAT/C
+ $122,207.00
132,207.00

Attachment X. Page 5 of 11.

STATE OF FLORIDA
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES - DIVISION OF MOTOR VEHICLES
NEIL KIRKMAN BUILDING - TALLAHASSEE, FL 32399-0610

## APPLICATION FOR CERTIFICATE OF TITLE WITH/WITHOUT REGISTRATION

**VEHICLE TYPE:** ☐ OFF-HIGHWAY VEHICLE  ☐ MOTOR VEHICLE  ☐ MOBILE HOME  ☐ VESSEL

**APPLICATION TYPE:** ☐ ORIGINAL  ☐ TRANSFER

**OWNER/APPLICANT INFORMATION**

Owner's Name As It Appears on Driver License (First Name, Full Middle/Maiden Name, Last Name)
**Top Catastrophe or EDMOND HUDMOND SMITH**

Date of Birth: 6/21/66

Owner's County of Residence: C

Driver License or FEID/Suffix Number: MS 5053289

Co-Owner's Name As It Appears on Driver License (First Name, Full Middle/Maiden Name, Last Name)
*NONE*

Lessee's First Name, Full Middle/Maiden Name, Last Name
*NONE*

City: Mobile     State: AL     Zip: 36607

Owner's Mailing Address (Mandatory)
**2841 - B Old Shell Road**

Mail To Customer Name (If different From Above Owner)
**Edmond Hundmond Smith IV**

Date of Birth: 06/21/1966     Sex: M     FL Driver License or FEID/Suffix Number: AL License: 5053289

Mail To Physical Address (If different From Above Mailing Address)
**3900 Windsor Drive**     City: Mobile     State: AL     Zip: 36582

**MOTOR VEHICLE / MOBILE HOME / OFF-HIGHWAY / VESSEL DESCRIPTION**

Make/Manufacturer: **Gulfstream**  Year: **2005**  Body: **MH**  Color: **Green**

Vehicle/Vessel Identification Number: **4UZAAHDC04CN33936**

Weight: **24,475**     Length: **35**

**TRANSFER TYPE**

Date Acquired: 09 / 03 / 2005

IF OWNERSHIP WAS TRANSFERRED, HOW AND WHEN WAS THE VEHICLE, MOBILE HOME, OR VESSEL ACQUIRED
☑ SALE  ☐ GIFT  ☐ REPOSSESSION  ☐ COURT ORDER  ☐ OTHER

**ODOMETER INFORMATION**

I STATE THAT THIS MOTOR VEHICLE'S ☐ 5 DIGIT OR ☐ 6 DIGIT ODOMETER NOW READS  0 0 1 4 1 0  (NO TENTHS) MILES, DATE READ 09 / 03 / 05

Lienholder's Name: **NONE**

Florida Sales Tax Registration Number: **2600083174235**

Date of Sale: **09/03/2005**     Dealer License Number: **RV-10645**     Amount of Tax: **$0.00**

HSMV 82040 (REV. 08/05) S

Attachment X. Page 6 of 11.

**MOTOR VEHICLE IDENTIFICATION NUMBER VERIFICATION**

THIS SECTION REQUIRES A PHYSICAL INSPECTION AND A VERIFICATION OF THE VEHICLE IDENTIFICATION NUMBER (VIN) (OR THE MOTOR NUMBER FOR MOTOR VEHICLES MANUFACTURED PRIOR TO 1955) OF THE MOTOR VEHICLE DESCRIBED ON THIS FORM BY A LICENSED DEALER, FLORIDA NOTARY PUBLIC, POLICE OFFICER, OR FLORIDA DIVISION OF MOTOR VEHICLES EMPLOYEE OR TAX COLLECTOR EMPLOYEE. IF THE VIN IS VERIFIED BY AN OUT OF STATE MOTOR VEHICLE DEALER, THE VERIFICATION MUST BE SUBMITTED ON THEIR LETTERHEAD. COMPLETE THIS SECTION ON ALL USED MOTOR VEHICLES INCLUDING TRAILERS, (WITH ABBREVIATION OF "TL") WITH A WEIGHT OF 2,000 POUNDS OR MORE) NOT CURRENTLY TITLED IN FLORIDA.

I, the undersigned, certify that I have physically inspected the above described vehicle and find the vehicle identification number to be: 4UZAAHDC04CN33938 _(Vehicle Identification Number)_

| | |
|---|---|
| 09/03/05 | Fred Hassen _PRINTED NAME_ |
| DATE | SIGNATURE |

Notary Stamp or Seal

Law Enforcement Officer or Florida Dealer's Name _____ Badge # or Florida Dealer #

FL DMV/Tax Collector Employee _____ Florida Compliance Examiner/Inspector Badge or ID Number

COMMISSIONED NAME OF FLORIDA NOTARY _____ (Print, Type or Stamp)     NOTARY'S SIGNATURE

**SALES TAX EXEMPTION CERTIFICATION**

THE PURCHASE OF A RECREATIONAL VEHICLE TO BE OFFERED FOR RENT AS LIVING ACCOMMODATIONS DOES NOT QUALIFY FOR EXEMPTION. I CERTIFY THE RECREATIONAL VEHICLE, MOBILE HOME OR VESSEL DESCRIBED HAS BEEN PURCHASED AND IS EXEMPT FROM THE SALES TAX IMPOSED BY CHAPTER 212, FLORIDA STATUTES, BY:

CONSUMER'S CERTIFICATE OF EXEMPTION NUMBER

☐ PURCHASER (STATE AGENCIES, COUNTIES, ETC.) HOLDS VALID EXEMPTION CERTIFICATE

☐ MOTOR VEHICLE ☐ MOBILE HOME ☐ VESSEL WILL BE USED EXCLUSIVELY FOR RENTAL     SALES TAX REGISTRATION NUMBER

I hereby certify that ownership of the motor vehicle, mobile home or vessel described on this application, is not subject to Florida Sales and Use Tax for the following reason: ☐ INHERITANCE ☐ GIFT

☐ DIVORCE DECREE ☐ TRANSFER BETWEEN HUSBAND AND WIFE ☐ EVEN TRADE OR TRADE DOWN (State the facts of the even trade or trade down and the transferor information, including the transferor's name and address, below under "Other: Explain.")

☐ OTHER: (EXPLAIN) _____

**REPOSSESSION DECLARATION**

IF CHECKED, THE FOLLOWING CERTIFICATIONS ARE MADE BY THE APPLICANT:

☐ I CERTIFY THAT THIS MOTOR VEHICLE, MOBILE HOME OR VESSEL WAS REPOSSESSED UPON DEFAULT IN THE TERMS OF THE LIEN INSTRUMENT AND IS NOW IN MY POSSESSION.

☐ (VESSEL) A PHOTOCOPY OF THE LIEN INSTRUMENT FOR THE VESSEL IS REQUIRED AND ATTACHED.

☐ I AM REQUESTING THAT AN ORIGINAL CERTIFICATE OF REPOSSESSION BE ISSUED FOR THE MOTOR VEHICLE OR MOBILE HOME IN LIEU OF A TITLE (REPOSSESSION).

☐ I AM REQUESTING THAT A DUPLICATE CERTIFICATE OF REPOSSESSION BE ISSUED FOR THE MOTOR VEHICLE OR MOBILE HOME, AS THE ORIGINAL HAS BEEN LOST OR DESTROYED.

**NON-USE AND OTHER CERTIFICATIONS**

IF CHECKED, THE FOLLOWING CERTIFICATIONS ARE MADE BY THE APPLICANT:

☐ I CERTIFY THAT THE CERTIFICATE OF TITLE IS LOST OR DESTROYED.

☐ THE VEHICLE IDENTIFIED WILL NOT BE OPERATED ON THE STREETS AND HIGHWAYS OF THIS STATE.

☐ THE VESSEL IDENTIFIED WILL NOT BE OPERATED ON THE WATERS OF THIS STATE.

☐ OTHER: (EXPLAIN) _____

**APPLICATION ATTESTMENT AND SIGNATURES** (More than one form HSMV 82040 may be used for additional signatures.)

I/WE PHYSICALLY INSPECTED THE ODOMETER AND I/WE FURTHER AGREE TO DEFEND THE TITLE AGAINST ALL CLAIMS. (More than one form HSMV 82040 may be used for additional signatures.)

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

| | | |
|---|---|---|
| _(signature)_ | 09/03/2005 | |
| SIGNATURE OF APPLICANT (OWNER) | Date | SIGNATURE OF APPLICANT (CO-OWNER)     Date |
| SIGNATURE OF SPOUSE OF HEIRS (IF ANY) | | |

This undersigned person(s), state as follows: That _____ of _____, County, Florida died on the _____ day of _____, 20 _____, ☐ testate (with a will) ☐ intestate (without a will) and left surviving him/her the following beneficiaries:

Signature(s) of surviving spouse, co-owner and/or heirs. (More than one form HSMV 82040 may be used for additional signatures.)

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

Print or Type Name of Spouse, Co-owner or Heirs     Signature of Spouse, Co-Owner or Heirs

That at the time of death the decedent was owner of the motor vehicle, mobile home or vessel described in section 2 of this form. That the estate is not indebted and the assets of the estate, excluding this motor vehicle, mobile home or vessel are sufficient to pay all just claims and that no probate proceedings have been instituted upon the estate. That the person(s) signing above hereby releases all their right, title, interest and claim as heirs at law, legatees, devisees, or otherwise to the aforesaid motor vehicle, mobile home or vessel to _____

Name of Applicant(s) (Print or Type) _____

RESIDENTS OF FLORIDA AND ALL VESSEL OWNERS, RESIDING IN FLORIDA OR OUT OF STATE, SHOULD SUBMIT THIS FORM AND ALL REQUIRED DOCUMENTATION TO A LOCAL FLORIDA TAX COLLECTOR'S OFFICE OR THE FLORIDA TAX COLLECTOR'S OFFICE LOCATED IN THE APPLICANT'S COUNTY OF RESIDENCE FOR PROCESSING.

http://www.hsmv.state.fl.us

HSMV 82040 (REV. 09/04) S

Attachment X. Page 7 of 11.

# CERTIFICATE OF ORIGIN FOR A VEHICLE

DUPLICATE

INVOICE NO. 58-7138

DATE 04/27/2004

VEHICLE IDENTIFICATION NO. 4UZAAHDC04CN33938

YEAR 2005

MAKE GULF STREAM

SHIPPING WEIGHT *24,475

BODY TYPE CLASS A MOTOR HOME

H.P. (S.A.E) 330

G.V.W.R 29410

NO. CYLS. 6

SERIES OR MODEL 58-5-A-8386CRE-7138

*APPROX. UNIT BASE WEIGHT PLUS WEIGHT OF LISTED OPTIONS DOES NOT INCLUDE FLUIDS

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

SUN RECREATION, INC.
9012 BEACH BLVD
JACKSONVILLE     FL   32246

If the vehicle described hereon is a motor home the undersigned certifies that it is equipped with at least four of the following life support systems: cooking, refrigeration or ice box, self-contained toilet, heating and/or air conditioning, a potable water supply system including a faucet and sink, seperate 110-115 volt electrical power supply and/or an LP gas supply, all of which meet the ANSI A119.2 standards.

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

GULF STREAM COACH, INC.

(SIGNATURE OF AUTHORIZED REPRESENTATIVE)     (AGENT)

G000164166

NAPPANEE, INDIANA 46550

Attachment X. Page 8 of 11.

RV CORPORATE    FAX NO. :904 7390021

State of Indiana
My Commission Expires
October 06, 2011

Each undersigned seller certifies to the best of his knowledge, information and belief the vehicle is owned by and registered this or any state at the time of delivery and the vehicle is not subject to any security interest other than the disclosed herein, and delivers to the buyer the vehicle.
FOR VALUE RECEIVED, I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE.

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1**

NAME OF PURCHASER(S) SUN RECREATION, INC.
Address 9012 BEACH BLVD, JACKSONVILLE FL 32246
I certify to the best of my knowledge that the odometer reading is    12UNY

DEALER GULF STREAM COACH, INC.    DEALER'S LICENSE NUMBER
NAME OF DEALERSHIP
INDIANA
State of                    County of ELKHART

Being duly sworn upon oath says that the statements set forth are true and correct, Subscribed and sworn to me before this          day of        2004    Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION    No Tenths

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2**

NAME OF PURCHASER(S)
Address
I certify to the best of my knowledge that the odometer reading is    BY

DEALER    DEALER'S LICENSE NUMBER
SUNCOAST RV RV-10645
NAME OF DEALERSHIP

State of Florida    County of        Blvd.

Edmond Hudson Smith IV
Mobile, AL 36605

Notary Public State of Florida
My Commission DD509241
Expires 03/18/2010

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION    No Tenths

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3**

NAME OF PURCHASER(S)
ADDRESS
I certify to the best of my knowledge that the odometer reading is    BY

DEALER    DEALER'S LICENSE NUMBER
NAME OF DEALERSHIP

Being duly sworn upon oath says that the statements set forth are true and correct, Subscribed and sworn to me before this          day of        Notary Public

State of        County of

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION    No Tenths

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4**

NAME OF PURCHASER(S)
ADDRESS
I certify to the best of my knowledge that the odometer reading is    BY

DEALER    DEALER'S LICENSE NUMBER
NAME OF DEALERSHIP

Being duly sworn upon oath says that the statements set forth are true and correct, Subscribed and sworn to me before this          day of        Notary Public

State of        County of

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**ODOMETER DISCLOSURE FOR RETAIL SALE**

Federal Law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in lines and/or imprisonment.
I certify to the best of my knowledge that the odometer reading is        No Tenths ☐ The mileage stated is in excess of its mechanical limits. ☐ The odometer reading is not the actual mileage.
WARNING ODOMETER DISCREPANCY

Reading        Dealers No.

Signature(s) of Seller(s)
Printed Name(s) of Seller(s)
Signature(s) of Purchaser(s)
Printed Name(s) of Purchaser(s)
Address of Purchaser(s)

Date of Statement
Being duly sworn upon oath says that the statements set forth are true and correct, Subscribed and sworn to me before this          day of        Notary Public
State of        County of

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**LIENHOLDER**

1st lien in favor of
whose address is
2nd lien in favor of
whose address is

**Attachment X. Page 9 of 11.**

*6 MONTHS LATER*    *AFTER NON Compliance*

---

## Parker Warehouse

**From:** Catastropheclaim@aol.com
**Sent:** Thursday, September 28, 2006 4:41 PM
**To:** parkerwarehouse@comcast.net
**Cc:** parkerwarehouse@cox.net
**Subject:** You need to relay Fat Eddie some information!!!!!

He brings me 50k plus the 10k that he shorted me on the 268k dollar checks, and he can have the fucking little toy back, I have had 5 niggers living and fucking in it for 6 months, and it smells like fried chicken and water melons and rotten fish scales, I would not step foot in it because of the AIDS / Syphilis that is infested in the toilet and holding tanks, I moved it legally while Eddie was in Jail at your suggestion, to **"PROTECT OUR PROPERTY"**................ In our last meeting he signed the Toy over to me and had me sign all of the bill of sales and odometer statements as vice president of my company that my family started 90 years ago.................

This is the most important information you need to forward to that fat lying bastard. is this: I will be sending him back to jail for forgery of the 8 checks that he signed my name to, without my written expressed authority, *if he fuck's with me* ... further I will have the 5 niggers living at Foul River in the house that I lent him to buy 18 months ago *"the white elephant"*... I took your advise and I protected something that belongs to you and my family and I get criticized about it...... YOU TOLD ME TO GET SQUARE ON THE $435k HE TOOK FROM YOU AND ME during the last storm!!!!!

Fuck him and Fuck the money, I will be going to Costa Rica tomorrow and I will be there two weeks fishing for sailfish........... I do not need to liquidate anything this week!!!! If you do anything further with him you are not listening to your gut......... He has stolen me blind!!!!



Philip

**From:** Catastropheclaim@aol.com
**Sent:** Tuesday, February 14, 2006 6:46 PM
**To:** JDenenea@Midcitylaw.com
**Subject:** Re: Jeff Wooley

I would assume it was Robert Barnett and Mark Lozier, that cooked up this scenario, I can have one of the adjuster's that crossed lines, come and tell you the whole story..... He works for me now personally.....

He has ICS/NCA contracts and copies of their $5,000.00 check..............

My friend and partner, Mike Parker, told me he had a nice conversation with you about our solidarity...................... He has my pocket book concerns covered.  I'm 750k -950k upside down with Messier Smith; and that ball is rolling into the fire...........

Eddie has a problem with disbursement of net corporate funds, as instructed my Mike Parker, while Eddie was in Jail, I took the Diesel Pusher and sold it to Cuban Friend's of mine, that were in the Castro Regime, they have had it moved to South America, that check will be credited to Eddie Smiths personal debt to me on a person/corporate pro ratio.

With the Mardi Gras season at hand, I am yours very truly

Philip

Attachment X. Page 11 of 11.

## "FREEDOM OF INFORMATION ACT/PRIVACY ACT REQUEST"

NAME OF AGENCY: Alcohol,Tobacco & Firearms    DATE: May 2, 2018
ADDRESS: 99 New York Avenue, NE
CITY/STATE/ZIP Washington, DC  20226


REQUESTOR NAME: Edmond H. Smith IV
REG.NO.:    07241-059
DATE OF BIRTH: June 21, 1966
SOCIAL SECURITY: 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
PLACE OF BIRTH: Mobile, Alabama
CRIMINAL CAUSE NO.: 2009-CR-0389
DISTRICT COURT: Southern District of Alabama


Dear Sir/Madam;

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552(a), I hereby request copies of the following document(s). If for any reason your agency chooses not to send me any of the document(s) or paper(s) being requested please furnish me with a "Vaughn Index" as set forth in Vaughn vs. Rosen, 484 F.2d 820 (D.C. Cir. 1973)

I am requesting all records, documents, and information you have in your files pertaining to me or mentioning my name. Specifically, : Please provide copies of all arrests and convictions contained in the files and records of the ATF pertaining to this Requestor, that were maintained prior to January 7, 2009. Please state whether Requestor had any restrictions on purchasing firearms or ammunition prior to January 7, 2009.

Please consider this as a first-party request under the FOIA, 5 U.S.C. § 552, and as a Privacy Act request, 5 U.S.C. § 552(a).

In the event that some of the material is considred by your agency to be exempt from disclosure under both Act(s), then please include all segrgable portions of documents and the specific exemption you are relying upon to deny disclosure of the excised portions. Please note that in order to avoid disclosure you MUST claim an appropiate exemption under both Act(s).

I am furthermore requesting that you abide by the statutory time within which to make a determination on this request, that being ten (10) working days from your reciept under Section 552(a)(6)(A)(i).

I respectfully request a fee waiver or alternatively a fee reduction, however, in the event you deny this request for waiver, I hereby agree to pay the fee(s) for search and duplication while retaining my right to appeal your denial of waiver. The information requested will not be used for any commercial purpose.

I, Edmond H. Smith IV, hereby swear under the penalty of perjury that I am the person requesting all the above information/documents for my personal use.

Dated this 2nd day of May, 2018        ,2015

**Attachment XI. Page 1 of 9**

AGENCIES:
( )   United States Parole Commision
( )   Federal Bureau of Investigation
( )   Immigration & Naturalization Service
( )   Internal Revenue Service
( )   United States Attorney
( )   Treasury Department
( )   Bureau of Prisons
( )   State Agency
(X)   Other: ATF

TO:

RE: FREEDOM OF INFORMATION ACT
(U.S.C. 552) PRIVACY ACT
(5 U.S.C. 552a (d) (1)) Request:
EXEMPTIONS (5 U.S.C. 552 A
(J) (2)) OR SPECIFIC (U.S.C.
552a (k) (2)) NOT APPLICABLE TO
THIS REQUEST.

DIRECT RESPONSE TO:

Name: Edmond H. Smith IV

Reg. No.: 07241-059

Unit: U.S.Penitentiary
    Terre Haute, Ind  47808
Date:   May 2, 2018

IDENTIFICATION OF REQUESTER:
NAME: Edmond H. Smith IV
ALIAS:
DATE OF BIRTH: June 21, 1966
PLACE OF BIRTH: Mobile, Alabama
F.B.I. NO:
SOC. SEC. NO.: 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
OTHER:

Right Thumb      Right Index



RT        RI

Dear Sir/Ms:

This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 52a (d) (1), and the applicable State Statutes governing Freedom of Information Requests if state agency request, for full disclosure and release of all records and / or data contained in the files of your agency, and specifically under my name and / or an identifier assigned to my name. This request is sought specifically for amendment, deletion and / or expungement (5 U.S.C. 552a (d) (2) (a)) of records maintained by your Agency. The records sought but not limited to, is the compiled file containing (1) arrest records, (2) investigation and / or investigatory reports, (3) reports or evidentiary and / or scientific information findings, (4) wants, warrants, and / or detainers, (5) final and closing investigation reports: and (6) any and / or all information, data or reports not otherwise exempt by statute (5 U.S.C. (66) (1974). Menard v Saxbe, 498 F 2d. 1017, 162 U.S. App. D.C. 284 (1974). Sullivan v Murphy, 278 F. 2d, 938, 156 U.S. App. D.C. 28 (1973). Your Agency is advised that the investigation reports in toto are no longer accorded exempt status unless under the specific exemption noted., and only with reference to

**Attachment XI. Page 2 of 9.**

specific citation of authority, Paton v La Prade, 524 F. 2d 862, 868-69. (CA3 1975).
Specific requests:

1. Please provide copies of all restrictions on firearm ownership or purchasing rights/entitlement of the Requestor prior to January 7, 2009

ON CERTIFIED/OFFICIAL DOCUMENTS OR DOCUMENTATION OF ANY INVESTIGATIONS OR EVER OF LOOSEING THE ABILITY TO KEEP OR BEAR ARMS AS IS GUARANTEED BY THE UNITED STATES

2. CONSTITUTION AND MY II^ND AMMENDMENT CONSTITUTIONAL RIGHTS AT MY BIRTH AS A UNITED STATES CITIZEN.

3.

4.

5.

**Attachment XI. Page 3 of 9.**

## VERIFICATION

STATE OF INDIANA )

COUNTY OF VIGO )

CITY OF TERRE HAUTE )

_EDMOND HUDMOND SMITH IV_, First being duly sworn, deposes and says: That he is the affiant herin, that he has read the forgoing request for information release submitted to _A.T.o.F._ _DEPT. ALCHOHOL TOBAO FIREARMS_ and knows the contents thereof. That the personal identification data submitted for this request is true and accurate upon the personal knowledge of the affiant. And the verifiable fingerprint identification submitted.

_[signature]_

Requester

SUBSCRIBED and SWORN to
before me this _2nd_ day of
_May_ , ~~2005.~~ _2018_

_Kevin M Wasson_

Notary

My Commission Expires: _2-26-2022_

_[notary seal]_
KEVIN M WASSON
Notary Public - Seal
State of Indiana
Vigo County
My Commission Expires Feb 26, 2022

**Attachment XI. Page 4 of 9.**

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and / or any material therein contained has been released to any identifiable individual or agency, their name, title, purpose and need for such information, the date of such release, the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d) (1)), Paton v La Parde, 524 F. 2d 862 (CA3 1975), Tarlton v Saxbe, 507 F. 2d. 1116, 165 U.S. App. D.C. 293 1974), of Linda R.S. v Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L. Ed. 2d. 536.  (1973)

If is further requested that your agency provide me with a copy of specific regulations of your Department as provided by statute (5 U.S.C 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of information Act (5 U.S.C., 552) and the Privacy Act (5 U.S.C. 552a) together with the "alternate means of access to record on file with your Agency.  If and for any reason it is determined that portions of the material and records sought is exempt by state (5 U.S.C. (6) (c) (b) (7), 522a (j) (2) (k) (2) or by regulation (Menard v Mitchell, 430 F. 2d. 486, 139 U.S. App. D.C. 113 (1970), Nemetz v Department of Treasury, 446 F. Supp 102) I request specific citation to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to the material for release. Paton v La Parde, 524 F. 2d. 862 (CA3 1975), Chastain v Kelly, 510 F. 2d. 1232.  I further agree go pay any resonable costs , or file IN FORMA Pauperis if I am indigent, provided by statute or regulation of your agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. 552 (6) (1) (1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought.  Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regualtions and the date as to when your Agency will be able to act upon request.

Yours truly,

Dated : _MAY 1, 2018_

**Attachment XI. Page 5 of 9.**

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and / or any material therein contained has been released to any identifiable individual or agency, their name, title, purpose and need for such information, the date of such release, the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d) (1)), Paton v La Parde, 524 F. 2d 862 (CA3 1975), Tarlton v Saxbe, 507 F. 2d. 1116, 165 U.S. App. D.C. 293 1974), of Linda R.S. v Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L. Ed. 2d 536. (1973)

It is further requested that your agency provide me with a copy of specific regulations of your Department as provided by statute (5 U.S.C 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of information Act (5 U.S.C., 552) and the Privacy Act (5 U.S.C. 552a) together with the "alternate means of access to record on file with your Agency. If and for any reason it is determined that portions of the material and records sought is exempt by state (5 U.S.C. (6) (c) (b) (7), 522a (j) (2) (k) (2) or by regulation (Menard v Mitchell, 430 F. 2d. 486, 139 U.S. App. D.C. 113 (1970), Nemetz v Department of Treasury, 446 F. Supp 102) I request specific citation to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to the material for release. Paton v La Parde, 524 F. 2d. 862 (CA3 1975), Chastain v Kelly, 510 F. 2d. 1232. I further agree go pay any resonable costs , or file IN FORMA Pauperis if I am indigent, provided by statute or regulation of your agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. 552 (6) (1) (1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regualtions and the date as to when your Agency will be able to act upon request.

Yours truly,

Dated : _MAY 1, 2018_

**Attachment XI. Page 6 of 9.**

# CERTIFICATION OF IDENTITY

NAME OF REQUESTOR: EDMOND HUDMOND SMITH IV

FEDERAL INMATE NO: 07241-059        DATE OF BIRTH: 06-21-1966

PLACE OF BIRTH: Mobile, Alabama      SOCIAL SECURITY NO: 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

DATE ARRESTED: 01-07-2009          US DIST. COURT: S.D.Alabama

CRIMINAL CASE NO: CR-0389          DATE SENTENCED: December 2009

OTHER: _____

PRESENT ADDRESS: Terre Haute        FORMER ADDRESS: 3900 Windsor Dr.South
U.S.Penitentiary                                 Mobile (Foul River) Ala. 36582
P O Box  33
Terre Haute, Ind  47808

        I certify that I am the person named above and I understand that any falsification to this statement is punishable under the provisions of 18 U.S.C. §1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record (s) under false pretenses is punishable under the provision of 5 U.S.C. §551 (i) (3) by a fine of not more than $5000.

_____
Signature of requestor

STATE OF ~~FLORIDA~~ Indiana

COUNTY OF

Vigo

KEVIN M WASSON
Notary Public - Seal
State of Indiana
Vigo County
Commission Expires Feb 26, 2022

(SEAL ABOVE)

The foregoing instrument was acknowledge before me this  5-2-2018  by Edmond H. Smith IV ,
    (date)              (name of person acknowledging)
who is personally known to me or who has produced
Bureau of Prisons I.D.       as identification
        (type of identification)
and who did (did not) take an oath.

_Kevin M Wasson_
(Signature, Notary Public)

Commission Number:  651429

_Kevin M Wasson_
(Name of Notary typed, printed or stamped)

Attachment XI. Page 7 of 9.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

www.atf.gov

May 31, 2018                                        REFER TO:  2018-1012

Mr. Edmond Hudmond Smith, IV
Reg. No. 07241-059
USP Terre Haute
P.O. Box 33
Terre Haute, IN 47808-0033

Dear Mr. Smith:

This responds to your Freedom of Information Act (FOIA)/Privacy Act request dated May 2,
2018, and received by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) on May
18, 2018, in which you requested records concerning yourself.  Your request has been assigned
number 2018-1012.  Please refer to this number on any future correspondence.

Please be advised that a search has been conducted in our N-Force and TECS databases.  N-
Force and TECS are the systems of records that contains all investigative files compiled by ATF
for law enforcement purposes.  Based on the information you provided to us, we were not able to
locate any responsive records subject to the Freedom of Information Act.

For your information, Congress excluded three discrete categories of law enforcement and
national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c).  This
response is limited to those records that are subject to the requirements of the FOIA.  This is a
standard notification that is given to all our requesters and should not be taken as an indication
that excluded records do, or do not, exist.

You may contact our FOIA Public Liaisons, Darryl Webb or Johnny Rosner, at (202) 648-7390,
for any further assistance and to discuss any aspect of your request.  Additionally, you may
contact the Office of Government Information Services (OGIS) at the National Archives and
Records Administration to inquire about the FOIA mediation services they offer.  The contact
information for OGIS is as follows: Office of Government Information Services, National
Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park,
Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-
684-6448; or facsimile at 202-741-5769.

**Attachment XI. Page 8 of 9.**

Mr. Edmond Hudmond Smith, IV

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Peter J. Chisholm
Acting Chief, Disclosure Division

## AGREEMENT TO PROVIDE SERVICE

The effective date of this Agreement shall be Sept. 10, 2005.

This agreement ("Agreement") is between Claims Service Provider (the "Agency"), a corporation organized and existing under the laws of the State of Delaware, with its principal office located at 9363 E. Hillview Circle, Mesa, Maricopa County, Arizona and NCA Group, Inc. (the "Company"), of _____ [address], Indianapolis, _____ County, Indiana.

WHEREAS the parties are mutually desirous that the Agency be authorized by Company to provide Service in accordance with the provisions thereof; and

WHEREAS the Agency represents that it has the requisite personnel, competence and legal right to provide such services;

Now, therefore, in consideration of the premises and the mutual promises hereinafter set forth, the parties agree as follows:

### 1. SERVICES

Agency with prequalified a list of Adjusters, Constractors and firms based on the specifications put forth by the Company in Appendix A.  Each personnel file that is forwarded to Company will include a resume, copy of State adjuster's licenses and any other materials requested by Company for employment.

### 2. COMPENSATION

For services provided under this agreement, Agency shall be compensated as provided below:

A. For each referred adjuster, contractors or firm that is placed into employment by Company, Agency will receive ⬛ override on the gross fee billing for the duration of the assignment or two years.

### 3. PAYMENT

Payment for services provided Company under and pursuant to this Agreement shall be made every two weeks to include a detailed account of the referral employee's names and Monthly Hours and Minutes.

### 4. Termination

This Agreement may be terminated pursuant to the following:

1. By either party, with or without cause at any time, upon 365 days' prior written notice; or

2. By Company, at any time, upon 30 days' prior written notice, if Agency assigns this Agreement, or any right or obligation under this Agreement, without Company's prior written consent; or if there is a change in the control or management of Agency that is unacceptable to Company; or if Agency ceases to function as a going concern, or to conduct its operations in the normal course of business.

3. The obligations of Company under sections two and three above shall survive any expiration or termination of this Agreement.

5. INDEMNIFICATION

Each party agrees to take, and cause its employees to take, all necessary precautions to prevent injury to any persons (including employees of the other party) or damage to property (including the other party's property) and shall indemnify, hold harmless, and defend the other from and against any and all suits, actions, damages, costs, losses, expenses (including settlement awards and reasonable attorneys fees), and the liabilities arising from or in connection with any claim of injuries to person or damage to property resulting in any way from any act, omission, or negligence on the part of such party or its employees in the performance or failure to perform any obligation under this SA.

6. CONFIDENTIAL

By virtue of this Agreement, the parties may have access to ("Confidential Information"). The parties agree, both during the term of this SA and thereafter, to hold each other's Confidential Information in confidence. The parties agree not to make each other's Confidential Information available in any form to any third party or to use each other's Confidential Information for any purpose other than the implementation of this Agreement. Each party agrees to use the same degree of care that it uses to protect its own Confidential Information of a similar nature and value, but in no event less than a reasonable standard of care, to ensure that Confidential Information is not disclosed or distributed by its employees or agents in violation of the Provisions of this Agreement.

2

7. INDEPENDENT CONTRACTOR

The status of Agency is that of an independent contractor and not of an agent or employee of Company and, as such, Agency shall not have the right or power to enter into any contracts, agreements, or any other commitments on behalf of Company.

8. GENERAL

A. Assignment - Neither party may assign this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed.

B. Notice - Any notice provided for or concerning this Agreement shall be in writing and be deemed sufficiently given when sent by certified or registered mail if sent to the respective addresses of each party as set forth at the beginning of this Agreement.

C. Governing Law - It is agreed that this Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Arizona Indiana.

D. Entire Agreement - This Agreement shall constitute the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this Agreement shall not be binding on either party except to the extent incorporated in this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

Authorized Signatures

Company: NCA Group, Inc.

Name: Mark Lozier

Title: CEO

Date 9/21/2005

Signature: (original signed by Mark Losier)

Claims Services Provider

Name: Richard P. Blake

Title: President CEO

Date: 8/01/2005

Company: _NCA Group Inc._

Name: _MARK LOZIER_

Title: _CEO_

Date: _9-21-05_

Signature: _[signature]_

_[signature]_
EDMOND H. SMITH III
CEO: TOP CATASTROPHE LLC
PARENT CORPORATION

3

| Contractor Address: | Top Catastrophe Team Services In | Phone #: | |
| City/State: | Mobile Ala 36608 | NCA #: Storm Site Location: | New Orleans LA |
| Zip Code: | 36608 | Storm Prefix: | Client: |

## NCA INDEPENDENT CONTRACTOR AGREEMENT

National Catastrophe Adjusters, Inc., with its chief executive office located at 6983 Hillside Court, Indianapolis, Indiana 46250 (NCA) hereby contracts for Contractor's services as an independent contractor to perform the independent adjustment of insurance claims assigned to it by NCA in the above referenced location. As an independent contractor, Contractor agrees to provide all equipment and accessories necessary for the performance of this work, except that NCA will provide forms to be used in the reporting and adjustment of claims. Contractor acknowledges and agrees that it is not an employee of NCA and that its status during the performance of this agreement shall be that of an independent contractor. Contractor represents and warrants to NCA that it possesses the skill, experience and equipment necessary to perform the services contemplated by this agreement and Contractor shall not assign or subcontract any such services to others. Contractor agrees to perform its services with reasonable care and diligence and in strict compliance with applicable local, state and federal laws, rules and regulations, as well as any rules or regulations imposed by NCA's customer. Contractor acknowledges that it may be working in a hazardous area and in hazardous circumstances and assumes all risk of injury or sickness. Contractor releases NCA and its insurers from any claims for Contractor's injury, sickness or death and agrees to indemnify and forever hold harmless NCA and its insurers from and against any damages, expenses, costs or payments of any kind, including court costs and attorney fees, which NCA or its insurers may be compelled to make or expend, or shall become liable for, by reason of any claims, demands or actions that may at any time be made or brought against any of them by any person, firm or corporation because of the conduct of Contractor including the performance by Contractor of the services contemplated by this agreement. As an independent claims adjuster Contractor will retain sole and exclusive control of the manner in which these tasks are to be performed, and any risks the Contractor takes. Contractor shall be solely responsible for the conduct of the reports submitted to NCA. Contractor agrees to perform its duties in a timely manner as required by NCA. As an independent contractor, no taxes will be withheld from Contractor's compensation by NCA. Contractor is solely responsible for any and all state, local and/or federal tax obligations. Contractor agrees to comply with the laws and regulations of the state where Contractor's services are to be performed insofar as the procurement of workmen's compensation and public liability insurance. Contractor agrees to hold NCA harmless for any damages, expenses, liabilities or obligations of any type in regard to taxes or insurance. Contractor will be paid for his/her services ("Contractor's Compensation") as follows (payment method indicated by checked box with Contractor's initials), payment (subject to Holdback as described below) to be made on the 15th and last day of each calendar month ("Payment Period") during the term of this agreement.

[initial] _____ $ _____ for each auto accident claim adjustment.

[initial] _____ 65 % of NCA Adjusters' Fee Basis Amount (the AFB is subject to change at NCA's   PER Hr RATES discretion and is not necessarily the amount billed by NCA to its customer).

### NCA Group Withholding

Contractor's Compensation will be mailed to the above address (or other address specified in writing to NCA) at the end of each Payment Period, beginning _____ less applicable Holdback as herein defined. Ninety (90%) of Employee Compensation, less applicable withholding, will be paid in the normal payroll cycle twice monthly. Ten (10%) percent of Employee's Compensation ("Holdback") will be withheld to reimburse NCA for any adjustment made to any claim assigned to you, whether such adjustment is by NCA or its customer ("Adjustments"), and also to reimburse NCA for any time and expense incurred by NCA should any claim assigned to you be reworked or reopened for a reinspection and/or adjustment ("Adjustment Expenses"). That portion of the Holdback not reduced by Adjustments or Adjustment Expenses will be paid to you (less applicable withholdings) during the 1st billing period following the 90th day after the claim being closed by NCA. This agreement begins on _____ and shall continue in effect until terminated by either party upon written notice to the other or until all claims assigned to Contractor have been completed, whichever first occurs. All representations, warranties and agreements of Contractor shall survive Contractor's services under this agreement and termination of this agreement. All files assigned to Contractor shall remain the exclusive property of either NCA or its customer. Contractor shall on demand of NCA or its customer immediately turn over to NCA or its customer any and all files and their content, including computer generated data, and any and all other file material relating to any claim assigned to Contractor. Contractor shall pay, upon demand, all of NCA's costs, charges and expenses including reasonable fees of attorneys, agents and others retained by NCA incurred in enforcing Contractor's obligations hereunder or incurred by NCA in any litigation, negotiation or transaction in which Contractor causes NCA to become involved or concerned. This agreement shall be construed under and governed by the laws of the State of Indiana. Both parties agree that the sole venue for litigation of any dispute arising under this agreement will be in Marion County, Indiana, in accordance with Indiana Rules of Trial Procedure.

Top Catastrophe Team Services Inc.                    Jeff Schott   11-2-05

Contractor                         Date                NCA                        Date

Rev 96/22_AK

EXHIBIT

| Contractor: | Claim's Service Provider | Phone #: | 480-626-2048 |
| Address: | 9343 E Hillview Cir | SS#: | 02-0744888 |
| City/State: | Mesa, AZ 85207 | NCA #: | |
| | | Storm Site Location: | |
| Zip Code: | 85207 | Storm Prefix: | Client: |

## NCA INDEPENDENT CONTRACTOR AGREEMENT

National Catastrophe Adjusters, Inc, with its chief executive office located at 6863 Hillsdale Court, Indianapolis, Indiana 46250 (NCA) hereby contracts for Contractor's services as an independent contractor to perform the independent adjustment of insurance claims assigned to it by NCA in the above referenced location. As an independent contractor, Contractor agrees to provide all equipment and accessories necessary for the performance of this work, except that NCA will provide forms to be used in the reporting and adjustment of claims. Contractor acknowledges and agrees that it is not an employee of NCA and that its status during the performance of this agreement shall be that of an independent contractor. Contractor represents and warrants to NCA that it possesses the skill, experience and equipment necessary to perform the services contemplated by this agreement and Contractor shall not assign or subcontract any such services to others. Contractor agrees to perform its services with reasonable care and diligence and in strict compliance with applicable local, state and federal laws, rules and regulations, as well as any rules or regulations imposed by NCA's customer. Contractor acknowledges that it may be working in a hazardous area and in hazardous circumstances and assumes all risk of injury or sickness. Contractor releases NCA and its insurers from any claims for Contractor's injury, sickness or death and agrees to indemnify and forever hold harmless NCA and its insurers from and against any damages, expenses, costs or payments of any kind, including court costs and attorney fees, which NCA or its insurers may be compelled to make or expend, or shall become liable for, by reason of any claims, demands or actions that may at any time be made or brought against any of them by any person, firm or corporation because of the conduct of Contractor including the performance by Contractor of the services contemplated by this agreement. As an independent claims adjuster Contractor will retain sole and exclusive control of the manner in which these tasks are to be performed, and any risks the Contractor takes. Contractor shall be solely responsible for the content of the reports submitted to NCA. Contractor agrees to perform its duties in a timely manner as required by NCA. As an independent contractor, no taxes will be withheld from Contractor's compensation by NCA. Contractor is solely responsible for any and all state, local and/or federal tax obligations. Contractor agrees to comply with the laws and regulations of the state where Contractor's services are to be performed insofar as the procurement of workmen's compensation and public liability insurance. Contractor agrees to hold NCA harmless for any damages, expenses, liabilities or obligations of any type in regard to taxes or insurance. Contractor will be paid for his/her services ("Contractor's Compensation") as follows (payment method indicated by checked box with Contractor's initials), payment (subject to Holdback as described below) to be made on the 15th and last day of each calendar month ("Payment Period") during the term of this agreement:

☐ (initial) _____ $_____ for each auto accident claim adjustment.

☒ (initial) ___6.5___ % of NCA Adjuster Fee Basis Amount (the AFB is subject to change at NCA's discretion and is not necessarily the amount billed by NCA to its customer).  110 per hr.

## NCA Group Withholding

Contractor's Compensation will be mailed to the above address (or other address specified in writing to NCA) at the end of each Payment Period, beginning 10/31/05, less applicable Holdback as herein defined. Ninety (90%) percent of Employee Compensation, less applicable withholding, will be paid in the normal payroll cycle twice monthly. Ten (10%) percent of Employee's Compensation ("Holdback") will be withheld to reimburse NCA for any adjustment made to any claim assigned to you, whether such adjustment is by NCA or its customer ("Adjustments"), and also to reimburse NCA for any time and expense incurred by NCA should any claim assigned to you be reworked or reopened for a reinspection and/or adjustment ("Adjustment Expenses"). That portion of the Holdback not reduced by Adjustments or Adjustment Expenses will be paid to you (less applicable withholdings) during the 1st billing period following the 90th day after the claim being closed by NCA. This agreement begins on 10/15/05 and shall continue in effect until terminated by either party upon written notice to the either or until all claims assigned to Contractor have been completed, whichever first occurs. All representations, warranties and agreements of Contractor shall survive Contractor's services under this agreement and termination of this agreement. All files assigned to Contractor shall remain the exclusive property of either NCA or its customer. Contractor shall on demand of NCA or its customer immediately turn over to NCA or its customer any and all files and their content, including computer generated data, and any and all other file material relating to any claim assigned to Contractor. Contractor shall pay, upon demand, all of NCA's costs, charges and expenses including reasonable fees of attorneys, agents and others retained by NCA incurred in enforcing Contractor's obligations hereunder or incurred by NCA in any litigation, negotiation or transaction in which Contractor causes NCA to become involved or concerned. This agreement shall be construed under and governed by the laws of the State of Indiana. Both parties agree that the sole venue for litigation of any dispute arising under this agreement will be in Marion County, Indiana, in accordance with Indiana Rules of Trial Procedure.

_Gina Blake_    10/24/05          _[signature]_    10-24-05
Contractor    Date          NCA    Date

Rev 8/8/05 LAB

EXHIBIT

## St Paul Travelers
## Tropical Storm, Tornado & Hurricane Fee Schedule

## National Independent Adjuster Program
## Catastrophe Fee Schedule 2005

| GROSS CLAIM | | FEE |
|---|---|---|
| No Claim or Duplicate claim, Phone Contact only | | $40.00 |
| Duplicate Claim, Site visit & handling | | $100.00 |
| | | |
| $0 | $500.00 | $125.00 |
| $500.01 | $1,000.00 | $150.00 |
| $1,000.01 | $1,500.00 | $225.00 |
| $1,500.01 | $2,500.00 | $235.00 |
| $2,500.01 | $3,500.00 | $250.00 |
| $3,500.01 | $5,000.00 | $300.00 |
| $5,000.01 | $7,500.00 | $400.00 |
| $7,500.01 | $10,000.00 | $500.00 |
| $10,000.01 | $15,000.00 | $600.00 |
| $15,000.01 | $25,000.00 | $750.00 |
| $25,000.01 | $50,000.00 | 3.0% Minimum ($900) |
| $50,000.01 | $100,000.00 | 2.5% Minimum ($1550) |
| $100,000.01 | $250,000.00 | 2.3% Minimum ($2550) |
| | | |
| Denial | | Time & Expense |

$20 Administrative Fee (per file)
$2.00 per photo (first 4 included)

### Time and Expenses

| Hourly Rate: | Personal Lines | $65.00 per hour |
|---|---|---|
| | Commercial Lines | $90.00 per hour |
| Mileage: | First 70 miles included, .32 per mile thereafter | |
| Per Diem: | $750 Per day | |

Client agrees to pay all applicable state & local sales / use taxes
Before depreciation and or deductible

# INTEGRATED
## Claims Solutions

100 E. Thousand Oaks Blvd
Suite 140
Thousand Oaks, CA 91360
Tel: 1-805-497-8744
Toll Free: 1-866-942-2100
Fax: 1-805-497-2247
License 2C37413

### 2005 Rate Schedule.

## RATE SCHEDULE:

The standard hourly rate is based on several variables such as, but limited to, the complexity of the loss and the experience level of the handling adjuster.  ICS considers itself an innovator in the claims industry and can tailor rates to accommodate your special needs and solutions.

### *Rates*

| | |
|---|---|
| Property Adjuster | $ 90 |
| General Adjuster | $100 |
| Regional General Adjuster | $115 |
| National General Adjuster | $130 |
| Executive General Adjuster | $150 |

## EXPENSE CHARGES:

Ordinary office expenses are charged at our actual cost based upon a percentage of the fee amount.

Ordinary office expenses pertain to costs such as Office Services (stationary & supplies, clerical, administration and office support), Information Technology Services and Communication (postage, fax, telephone and cell-phone).  These do not include out-of-pocket expenses such as air travel, ground transportation, automobile and lodging costs, which are allocated to the invoice at the actual cost incurred when applicable.  Mileage rates are charged at the current IRS published rate.

Additional out-of-pocket expenses that are charged separately on the invoice include such items as photos, outside copying, color copying, extra-ordinary postage, etc.

State and other taxes are charged where applicable.

Rev. Sept 4, 2005

*St. Paul Corp Info.*

f;R^¦ Í‹x¦ûỵˡ¬Ì¢Ễ,

&

Login
Become a member
Manage your profile
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â
California Travel Nurses
4-13 wks, up to $41/hr, 36-60 Hrs. All
specialties needed now
Free Auto Insurance Quote
Free Quotes from Top Companies. Get a Low
Rate & Save Money!
Ads by Goooooogle
Advertise on this site
Explore Insider Guides
Search for Jobs
Shopping CartÂ Â
Research & Prepare
RESOURCE DATABASE
Advice & Articles
Careers
Cities
Companies
Recruiter Q&A
Industries
Real People
WebLog
Career Tools
(sponsored links)
Resume Writing
Self Assessment
Internships
St. Paul Travelers
Companies, Inc.
Key Facts:
ï ¬
Merged with Travelers Property Casualty in
March 2004.
ï ¬
Owns 79 percent of Nuveen Investments.
ï ¬
Number 227 on the Fortune 500.
Key Financial Facts
2003 revenue: $8,854 million
1-yr. growth rate:
â€"0.7 percent
Personnel Highlights
Number of employees: 9,300
1-yr. growth rate:
â€"4.1 percent
Company Overview
St. Paul Travelers provides commercial property-liability insurance,
asset management services,
and homeowners and auto insurance. The company was formed in 2004 when
the St. Paul
Companies acquired Travelers Property Casualty.
Based in St. Paul, Minnesota, from which it takes its name, the company
is currently focused on
doing business in North America and the United Kingdom. As a result, it

has sold off its
reinsurance and international business lines. Its subsidiary John Nuveen
Co. provides asset
management and investor services. International operations include
several syndicates of Great
Britain â€™
s Lloyd â€™
s of London, known to insure anything from expensive cigars to
appendages.
The company can trace its roots back to the 1853 formation of St. Paul
Mutual Insurance.
385 Washington St.
St. Paul, MN 55102
Phone: 651-310-7911
Phone: 800-328-2189
Fax: 651-310-3386
Website:
www.stpaultravelers.com
Ticker Symbol:
SPC
Page
1
of
2
WetFeet.com > St. Paul Travelers Companies Inc
2/24/2006
http://www.wetfeet.com/Content/Companies/S/St,-d-,%20Paul%20Travelers%
20Compani
...

```
 ⌐    Y←       ÿÿÿÿ    ẍ iXkl¶U↑=w–¶¶Ð⁺ᴸEê ᴸ) ⎞>¤ oE ∂P*",⌐
ÉKA ☐
µ
"⌐¢"Ä(Ẍ± Ï¦I$ü P4j·☐

↓£¿¢↓À̠ Ò
©ü±%&*↑B·↓Ûñ œŸ ↑7
ÉEøÂd×œœÌu¿¹óÍↂœ≻– 3 @z; ¨|⌐Ðß€
```

 **ST·PAUL TRAVELERS**    ESTIMATING COMPONENTS    (7/12/2005)

<u>IA Guidelines</u>

## I. Scope of Damages

Every claim with building damage should have a computer generated estimate of damages based on the IA's own scope. An appropriate scope of damage (scope notes) should be completed on each loss.

Scope notes should include a detailed assessment of the damage and the required repair/replacement functions by room/area with measurements and any necessary diagrams.

Photographs should be taken of damaged area(s), along with a front view of the building.

If flood is involved, photos need to be taken of the flood line inside and outside of the home. If siding is involved, please take photograph with tape reflecting the size of the exposure. i.e. double 4, 5 etc...

## II. Accurate Measurements

The estimate should include the correct identification and accurate measurements of the room, damaged area, or building component being repaired / replaced. Rooms should not be squared off and deduction for phantom walls must be taken.

## III. Accurate Quantity of Materials

The estimate should include the proper quantity of material needed to facilitate repairs using standard industry accepted building estimating practices.

## IV. Proper Repair/Replacement Method

The estimate should properly reflect the repair and/or replacement operation(s) applicable for the damage sustained. Were all the industry accepted repair procedures considered before full replacement is allowed?

## V. Appropriate Pricing

The estimate should reflect accurate pricing for the type and quality of materials being repaired or replaced.

Unit cost estimates should reflect prevailing rates for the quality of material being replaced.

## VI. Profit & Overhead

In most cases, profit & overhead should only be paid when repairs are completed by a General Contractor and the expense is incurred. Generally, unit cost prices are sufficient to cover a trade contractor overhead and profit.
**For the State of Georgia & Alabama**
Apply the profit and overhead ONLY if the insured has a signed contractor with a general contractor. .
If the GC is replacing the roof only, applying the O & P may not be necessary
**For the State of Louisiana**
Do not include O&P. O&P is only to be included when repairs have been completed and we have obtained a tax ID number.

## VII. Lump Sums

Lump sums, if used at all, should be supported by a detailed breakdown of material / labor, or other appropriate documentation. Minimum charges are acceptable when they are appropriately applied.

## VIII. Other Considerations

Other applicable items that should be addressed on an individual basis, include but are not limited to:

♦    Emergency repairs / Board up

- Old of unrelated damages
- Allowances for hidden, unknown, and unseen damages should not be included in estimates.
- Taxes
- Depreciation
- Specialty Items

## General Conditions

**Checks:** The Insured's names must be on all checks. This includes checks for any emergency work.

**Code Issues:** Building damages need to be written based on actual damages. Code issues will be handled on a supplemental basis.

**Debris Removal:** Xactimate unit cost includes to pick-up from area it was removed and placed in a dumpster.

**Depreciation:** should be on each item (line-by-line) and no depreciation on "tear out", repairs or minimum charges. The threshold for ACV holdback on policies with RC coverage will be $5,000.00. Depreciation for these claims will be taken from dollar one.

**Deductibles:** Need to be discussed with the insured at the time of the inspection.

**Dumpsters:** Use appropriate size for amount of debris being removed from job site. Trucking fees should be used on small losses.

**Estimates:** should **not** be sent to the policyholder prior to the desk review process.

**Experts:** Please discuss the use of Experts with a St. Paul-Travelers Property Management.

**Fast Track Claims Up To $2,500:** This is designed for claims with trees down, ALE, minor damage only. When building damage has potential for water/mold, an inspection is required. When in doubt -- Inspection is required.

**HO – 6 Policies:** Please obtain a copy of the association by laws to **determine who is primary.**

**Matching Issues:** Will be handled on a claim by claim basis.

**Mortgagee:** Needs to be included on all losses. Please discuss with insured if the Mortgagee listed on the file is the actual mortgagee that the insured has to date. If not, please ask the insured to contact their agent to have their policy amended. Please have the insured provide us with a copy of their new mortgagee statement.

**Mold Claims:** If mold is discovered at a loss, please write up the damages as seen, write estimate as a separate coverage subject to the applicable limit. Please take appropriate photographs, and contact the St Paul-Travelers Property Manager ASAP.

**Permits;** Need to be calculated based on actual cost. Do not use % of loss.

**Public Adjusters:** Please obtain a copy of the public adjuster's retainer. Please obtain Tax Id number.

**Reserves:** Please provide us written notification of any and all claims over $25,000. Large loss reports need to completed on any claim $50,000 and over. Claims at $100,000 and above will require significant loss report.

**Supervision:** Under normal conditions should not be required. Supervision is normally a part of *Profit & Overhead*.

**Taxes:** Should be appropriately applied based on county rates. When overhead and profit is required the tax needs to be applied prior to the application of the taxes, i.e. no OH and P on tax.

**Tax ID #:** Please obtain Tax ID # for all parties that will be included on any check.

**Vendors:** Vendor usage needs to be pre approved by a St. Paul-Travelers Management.

 ST PAUL TRAVELERS **TRAVELERS**

Only **THREE** things in Xactimate need to have waste added.  They are: **roofing, carpet and vinyl sheet goods**.

### EXTERIOR

| Always: (All Trades) | • Deduct all Phantom walls / Missing walls / Missing areas.<br>• Deduct openings 32 SF and greater. i.e. Chimneys, Garage doors, etc. |
|---|---|
| Masonry/Concrete/ Stucco/Brick | • Estimate net square footage of area (Deduct all Openings/Phantom/Missing areas. |
| Roofing | • Remove net area (Deduct all Openings/Phantom/Missing areas) for all roof materials.<br>• Flats roof replacement - Deduct all openings and do not add waste.<br>• Gable roof replacement - Deduct all openings and add 10% waste.<br>• Hip roof replacement - Deduct all openings and add 15% waste.<br>• Felt, drip edge, vents and ice shield need to be added if present.<br>• Removal of felt is included in the roof tear out cost. Replacement of felt should be calculated based on the net SF less any ice and water shield. No waste needed.<br>• All height and steep allowance need to be calculated based on the net area. No waste needed. |
| Siding (wood, aluminum, vinyl) | • Estimate net square footage. (Deduct all Openings/Phantom/Missing areas).<br>• Add for window wraps if needed and present.<br>• Xactimate includes a 10% waste factor into the replacement cost. |

### INTERIOR

| Always: (All Trades) | • Deduct all Phantom walls / Missing walls / Missing areas.<br>• Deduct area occupied by cabinets, wall tile, chimneys and/or tub surrounds.<br>• Deduct openings 32 SF and greater. We should deduct excessive single openings. Multiple openings in hallways, ceiling tiles (due to light fixtures) are some examples. |
|---|---|
| Cabinets | • Remove and replace based on LF of usable cabinet.<br>• Do not include areas occupied by the refrigerator, stove or dishwasher. Make sure to include blind corners as necessary. Do not include space if not usable. |
| Carpet / Vinyl (Sheet goods) | • Remove net square footage.<br>• Calculate installed quantity using "drop and fill" method.<br>• Pads need to be torn out and replaced based on the net SF. |
| Plaster (Wood, wire, rock and metal lath) | • Estimate net square footage for removal and replacement. (Deduct all Openings/Phantom/Missing areas).<br>• Xactimate includes a 10% waste factor into the replacement cost. |
| Trim Work | • Examples: Cove, chair, crown, shoe and base.<br>• Deduct openings greater than a single. Examples: Double doors / Base Heat. |
| Wall and Floor (Ceramic, Stone, Marble, Vinyl Composition) | • Estimate net square footage for removal and replacement. (Deduct all Openings/Phantom/Missing areas).<br>• Xactimate includes a 10% waste factor into the replacement cost. |
| Wallpaper / Wallpaper border | • Estimate net square footage, deducting all openings.<br>• Xactimate includes a 15% waste factor into the replacement cost. |
| Wood, Engineered and Laminated Flooring | • Estimate net square footage for removal, replacement and/or refinishing. (Deduct all openings).<br>• Xactimate includes a 10% waste factor into the replacement cost. |

XACTIMATE - St Paul-Travelers Insurance - BDE Guidelines - 4

**WASTE FACTORS:** Several estimating systems include default waste percentages or Pre-calculated Waste Factors. Xactimate pre-calculates waste for all items except vinyl flooring, carpet, and roofing. Vinyl flooring and carpet should be calculated based on the Drop and Fill method, and roofing waste should be calculated based on 10% for gable roofs and 15% for hips. Please do not use the Xactimate waste expert.

Need for **2nd opinions**: tough calls; contact the local St Paul-Travelers Property Management.

All claim files/estimates are subject to a Desk Review prior to payment.
A random selection of claim files will be physically reinspected by a St. Paul/-Travelers Re-inspectors.

### File Construction

Invoice
Report
Building Estimate
Contents
ALE
Diagrams and Supports
Insured to Value info
Photos

### Underwriting File Requirements

Please note the following:

Does the home have hurricane shutters?  Yes  or  No ( FLORIDA & ALABAMA)
Does the home have hurricane straps?    Yes  or  No (FLORIDA & ALABAMA)
What type of roof is on the home?  Gable, Hip, Gambrel, Mansard, Flat
What are the roofing materials?
What is the age of the roof?
What is the age of the dwelling?
What is the SF of the dwelling? (Living Area)

## BUSINESS INTERRUPTION GUIDELINES

**Note to all Katrina Adjusters: The following instructions apply to each of your assignments wherein a Business Interruption claim is being presented by the insured. You should be read these instructions carefully and adhere to as prescribed.**

1. For each assignment involving a Business Interruption (BI) claim, the policy should be reviewed in order to determine if there is BI coverage present on the form. It should not be assumed this coverage exists on all of our policies.

2. Two (2) business interruption information request letters have been prepared and approved by the SPT legal department. Once it has been determined there is BI coverage present on the policy, one of these two letters should be mailed, faxed, emailed or given to the Insured. A copy of the letter must be transmitted to SPT as part of your next report.

   - The only difference between the two letters is that one is aimed at retail businesses and the other is aimed at professional service oriented businesses. Please be sure to give the Insured the most appropriate letter for their business.

   - Delivery of this letter and via what means should be documented in your log notes.

   - Each letter should be customized to the individual Insured with the proper information reflected in the header section. Further, the correct underwriting company, which you will find on the policy registrations received with each claim, should be inserted throughout the letter where indicated.

   - No changes should be made to the content or format of the letter.

- Do **NOT** sign or affix your name to end of the letter. This is a SPT correspondence being transmitted to their policy holders by you.

3. The independent adjuster should determine the period of restoration.

   - In establishing the period of restoration, the multiple reasons for shutdown should be considered. This would include civil authority for the particular parish or county where the Insured is located, power outage-on or off premises and physical damage to building by covered and non-covered causes of loss.

   - Please remember, you are going to have to review the policy. We do not want you discussing coverage nor making coverage decisions but you are going to have to consider it when making your recommendations for the period of restoration.

4. You may advise the Insured to submit the information to our office directly or you may collect it and submit it to us. Please do not hold onto the information once the Insured gives it to you as they will call the office for status and we will not be able to assist.

5. In speaking with the Insured, ask Insured for total yearly sales, cost of goods sold, monthly net profit or loss, average monthly expenses, whether or not they are paying their employees. Basically, try and get an idea of the financial exposure.

6. A list of contacts for adjusters and accountants working in the business interruption unit will be made available to you. If you have any questions regarding coverage or calculations, you will then be able to contact them or put the Insured in contact with them for further clarification.



## GENERAL CONDITIONS

| | |
|---|---|
| **Base Service Charges** | Includes: One time trip charge, planning and mobilization fees. |
| **Co-Insurance** | Co-insurance should be recognized and appropriately addressed. If co-insurance compliance cannot be validated, or for good cause a co-insurance offset is not being applied, a letter reserving Travelers' rights to calculate and apply a co-insurance offset on future losses should be sent to the Insured/Claimant. |
| **Depreciation** | • Proper valuation should be applied according to policy condition and limitations (e.g., special limits of liability, agreed values). <br> • When applicable, the actual cash value should be calculated and paid according to the policy terms. <br> • When applicable, depreciation should be calculated and applied on an item by item basis using appropriate guidelines and methods (e.g., depreciation tables, reasonable life expectancy, market value, broad evidence rule). "Trade by trade" depreciation may also be considered. <br> • When applicable, the claim handler should advise the Insured/Claimant of any amounts withheld and the timelines and the Insured's/Claimant's duties and responsibilities for collecting replacement cost benefits. |
| **Dumpsters** | Use appropriate size for amount of debris being removed. Pick up loads should be used for smaller losses. |
| **Pricing** | Economy to scale issues should be considered when we have a large quantity and efficiency of the work being completed. i.e. Dining room floor 200 SF vs. gym floor 6000 SF. We need to consider time and material estimating for smaller claims. i.e. stain to one ceiling. |
| **Labor Efficiencies** | Use Broken Out with Base Service Charges turned on. Each BSC needs to be reviewed and modified when line items are amended to include the fees associated with the BSC i.e. line item adjustment, minimum charge and/or a trade person doing multiple tasks. |
| **Minimum Charges** | Minimum Charges should be used only once per trade per estimate. Multiple repairs involving similar trades need to be evaluated based upon time and material estimating, and not multiple minimum charges. Small repairs require more labor per square foot than is normally provided in a square foot unit price. Minimum Charges can be calculated to include supporting events. When the Minimum Charge fees used include the supporting events, the BSC will need to be modified. |
| **Permits** | Based on actual cost. Do not use % of loss. Costs of Permits should always be researched locally. |
| **Salvage** | Salvage should be determined as soon as possible and recorded in the salvage log maintained in the local Claim Service Center. Salvage should be protected, recovered and/or disposed of in a timely manner by an approved salvor. If an Insured/Claimant wants to retain salvage, they should be allowed to do so when appropriate. In this event, an offset against benefits paid on the claim should be recorded in the salvage log and reflected in the claim file documentation. |
| **Supervision** | Under normal conditions Supervision should not be required. Supervision is normally a part of *Profit & Overhead*. |
| **Supporting Events** | Includes: Planning, Drive Time, Material Pick up, Breaks, Set Up, Clean Up, and Loss of production due to working in a restoration environment. |
| **Tear Out / Debris Removal** | **Xactimate remove** function includes reasonable labor cost to remove an item and discard in a job-site waste receptacle. |

XACTIMATE - St Paul-Travelers Insurance - BDE Guidelines - 4

Page 2

Extra Expense
Time Element Subtotal =

Gross Estimate
Less Deductible(s)
Net Estimate

*Partial Payments should be shown as processed.*

*Final reports should substitute "AGREED LOSS" for ESTIMATE.*

*Change in ESTIMATE should be shown in a 2 column format:*

**PRIOR**                    **REVISED**

*And show old number and new number, if changing, for each component of loss.*

ABSTRACT OF COVERAGE:

*Type of property or risk insured. (All Real and Personal Property, Building, Personal Property, Time Element, etc.) Perils – Named or All-Risk. State form numbers if applicable. State any limit or sub-limit of liability. State deductible. State valuation clause. State whether Agreed Amount clause is applicable.*
*If an unusual and/or large dollar issue will be triggered by a special clause, or if a coverage issue is involved, quote the entire clause here or in a separate caption such as COVERAGE ISSUE or REPLY REQUESTED.*

**DATE OF LOSS:**

**LOCATION INVOLVED:**

*Address or any other location Identification Numbers.*

**RISK:**

*Brief description of risk and type of property involved in loss (Building, Personal Property, Time Element, other). Describe building construction, other characteristics, age, sprinkler protected and describe the type of business, personal property utilized in the business. Describe business products and source of TE loss.*

**COINSURANCE CLAUSE:**

**OTHER INSURANCE:**

**CAUSE OF LOSS:**

*Name actual peril (fire, theft, wind, if known). Include Catastrophe Number if applicable. State brief description of loss.*

### SUBROGATION:

Discussion of any subrogation possibilities. Identify any potential 3rd party. Do not comment on probability of recovery. Recovery Director/Department must be notified of any potential immediately on losses >$100,000.

### SALVAGE:

State whether or not it will be a factor in the loss. Describe property and type of damage. State the name and address of the salvor involved.

### CONSULTANTS:

Secure authorization from insurer(s) prior to engaging any consultant or vendor. Secure budgets and document precise responsibilities and instructions. State "we have retained (Full firm name, address and telephone numbers and type of service involved) on your behalf" in report.

### ADJUSTMENT:

Initial and status reports must use the sub-captions below, unless otherwise instructed by the customer. The PROPOSED ADJUSTMENT report must be clearly identified as such with a detailed PROPOSED STATEMENT OF LOSS and supporting documentation. The narrative must address details of the adjustment process and the recommended resolution of all major or unusual items.

#### SCOPE OF LOSS:

Describe damaged components of each involved item, i.e. Building (ex. 4 ply built up roof, 150 squares at estimated $/sq.; clean and paint affected areas; replace switchgear and wiring, etc.); Machinery and Equipment (describe specifics or groups and whether repairable or if replacement required due to described damage with estimates); Inventory (type, damage and values) and any other item of physical loss.

Describe impact of loss to business. Is production or revenue stream interrupted, how long, how can mitigation reduce loss. Include financial information, i.e. annual sales of insured at this location. What units of measurement (pounds, tons, yards, rolls, pieces) and value are involved in developing your estimate.

Discuss any Extra Expense items or issues.

#### WHAT HAS BEEN DONE:

State date loss received, date of site inspection and date Estimate transmitted to insurer(s).

Describe activities so far, individuals involved in process, lay out initial Adjustment Plan and agreed process for follow-ups and documenting progress. Include identification and operation

of any special policy clauses, i.e. Building Code issues, Salvage (Control of Damaged Goods), Order of Civil Authority, Ingress/Egress.

### WHAT IS TO BE DONE:

Address formal or informal Adjustment Plan.  Can list in numerical fashion or narrative. Set dates for follow-ups, identify who will do what by when.

### DIARY:

State date next report will be submitted. If the Time Element interruption period is still on-going, maximum diary is 30 days.

**(SIGNATURE)** Type name in

**ENCLOSURE:** (IF APPLICABLE)-Number and list in same order as addressed in report.

Page 2

- WAGE STATEMENTS REFLECTING ANY PAYMENTS MADE TO HOURLY EMPLOYEES PAID DURING THE SHUTDOWN
- IDENTIFICATION OF ANY WORK DONE OFF-SITE OR DURING EXTENDED HOURS TO MITIGATE LOSS DURING OR IMMEDIATELY FOLLOWING THE DAYS OF INTERRUPTION

For Business Interruption claims with loss periods between thirty-one (31) and ninety (90) days, we will need the following information to document your loss:

- YOUR FEDERAL TAX IDENTIFICATION NUMBER
- NORMAL OPERATING DAYS AND HOURS
- 2004 FEDERAL TAX RETURN (INCLUDING OTHER DEDUCTIONS PAGE)
- 2004 YEAR END PROFIT AND LOSS STATEMENT
- MONTHLY PROFIT AND LOSS STATEMENTS FOR JUNE THROUGH NOVEMBER 2004 AND ALL OF 2005
- WAGE STATEMENTS REFLECTING ANY PAYMENTS MADE TO HOURLY EMPLOYEES PAID DURING THE SHUTDOWN
- IDENTIFICATION OF ANY WORK DONE OFF-SITE OR DURING EXTENDED HOURS TO MITIGATE LOSS DURING OR IMMEDIATELY FOLLOWING THE DAYS OF INTERRUPTION

For Business Interruption claims with loss periods greater than ninety-one (91) days but less than twelve (12) months, we will need the following information to document your loss:

- YOUR FEDERAL TAX IDENTIFICATION NUMBER
- NORMAL OPERATING DAYS AND HOURS
- 2004 FEDERAL TAX RETURN (INCLUDING OTHER DEDUCTIONS PAGE)
- 2004 YEAR END PROFIT AND LOSS STATEMENT
- MONTHLY PROFIT AND LOSS STATEMENTS FOR JANUARY 2002 THROUGH END OF LOSS PERIOD
- WAGE STATEMENTS REFLECTING ANY PAYMENTS MADE TO HOURLY EMPLOYEES PAID DURING THE SHUTDOWN
- IDENTIFICATION OF ANY WORK DONE OFF-SITE OR DURING EXTENDED HOURS TO MITIGATE LOSS DURING OR IMMEDIATELY FOLLOWING THE DAYS OF INTERRUPTION

For Business Interruption claims with loss periods of twelve (12) months or greater, we will need the following information to document your loss:

- YOUR FEDERAL TAX IDENTIFICATION NUMBER
- NORMAL OPERATING DAYS AND HOURS
- 2004 FEDERAL TAX RETURN (INCLUDING OTHER DEDUCTIONS PAGE)
- 2004 YEAR END PROFIT AND LOSS STATEMENT
- MONTHLY PROFIT AND LOSS STATEMENTS FOR 2004 AND 2005
- WAGE STATEMENTS REFLECTING ANY PAYMENTS MADE TO HOURLY EMPLOYEES PAID DURING THE SHUTDOWN

- **IDENTIFCATION OF ANY WORK DONE OFF-SITE OR DURING EXTENDED HOURS TO MITIGATE LOSS DURING OR IMMEDIATELY FOLLOWING THE DAYS OF INTERRUPTION**

Additionally, for all Business Interruption claims, we will need the following information:

- **DATES OF AND EXACT NUMBER OF HOURS/DAYS YOU WERE CLOSED DUE TO GENERAL POWER FAILURE**
- **DATES OF AND EXACT NUMBER OF HOURS/DAYS YOU WERE CLOSED DUE TO DIRECT PHYSICAL DAMAGE TO YOUR LOCATION WHICH PREVENTED YOU FROM OPERATING**
- **DATES OF AND EXACT NUMBER OF HOURS/DAYS YOU WERE CLOSED DUE TO CIVIL AUTHORTY PROHIBITING YOU FROM ACCESSING YOUR PROPERTY**
- **ANY ADDITIONAL INFORMATION YOU WOULD LIKE US TO CONSIDER UNDER EXTRA EXPENSE COVERAGE**

As indicated above, we will need to know the exact reason for your shutdown on a daily basis in order to determine the availability of coverage. This is not intended to be a complete list of the information we may need to adjust your claim. As we continue our investigation, we will contact you if there is a need for additional information. If you have a question about whether the items above pertain to your specific type of business, please feel free to contact us.

St Paul Travelers understands it may be difficult for you to obtain some or all of these documents; however, they are needed in order to properly calculate this portion of your claim. Some resources you may consider for gathering this documentation are the Internal Revenue Service (according to IRS.GOV, people affected by Hurricane Katrina who need help with tax matters can call 1-866-562-5227, your State Tax Commissions and your service providers such as your bank, accountant, financial planner or lawyer. Other sources of useful information include; vendors (stock, supplies, etc.), State unemployment agencies (payroll), landlord, banking institutions and utility companies.

Please submit the requested information at your earliest convenience so we may begin to evaluate this portion of your claim.

It is also likely as part of our investigation of your claim; we will need to inspect your property. An adjuster will contact you regarding an appointment date and time for this inspection.

Please be advised that St Paul Travelers is proceeding with the investigation of this matter and your damage arising out of Hurricane Katrina and the related subsequent events under a full reservation of rights, without waiver of, or prejudice to, all the rights, defenses and contentions which are available to us under the aforementioned policy. Please understand that we are not disclaiming the coverage or protection afforded under your policy. We are sending this letter so we may continue our investigation without waiving any policy conditions or defenses available to us.

# LARGE LOSS NOTICE                                      PROPERTY

| Claim Number | Adjusting Office | Type Of Loss | Today's Date |
|---|---|---|---|

| Claim Handler Name | Initials | Phone Number | Fax Number |
|---|---|---|---|

| Name Of Insured | Loss Location | Date Of Loss |
|---|---|---|

| Policy Number | Agent Name | Agent Code | Company |
|---|---|---|---|

## Coverage Codes

| | Policy Limits | Deductible (s) | Estimate(s) |
|---|---|---|---|
| B=Building ☐      OS=Other Structure ☐ | Building: | | |
| PPR=Repl Contents ☐   AE=ALE/Loss Of Use ☐ | Contents: | | |
| C=Contents ☐              ☐ | ALE: | | |

## Financial Information

| Total Estimate Amount _____ | New NOL ☐ | Change Of Incurred ☐ | Excess  Limits _____ $ |
|---|---|---|---|
| Prior Reserve Amount _____ | Re-open ☐ | Closing ☐ | Other Insurance _____ |

## Description of Loss and Comments

## Subrogation Potential

## Distribution

Sonja Allen-Teague
Jean Harper-Mason
Gregg Fryer

**ST PAUL TRAVELERS COMPANIES**
FF-0001 Rev. 4/04 Printed in Tampa, FL USA

 **ST PAUL TRAVELERS**

PO Box 42841
Houston, Texas 77242
(877) 784 5329 fax
(866) 297 0591

**Storm Office**
National Catastrophe Team

May 13, 2012

Name and address of Insured

| RE: | | | |
|---|---|---|---|
| **Insured** | : | **RETAIL BUSINESS** | |
| **Claim Number** | : | | |
| **Underwriting Co.** | : | [Name of issuing company] | |
| **Policy Number** | : | | |
| **Date of Loss** | : | | |
| **Loss Location** | : | | |

Dear Insured:

[Name of issing company] is aware you may have sustained business interruption and/or incurred extra expense, due to Hurricane Katrina. At this time, [ ] has neither accepted nor disclaimed coverage but is investigating the details of your loss including the type of loss, the sustained damage and the applicability of coverage. [ ], by sending this letter and making you aware of the documentation which may be needed, is neither confirming nor denying you have coverage for this portion of your claim. If our investigation should indicate the loss you have sustained and the damage you have suffered is not covered or is limited by the terms and conditions of your policy, [ ] reserves the right to disclaim or limit coverage accordingly.

Should we determine there is coverage or partial coverage for this portion of your claim; we would need the following information in order to evaluate this financial loss for you.

For Business Interruption claims with loss periods less than thirty (30) days, we will need the following information to document your loss:

- YOUR FEDERAL TAX IDENTIFICATION NUMBER
- NORMAL OPERATING DAYS AND HOURS
- 2004 FEDERAL TAX RETURN (INCLUDING OTHER DEDUCTIONS PAGE)
- 2004 YEAR END PROFIT AND LOSS STATEMENT
- DAILY / WEEKLY SALES REPORT FOR THE SIX (6) WEEKS PRIOR TO LOSS
- DAILY / WEEKLY SALES REPORT FOR THE PERIOD OF LOSS

# COMMERCIAL LINE CONTACTS

**Thornton James**
**Unit Manager**
TLJAMES@SPT.COM
(860) 680-9167

**Peter Gressick**
**Unit Manager**
PGRESSIC@SPT.COM
(860) 680-9627

**York Simmer**
**Unit Manager**
YSIMMER@SPT.COM
(860) 830-1838

**Teddie Wise**
**Unit Manager**
TWISE@SPT.COM
(860) 830-1109

**Barbara Brown**
**Claim Representative**
BABROWN3@SPT.COM
(860) 830-1075

**Tim Richardson**
**Claim Representative**
TDRICHAR@SPT.COM
(860) 985-6351

JOHNNY DENENEA, JR.
Draft dictation in Top Catastrophe

On August 29, 2005, the now historic Hurricane Katrina made landfall in the Gulf Coast of the United States.

In anticipation of the storm's arrival and expected catastrophic damage, the defendants were poised to handle several thousands of claims throughout the coastal states.

Defendant, St. Paul Travelers Insurance Company, Inc. ("St. Paul") enlisted and contracted with National Catastrophe Adjusters, Inc. ("NCA") and Integrated Claims Solutions, L.L.C. ("ICS") to administer their insurance claims throughout the coastal areas.

Defendants, NCA and ICS, thereafter contracted with complainant, CSP, in an effort to recruit adjuster and adjusting companies in the coastal areas to handle the thousands of claims expected by the defendants, A division and subsidiary of TOP CATASTROPHE.

NCA and ICS contracted with CSP to pay CSP a five percent bonus on all [billable time/time and expense sheet/claims file] on the claims handled by the adjusters that were recruited by CSP. and TOP CATASTROPHE.

In accordance with the agreement, CSP recruited other adjusters, including Top Catastrophe, for the handling of the claims of the defendants.

Top Catastrophe, its agents, employees, and officers, were experienced in the handling of catastrophe claims and in the handling of hurricane related claims.

As a result of the recruitment of Top Catastrophe, Top Catastrophe contracted with NCA for the handling of the St. Paul claims. The fee arrangement established by the contract between Top Catastrophe and NCA provided for a 5%+T/n percentage payable to Top Catastrophe from the claims [billed out] by the adjusters employed by Top Catastrophe.

At all material times following the storm, Top Catastrophe employed [95 /214] adjusters, for which those adjusters maintained an obligation of confidentiality, non-competition, and protection of work product, the terms and conditions of said contracts are the best evidence of the agreement.

Following the immediate aftermath of the storm, and for more than two months, Top Catastrophe, its agents, adjusters, and employees, performed their work under extreme circumstances, yet NCA and ICS maintained nothing but praise and positive feedback from NCA and ICS over the handling of the claims.

*As a result of the contract and agreement between NCA and Top Catastrophe, 4,279+ files were given to Top Catastrophe for handling and adjusting.

---

On or about November 8, 2005, Mark Lozier, Chief Executive Officer of NCA, conducted a meeting with all of the adjusters of Top Catastrophe in New Orleans, Louisiana. The meeting had been prearranged by Mr. Lozier, on behalf of NCA, to recruit the agents, employees, and adjusters of Top Catastrophe to terminate their employment relationship with Top Catastrophe in exchange for cash advances, consistent bimonthly payments, and future bonuses.

At the meeting, Mark Lozier, on behalf of NCA and ICS, misrepresented to the agents, employees, and adjusters of Top Catastrophe that they would not be paid any money or any fees on the claims for which they had worked unless they signed a new contract with NCA/ICS, and that Top Catastrophe had failed to pay them any fees or funds, when in fact NCA/ICS had not paid any funds to Top Catastrophe on the claims submitted by the agents, employees, and adjusters of Top Catastrophe.

As a result of the actions taken by NCA/ICS through its chief executive officer, Mark Lozier, almost all of the adjusters left the employ of Top Catastrophe and signed an agreement with NCA/ICS for the continued handling of the same claims for which they were handling through their employment with Top Catastrophe. (200+ Emploies)

Thereafter, and on November 17, 2005, NCA, without true cause or sincere reason, terminated the contract between NCA and St. Paul.

[That Top Catastrophe maintained a contract with NCA and its subsidiary, ICS, and directly and/or indirectly with St. Paul.]

The purported basis for the termination of the agreement and contract was stated by NCA to be substandard handling of the claims by the Top Catastrophe agents, employees, and adjusters, which were the same agents, employees, and adjusters which NCA had met with nine days earlier to contract individually with them.

At all material times following the storm, NCA and ICS worked under the authority and direction of the agents, employees, and representatives of St. Paul.

---

That CSP, through its agents, employees, and officers, sought to prevent the improper communication between NCA/ICS and the adjusters which were employed by Top Catastrophe through written correspondence.

NCA/ICS deliberately ignored that request and proceeded to communicate and financially coerce the agents, employees, and adjusters of Top Catastrophe to separate from their employment.

On November 18,2005,St.Paul Travelors NCA/ICS,employees were detained at the scene of a burgulary, and theft of the corporate offices of TOP CATASTROPHE,of 708 carrollton Ave. Metaire Louisana,70005.Acting on the (SUPPOSED) expressed diretion of St.Paul Travelors NCA/ICS,EXECUTIVES.

This theft was inclusive of all Data,Computers,Electronic storage equipment,and office equipment. The perpertrators were caught and detained,withthere identifications being recorded. After which they were released pending a investigation by Metaire Police.Initial Report,and detainment at the scene by Mr.GARY LANDRIEU.

The perpertrators at the scene reported to be acting on the expressed permission of NCA/ICS St.Paul Travelors,and not on any authority of TOP CATASTROPHE.

Upon the return of TOP CATASTROPHE executives,Edmond H. Smith IV and Edmond H. Smith III, A theft, and Burgulary Investigation Report was completed,and pursuant to the subsequent interviews with Detective BERGGRAN, of the Metaire Police Department,it was deemed a crime.

                              JOHHNY H. DENENEA JR
                              END DICTATION.

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court
## EASTERN DISTRICT OF LOUISIANA

CLAIMSERVICEPROVIDER, INC., ET AL

V.

THE ST. PAUL TRAVELERS COMPANIES, ET AL

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:        "        "; MAG.-

## 06-2475
## SECT. 1 MAG 3

TO: **The St. Paul Travelers Companies, Inc.**

through The Honorable Al Ater

Secretary of State for the State of Louisiana

3851 Essen Lane, State Archives Building

Baton Rouge, LA 70809

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address

John H. Denenea, Jr.
SHEARMAN-DENENEA, L.L.C.
4240 Canal Street
New Orleans, Louisiana 70119

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LORETTA G. WHYTE
CLERK

MAY 1 1 2006
DATE

_Charles A. Aimee_
(BY) DEPUTY CLERK

**Attachment XIII. Page 4 of 38.**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLAIMSERVICEPROVIDER INC, TOP CATASTROPHE TEAM SERVICES, LLC, AND EDMOND SMITH, IV D/B/A TOP CATASTROPHE TEAM SERVICES | * | CIVIL ACTION |
| VERSUS | * | NO. 06-2475 |
| THE ST. PAUL TRAVELERS COMPANIES, INC., NATIONAL CLAIMS ADJUSTERS, INC. D/B/A NCA GROUP, INTEGRATED CLAIMS SOLUTIONS, LLC, D/B/A ICS | * | SECT."1"; MAG.- 3 |

**COMPLAINT FOR MISREPRESENTATION, UNFAIR TRADE PRACTICE, TORTUOUS INTERFERENCE WITH CONTRACT, CONVERSION, BREACH OF CONTRACT AND OPEN ACCOUNT AND NEGLIGENCE**

The Complaint of Claimserviceprovider, Inc., a Delaware Corporation, ("CSP"), Top Catastrophe Team Services, LLC, a Nevada Limited Liability Company, and Edmond Smith, IV, a domiciliary of the State of Alabama d/b/a Top Catastrophe Team Services, (collectively, "Top Catastrophe") with respect represents:

**General Allegations**

1

Attachment XIII. Page 5 of 38.

*Jurisdiction and Venue*

1.

The jurisdiction of this court is invoked under the 28 U.S.C. ᵗ 1332, commonly known as Diversity of Citizenship, as the parties listed are of diverse States and the damages claimed are in excess of $75,000.00.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to the claim occurred in this district and the property that is subject of the action is situated in this district.

*Defendants.*

3.

Made defendant herein is The St. Paul Travelers Companies, Inc. ("St. Paul"), a foreign corporation incorporated in the State of Minnesota, and licensed to do and doing business in the State of Louisiana, and capable of being sued in this State and subject to the overall jurisdiction of this District and Court.

4.

Made defendant herein is National Catastrophe Adjusters, Inc., d/b/a NCA Group, ("NCA Group") a corporation incorporated in the State of Indiana and licensed to do and doing business in the State of Louisiana and capable of being sued in this State and subject to the overall jurisdiction of this District and Court.

2

5.

Made defendant herein is Integrated Claims Solutions, LLC, d/b/a ICS, ("ICS"), a foreign corporation incorporated in the State of Indiana and licensed to do and doing business in the State of Louisiana and subject to the overall jurisdiction of this District and Court.

6.

Defendants are justly and truly indebted unto complainants, jointly and *in solido* in a full and true sum which will sufficiently compensate them for the damages, both economic and non-economic, together with legal interest thereon from the date of injury, attorneys' fees, treble damages if determined, and all costs of these proceedings, and for the following to wit:

*Facts*

*Background*

7.

On August 29, 2005, Hurricane Katrina made landfall in the Gulf Coast Region of the United States.

8.

In an effort to prepare for and respond to the anticipated insurance claims resulting from Hurricane Katrina, Defendant, St. Paul enlisted and contracted with NCA Group and ICS as its agents and representatives to administer or otherwise assist in the administration of the St. Paul insurance claims process.

9.

Defendants, NCA Group and ICS, on behalf of themselves and St. Paul, contracted with Claimserviceprovider, Inc., an adjusting firm as well as a recruiting agency for adjusters, to

3

handle claims, identify, find and recruit professional adjusters and adjusting companies in and around the Gulf Coast Region to handle the thousands of claims expected to be received by St. Paul.

10.

The general responsibility of NCA Group was the overall administration of the St. Paul claims and the adjusters, including CSP and Top Catastrophe, while ICS was responsible for the organizing, handling and data transference of the claim information and data, time and expense, and billing of the adjusters, including CSP and Top Catastrophe.

11.

At all material times herein, NCA Group and ICS were interchangeable entities both sharing the responsibilities with the claims handling, sharing the same space, using the same staff and employees, and working out of the same office location.

*The Agreements*

12.

On or about September 10, 2005 the NCA Group and ICS entered into a recruiting contract with CSP ("CSP Recruiting Agreement"). The CSP Recruiting Agreement provided, among other things, that NCA Group and ICS would pay to CSP a five percent override fee on all claims handled by the professional claims adjusters recruited and retained by CSP.

13.

Pursuant to the CSP Recruiting Agreement, CSP identified and recruited numerous adjusters and adjusting companies to work for NCA Group, ICS and St. Paul. Plaintiff, Top Catastrophe and its principals were specifically recruited by CSP to contract with and work for

4

Defendants to perform adjustment services and administer thousands of St. Paul's property insurance claims.

### 14.

CSP and Top Catastrophe, their agents, employees, and officers, were experienced in the handling of catastrophe claims and specifically in the handling of hurricane related claims.

### 15.

On or about September 10, 2005, NCA Group entered into an Independent Contractor Agreement with Top Catastrophe ("Top Catastrophe Adjuster Agreement"). The Top Catastrophe Adjuster Agreement provided that Top Catastrophe would perform adjusting services to NCA Group as an independent contractor to perform the independent adjustment of St. Paul insurance claims assigned to it by NCA Group. The contract between Top Catastrophe and NCA Group provided that NCA Group would pay to Top Catastrophe a fee of sixty-five (65%) percent of NCA Group's Adjuster Fee Basis Amount on all claims billed out by the adjusters employed by Top Catastrophe.

### 16.

In accordance with the Top Catastrophe Adjuster Agreement, NCA Group assigned approximately 3000 St. Paul commercial property insurance claims files to Top Catastrophe for handling and adjusting. NCA Group, ICS, and St. Paul, were intricately involved in the assignment of claims files and the administration and exchange of claims related data on the files.

### 17.

5

Attachment XIII. Page 9 of 38.

At all material times following the storm, Top Catastrophe retained dozens of professional adjusters. The adjusters entered into an exclusive employment agreement with Top Catastrophe to provide adjusting services, which agreements mandated confidentiality, non-competition, and protection of Top Catastrophe work product. The terms and conditions of said adjuster contracts were at all relevant times known and understood by Defendants.

18.

In accordance with the terms of the Top Catastrophe Adjuster Agreement, and in reliance upon the representations of NCA Group and ICS, as agents and representatives of St. Paul, Top Catastrophe expended significant funds and resources to secure the services of over fifty independent professional adjusters and provided necessary equipment, supplies, housing and other essentials to said adjusters, all for the benefit of Defendants.

19.

Additionally, and on or about October 10, 2005, NCA Group entered into an Independent Contractor Agreement with CSP, ("CSP Adjuster Agreement") to provide services to NCA Group as an independent contractor to perform the independent adjustment of St. Paul insurance claims assigned to it by NCA Group. The CSP Adjuster Agreement provided that NCA Group would pay to CSP a fee of sixty-five (65%) percent of NCA Group's Adjuster Fee Basis Amount on all claims billed out by the adjusters employed by CSP.

20.

In accordance with The CSP Adjuster Agreement, NCA Group assigned approximately 1000 St. Paul commercial property insurance claims files to CSP for handling and adjusting.

6

NCA Group, ICS, and St. Paul, were intricately involved in the assignment of claims files and the administration and exchange of claims related data on files.

21.

In accordance with the terms of the CSP Adjuster Agreement, and in reliance upon the representations of NCA Group and ICS, as agents and representatives of St. Paul, CSP expended significant funds and resources to secure the services of approximately twenty-five independent professional adjusters and provided necessary equipment, supplies, housing and other essentials to said adjusters, all for the benefit of Defendants.

22.

In accordance with the terms of the CSP Recruiting Agreement, and in reliance upon the representations of NCA Group and ICS, as agents and representatives of St. Paul, CSP expended significant funds and corporate reputation in recruiting and developing the base of adjusters, including Top Catastrophe.

23.

At all material times following the storm, CSP retained dozens of professional adjusters. The adjusters entered into an exclusive employment agreement with CSP to provide adjusting services, which agreements mandated confidentiality, non-competition, and protection of CSP work product. The terms and conditions of said adjuster contracts were at all relevant times known and understood by Defendants.

24.

Following the immediate aftermath of the storm, and for the months immediately following the storm, CSP and Top Catastrophe, their agents, adjusters, and employees,

7

Attachment XIII. Page 11 of 38.

performed professional adjusting services under extreme conditions in the hurricane ravaged areas of Louisiana and Mississippi, but predominantly in the Eastern District of Louisiana. NCA Group and ICS continuously praised CSP and Top Catastrophe's performance in handling the multiple complex commercial insurance claims assigned to CSP and Top Catastrophe.

25.

CSP and Top Catastrophe timely and accurately provided adjusting services and submitted time and expense billing to NCA Group and ICS in accordance with terms of their respective agreements. Defendants NCA Group and ICS, as agents and representatives of St. Paul, continuously encouraged CSP and Top Catastrophe and their professional adjusters to work long hours and submit reports to Defendants.

26.

NCA Group and ICS, as agents and representatives of St. Paul, represented to CSP and Top Catastrophe that the process and procedures implemented by Defendants to receive and administer claims reports was adequate, although the procedures were inadequate, dysfunctional, and simply did not work.

27.

CSP and Top Catastrophe timely and accurately completed adjustment of all claims assigned to it. Despite timely and repeated claims submissions to NCA Group by CSP and Top Catastrophe, NCA Group and ICS, as agents and representatives of St. Paul refused and failed to pay CSP and Top Catastrophe for the adjusting services provided to Defendants.

8

28.

NCA Group and ICS, as agents and representatives of St. Paul, intentionally and without due cause withheld payments to CSP and Top Catastrophe, so as to cause CSP's and Top Catastrophe's inability to fully compensate the professional adjusters working exclusively for CSP and Top Catastrophe on Defendants' claims files.

29.

NCA Group and ICS, as agents and representatives of St. Paul, intentionally and without cause, decided to withhold payments to CSP and Top Catastrophe for the sole purpose of "squeezing out" CSP and Top Catastrophe from the St. Paul claims adjusting process.

30.

At all material times relevant to the handling and processing of the described claims, the fees due to CSP under the CSP Recruiting Agreement were directly dependent on the billings submitted by Top Catastrophe.  The actions by the defendants in withholding the payments to Top Catastrophe also eliminated the fees that were due to CSP under The CSP Recruiting Agreement.

*Defendants' Scheme to Eliminate Top Catastrophe*

31.

On or about November 8, 2005, Mark Lozier, Chief Executive Officer of NCA Group, and an officer/director in ICS, organized and conducted a secret meeting with Top Catastrophe adjusters in New Orleans, Louisiana.  The meeting had been covertly prearranged by Mr. Lozier, on behalf of NCA Group and ICS, and with the expressed, implied, or constructive authority of St. Paul, to improperly recruit the agents, employees, and adjusters away from Top Catastrophe.

9

with the intent to sabotage their employment relationship and contracts with Top Catastrophe in exchange for cash advances, consistent bimonthly payments, and future bonuses.

32.

At the November 8, 2005, meeting, Mark Lozier, as the representative of NCA Group, ICS, and St. Paul, and with the expressed, implied, or constructive authority of St. Paul, intentionally and negligently misrepresented to the agents, employees, and adjusters of Top Catastrophe that they would not be paid any money or any fees on the claims for which they had worked unless they breached their agreements with Top Catastrophe and signed a new contract directly with NCA Group/ICS. In a further effort to induce Top Catastrophe's adjusters, Mark Lozier stated that Top Catastrophe had withheld adjuster fees from individual adjusters relating to submitted claim payments, when in fact NCA Group/ICS had not paid any funds to Top Catastrophe on the claims submitted by the agents, employees, and adjusters of Top Catastrophe.

33.

As a result of the actions taken by NCA Group/ICS through its representative, Mark Lozier, and with the expressed, implied, or constructive authority of St. Paul, almost all of the adjusters left the employ of Top Catastrophe and signed an agreement with NCA Group/ICS for the continued handling of the exact same St. Paul claims for which they were handling through their exclusive employment with Top Catastrophe.

34.

Thereafter, and on November 17, 2005, NCA Group, as an agent and representative of St. Paul and without true cause or supporting basis or reason, terminated the Top catastrophe Adjuster Agreement between NCA Group and Top Catastrophe.

10

Attachment XIII. Page 14 of 38.

35.

The purported basis for the termination of the agreement and contract was stated by NCA Group to be substandard handling of the claims by the Top Catastrophe agents, employees, and adjusters, which were the same agents, employees, and adjusters which NCA Group had met with nine days earlier to contract individually and directly with them.

36.

Upon information and belief, Defendants or an agent or representative thereof, unlawfully entered the offices of Top Catastrophe, which were located within the Eastern District of Louisiana, and knowingly took computers, documents and other reports that they knew or should have known were the property of Top Catastrophe. Defendants used said computers, documents and reports for their own economic gain, thereby causing Top Catastrophe significant loss and damage.

*Defendants' Scheme to Eliminate CSP*

37.

In December, 2005, officers of NCA Group and ICS began discussions and communications directly with the employee/adjusters of CSP without the involvement of the CSP officers. Upon learning of these surreptitious communications between NCA Group and ICS with the CSP adjusters, the officers of CSP directed that NCA Group and ICS "Cease and Desist" the communications with the employee/adjusters.

38.

In direct contravention of the CSP directive to "Cease and Desist" communications with the employee/adjusters of CSP, NCA Group and ICS representatives, with the expressed,

11

implied, or constructive authority of St. Paul, met personally and privately with each adjuster in and around New Orleans, Louisiana, and within the Eastern District of Louisiana, to improperly recruit the agents, employees, and adjusters away from CSP with the intent to sabotage their employment relationship and contracts with CSP in exchange for cash advances, consistent bimonthly payments, and future bonuses.

39.

At the meetings, the representatives of NCA Group and ICS, and with the expressed, implied, or constructive authority of St. Paul, intentionally and negligently misrepresented to the agents, employees, and adjusters of CSP that they would not be paid any money or any fees on the claims for which they had worked unless they breached their agreements with CSP and signed a new contract directly with NCA Group/ICS. In a further effort to induce CSP's adjusters, said representatives stated that CSP had withheld adjuster fees from individual adjusters relating to submitted claim payments, when in fact NCA Group/ICS had not paid any funds to CSP on the claims submitted by the agents, employees, and adjusters of CSP.

40.

As a result of the actions taken by NCA Group/ICS through its officers and representatives, and with the expressed, implied, or constructive authority of St. Paul, all of the adjusters thereafter sent letters, correspondence, and/or emails of resignation from their employ with CSP and signed an agreement with NCA Group/ICS for the continued handling of the exact same St. Paul claims for which they were handling through their exclusive employment with CSP.

41.

12

Attachment XIII. Page 16 of 38.

At all material times following the storm, NCA Group and ICS worked under the expressed, implied, or constructive authority and direction of the agents, employees, and representatives of St. Paul.

### Count I

### Misrepresentation

42.

Plaintiffs re-allege and adopt by reference in this Count I the allegations and averments contained in the foregoing paragraphs.

43.

In contracting and doing business with CSP and Top Catastrophe, Defendants owed a duty of care to CSP and Top Catastrophe to deal fairly and act in good faith.

44.

Defendants represented to CSP and to Top Catastrophe that St. Paul, NCA Group and/or ICS would honor the respective agreements in good faith with CSP and Top Catastrophe, that NCA Group and ICS were capable of timely administering the insurance claims submittals from CSP and Top Catastrophe, that Defendants computer programs and other processes and procedures put in place by NCA Group and ICS were adequate. All which turned out to be false. Defendants, their agents, representatives and officers conspired to mislead and suppress the truth to CSP and Top Catastrophe, and their employees, agents and representatives, all with the

13

intention of obtaining an unjust advantage for themselves and to cause a loss and inconvenience to CSP and Top Catastrophe.

45.

As a result of Defendants' breach of duty and intentional and negligent misrepresentations and conspiracy, CSP and Top Catastrophe have suffered and will continue to suffer significant damage.

### Count II

### Unfair Trade Practices

46.

Plaintiffs re-allege and adopt by reference in this Count II the allegations and averments contained in the foregoing paragraphs.

47.

The actions of Defendants in conspiring with each other to meet the adjuster/employees of the plaintiffs; personally meeting with the adjuster/employees of the plaintiffs in the Eastern District of Louisiana; hiring away the adjuster/employees of CSP and Top Catastrophe; withholding payments from CSP and Top Catastrophe for the specific purpose of sabotaging their business, violated established public policy, are unethical, oppressive, unscrupulous and substantially injurious to the consumers of Louisiana and to Plaintiffs, and are unlawful and unfair trade practices and false, misleading, and deceptive acts and practices, all of which were and are continuing to be in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.

Attachment XIII. Page 18 of 38.

48.

As a result of Defendants' unfair trade practices, plaintiffs have suffered and will continue to suffer damages.

## Count III

### Tortious and Intentional Interference with Top Catastrophe's Adjuster/Employee Contracts

49.

Plaintiffs re-allege and adopt by reference in this Count III the allegations and averments contained in the foregoing paragraphs.

50.

The actions of the Defendants described above, and in particular, those of Mark Lozier, Chief Executive Officer of NCA Group, constitute a tortious and intentional interference with contract.  Defendant, NCA Group, is liable for the acts and omission of its Chief Executive Officer, Mark Lozier, in attempting to interfere with and terminate, and actually accomplishing the termination of Top Catastrophe's contracts with its adjusters/employees.

51.

A contract existed between Top Catastrophe and NCA Group, and Mark Lozier, Chief Executive Officer of NCA Group was fully aware of the contract.  Mark Lozier was also fully aware of Top Catastrophe's exclusive agreements with its adjuster/employees.

52.

Without justification or cause, Mark Lozier, as an officer of and on behalf of NCA Group and the other Defendants, and while personally within the Eastern District of Louisiana,

15

intentionally induced the Top Catastrophe adjusters to breach their respective contracts with Top Catastrophe.

53.

As a result of the tortious interference with contract by Defendants, plaintiff, Top Catastrophe, has suffered and will continue to suffer damages.

**Count IV**

**Tortious and Intentional Interference
with CSP's Adjuster/Employee Contracts**

54.

Plaintiffs re-allege and adopt by reference in this Count IV the allegations and averments contained in the foregoing paragraphs.

55.

The actions of the Defendants described above, and in particular, those of the officers of NCA Group, constitute a tortious and intentional interference with contract. Defendant, NCA Group, is liable for the acts and omission of its representatives and officers, in attempting to interfere with and terminate, and actually accomplishing the termination of CSP's contracts with its adjusters/employees.

56.

The officers and representatives of NCA Group were fully aware of the exclusive contract between CSP and its adjuster/employees. CSP also directed NCA Group to not communicate with the adjuster/employees of CSP.

57.

16

Attachment XIII. Page 20 of 38.

Without justification or cause, NCA Group through its officers and directors, and while personally within the Eastern District of Louisiana, and in direct defiance of the cease and desist directive from CSP, NCA Group intentionally induced the adjuster/employees of CSP to breach their contract with CSP, all of which is in violation of the prohibition from intentional interference with a contract.

58.

As a result of the tortious interference with contract by Defendants, plaintiff, CSP, has suffered and will continue to suffer damages.

### Count V

### Conversion

59.

Plaintiffs re-allege and adopt by reference in this Count V the allegations and averments contained in the foregoing paragraphs.

60.

The actions of Defendants in taking and refusing to return personal property in the form of equipment, documents, reports and other items, constitute the tort of conversion. The actions of Defendants in this regard have caused and will continue to cause damage to plaintiffs, Top Catastrophe.

61.

17

Additionally, the actions of the defendants in improperly, unethically, and immorally recruiting the adjusters, agents, and employees of CSP and Top Catastrophe, has resulted in the deprivation of the fees owed to CSP and Top Catastrophe and have now been taken and kept by defendants, constituting a tort of conversion. The actions of the Defendants in this regard have caused and will continue to cause damage to plaintiffs, CSP and Top Catastrophe.

**Count VI**

**<u>Breach of Contract and Open Account on Behalf of Top Catastrophe</u>**

63.

Plaintiffs re-allege and adopt by reference in this Count VI the allegations and averments contained in the foregoing paragraphs.

64.

NCA Group, on behalf of itself and its customer, St. Paul, and with the expressed, implied, or constructive authority of St. Paul, entered into The Top Catastrophe Adjuster Agreement. The contract was effective beginning September 10, 2005.

65.

Pursuant to The Top Catastrophe Adjuster Agreement, NCA Group contracted for the services of Top Catastrophe to perform the independent adjustment of St. Paul insurance claims assigned to Top Catastrophe by NCA Group, and NCA Group agreed to timely pay Top Catastrophe for the services provided in accordance with the terms of the agreement.

66.

Top Catastrophe provided services to NCA Group and St. Paul in accordance with the terms of The Top Catastrophe Adjuster Agreement. Notwithstanding, NCA Group and St. Paul

18

failed and refused to pay Top Catastrophe for the services rendered and costs advanced for the provision of said services.

67.

Defendants NCA Group and St. Paul received the benefit of the services provided by Top Catastrophe, and despite demand for payment, have refused to pay Top Catastrophe for the services rendered.  Said payment for services provided is severely past due.

68.

The actions of Defendants, NCA Group and St. Paul constitute breach of contract, a breach of the duty of good faith and fair dealing, and a violation of the open account statutes, thus entitling Top Catastrophe to recovery of damages, attorneys' fees and costs incurred in connection with the collection and litigation of this claim.

**Count VII**

**Breach of Contract and Open Account on Behalf of Claimserviceprovider, Inc.**

69.

Plaintiffs re-allege and adopt by reference in this Count VII the allegations and averments contained in the foregoing paragraphs.

70.

NCA Group, on behalf of itself and its customer, St. Paul, and with the expressed, implied, or constructive authority of St. Paul, entered into the CSP Recruitment Agreement.  The contract was effective beginning September 10, 2005.

19

Attachment XIII. Page 23 of 38.

71.

Pursuant to the CSP Recruitment Agreement, NCA Group contracted for the services of CSP to perform the recruitment and retention of adjusters for the claims of St. Paul, and CSP did in fact recruit and retain Top Catastrophe as requested by NCA Group, and NCA Group agreed to timely pay CSP an override for the services provided in accordance with the terms of the agreement.

72.

CSP provided services to NCA Group and St. Paul in accordance with the terms of the The CSP Recruitment Agreement. Notwithstanding, NCA Group and St. Paul failed and refused to pay CSP for the services rendered and for costs and expense incurred by CSP.

73.

Defendants NCA Group and St. Paul received the benefit of the services provided by CSP, and despite demand for payment, have refused to pay CSP for the services rendered. Said payment for services provided is severely past due.

74.

The actions of Defendants, NCA Group and St. Paul constitute breach of contract, a breach of duty of good faith and fair dealing, and a violation of the open account statutes, thus entitling CSP to recovery of damages, attorneys' fees and costs incurred in connection with the collection and litigation of this claim.

75.

20

Additionally, NCA Group, on behalf of itself and its customer, St. Paul, and with the expressed, implied, or constructive authority of St. Paul, entered into The CSP Adjuster Agreement. The contract was effective beginning October 10, 2005.

76.

Pursuant to The CSP Adjuster Agreement, NCA Group contracted for the services of CSP to perform the independent adjustment of St. Paul insurance claims assigned to CSP by NCA Group, and NCA Group agreed to timely pay CSP for the services provided in accordance with the terms of the agreement.

77.

CSP provided the services to NCA Group and St. Paul in accordance with the terms of The CSP Adjuster Agreement. Notwithstanding, NCA Group and St. Paul failed and refused to pay CSP for the services rendered and for costs and expense incurred by CSP.

78.

Defendants NCA Group and St. Paul received the benefit of the services provided by CSP, and despite demand for payment, have refused to pay CSP for the services rendered. Said payment for services provided is severely past due.

79.

The actions of Defendants, NCA Group and St. Paul constitute breach of contract, a breach of the duty of good faith and fair dealing, and a violation of the open account statutes, thus entitling CSP to recovery of damages, attorneys' fees and costs incurred in connection with the collection and litigation of this claim.

21

Attachment XIII. Page 25 of 38.

## Count VIII

### Negligence/LSA-CC Art. 2315

80.

Plaintiffs re-allege and adopt by reference in this Count VIII, the allegations and the averments contained in the foregoing paragraphs.

81.

Defendants owed a duty to Top Catastrophe and CSP to act as a prudent and reasonable person would act under the circumstances. Defendants breached their duty to CSP and Top Catastrophe through the acts and omissions which occurred in the State of Louisiana and within this Eastern District.

82.

The actions of Defendants described above are in violation of LSA-CC art. 2315. Said actions resulted and continue to result in damage and economic loss to plaintiffs.

83.

The damages incurred by petitioners include but are not limited to past and future economic loss; past and future loss of income; past and future loss of business reputation; past and future loss of goodwill.

84.

As a result of the actions of the defendants listed above, petitioners, Top Catastrophe, have incurred severe and permanent economic loss and damages, in excess of TEN MILLION AND NO/100 ($10,000,000.00) DOLLARS, in actual damages.

22

85.

As a result of the actions of the defendants listed above, petitioners, CSP, have incurred severe and permanent economic loss and damages, in excess of THREE MILLION AND NO/100 ($3,000,000.00) DOLLARS, in actual damages.

86.

Petitioners are also entitled to recover treble damages, penalties, and attorneys' fees as a result of the actions of the Defendants and as are contemplated and provided under LSA-R.S. 51;1401, *et seq.*

*TREBL*
*<3 X*
*DAMAGE*

87.

All of the actions listed above occurred or were accomplished by the Defendants either within the Eastern District of Louisiana, or resulted in damage and/or injury to plaintiffs' business within the Eastern District of Louisiana.

88.

The facts and circumstances arising from the above allegations involving plaintiffs and defendants arose out of the same transactions and occurrences related to the aftermath of Hurricane Katrina and the claims handling within the State of Louisiana, and particularly within the Eastern District of Louisiana.

89.

Complainants are entitled to and pray for a trial by jury.

WHEREFORE, complainants, Claimserviceprovider, Inc., Top Catastrophe Team Services, LLC, and Edmond Smith, IV, d/b/a Top Catastrophe Team Services, pray that

23

Defendants be duly cited to appear and answer the complaint, and after due proceedings had, there be judgment against defendants, The St. Paul Travelers Companies, Inc., National Catastrophe Adjusters, Inc., d/b/a NCA Group, and Integrated Claims Solutions, Inc., d/b/a ICS, in the amount detailed above and sufficient to cover all damages, together with legal interest thereon, from date of the obligation, attorneys' fees, treble damages, and for all costs of these proceedings.

Complainant further prays for trial by jury and for all general and equitable relief required and/or necessary in the premises.

RESPECTFULLY SUBMITTED,

SHEARMAN~DENENEA, L.L.C,

_____    5/11/06

JOHN H. DENENEA, JR. (#18861)    MAY 11, 2006
4240 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 304-4582
Fax: (504) 304-4587
Email: jdenenea@midcitylaw.com
Attorneys for Complainants

**PLEASE SERVE THE COMPLAINT ON:**

**The St. Paul Travelers Companies, Inc.**
The Honorable Al Ater
Secretary of State of the
State of Louisiana
3851 Essen Lane
State Archives Building
Baton Rouge, Louisiana 70809

**National Catastrophe Adjusters, Inc., d/b/a NCA Group**
Through its agent for service of process:

24

Attachment XIII. Page 28 of 38

Brien J. Laurent
150 Loupe Street
Luling, Louisiana 70070


**Integrated Claims Solutions, LLC, d/b/a ICS**
Through the Louisiana Long Arm Statute:
LSA-R.S. 13:3201
L. David Ross
6963 Hillsdale Court
Indianapolis, Indiana 46250

**The Attorney General for the State of Louisiana**
Honorable Charles Foti
Pursuant to LSA-R.S. 51:1401, *et seq.*
By Certified Mail
Post Office Box 94005
Baton Rouge, Louisiana 70804

25

October 17, 2011

Elizabeth L. White - Clerk
Marion County Circuit Court
200 east Washington Street
City-County Building
Indianapolis, Ind  46204

                              RE: Smith v Travelers Ins.Co.

Dear Ms. White:

    Enclosed, please find a lawsuit to be filed against the
indicated defendants, in the Marion Circuit Court. Since I
am not familiar with filing fees, etc., for the State of
Indiana, please advise of those requirements. In addition,
please advise as to the manner of service of process.

    This action was previously filed in federal court, but
was dismissed due to improper venue. See Claims Service Pro-
vider, Inc. v Travelers, No. 06-2475 (E.D.La.).

    Please advise of additional requirements.

                              Sincerely,


                              EDMOND H. SMITH, IV
                              # 07241059
                              U.S. Penitentiary
                              P.O. Box  33
                              Terre Hauate, Ind  47808

Attachment XIII. PAge 30 of 38

STATE OF INDIANA

MARION COUNTY CIRCUIT COURT

CIVIL ACTION NO. _____

EDMOND HUDMOND SMITH IV
P.O. Box 33
Terre Haute, Ind 47808

EDMOND HUDMOND SMITH IV d/b/a
TOP CATASTROPHE TEAM SERVICES

AND

TOP CATASTROPHE TEAM SERVICES, LLC
9395 Burnt Ash Court
Mobile, Alabama 36695                        PLAINTIFFS

-VS-                        COMPLAINT

THE TRAVELERS INSURANCE COMPANY
One Tower Square
Hartford, Conn 06183

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA
One Tower Square
Hartford, Conn 06183

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT
One Tower Square
Hartford, Conn 06183

TRAVELERS INDEMNITY COMPANY OF AMERICA
ONe Tower Square
Hartford, Conn 06183

Attachment XIII. Page 31 of 38

TRAVELERS CASUALTY AND SURETY COMPANY
One Tower Square
Hartford, Conn    06183

St. PAUL FIRE & MARINE INSURANCE COMPANY
101 West Burnsville Parkway    Suite 215
Burnsville, Minn   55337

INTEGRATED CLAIMS SOLUTIONS, LLC
One Tower Square
Hartfor, Conn   06183

NATIONAL CLAIMS ADJUSTERS, Inc.
One Tower Square
Hartford, Conn   06183

MARK LOSIER - President
National Claims Adjusters, Inc.
ONe Tower Square
Hartford, Conn    06183

ROBERT BARNETT - President
Integrated Claims Solutions, Inc.
One Tower Square
Hartfort, Conn    06183

PETER GERSIK - Executive Präsident
St. Paul Fire & Marine Insurance Co.
101 West Burnsville Parkway   Suite 215
Burnsville, Minn   55337

RICK CLARK

LINDA SWOPE

LEE ANN CARPENTER

B.J. LYONS

                                              DEFENDANTS

            ***        ***        ***

Attachment XIII. Page 32 of 38

STATE OF INDIANA

MARION COUNTY CIRCUIT COURT

CIVIL ACTION NO. _____


EDMOND HUDMOND SMITH, IV
P.O. Box  33
Terre Haute, Ind  47808

EDMOND HUDMOND SMITH, IV, d/b/a
TOP CATASTROPHE TEAM SERVICES

TOP CATASTROPHE TEAM SERVICES, LLC

                                        PLAINTIFFS


-VS-                    COMPLAINT


THE TRAVELERS INSURANCE COMPANY

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

TRAVELERS INDEMNITY COMPANY OF AMERICA

TRAVELERS CASUALTY AND SURETY COMPANY

St. PAUL FIRE & MARINE INSURANCE COMPANY

INTEGRATED CLAIMS SOLUTIONS, LLC

NATIONAL CLAIMS ADJUSTERS, Inc.

MARK LOSIER - President
National Claims Adjusters, Inc.

ROBERT BARNETT - President
Integrated Claims Solutions, Inc.

HELEN PERKIN - Evan

Attachment XIII. Page 33 of 38

PETER GERSIK - Executive President
St. Paul Fire & Marine Insurance Co.

RICK CLARK

LINDA SWOPE

LEE ANN CARPENTER

B. J. LYONS                                          DEFENDANTS

***          ***          ***

Come the plaintiffs, Edmond Hudmond Smith, IV; Edmond
Hudmond Smith, IV, d/b/a Top Catastrophe Team Services; and
Top Catastrophe Team Services, LLC, and for their respective
causes of action, state as follows:

COUNT ONE

1. That, based upon agreements made and entered into be-
tween the plaintiffs Edmond Hudmond Smith IV; Edmond Hudmond
Smith IV d/b/a Top Catastrophe Team Services; and Top Catas-
trophe Team Services, LLC, and the defendants, The Travelers
Insurance Company, Travelers Property Casualty Company of Amer-
ica, Travelers Indemnity Company of Connecticut, Travelers In-
demnity Company of America, Travelers Casualty and Surety Com-
pany, Integrated Claims Solutions, LLC, and National Claims
Adjusters, Inc., during calendar year 2005, and immediately
following the catastrophe created by Hurricane Katrina, in the

states of Louisiana, Mississippi, and Alabama, the plaintiffs proceeded to execute the said agreements by fully complying with all the terms and conditions thereof. However, the defendants, and each of them, have refused to compensate the plaintiffs in accordance with the agreements or agreement. That the defendants never informed the plaintiffs that they were dissatisfied with plaintiffs' performance, or that the plaintiffs' had breached their obligations under the parties agreement or agreements. Instead, the defendants simply refused to pay all sums of monies due under the parties agreements or agreement.

2.   That the defendants, and each of them, are jointly and severally liable to the plaintiffs, and each  of them, in the sum of ONE HUNDRED SIXTY-MILLION Dollars, plus interest at the legal rate allowed, from 2006, until  paid.

<u>COUNT TWO</u>

3.   The plaintiffs reallege and assert the allegations contained in paragraph One and Two, of this Complaint, as though fully set forth herein.

4.   That the defendants aforesaid, and defendants Mark Losier - President of National Claims Adjusters, Inc., Robert Barnett - President of Integrated Claims Solutions, Inc., Peter Gersik - Executive President of St.Paul Fire & Marine Insurance

Company, Rick Clark, Linda Swope, Lee Ann Carpenter, and B.J. Lyons, committed acts of theft, breaking and entering, trespass, fraud, conspiracy, and interference with contractual relations, by causing the theft of plaintiffs' records, receipts, contract documents, claims adjusting reports, computers and computer data entry, photographs, video recordings, audio recordings, proof of claims, employee records and representative records, which acts were motivated to prevent the plaintiffs from collecting on the sums of money due to them and identified in Count One hereof.

5.   That the aforesaid acts were intentional, and committed by the defendants from a premeditated design to deprive the plaintiffs of property and/or money to which they were legally entitled, thus entitling the plaintiffs to the imposition of punitive damages in a sum of money to be determined by a trial.

WHEREFORE, the plaintiffs demand:

1.   Judgment against the defendants, The Travelers Insurance Company, Travelers Property Casualty Company of America, Travelers Indemnity Company of Connecticut, Travelers Indemnity Company of AMerica, Travelers Casualty and Surety Company, Integrated Claims Solutions, LLC, and National Claims Adjusters, Inc., jointly and severally, in the sum of ONE

Attachment XIII, Page 36 of 38

HUNDER SIXTY MILLION Dollars, plus interest from 2006, at the legal rate allowed;

    2.   Judgment against the defendants, jointly and severally, on Count Two, hereof, in a sum of money to be determined by a trial.

    3.   For any and all other relief to which the plaintiffs may appear entitled, including costs.

EDMOND HUDMOND SMITH, IV
P O Box. 33
Terre Haute, Ind  47808

# NEWS

For immediate release: May 17, 2006

Contact: Amy Whittington (225) 342-5423
Bobby Clark (225) 342-9892

# Consumer Complaints Lead to Probe of Hurricane Claims Handling Practices of Two Insurers

Commissioner of Insurance Jim Donelon announced today the Department of Insurance is set to begin market conduct examinations on two insurers. Donelon says he ordered the exams in response to consumer complaints lodged with the Department of how the companies handled homeowners insurance claims filed as a result of Hurricanes Katrina and Rita.

"Following an internal evaluation, a review of company complaint-to-marketshare ratio and other factors, the Department will initially examine how these two homeowners insurers handled policyholder claims filed in the aftermath of Hurricanes Katrina and Rita," says Donelon.

The two insurers to be examined by the Department are:

- Allstate
- St. Paul/Travelers

Following the market conduct reviews of Allstate and St. Paul/Travelers, Commissioner Donelon says the Department will then examine the Louisiana Citizens Property Insurance Corporation (Citizens). Citizens is the administrator of the FAIR and Coastal Plans, the state's high risk homeowners insurance pools. Commissioner Donelon says the number of companies under examination could increase, based on similar criteria.



-30-

P.O. Box 94214 (1702 N. 3rd St.) Baton Rouge, LA 70804-9214    FAX (225) 342-1993    URL: http://www.ldi.state.la.us

Attachment XIII. Page 38 of 38

*Ed H Smith*

## TOP CATASTROPHE TEAM SERVICES
### INSURANCE AND APPRAISAL AND ADJUSTMENT
### BOX 502
### LAS VEGAS, NEVADA
### 3841 OLD SHELL ROAD
### MOBILE, ALABAMA 36607
### PHONE: 251-478-5338

Dear Steven Chambless,

Regarding property located at: 3900 Winsor Road, Theodore, Alabama 36582, we would like you to regard this as a formal offer for the property on File River with an option to buy two guest houses that we had previously in one year for value at time of appraisal. I have currently secured financing and I am prepared to offer you the sum of Nine Hundred Forty Nine Thousand Dollars, ($949,000.00). Attached is a letter of credit.

*$750,000.*

*March 2, 2005*

Sincerely,

*[signature]*

Edmond H Smith / President

*[signature]*

Attachment XIV. Page 1 of 9.

2007053526  Book-6221  Page-137
Total Number of Pages: 4

11.00
158.60
169.00
10.00
179.00
20.00
181.00

STATE OF ALABAMA

COUNTY OF MOBILE

## Warranty Deed
### with assumption

**Know all Men by these Presents:** That, Grantee agrees to assume, pay, and discharge, as it becomes due and payable, the unpaid principal balance of $1,200,000.00 and interest owing on the promissory not secured by a mortgage between Evan Julius Wolfe (herein referred to as "Mortgagor") and Washington Mutual Bank, FA (herein referred to as "Mortgagee") dated June 6, 2005, and recorded in Real Property Book 5792, Page 985 in the records in the Office of the Judge of Probate, Mobile County, Alabama. Grantees will make the payments in accordance with the payment schedule established in the promissory note. Grantee hereby assumes and promises to keep and perform all of the covenants and obligation of Mortgagor named in the Mortgage described above. Grantor warrants that there has been no default under the terms of the Mortgage or the promissory note secured thereby, and that Grantor has not and will not incur and other indebtedness that would be secured by the Mortgage. That, for the assumption and consideration of One Hundred Dollars ($100.00) and other good and valuable consideration to him in hand paid by the Grantee herein, the receipt of which is hereby acknowledged, **EVAN JULIUS WOLFE,** a married man (herein referred to as "Grantor") does by these presents grant, bargain, sell and convey unto **GREAT SOUTHERN OUTDOORS FOUNDATION AND INSTITUTE** (herein referred to as "Grantee") the following described real estate situated in Mobile County, Alabama, to-wit:

Parcel A: Lot 17, Hyde Park, according to plat thereof recorded in Map Book 12, Page 11 of the records in the Office of the Judge of Probate, Mobile County, Alabama.

Parcel B: Lot 32, Windsor Park, according to plat thereof recorded in Map Book 8, Page 217 of the records in the Office of the Judge of Probate, Mobile County, Alabama.

12 ACRES
&
17,000 SQUARE FOOT MANSION

Parcel C: Lot A, Re-subdivision of Lot 32, Windsor Park, according to plat thereof recorded in Map Book 91, Page 48 of the records in the Office of the Judge of Probate, Mobile County, Alabama.

The above described property does not constitute the homestead of the Grantor nor that of his spouse.

Attachment XIV. Page 2 of 94.

**To Have and To Hold** the aforegranted premises to the said Grantee, its successors and assigns forever.

And the said Grantor does, for himself, his heirs and assigns, covenant with said Grantee, its successors and assigns, that he is lawfully seized in fee simple of said premises, that it is free from all encumbrances, except as otherwise noted above, that he has a good right to sell and convey the same as aforesaid, and that he will and his heirs and assigns shall **Warrant and Defend** the premises to the said Grantee, its successors and assigns forever, against the lawful claims of all persons.

**In Witness Whereof,** the said Grantor has set his hand and seal this 8th day of July, 2005.

_____ {L.S.}
Evan Julius Wolfe

STATE OF ALABAMA
COUNTY OF MOBILE

I, the undersigned notary public, in and for said county and state, hereby certify that Evan Julius Wolfe, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal this 8th day of July, 2005.

_____
Notary Public
My commission expires

JENNIFER SUMMERSELL
NOTARY PUBLIC
ALABAMA STATE AT LARGE
MY COMMISSION EXPIRES
OCTOBER 27, 2008

**GRANTEE'S MAILING ADDRESS:**

**THIS INSTRUMENT PREPARED BY:**

Crane Legal, P.C.   Attachment XIV.
2607 Dauphin St.   Page 3 of 9

*PROBATED JULY 8, 2005*
*JUDICIAL DEAD & TITLE*
*P-137 (PAID IN FULL)*

LAW OFFICE
## JOSEPH M. MATRANGA
ATTORNEY AT LAW
258 STATE STREET, SUITE 2
MOBILE, ALABAMA 36602

TELEPHONE (251) 438-1684                                    FAX (251) 432-0458

March 24, 2008

To: Edmond Hudmond Smith IV

These papers from the Probate Court are proof of ownership of the Property located at 3900 Windsor Road South, Mobile, Alabama to be in the name of Great Southern Outdoors Foundation.

Sincerely,

_signature_

JOSEPH M. MATRANGA

_Sworn to on this day of March 24, 2008_

_Deed, etc._

_Shannon Miller_
_Notary Public_

My Commission Expires 05-24-10

_PER PROBATE Judge Don DAVIS OFFICE_

☆ BACK ↗         Attachment XIV. Page 4 of 9

MOBILE COUNTY, PROBATE COURT
DON DAVIS, JUDGE
P. O. BOX 7    MOBILE, 36601 (251) 574-8497

DOCUMENT TYPE:NON-PROFIT - INCORPORATION
DATE: Tuesday, August 15, 2006    RECEIPT NUMBER:2006062084
RECEIVED OF: HAND ARENDALL    Book-6025    Page-1120    1st Of 7    Page(s);

| | | |
|---|---|---|
| 1 S.R. FEE | | $2.00 |
| 1 RECORDING FEE | | $25.00 |
| 1 RECORDATION STAMP | | $1.00 |
| 1 CHECK | | -$28.00 |
| RECORDING COST | | $28.00 |

TELLER:    PCML04

Attachment XIV. Page 5 of 9

(W)

To Ed Smith IV

March 24, 2008

as my investigation
produced

These papers

from the Probate Court

are proof of ownership of the

Property 3900 WINDSOR Rd. So.

mobile To be in the

name of GREAT SOUTHERN

OUTDOORS FOUNDATION —

Jmmatranga

433-1634

Attachment XIV. Page 6 of 9



## Corporate Details

**INITIATE NEW BROWSE**

DNP 564-310

| | |
|---|---|
| Corporation Legal Name: | Great Southern Outdoors Foundation and Institute, Inc. |
| Place Of Inc: | Mobile County |
| Date Of Inc.: | 08-15-2006 |
| Reg Agent...: | SMITH, EDMOND H IV<br>3900 WINDSOR DR<br>THEODORE, AL 36582 |
| Prin Address: | THEODORE, AL |
| Nat Of Bus..: | SERVE/SUPPORT/ENRICH THE LIVES OF CHILDREN WITH DISABILITIES |
| Names Of Inc: | SMITH, EDMOND H IV |

**← PREVIOUS PAGE**

P.O. Box 5616
Montgomery, AL 36103-5616

Alabama Directory | Media | Online Services | Alabama.gov
Statements/Policies | Alerts | Survey/Comments | Feeds | Contact Us

Attachment XIV. Page 7 of 9

| Form **1023**<br>(Rev. October 2004)<br>Department of the Treasury<br>Internal Revenue Service | **Application for Recognition of Exemption**<br>**Under Section 501(c)(3) of the Internal Revenue Code** | OMB No. 1545-0056<br>Note: If exempt status is approved, this application will be open for public inspection. |
|---|---|---|

*Use the instructions to complete this application and for a definition of all bold items. For additional help, call IRS Exempt Organizations Customer Account Services toll-free at 1-877-829-5500. Visit our website at www.irs.gov for forms and publications. If the required information and documents are not submitted with payment of the appropriate user fee, the application may be returned to you.*

*Attach additional sheets to this application if you need more space to answer fully. Put your name and EIN on each sheet and identify each answer by Part and line number. Complete Parts I - XI of Form 1023 and submit only those Schedules (A through H) that apply to you.*

**Part I    Identification of Applicant**

**1** Full name of organization (exactly as it appears in your organizing document)

Great Southern outdoor Foundation and Institute, Inc

**2** c/o Name (if applicable)

**3** Mailing address (Number and street) (see instructions)  Room/Suite

3900 Windsor Drive

**4** Employer Identification Number (EIN)

06-1752860

City or town, state or country, and ZIP + 4

Theodore, Alabama  36582

**5** Month the annual accounting period ends (01 - 12).

July

**6** Primary contact (officer, director, trustee, or authorized representative)

**a** Name:  Edmond H. Smith IV

**b** Phone: 251 545 6467

**c** Fax: (optional) 251 912 0874

**7** Are you represented by an authorized representative, such as an attorney or accountant? If "Yes," provide the authorized representative's name, and the name and address of the authorized representative's firm. Include a completed Form 2848, *Power of Attorney and Declaration of Representative,* with your application if you would like us to communicate with your representative.   ☐ Yes  ☒ No

**8** Was a person who is not one of your officers, directors, trustees, employees, or an authorized representative listed in line 7, paid, or promised payment, to help plan, manage, or advise you about the structure or activities of your organization, or about your financial or tax matters? If "Yes," provide the person's name, the name and address of the person's firm, the amounts paid or promised to be paid, and describe that person's role.   ☐ Yes  ☒ No

**9a** Organization's website:  pending

**b** Organization's email: (optional)  GSOF & Institute, Inc @ aol.com

**10** Certain organizations are not required to file an information return (Form 990 or Form 990-EZ). If you are granted tax-exemption, are you claiming to be excused from filing Form 990 or Form 990-EZ? If "Yes," explain. See the instructions for a description of organizations not required to file Form 990 or Form 990-EZ.   ☐ Yes  ☒ No

**11** Date incorporated if a corporation, or formed, if other than a corporation.   (MM/DD/YYYY)  6/6/2005

**12** Were you formed under the laws of a foreign country?<br>If "Yes," state the country.   ☐ Yes  ☒ No

For Paperwork Reduction Act Notice, see page 24 of the instructions.      Cat. No. 17133K      Form **1023** (Rev. 10-2004)

3-

# Internal Revenue Service

The Digital Daily

DEPARTMENT OF THE TREASURY



I I I  *GREAT SOUTHERN OUTDOORS* FOUNDATION

## Federal Tax ID / EIN

This is your provisional Employer Identification Number:

20-5424918

Today's Date is: August 23, 2006 GMT

You will receive a confirmation letter in U.S. mail within fifteen days.
The letter will also contain useful tax information for your business or organization.

If you have input any of the information on your application in error, please wait seven days and contact the EIN Toll Free area at 1-800-829-4933, Monday - Friday, 7:30am - 5:30pm. If you do not want to call, please make corrections on the letter you receive confirming your EIN and return it to the IRS.

If you are going to complete other on-line applications that require your Employer Identification Number(EIN) you can copy it by performing the following steps:

1) Use your mouse to highlight your EIN (blue number on top of page) by moving your pointer on top of the number.
2) Press the Ctrl key at the same time pressing the C key.

Once you copy your EIN you can paste it in the appropriate place by pressing the Ctrl key at the same time pressing the V key.

You may click on the buttons below for different print options or to fill out another Form SS-4.

Review and Print Form SS-4    Fill Out Another Form SS-4

Click here to return to the Internet Employer Identification Number landing (start) page.

Attachment XIV. Page 9 of 9

(ENTREPRENEUR)

CORPORATE IDENTITIES
U.C.C. 1-103  COPYRIGHT ®

INCORPORATOR/DIRECTOR
HOLDER-IN-DUE-COURSE
SOLE FIDUCIARY
TRUSTEE:Edmond Hudmond Smith IV

[ Trade Names]          [Trade Mark]                    [E.I.N.#'s]

1).EDMOND HUDMOND SMITH IV          E.H.S.IV®          CHIEF EXECUTIVE OFFICER(CEO)

2).SMITH ENTERPRISES                  S®          HEDGE FUND & BROKERAGE /
                                                   VENTURE CAPITAL:PARENT CORP.

3).GREAT SOUTHERN OUTDOORS FOUNDATION & INSTITUTE--(501)C-3.--E.I.N.#061752860
     ALA.===CHARITABLE NON-PROFIT-- G.S.O.F&I.® ------------II, E.I.N.#205424918

4).E.H.SMITH ELECTRICAL CONTRACTORS I.N.C.---®E.H.S.Elec.------E.I.N.#
     SUBSIDIARIES:
     (A).ALA.--D.O.T.--"HIGHWAY SERVICES"(ROAD CONST.)
     (B).Res.,COM.,& IND.,ELECTRICAL SERVICE DEPARTMENT.

5).TOP CATASTROPHE TEAM SVS. L.L.C.,I.N.C.---®TOP CAT.---------E.I.N.# 231820067
     SUBSIDIARY:          PARTNERED /W: KLIEN ENTERPRISES(LEVY PROJ.)#062312743
     (A) C.S.P.                          A.R.H.B./P.& J. SIBANEY

6).CLAIMS SERVICES PROVIDERS L.L.C.----------®C.S.P.----------E.I.N.# 020744888

7).HORIZON COMMERCIAL & INDUSTRIAL CONTRACTORS--H.C.I.C.®-----E.I.N.#030504298
     PARTNERED: WINDFIELD RESORT PROPERTIES  (M.LOU) & ( K.C.CHANG)

8).PENNICLE LAND DEVELOPMENT,HOLDINGS & EXPLORATION --P.L.D.®=--E.I.N.#040372880
     (TEXAS/CANADA/ WALLACE REALTY)

9).WORLD WIDE BIG GAME ENTERPRISES I.N.C.-----W.W.B.G.®------E.I.N.#
     SUBSIDIARIES:
     (A).WORLD WIDE BIG GAME PRODUCTIONS;(FILM & T/V.)
     (B).WORLD WIDE BIG GAME WEAR;( SPORTING & CAMO.;APPARELL)
     (C).WORLD WIDE BIG GAME ADVENTURES;(TRAVEL & OUTFITTING AGENCY)
     (D).BLUE WATER CHARTERS;(OFFSHORE CHARTERS,FISHING & EXPIDITIONS)
     (E).TIGHT LINE CHARTERS;(INSHORE CHARTERS,FISHING & EXCURSIONS)

O CONFIRM CORP.---I.D.'s---I.R.S.--CONFIRMATION # ---1-800-829-4933.

   TENS OF MILLIONS OF DOLLARS IN PAID TAXES COLECTIVELY.

   HUNDREDS OF MILLIONS OF DOLLARS---IN PAID PAYROLES PROVIDED COLECTIVELY.
   CORPOATE-----DUNN & BRADSTREET NUMBERS------AT PH.# 1(888)-33P-ROFILE

P. CITIZENS UNITED

ATTACHMENT XV page 1 of 1

# SUITE OUTLINE

VIO's STATE LAW's (25+) (MULTIPLE COUNTS)

VIO's FEDERAL LAW's (100+) (MULTIPLE COUNTS)

VIO's TORT LAW (20+) (MULTIPLE ACT's)

PERSONAL INJURIES (29+) (MULTIPLE ACT's)

ASSAULTS (90-50+)

EMOTIONAL DISTRESS

DISCRIMINATION

RETALIATION / TORTUOS INTERFEARANCE

VIO's CIVIL RIGHTS VIO's

DEFAMATION

OBSTRUCTION

KATZ CASE ★ OLMSTED v. U.S. (SUPREME COURT DEC 4, 1928) OLMSTED ACT

U.S.C. AMME - UNITED STATES CONSTITUTIONAL VIOLATIONS

I ST, II ND, IV TH, V TH, VI TH, VII TH, XIII TH, & XIV TH = (8)

I TH - TAKINGS CLAUSE

## VIOLATED - ACT's

VIO's ACT's: (M.V.R.A) MODIFIED VICTIMS RIGHTS ACT

II. (C.V.R.A) CRIMINAL VICTIMS RIGHTS ACT (200_

III. KU KLUX ACT (42 U.S.C.S. §§ 1985) 1871 "TERROREM EFFEC

IV. BARBOUR ESPIONAGE ACT / ECONOMIC ESPIONAGE ACT

18 U.S.C. §150 V. (FRAUD) CORPORATE & CRIMINAL FRAUD ACCOUNTABILITY ACT (2005

VI. SARBANES - OXLEY ACT; SEC 1107 (WHISTLE BLOWER)

VII. WHISTLE BLOWERS ACT; STAT 16 (5 U.S.C.S. § 1221 - 101 NT) (2012)

VIII. HOBBES ACT (18 U.S.C.S § 1951) BREECH OF AGREEMENTS, THREATS (RICO

IX. TRAVEL ACT (18 U.S.C.S § 1952) AIDING & ABETTING IN VIO. INST. COM

X. McCARREN-FERGUSON ACT (15 U.S.C.S. § 1012 (b)) "INSURANCE"

XI. LACY ACT (16 U.S.C.S. § 661) (540, 3372, 3373, 3374, 3375, 3376)

XI. CIVIL RIGHTS ACT - 1871 (18 U.S.C.S. § 241 - 249 ET. SEQ.)

XIII. BIVENS ACT (42 U.S.C.S. § 1983)

XIV. STAFFORD ACT · SEC 311 ("BUISNESS OF INSURANCE")

XV. CLAYTON ACT - ("BUISNESS OF INSURANCE")

XVI. SHERMAN ACT - ("BUISNESS OF INSURANCE")

START

## DAMAGES

CRIMINAL
& CIVIL: COMPENSATORY, PUNITIVE, SPECIA
DAMAGES: DAMAGES, STATUTORY & TREBLE DAMAGES
PRIVILEGES & IMMUNITIES, DUE PROCESS
EQUAL PROTECTION UNDER THE LAW
CRUEL AND UNUSAL PUNISHMENTS
"BIVENS" FEDERAL LAW: (TITLE 42 u.s.c.s.§19
TITLE 28 u.s.c.s.§1367(a), TITLE 29 u.s.c.s.§ 2615
TITLE 42 u.s.c.s.§12101, 12102(2)(A), TITLE 42 u.s.c.s.§2000e-
(a)(1), TITLE 42 u.s.c.s.§§ 2000e-2 (k)(1)(A)(i)


CIVIL: WRONGFULL DEATH's & PERMANENT PERSONAL I
-JURIES ——— (MULTIPLE COUNTS)


MEDICAL: (H.I.P.P.A) "HEALTH INFORMATION PROTECTION & PROHABILIT
ACT"
(A.D.A) "AMERICANS WITH DISABILITIES ACT"
(R.A.) "REHABILITATION ACT"
(F.M.A) "FAMILY MEDICAL ACT"
(F.M.R.A) "FEDERAL MEDICAL RIGHTS ACT"


## BUISNESS INTERUPTION

B.I. PROJECT's & CONTRACT's PREVENTIONS AND
CONVERSIONS, LOSSES OF ANTICIPATED PROF
-ITS AND OVERHEAD IN VIOLATIONS OF CIVIL RIGH
(U.C.C.) "UNIFORM COMMERCIAL CODE" AND
VIOLATIONS OF THE INTERSTATE COMMERCE
CLAUSE.

# ACT's VIOLATED CONTINUED

XVII. PUBLIC DISCLOSURE/INTERESTS ACT 1998 (15 U.S.C. § 457.

XVIII. FEDERAL TRADE ACT

XIX. NO FEAR ACT (18 U.S.C.S. §§ 252, 254-264) RETAIL

XX. FOWLER ACT - "FELONY MURDER RULE" (18 U.S.C.S. § 1111 & 1112)

XXI. ANTI TRUST CRIMINAL PENALTY ENHANCEMENT & REFORM ACT (2004)
(15 U.S.C.S. § 1 et seq.) CS-2006-2475 XXII. PRIVICY ACT

2006-2475: SABOTAGE, OPEN ACCOUNT CONVERSION, INSURANC
FRAUD'S, TORTUOTOUS INTERFEARANCE, UNFAIR TRAD
PRACTICES, BREACH OF CONTRACTS AND OPEN
ACCOUNT NEGLEGENCE, AND CORPORATE ESPIONAGE.
(15 U.S.C.S. §§ 1, 2, 3, 4, 6, 6(A), 7, 18(A) & 45(A))

XXII ECONOMIC OR INDUSTRIAL ESPIONAGE IN CYBERSPACE ACT
ST. TRADE/STATUTORY -    FEDERAL   CRIMES    16 § 1708
COUNTS
7-18 FEDERAL (R.I.C.O.) LAW's & STATUTES (18 U.S.C.S. §§ 1961,
SEQ. 18 U.S.C.S. §§ 1117, 18 U.S.C.S. §§ 1111, 18 U.S.C.S. §§ 1112, 18 U.S.C.S. §§ 2111
18 U.S.C.S. §§ 2340, 18 U.S.C.S. §§ 113, 18 U.S.C.S. §§ 111, 18 U.S.C.S. §§ 641,
18 U.S.C.S. §§ 2119, 18 U.S.C.S §§ 872, 18 U.S.C.S. §§ 875, 18 U.S.C.S.§§
18 U.S.C.S §§ 873, 18 U.S.C.S §§ 2, 18 U.S.C.S §§ 2 B 1.1. 18 U.S.C.S. §§ 42.1
18 U.S.C.S. §§ 1113, 18 U.S.C.S. §§ 2332(b), 18 U.S.C.S. §§ 1343, 18 U.S.C § 1344
18 U.S.C.S. §§ 659 & 664, 18 U.S.C.S §§ 1351, 18 U.S.C.S. §§ 1425, 18 U.S.C.S §§ 2
18 U.S.C.S §§ 242, 18 U.S.C.S §§ 243, 18 U.S.C.S §§ 1033(c)(1), 18 U.S.C.S §§ 1033(A)(1),
18 U.S.C.S §§ 1512(b)(1), 18 U.S.C.S. §§ 1542, 18 U.S.C.S §§ 1952, 18 U.S.C.S §§ 1953,
18 U.S.C.S. §§ 1957, 18 U.S.C.S §§ 1958, 18 U.S.C.S §§ 1960, 18 U.S.C.S. §§ 2314 & 2315,
18 U.S.C.S §§ 2316, 18 U.S.C.S §§ 371, 18 U.S.C.S §§ 1503, 18 U.S.C.S. §§ 1512
18 U.S.C.S §§ 1513, 18 U.S.C.S §§ 1001 SEE 207, 304, 301, 302, 303
42 U.S.C.S. §§ 2000 e-2 (A)(1)(6), 42 U.S.C.S §§ 1211(b)(5)(A), 42 U.S.
C.S. §§ 1983, 42 U.S.C.S. §§ 1985, 42 U.S.C.S §§ 1986, 42 U.S.C.S §§ 1981
42 U.S.C.S. §§ 1981, 28 U.S.C.S. §§ 2615, 28 U.S.C.S. §§ 1343, TITLE 2
U.S.C.S. §§ CHAP 18, TITLE VII CLAIM, TITLE II, III & IV
1986  31 U.S.C.S. §§ 37309(h) WHISTLE BLOWER RETNTATION
CRIMINAL LIABLE, CRIMINAL & CIVIL LIBERTIES VIOLATIONS.
AND ENTRAPMENT (R.I.C.O.): MULTIPLE COUNTS

PAGE II.    CIVIL AMOUNTS CONTINUED

ANNUALY COMPOUNDED INTEREST-% = PER STATUTE=
(COMPOUNDED DAILY)
                                                    +

U.S. DOLLAR INFLATIONARY DEPRICIATION-.05-16± % AGUSTMENT
(COMPOUNDED DAILY)
                                                    +

LEXINGTON  INSURANCE (CONTRACT) POLICY 5 = $12,000,000.
3900 WINDSOR DR. (FOWL RV.) PER APPRAISAL 24th X 3  + $72,000,000.

LEXINGTON INS. 15 U.S.C.S. § 1   ?    = $100,000,000
                                                    +

LEXINGTON INS. (CALDERWOOD DR.) = $ 1,000,000.
                                                    +

LEXINGTON INS. (621 TUDOR LN.)  = X3 $1,500,000. ""
                                                    +

LOSS OF HOPE DR (REV. MORG. (DEATH)) X3 $600,000. ""
    LOSS OF 5205 MICKEY DR. (RENTAL PROP.)   X3 + $400,000. ""

LOSS OF (N.F.I.P.) STACKED POLICIES (E. WOLFE) = X3 = $ 2,150,000. ""
                                                    +

ATTORNEYS FEES =
                                                    +

COURT COSTS =
                                                    +

LOST PROFITS = BILLIONS (HURRICANES FROM 2006-)(P & JORDAN)
(KC-CHANG)(M-PARKER)(PINNICLE LAND DEV)(LOU)  +

LOST OPPORTUNITIES = BILLIONS (LEVY PROJECT)(WINDFIELD)(TOPCAT)
(AIR-PORT LOU DEVELOPMENT)                          +

EMOTIONAL & PHYSICAL PAIN AND SUFFERING (PAST, PRESENT & FUTURE)= ?
  BILLIONS

# CORPORATELY CIVIL AMOUNTS

BENIFIT-OF-THE BARGIN DAMAGES                    TREBLE DAMAGES

ORIG AMT - $400,000,000.⁰⁰ PLUS OR = (X 3) = $1,200,000,000.⁰⁰

+

15 U.S.C. §1 = $100,000,000.⁰⁰ - CORP FINE = $100,000,000.⁰⁰

+

15 U.S.C. §3 = $100,000,000.⁰⁰ - CORP FINE = $100,000,000.⁰⁰

+

15 U.S.C.S. §3(B) = $100,000,000.⁰⁰ - CORP FINE = $100,000,000.⁰⁰

+

(U.C.C.) INCIDENTAL DAMAGES (COMM. RESONABLE EXPENSES) =   ?
LOSS ASSOCIATED W/OR RELATED TO ACTUAL DAMAGES +

COMPENSATORY DAMAGES (FOR LOSS SUFERED) =   ?
DAMAGES SUFFICIENT IN AMOUNT TO IDEMNIFY THE INJURED +

PUNITIVE (X5) DAMAGES - DAMAGES AWARDED IN ADDITION = $38 BILLION
DUE TO DEFENDANTS ACTIONS OF RECKLESSNESS, MALICE or DEFCIT + 1% NET WORTH

STATUTORY DAMAGES (R.I.C.O.) ORDERED BY LAW =   ?
SPECIFIED PER STATUTORY LAW CRIM/CIVIL +

SPECIAL DAMAGES / CONSEQUENTIAL DAMAGES =   ?
+

FUTURE DAMAGES * (12 H), (L-P), (W-R), (T-S) & (B.P.O.S) = BILLIONS
MONEY AWARDED FOR RESIDUAL OR PROJECTED EFFORTS OR FUNCT +

RELIANCE DAMAGES - DAMAGES AWARDED FOR LOSSES =   ?
ON RELINACE OF THE CONTRACTUAL AGREEMENT +

RESTITUTIONAL DAMAGES - AT PLANTIFS EXPENSE =   ?
DAMAGES AWARDED WHEN DEFENDANT HAS BEN JUSTLY BEEN ENRICHED +

UNLIQUIDATED DAMAGES = UNFIXED DAMAGES =   ?
THAT MUST BE ESTABLISHED & DETERMINED BY A JUDGE & JURY +

BUISNESS INTERUPTION ?         BILLIONS

+

CONTRACT PREVENTION & CONVERSION         (PERSONAL)

EZESANT STATUTE (20K X 23 MIN)    + $3,500,000,000.

MEDICAL (DISABILITY) RIGHTS =    + $ 750,000,000. +

ATTACHMENT XVII page 5 of 5                    1

EDMOND HUDMOND SMITH IV

U.S.P. # 07241-059
U.S.P. SPRINGFIELD
P.O.BOX 4000
SPRINGFIELD, MO, 65801










UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ALABAMA
113 St.Joseph Street
Room 123
Mobile,ALA 36602












LEGAL - MAIL



UNITED STATES POSTAGE

U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300

PITNEY BOWES

02 1P        $ 000.00⁰
0001126717    FEB 04 2019
MAILED FROM ZIP CODE 65807